KAWASHIMA LORUSSO & HARADA, LLP
JAMES KAWASHIMA          #1145-0
SHIRLEY M. KAWAMURA    #6978-0
Topa Financial Center
Fort Street Tower
745 Fort Street, Suite 500
Honolulu, Hawaii  96813
Tel. No. 808-275-0300
Fax No. 808-275-0399
skawamura@klhllp.com

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
SHON MORGAN (appearing *pro hac vice*)
SCOTT L. WATSON (appearing *pro hac vice*)
VALERIE RODDY (appearing *pro hac vice*)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017
Tel. No. 213-443-3000
Fax No. 213-443-3100
shonmorgan@quinnemanuel.com

Attorneys for Defendant
INTERNATIONAL BUSINESS
MACHINES CORPORATION

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RSI CORP., dba RESPONSIVE SYSTEMS COMPANY, a New Jersey corporation, | CIVIL NO. CV 08-00066 JMS/BMK |
| Plaintiff, | **DEFENDANT IBM'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, STRIKE; MEMORANDUM IN SUPPORT THEREOF; LOCAL RULE 7.5(e) CERTIFICATION; AND CERTIFICATE OF SERVICE** |
| vs. | |
| INTERNATIONAL BUSINESS MACHINES CORPORATION; and | |

DOE DEFENDANTS 1-20,

                    Defendants.

[Request for Judicial Notice filed concurrently herewith]

Judge:   Hon. J. Michael Seabright

## DEFENDANT IBM'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, STRIKE

Come now defendant International Business Machines Corporation ("IBM"), a New York corporation, by and through their attorneys, KAWASHIMA LORUSSO & HARADA LLP and QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP and move this Honorable Court for an order granting dismissal of plaintiff's complaint or, in the alternative, striking of portions of plaintiff's Complaint, in defendant IBM's favor with regard to all causes of action alleged in plaintiff's Complaint filed herein dated February 12, 2008.

The aforementioned causes of action must be dismissed because they are time-barred by the express terms of the parties' agreement.  Plaintiff's tort and unfair competition claims are also barred by New York's economic loss rule. Plaintiff's fraud and intentional misrepresentation claims must be dismissed for plaintiff's failure to plead facts with particularity.  Plaintiff has further failed to allege facts sufficient to state a claim under the Lanham Act or for restraint of trade.  Plaintiff's purported causes of action for unclean hands and punitive damages must be dismissed because they are not causes of action at all.  Plaintiff's claim and prayer for punitive damages must also be dismissed or stricken because

punitive damages are barred by the express terms of the parties' agreement and unwarranted under New York law.

This motion is made pursuant to Rules 7, 9(b), and 12 of the Federal Rules of Civil Procedure and Rule 7 of the Local Rules of Practice for the United States District Court of Hawaii, and is based on this motion, the attached memorandum in support of this motion, the concurrently-filed Request for Judicial Notice and its attached exhibits, all matters of which this Court may take judicial notice, the pleadings and papers on file in this action, and such evidence and arguments as may be presented at or before the hearing on this motion.

DATED: Honolulu, Hawaii, May 27, 2008.

_____

JAMES KAWASHIMA
SHIRLEY M. KAWAMURA
SHON MORGAN
SCOTT L. WATSON
VALERIE RODDY
Attorneys for Defendant
INTERNATIONAL BUSINESS MACHINES
CORPORATION

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................. 1

II.  RELEVANT FACTUAL BACKGROUND .................................. 2

III. ARGUMENT ....................................................................... 4

   A.   Rule 12 Standards ......................................................... 4

   B.   New York Law Governs................................................. 5

   C.   Plaintiff's Claims Are All Time-Barred by the Parties'
        Contractual Agreement................................................ 8

   D.   The Economic Loss Rule Bars RSI's Tort and Unfair
        Competition Claims..................................................... 10

        1.   The Economic Loss Rule ..................................... 10

        2.   Plaintiff's Tort Claims Arise from the Same Facts as the
             Contract Claim ................................................... 12

   E.   Plaintiff's Fraud Claims Are Not Pleaded with the Requisite
        Specificity.................................................................. 16

   F.   Plaintiff Has Alleged No Facts to Support Its Lanham Act or
        Restraint of Trade Claims............................................ 18

   G.   "Unclean Hands" and "Punitive Damages" Are Not Causes of
        Action ....................................................................... 19

IV.  CONCLUSION.................................................................... 22

# TABLE OF AUTHORITIES

**Page**

## Cases

*518 E. 80th St. Co. v. Smith,*
  251 A.D.2d 215, 674 N.Y.S.2d 680 (1st Dept. 1998) ........................................ 19

*Airgo, Inc. v. Horizon Cargo Transp., Inc.,*
  66 Haw. 590, 670 P.2d 1277 (1983) ................................................................. 5

*Allman v. UMG Recordings,*
  530 F. Supp. 2d  602 (S.D.N.Y. 2008) ............................................................. 8

*Allstate Ins. Co. v. Kim,*
  121 F. Supp. 2d 1301 (D. Haw. 2000) ............................................................. 7

*Arcilla v. Adidas Promotional Retail Operations, Inc.,*
  488 F. Supp. 2d 965 (C.D. Cal. 2007) ............................................................ 21

*Balistreri v. Pacifica Police Dep't,*
  901 F.2d 696 (9th Cir. 1988) ........................................................................... 4

*Branch v. Tunnell,*
  14 F.3d 449 (9th Cir. 1994), *overruled on other  grounds by Galbraith v.*
  *County of Santa Clara,* 307 F.3d 1119, 1126 (9th Cir. 2002) ............................ 5

*Cardonet, Inc. v. IBM Corporation,*
  No. C-06096637, 2007 WL. 518909 (N.D. Cal. Feb. 14, 2007) ........................ 7

*Carmania Corp. v. Hambrecht Terrell Int'l,*
  705 F. Supp. 936 (S.D.N.Y. 1989) ................................................................. 11

*City of Express, Inc. v. Express Ptrs,*
  87 Haw. 466, 959 P.2d 836 (1998) ................................................................. 12

*Coffman v. Fed. Labs.,*
  323 U.S. 325 (1945) ....................................................................................... 21

*Druckers', Inc. v. Pioneer Elecs. (USA), Inc.,*
  Civ. A. No. 93-1931, 1993 WL. 431162 (D.N.J. Oct. 20, 1993) ........................ 7

*DynCorp v. GTE Corp.*,
    215 F. Supp. 2d 308 (S.D.N.Y. 2002) ............................................................ 21

*Firth v. State*,
    706 N.Y.S.2d 835 (N.Y. Ct. Cl. 2000) ......................................................... 20

*Folium, Inc. v. Int'l Bus. Machs. Corp.*,
    Civil No. 03-92-DAE/LEK ................................................................. 6, 19

*Guerrero v. Gates*,
    442 F.3d 697 (9th Cir. 2006) ...................................................................... 4

*H.P.S. Capitol, Inc. v. Mobil Oil Corp.*,
    186 A.D.2d 98, 588 N.Y.S.2d 29 (1st Dept. 1992) ...................................... 9

*Hays v. City and County of Honolulu*,
    81 Haw. 391, 917 P.2d 718 (1996) ............................................................. 7

*Interstate Adjusters, Inc. v. First Fid. Bank, N.A.*,
    251 A.D.2d 232, 675 N.Y.S.2d 42 (1st Dept. 1998) .................................. 15

*Jaress & Leong v. Burt*,
    150 F. Supp. 2d 1058 (D. Haw. 2001) ........................................................ 7

*John J. Kassner & Co., Inc. v. City of New York*,
    46 N.Y.2d 544, 415 N.Y.S.2d 785 (1979) .................................................. 9

*LaSalle Nat'l Bank v. Ernst & Young LLP*,
    285 A.D.2d 101, 729 N.Y.S.2d 671 (1st Dept. 2001) ............................... 16

*Macmillan, Inc. v. Fed. Ins. Co.*,
    764 F. Supp. 38 (S.D.N.Y. 1991) .............................................................. 13

*McAdams v. Massachusetts Mut. Life Ins. Co.*, No. Civ. A. 99-30284-FHF,
    2002 WL. 1067449 (D. Mass. May 15, 2002) ............................................ 6

*Met. Life Ins. Co. v. Noble Lowndes, Int'l, Inc.*,
    618 N.Y.S.2d 882 (1994) .......................................................................... 20

*Nat'l Football League Props., Inc. v. Dallas Cowboys Football Club, Ltd.*,
    922 F. Supp. 849 (S.D.N.Y. 1996) ............................................................ 13

*Nedlloyd Lines B.V. v. Superior Court,*
    3 Cal. 4th 459, 11 Cal. Rptr. 2d 330 (1992) ...................................................... 6, 7

*Orlando v. Novuriana of America, Inc.,*
    162 F. Supp. 2d 220 (S.D.N.Y. 2001) ................................................................ 10

*Pub. Serv. Mut. Ins. Co. v. Tri-Con Constr. Corp.,*
    224 A.D.2d 508, 328 N.Y.S.2d 155 (2d Dept. 1996) ....................................... 13

*QC Constr. Prods., LLC v. Cohill's Bldg. Specialties, Inc.,*
    423 F. Supp. 2d 1008 (D. Ariz. 2006) .............................................................. 16

*R.H. Damon & Co. v. Softkey Software Prods. Inc.,*
    811 F. Supp. 2d 220 (E.D.N.Y. 1999) ......................................................... 14, 21

*Redington v. Hartford Accident & Indem. Co.,*
    463 F. Supp. 83 (S.D.N.Y. 1978) ........................................................................ 9

*Regan v. Dep't of Pub. Safety,*
    Civ. No. 07-00029 JMS-BMK, 2007 WL 372775 at *3
    (D. Haw. Oct. 18, 2007) ...................................................................................... 5

*Salvador v. Uncle Sam's Auctions & Realty, Inc.,*
    307 A.D.2d 609, 763 N.Y.S.2d 360 (3d Dept. 2003) ....................................... 14

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.,*
    806 F.2d 1393 (9th Cir. 1986) ........................................................................... 16

*Semegen v. Weidner,*
    780 F.2d 727 (9th Cir. 1985) ........................................................................ 16, 17

*Smith v. County of Erie,*
    295 A.D.2d 1010, 743 N.Y.S.2d 649 (4th Dept. 2002) ..................................... 19

*Sprewell v. Golden State Warriors,*
    266 F.3d 979 (9th Cir. 2001) ............................................................................. 18

*In re Syntex Corp. Sec. Litig.,*
    95 F.3d 922 (9th Cir. 1996) ............................................................................... 18

*Wolf v. Nat'l Council of Young Israel*
    264 A.D.2d 416, 694 N.Y.S.2d 424 (2d Dept. 1999) ....................................... 15

*Wolff v. Rare Medium, Inc.,*
    171 F. Supp. 2d 354 (S.D.N.Y. 2001) ............................................... 13

*Yeterian v. Heather Mills N.V. Inc.,*
    183 A.D.2d 493, 583 N.Y.S.2d 439 (1st Dept. 1992) ......................... 15

## Statutes

Fed. R. Civ. P. 9(b) .............................................................................. 16

Fed. R. Civ. P. 12(b)(6) ........................................................................ 4

Fed. R. Civ. P. 12(f) ............................................................................ 21

N.Y. C.P.L.R. § 201 (McKinney 2003) .............................................. 8, 9

N.Y. C.P.L.R. § 213 (McKinney 2003) ................................................ 9

## Other Authorities

5 Corbin, *Contracts*, § 1068, at 386 ....................................................... 21

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RSI CORP., dba RESPONSIVE SYSTEMS COMPANY, a New Jersey corporation,<br><br>           Plaintiff,<br><br>    vs.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION; and DOE DEFENDANTS 1-20,<br><br>        Defendants. | CIVIL NO. CV 08-00066 JMS/BMK<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANT IBM'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, STRIKE** |

## MEMORANDUM IN SUPPORT OF DEFENDANT IBM'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, STRIKE

## I.    INTRODUCTION

Plaintiff RSI did not attach the agreements upon which it sues to its complaint for a simple reason: Their express terms bar all of plaintiff's claims. At the outset of their business relationship, the parties agreed to a mutual provision requiring both parties to bring any claims against the other within two years. Although plaintiff states it became aware in 2004 of IBM's alleged failure to pay royalties under the agreement—the purported breach of contractual duty which underlies every single one of plaintiff's causes of action—plaintiff did not file suit until long after 2006. All of plaintiff's claims are thus time-barred.

Although the parties' agreement is dispositive, plaintiff's tort and unfair competition claims are also barred by New York's "economic loss rule," which prevents RSI from dressing up a straightforward breach of contract claim as no less than *eight* different torts and unfair competition claims. Where a party alleges solely economic losses (no personal injury or property damage) and seeks only the benefit of a contractual bargain, New York law provides that the remedy lies exclusively in contract.

For these and other reasons discussed below, plaintiff's Complaint contains fatal defects and should be dismissed with prejudice.

## II.    RELEVANT FACTUAL BACKGROUND

Plaintiff RSI Corp., which does business as Responsive Systems Company, created a software product called Buffer Pool Tool that it licensed to IBM to remarket to IBM's own customers.[1] The parties entered into a series of written agreements: (1) an IBM Developer Agreement and Statement No. STL 97041, dated June 23, 1997; and (2) the IBM Developer Agreement and Statement No. STL 97051, dated April 21, 1998.[2] Plaintiff alleges that "[p]ursuant to such

---

[1]    Complaint, dated February 12, 2008 ("Compl.") ¶¶ 1, 4-5. For the purposes of this motion to dismiss and motion to strike only, IBM relies on the factual allegations as pleaded by plaintiff, unless otherwise noted.

[2]    *Id.* ¶¶ 6-7 (tracking plaintiff's allegations). In fact, the 1997 and 1998 contracts bear the same agreement number, STL97041, and consist of various

Agreement, and others entered into between the parties, . . . IBM was to pay [p]laintiff certain royalties for the [Buffer Pool Tool]."[3]

According to plaintiff, "[d]efendant IBM failed to pay the license fees due to [p]laintiff as set forth in the Agreement and other agreements between the parties."[4]  Plaintiff further alleges that when plaintiff sought audits "as provided for in the Agreement[,] IBM failed and refused to provide the necessary documents for a proper audit."[5]

IBM told plaintiff it discontinued remarketing the Buffer Pool Tool to IBM's customers.[6]  Plaintiff alleges that in 2004, it "discovered for the first time [that]

---

component documents.  The 1997 Agreement consists of three documents: (1) the IBM Developer Agreement, Agreement No.: STL97041, dated June 23, 1997 (Request for Judicial Notice in Support of Defendant IBM's Motion to Dismiss or, in the Alternative, Strike, dated May 27, 2008, filed concurrently herewith ("RJN") Ex. A); (2) a Description of Licensed Work, Agreement No.: STL97041, DLW No.: 001, dated June 23, 1997 (RJN Ex. B); and (3) the Statement of Work, Agreement No. STL97041, SOW No.: 001, dated June 23, 1997 (RJN Ex. C).  *See* RJN Ex. B at 1 (listing components of agreement); RJN Ex. C at 1 (same).

The 1998 Agreement consists of the three documents comprising the 1997 agreement *plus* (1) the Description of Licensed Work, Agreement No.: STL97041, DLW No.: 002, dated April 21, 1998 (RJN Ex. D); and (2) the Statement of Work, Agreement No.: STL97041, SOW No: 002, dated April 21, 1998 (RJN Ex. E).  *See* RJN Ex. D at 1 (listing components of agreement, but with typographical error in agreement number); RJN Ex. E at 1 (listing components of agreement, but with typographical error, referring to "this" agreement "number 001").

[3]  Compl. ¶ 8.

[4]  *Id.* ¶ 9.

[5]  *Id.*

[6]  *Id.* ¶ 10.

certain [IBM customers] continued to utilize the Buffer Pool Tool in violation of any contract that the parties had [and] in violation of any licensing agreement."[7]

Plaintiff alleges claims for: (1) breach of contract; (2) negligent misrepresentation; (3) intentional misrepresentation; (4) fraud; (5) breach of the covenant of good faith and fair dealing; (6) conversion; (7) unfair competition in violation of 15 U.S.C. § 1125(a)); (8) common law unfair competition; (9) restraint of trade; (10) "unclean hands"; and (11) punitive damages.[8]

## III.   ARGUMENT

### A.   Rule 12 Standards

A claim should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails to state either a cognizable legal theory or sufficient facts to obtain a remedy under a cognizable legal theory. *See, e.g., Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A Rule 12(b)(6) motion is properly granted when it is clear the pleader can prove no set of facts that would entitle it to relief. *Guerrero v. Gates*, 442 F.3d 697, 703 (9th Cir. 2006). A motion to dismiss is also properly granted if an affirmative defense or other bar to relief is apparent from the face of the complaint, such as a statute of

---

[7]   *Id.* ¶ 11.

[8]   *Id.* ¶¶ 14-18, 20-24, 26-30, 32, 35-36, 38-41, 43-46, 48-49, 51-53, 55, 57-58.

limitation. *Regan v. Dep't of Pub. Safety*, Civ. No. 07-00029 JMS-BMK, 2007 WL 372775 at *3 (D. Haw. Oct. 18, 2007).

The Court is not confined to the plaintiff's allegations alone but may consider "[d]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," such as the contracts upon which plaintiff sues here. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002); *Regan*, 2007 WL 3072775 at *2.

### B.    New York Law Governs

The parties' contracts expressly provide that New York law governs. *See* IBM Developer Agreement, Agreement No. STL97041, dated June 23, 1997, at § 13.6 (RJN Ex. A) ("GOVERNING LAW. The substantive laws of the State of New York applicable to agreements fully executed and performed in New York govern the IDA.") (emphasis added). Hawaii courts will enforce a choice-of-law provision if "the chosen law has some nexus with the parties or the contract." *Airgo, Inc. v. Horizon Cargo Transp., Inc.*, 66 Haw. 590, 595, 670 P.2d 1277, 1281 (1983). IBM's incorporation in New York provides that nexus. *See, e.g., id.*, 66 Haw. at 591, 670 P.2d at 1279 (applying Texas law where contract stated that Texas law would apply and one party was "a Texas freight transport company");

*see also Folium, Inc. v. Int'l Bus. Machs. Corp.*, Civil No. 03-92-DAE/LEK,
Opinion and Order (D. Haw. Aug. 11, 2003) (RJN Ex. F) (dismissing claims on
similar facts and applying same choice of law provision; "the choice-of-law clause
is enforceable under Hawaii law because IBM is a New York corporation").  Thus,
the choice-of-law provision is enforceable.

New York law also applies to RSI's tort claims, which merely restyle its
breach of contract claim.  Although Hawaii courts have not addressed this issue,
the California Supreme Court has held that tort claims related to a contract claim
fall within a contractual choice-of-law provision, especially where (as here) those
tort claims are simply the "alter-ego" of the contract claims.  *Nedlloyd Lines B.V. v.
Superior Court*, 3 Cal. 4th 459, 470, 11 Cal. Rptr. 2d 330, 337 (1992) ("[A] valid
choice-of law clause, which provides that a specified body of law 'governs' the
'agreement' between the parties, encompasses all causes of action arising from or
related to that agreement, regardless of how they are characterized, including
tortious breaches of duties emanating from the agreement or the legal relationships
it creates.").[9]  Hawaii courts often look to California law on issues of first

---

[9]    *Accord McAdams v. Massachusetts Mut. Life Ins. Co.*, No. Civ. A. 99-
30284-FHF, 2002 WL 1067449 at *12-13 (D. Mass. May 15, 2002) ("[A] choice
of law provision should apply to non-contract claims where the basic source of any
duty owed by defendants to the plaintiff is derived from the contractual
relationship structured by the underlying agreement."); *id.* ("[T]he federal common
law, as articulated by the Court of Appeals for the First Circuit, holds that

impression. *See, e.g., Jaress & Leong v. Burt*, 150 F. Supp. 2d 1058, 1065 (D.

Haw. 2001) (noting that "the Hawaii Supreme Court would likely follow the

California reasoning" on effect of dismissals against nonconsenting defendants);

*Allstate Ins. Co. v. Kim*, 121 F. Supp. 2d 1301, 1307 n.3 (D. Haw. 2000) ("The

Hawaii Supreme Court has frequently followed California [c]ourts in rendering

opinions on insurance matters."); *Hays v. City and County of Honolulu*, 81 Haw.

391, 396, 917 P.2d 718, 723 (1996) ("[I]n interpreting our statute, we reject the

[federal] rule and adopt, with clarification, the California rule."). Accordingly,

Hawaii would likely follow *Nedlloyd* and other courts to apply the choice of law

clause to related tort claims.

Notably, the choice-of-law provision in IBM's Developer Agreement has

already been applied to tort and unfair competition claims in a case alleging similar

facts. *See Cardonet, Inc. v. IBM Corporation*, No. C-06096637, 2007 WL 518909

at *3 (N.D. Cal. Feb. 14, 2007) (applying New York law to interpret breadth of

choice-of-law provision and concluding "the choice-of-law provision reaches all of

plaintiff's claims [including fraud, negligent misrepresentation, conversion, and

---

'contract-related tort claims involving the same operative facts as a parallel claim
for breach of contract should be heard in the forum selected by the contracting
parties.'"); *Druckers', Inc. v. Pioneer Elecs. (USA), Inc.*, Civ. A. No. 93-1931, 1993
WL 431162 at *7 (D.N.J. Oct. 20, 1993) (choice-of-law clause applied to tort
claims where there was "no basis for [them] independent of the Agreement—

California statutory unfair competition claims] since the claims as pled seek the benefit of plaintiff's bargain with IBM and seek damages of the type remedial in contract under New York laws."). Under the similar facts of this case, New York law should apply to plaintiff's tort and common law unfair competition claims.

### C.    Plaintiff's Claims Are All Time-Barred by the Parties' Contractual Agreement

RSI and IBM agreed in writing that, except for indemnification actions, "neither of [them] will bring a legal action against the other more than two (2) years after the cause of action arose."[10] Plaintiff admits that "[o]n or about the year 2004, [p]laintiff discovered for the first time certain . . . [IBM] customers . . . continued to utilize the Buffer Pool Tool in violation of any contract that the parties had[.]"[11] Thus, plaintiff's claims—all of which are based on IBM's alleged failure to pay royalties—had to be brought within two years, i.e., in 2006, under the express terms of the parties' agreement.[12]

---

absent the contractual relationship[,] [defendant]'s actions would not have occurred").

[10]    IBM Developer Agreement at § 13.3 (RJN Ex. A) ("ACTIONS. Except for actions brought to enforce Section 7.0, "INDEMNIFICATION AND LIABILITY," neither of us will bring a legal action against the other more than two (2) years after the cause of action arose.").

[11]    Compl. ¶ 11.

[12]    Plaintiff includes a seemingly errant allegation that "[o]n or about 2006, [p]laintiff discovered for the first time that IBM was infringing upon materials copyrighted by [p]laintiff in its manuals for the Buffer Pool Analyzer." Compl. ¶

It is well-established that parties can shorten limitations periods by agreement. *See, e.g.*, N.Y. C.P.L.R. § 201 (McKinney 2003) (actions "must be commenced within the time specified in this article unless . . . a shorter time is prescribed by written agreement"); *Allman v. UMG Recordings*, 530 F. Supp. 2d 602, 606-07 (S.D.N.Y. 2008) ("Courts applying New York law have routinely upheld the enforceability of contractual limitations periods similar to the Limitation Provision.") (collecting cases); *John J. Kassner & Co., Inc. v. City of New York*, 46 N.Y.2d 544, 550-51, 415 N.Y.S.2d 785, 789 (1979) (agreements reasonably shortening limitations periods are enforceable).

That is exactly what the parties did here, with a mutual limitation that can benefit either party. A two-year period in which to sue is reasonable and enforceable by any standard.[13] *Redington v. Hartford Accident & Indem. Co.*, 463 F. Supp. 83, 85-86 (S.D.N.Y. 1978) (enforcing contractual limitation that party bring action on bond within two years); *H.P.S. Capitol, Inc. v. Mobil Oil Corp.*,

---

12. RSI has brought no copyright infringement claim. Even if this allegation was intentionally included by plaintiff, it is irrelevant to all of RSI's claims, which are based on IBM's alleged failure to pay royalties to RSI or facilitate audits.

[13] Such a provision was particularly reasonable where, as here, New York's six-year statute of limitations for contract actions is very long for a contract involving a quickly evolving industry (software) undergoing constant innovation, and royalty audits, for which identification, location, and retention of copious records may be required. N.Y. C.P.L.R. § 213 (McKinney 2003) (providing six-year statute of limitations); IBM Developer Agreement (RJN Ex. A) at § 3.6

186 A.D.2d 98, 98-99, 588 N.Y.S.2d 29, 30 (1st Dept. 1992) (one-year shortened

limitations period in retail dealer agreement was reasonable, valid, and

enforceable).  Because all plaintiff's claims arise from the parties' agreements, the

limitations provision of the IBM Developer Agreement bars all plaintiff's claims.[14]

**D.     The Economic Loss Rule Bars RSI's Tort and Unfair Competition
        Claims**

      **1.     The Economic Loss Rule**

New York courts consistently hold that, where a contracting party alleges

only economic loss (with no damage to person or property), tort claims will not lie,

and the remedy lies exclusively in contract.  *See, e.g., Orlando v. Novuriana of*

*America, Inc.*, 162 F. Supp. 2d 220, 224-26 (S.D.N.Y. 2001) (applying New York

law to find that if the damages are the type remedial in contract, a plaintiff may not

recover in tort).  The courts sometimes state this "economic loss rule" another

way—if the plaintiff alleges only that it lost the benefit of its bargain and not the

breach of any duty independent of the contractual obligations, tort claims will not

---

(requiring parties to maintain auditable records for only three years from the date
of relevant payment or invoice under the agreements).

    [14]   In June 2007, the parties agreed to toll any limitations periods in order to
explore a possible pre-filing resolution of the dispute.  By its express terms, the
tolling agreement did not revive any claim already time-barred as of its effective
date or waive any limitations defense.  This tolling agreement was unilaterally
terminated by plaintiff on November 18 and 19, 2007.  Because by the allegations
of plaintiff's own Complaint the applicable limitations period expired in 2006, the
tolling agreement has no effect on the limitations issues raised in this motion.

lie. *See Carmania Corp. v. Hambrecht Terrell Int'l*, 705 F. Supp. 936, 938

(S.D.N.Y. 1989) (buyer of architectural services could recover in contract only

since loss was purely economic).

The basis for the economic loss rule is that contractual claims and remedies

should be distinct from, and not overwhelmed by, tort doctrines. *See id.* at 938.

The *Carmania* court described it as an attempt to prevent "contract law 'from

drown[ing] in a sea of tort'":

> The law of contracts is meant to facilitate voluntary
> economic exchange.  Plaintiffs who sue successfully for
> breach of contract are entitled to damages providing them
> with the benefit of the bargains they and the defendants
> chose to strike—i.e., to be placed in the positions they
> would have enjoyed had the parties' expectations panned
> out.  The law of torts, in contrast, has different goals: to
> deter people from inflicting harm when they behave
> unreasonably, and to compensate those injured by
> restoring them to the state they occupied before they
> suffered harm.  New York law preserves these
> distinctions by restricting plaintiffs who have suffered
> "economic loss," but not personal or property injury, to
> an action for the benefits of their bargains.  If the
> damages suffered are of the type remediable in contract,
> a plaintiff may not recover in tort.

*Id.* at 938.  Thus, New York courts have sensibly sought to prevent precisely what

RSI is trying to do here—a recasting of every alleged breach of contract as a tort

claim (or, as here, *eight* tort and unfair competition claims) and expose defendants

to the possibility of punitive damages and more expansive, wide-ranging, and
invasive discovery.[15]

### 2. Plaintiff's Tort Claims Arise from the Same Facts as the Contract Claim

That plaintiff has attempted to plead *eleven* causes of action based on only
twelve short paragraphs of factual allegations is not surprising when the claims are
analyzed: The multitude of tort and unfair competition claims merely restate
plaintiff's breach of contract claim.  The economic loss rule has been consistently
applied to bar these types of claims.

•    Count V: Breach of the Covenant of Good Faith and Fair Dealing.
Plaintiff's breach of the covenant of good faith and fair dealing claim states merely
that "[a] covenant of good faith and fair dealing is implied in the terms of the
contractual arrangements imposed upon . . . IBM" and that IBM breached that
covenant by "its conduct and course of dealings with plaintiff."[16]  Plaintiff alleges
no extra-contractual act that breached the covenant.  New York law is clear that

---

[15]   Hawaii, like New York, also recognizes the economic loss rule. *See City
of Express, Inc. v. Express Ptrs*, 87 Haw. 466, 469, 959 P.2d 836 (1998) ("The
economic loss rule marks the fundamental boundary between the law of contracts,
which is designed to enforce expectations created by agreement, and the law of
torts, which is designed to protect citizens and their property by imposing a duty of
reasonable care on others.  The economic loss rule was designed to prevent
disproportionate liability and allow parties to allocate risk by contract.") (quoting
*Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist.*, 124 Wash. 2d 816, 881 P.2d
986 (1994)).

where a claimed breach of an implied covenant of good faith and fair dealing is
duplicative of a breach of contract claim in the same case, the former must be
dismissed. *Wolff v. Rare Medium, Inc.*, 171 F. Supp. 2d 354, 359 (S.D.N.Y. 2001)
("Plaintiff's allegation of a breach of the obligation of good faith is duplicative of
the cause of action for breach of contract since New York courts generally assume
an obligation of good faith and fair dealing between parties to a contract."); *Pub.*
*Serv. Mut. Ins. Co. v. Tri-Con Constr. Corp.*, 224 A.D.2d 508, 508, 328 N.Y.S.2d
155, 156 (2d Dept. 1996) ("The test is whether the duty of care alleged is one
expressly or impliedly stemming from the contractual relationship or one existing
independently."). Plaintiff admits that the covenant of good faith and fair dealing
at issue is the one implied in the contract that was allegedly breached; it is
redundant of plaintiff's breach of contract claim and is barred by the economic loss
rule. *See, e.g.*, *Nat'l Football League Props., Inc. v. Dallas Cowboys Football*
*Club, Ltd.*, 922 F. Supp. 849, 855 (S.D.N.Y. 1996) ("Under New York law, parties
to an express contract are bound by an implied duty of good faith, but breach of
that duty is merely a breach of the underlying contract."); *Macmillan, Inc. v. Fed.*
*Ins. Co.*, 764 F. Supp. 38, 41 (S.D.N.Y. 1991) ("A simple breach of contract is not
to be considered a tort unless a duty independent of the contract itself has been
violated."). Plaintiff's fifth cause of action should be dismissed.

---

[16] Compl. ¶¶ 34-35.

- Count II-IV: Negligent Misrepresentation, Intentional Misrepresentation and Fraud.  Plaintiff's negligent misrepresentation, intentional misrepresentation, and fraud claims are premised on IBM's alleged representation to plaintiff that it would not allow customers to use the Buffer Pool Tool without compensation to plaintiff.[17]  The alleged wrong is that IBM's customers continued to use the Buffer Pool Tool without royalties flowing to RSI as required under the parties' agreement.  This conduct falls within the scope of the parties' agreement: If IBM customers used Buffer Pool Tool, IBM owed RSI a percentage of the revenues it collected.  Under New York law, "where a fraud claim seeks to enforce no more than the breached promises and obligations of a contract, rather than additional damages incurred as a result of the breach, the claims are merely redundant and must be dismissed."  *R.H. Damon & Co. v. Softkey Software Prods. Inc.*, 811 F. Supp. 2d 220, 228 (E.D.N.Y. 1999) (dismissing fraud claims because "[p]laintiffs' [fraud] claims seek only the compensation they would have received had defendants performed the contract as expected."); *see also Salvador v. Uncle Sam's Auctions & Realty, Inc.*, 307 A.D.2d 609, 611, 763 N.Y.S.2d 360, 362 (3d Dept. 2003).  Plaintiff's misrepresentation and fraud causes of action should be dismissed because they do nothing more than allege that IBM allowed customers to use the Buffer Pool Tool without paying royalties.

---

[17]  *Id.* ¶¶ 20, 26-27, 32.

•     <u>Count VI: Conversion.</u> The conversion claim is premised on IBM's alleged use of the Buffer Pool Tool without compensation to plaintiff.[18] Here again plaintiff's claim amounts to nothing more than a royalty dispute in disguise, and is barred by the economic loss rule. *See, e.g., Wolf v. Nat'l Council of Young Israel*, 264 A.D.2d 416, 416-17, 694 N.Y.S.2d 424, 425 (2d Dept. 1999) (affirming dismissal of conversion counterclaim based upon allegations that plaintiff improperly deducted late fees from monthly mortgage payments in manner not authorized by mortgage agreements because claim did not stem from wrong independent of alleged breach of mortgage agreements); *Interstate Adjusters, Inc. v. First Fid. Bank, N.A.*, 251 A.D.2d 232, 234, 675 N.Y.S.2d 42, 44 (1st Dept. 1998) ("A conversion claim cannot be based only on the allegation that a defendant received money and failed to remit payment to the plaintiff."); *Yeterian v. Heather Mills N.V. Inc.*, 183 A.D.2d 493, 494, 583 N.Y.S.2d 439, 440 (1st Dept. 1992) ("Concerning the cause of action for conversion, . . . it merely restates the cause of action for breach of contract and alleges no independent facts sufficient to give rise to tort liability. Since an action for conversion cannot be predicated on a mere breach of contract, plaintiff's conversion claim was properly dismissed.").

•     <u>Count VII: Common Law Unfair Competition.</u> Plaintiff's claim for unfair competition is also a tort claim based on conduct governed entirely by the

---

[18]  *Id.* ¶ 38.

parties' written agreements, i.e., IBM's continued use of the Buffer Pool Tool in commerce, and thus should be dismissed.[19] *See, e.g., QC Constr. Prods., LLC v. Cohill's Bldg. Specialties, Inc.*, 423 F. Supp. 2d 1008, 1015-16 (D. Ariz. 2006) (economic loss rule barred unfair competition tort claim under Arizona law).

### E.    Plaintiff's Fraud Claims Are Not Pleaded with the Requisite Specificity

Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Rule requires claimants to plead specific details of the alleged fraud, including the time, place, and specific content of the false representations at issue, and the identities of the parties to the misrepresentation. *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *see also LaSalle Nat'l Bank v. Ernst & Young LLP*, 285 A.D.2d 101, 109, 729 N.Y.S.2d 671, 677 (1st Dept. 2001) (under New York law, plaintiff must allege material misrepresentation of fact, falsity, *scienter*, deception and injury, "and each element must be pleaded with particularity"). Failure to plead these specifics is fatal. *See, e.g., Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985) (when fraud is alleged, "the absence of specification of any times, dates, places or other details of

---

[19]    *Id.* ¶ 48 ("IBM's continued use of the Buffer Pool Tool in commerce constitutes unfair competition.").

that alleged fraudulent involvement is contrary to the fundamental purposes of Rule 9(b)").

Despite the heightened pleading standard and the seriousness of fraud and intentional misrepresentation claims, RSI has failed to allege sufficient detail to support its claims. Plaintiff alleges only that IBM represented it would not continue to use or allow its customers to use the Buffer Pool Tool; its remaining allegations are pleaded in conclusions that mirror the legal elements of fraud claims without necessary supporting facts.[20] The generality of plaintiff's allegations makes it impossible to assess potentially dispositive details—which should be within RSI's own knowledge—such as when IBM allegedly made and knew about the purported false statements to RSI. Nor is it possible to assess the basis for plaintiff's reliance or damages allegations; there is no indication plaintiff took or refrained from taking any action on the basis of the alleged statement, or that it cost plaintiff anything other the royalties provided for under the parties' agreement (and is therefore compensable only in contract as described above). *See, e.g.,* *Semegen*, 780 F.2d at 731 ("The requirements of Rule 9(b) are designed

---

[20]  *Id.* ¶¶ 26, 32; *see also id.* ¶ 27 (IBM "knew" its customers were continuing to utilize Buffer Pool Tool without compensation to plaintiff); *id.* ¶ 28 (IBM "knew that Plaintiff would rely on the misrepresentations"); *id.* ¶ 29 (plaintiff relied on IBM's representations); *id.* ¶ 30 (plaintiff was damaged).

to prohibit a plaintiff from unilaterally imposing upon the court, the parties and

society enormous social and economic costs absent some factual basis.").

**F.    Plaintiff Has Alleged No Facts to Support Its Lanham Act or Restraint of Trade Claims**

Plaintiff completely fails to plead any facts in support of its seventh cause of

action for unfair competition under the Lanham Act and ninth cause of action for

restraint of trade.  Plaintiff's claims merely recite legal elements and conclusions of

law supported only by vague statements that IBM has led the public to believe the

Buffer Pool Tool is inferior or engaged in "concerted actions" to restrain trade.[21]

The Court is not required to accept conclusory allegations.  *Sprewell v. Golden*

*State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *In re Syntex Corp. Sec. Litig.*,

95 F.3d 922, 926 (9th Cir. 1996) ("Conclusory allegations of law and unwarranted

---

[21]    *See, e.g., id.* ¶¶ 43-46 (alleging as basis of Lanham Act claim only that
IBM used Buffer Pool Tool in commerce without authorization, confusing, or
likely confusing, public into believing Buffer Pool Tool was inferior, but not
alleging how or why, and referring to unidentified false or misleading
representations or descriptions of fact and unalleged "foregoing acts of
disparagement").  Plaintiff's restraint of trade allegations are unintelligible and
insufficient to put IBM on notice of the challenged conduct.  *Id.* ¶ 51 ("IBM has
made agreements, or has refused to correct known errors in software for the
purpose and/or the effect of unreasonably restraining trade, commerce, and
industry with respect to the supply and bundling of the software known as the
Buffer Pool Tool.  The Defendants' [sic] agreements violate common law against
such conduct in restraint of trade.").  Plaintiff alleges in conclusory fashion that:
"Defendant IBM has been and is acting for the purpose, and with the effect, of
unreasonably restraining trade, commerce, and industry with respect to the

inferences are insufficient to defeat a motion to dismiss for failure to state a claim.").[22]

### G.    "Unclean Hands" and "Punitive Damages" Are Not Causes of Action

Plaintiff's tenth and eleventh claims are not causes of action at all.  Styled as "Unclean Hands," plaintiff's tenth cause of action is in fact an affirmative defense to a hypothetical counterclaim or affirmative defense that IBM has not yet asserted: "Defendant IBM's unlawful or wrongful conduct in its course of dealing with Plaintiff constitutes unclean hands which precludes it from asserting or receiving any equitable relief, remedies, or defenses."[23]  Unclean hands is an affirmative defense under New York law; not a cause of action.  *See, e.g., 518 E. 80th St. Co. v. Smith*, 251 A.D.2d 215, 216, 674 N.Y.S.2d 680, 681 (1st Dept. 1998) (unclean hands is an equitable defense);  *Folium, Inc. v. Int'l Bus. Machs. Corp.*, Civil No. 03-92-DAE/LEK, Opinion and Order (D. Haw. Aug. 11, 2003) (RJN Ex. F) at 7 (on similar facts, dismissing cause of action for "unclean hands" because it is an affirmative defense).

---

processing of software.  The Defendant's concerted actions violate common law against such conduct in restraint of trade." *Id.* ¶ 52.

[22]    IBM notes that plaintiff has not made a single factual allegation connecting any purported "Doe" defendants to any of its claims, and their improper inclusion as parties does not bar outright dismissal of plaintiff's Complaint.

[23]    *Id.* ¶ 55.

Similarly, it is well-settled that New York law does not recognize a separate cause of action for punitive damages. *Smith v. County of Erie*, 295 A.D.2d 1010, 1011, 743 N.YS.2d 649, 651 (4th Dept. 2002) ("There is no separate cause of action for punitive damages, inasmuch as punitive damages are but an incident of ordinary damages") (internal quotations omitted); *Firth v. State*, 706 N.Y.S.2d 835, 838 (N.Y. Ct. Cl. 2000) ("The third cause of action is quickly disposed of as the law is settled that there is not a separate cause of action for punitive damages.").

Moreover, plaintiff's prayer for punitive damages is barred by the express terms of the parties' agreements. In Section 7.3 of the Developer Agreement, RSI and IBM mutually agreed that "[n]either party will be liable to the other for lost profits or consequential, <u>punitive</u>, or incidental damages, even if informed of their possibility."[24] This type of damages limitation is consistently enforced by New York courts. *See, e.g.*, *Met. Life Ins. Co. v. Noble Lowndes, Int'l, Inc.*, 618 N.Y.S.2d 882, 885 (1994) (New York law upholds contracts that limit recovery to money paid and bar consequential damages: "A limitation of liability provision in a contract represents the parties' [a]greement on the allocation of the risk of economic loss in the event that the contemplated transaction is not fully executed,

---

[24]  IBM Developer Agreement at § 7.3 (RJN Ex. A) ("LIABILITY. Neither party will be liable to the other for lost profits or consequential, <u>punitive</u>, or incidental damages, even if informed of their possibility. . . . IBM's total liability for a project is limited to payments due to RSC.") (emphasis added).

which the courts should honor."); *id.* ("Where a contract provides that damages for breach shall not be recoverable beyond a specified sum, it is obvious that the risk of loss beyond that sum is being assumed by the promisee," quoting 5 Corbin, *Contracts*, § 1068, at 386); *DynCorp v. GTE Corp.*, 215 F. Supp. 2d 308, 317-18 (S.D.N.Y. 2002) (enforcing provisions limiting amount of recovery and barring recovery of consequential, special, or punitive damages).

Even assuming punitive damages were not barred by the parties' written agreement, plaintiff's request for punitive damages would still be inappropriate and subject to an order to strike.[25]  Under New York law, punitive damages should be stricken unless a fraud has been perpetrated on the public at large or the defendant has "manifested a gross and wanton departure from the moral norms of society." *R.H. Damon & Co.*, 811 F. Supp. at 993.  Here, RSI has not alleged (and cannot allege) that IBM aimed any improper conduct at the general public or evinced the requisite "gross and wanton" disregard for morality.  This case is a simple contract dispute between sophisticated commercial parties; there is no hint of the type of

---

[25] Rule 12(f) provides that the Court may "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter."  Courts have authority to strike a prayer for relief seeking damages that are not recoverable as a matter of law.  *See, e.g., Arcilla v. Adidas Promotional Retail Operations, Inc.*, 488 F. Supp. 2d 965, 968 (C.D. Cal. 2007); *see also Coffman v. Fed. Labs.*, 323 U.S. 325, 326-27 (1945) (affirming striking of prayer for injunction where appellant showed no grounds for equitable relief).

public deception or moral turpitude that would warrant punitive damages under New York law.

For all these reasons, plaintiff's eleventh claim and its prayer for punitive damages should be dismissed.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, defendant IBM respectfully requests that the Court dismiss plaintiff's Complaint with prejudice or, in the alternative, strike plaintiff's prayer for punitive damages.

DATED:  Honolulu, Hawaii, May 27, 2008.

_____
JAMES KAWASHIMA
SHIRLEY M. KAWAMURA
SHON MORGAN
SCOTT L. WATSON
VALERIE RODDY
Attorneys for Defendant
INTERNATIONAL BUSINESS MACHINES
CORPORATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RSI CORP., dba RESPONSIVE SYSTEMS COMPANY, a New Jersey corporation,<br><br>        Plaintiff,<br>   vs.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION; and DOE DEFENDANTS 1-20,<br><br>        Defendants. | CIVIL NO. CV 08-00066 JMS/BMK<br><br>LOCAL RULE 7.5(e) CERTIFICATION |

## LOCAL RULE 7.5(e) CERTIFICATION

According to the word-count function of the undersigned's word processing program (Microsoft Word 2003), the foregoing Memorandum in Support of Defendant IBM's Motion to Transfer Venue contains a total of 5,408 words, excluding this certification and tables of authorities and contents.

DATED: Honolulu, Hawaii, May 27, 2008.

JAMES KAWASHIMA
SHIRLEY M. KAWAMURA
SHON MORGAN
SCOTT L. WATSON
VALERIE RODDY
Attorneys for Defendant
INTERNATIONAL BUSINESS MACHINES
CORPORATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RSI CORP., dba RESPONSIVE SYSTEMS COMPANY, a New Jersey corporation,<br><br>Plaintiff,<br><br>vs.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION; and DOE DEFENDANTS 1-20,<br><br>Defendants. | CIVIL NO. CV 08-00066 JMS/BMK<br><br>CERTIFICATE OF SERVICE |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was duly served on the following by depositing same in the United States Mail, postage prepaid, addressed to the following last known address:

20502/2511644.8

ROBERT D. TRIANTOS
EDMUND W.K. HAITSUKA
CARLSMITH BALL LLP
75-1000 Henry Street, Suite 209
P.O. Box 1720
Kailua-Kona, HI 96745-1720

Attorneys for Plaintiff
RSI Corp.


DATED: Honolulu, Hawaii, May 27, 2008.

JAMES KAWASHIMA
SHIRLEY M. KAWAMURA
SHON MORGAN
SCOTT L. WATSON
VALERIE RODDY
Attorneys for Defendant
INTERNATIONAL BUSINESS MACHINES
CORPORATION