KAWASHIMA LORUSSO & HARADA, LLP
JAMES KAWASHIMA        #1145-0
SHIRLEY M. KAWAMURA    #6978-0
Topa Financial Center
Fort Street Tower
745 Fort Street, Suite 500
Honolulu, Hawaii  96813
Tel. No. 808-275-0300
Fax No. 808-275-0399
skawamura@klhllp.com

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
SHON MORGAN (appearing *pro hac vice*)
SCOTT L. WATSON (appearing *pro hac vice*)
VALERIE RODDY (appearing *pro hac vice*)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017
Tel. No. 213-443-3000
Fax No. 213-443-3100
shonmorgan@quinnemanuel.com

Attorneys for Defendant
INTERNATIONAL BUSINESS
MACHINES CORPORATION

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RSI CORP., dba RESPONSIVE SYSTEMS COMPANY, a New Jersey corporation,<br><br>              Plaintiff,<br><br>       vs. | **CIVIL NO. CV 08-00066 JMS/BMK**<br><br>**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF (1) DEFENDANT IBM'S MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1404(A) AND (2) DEFENDANT IBM'S MOTION TO** |

20502/2517936.2

INTERNATIONAL BUSINESS
MACHINES CORPORATION; and
DOE DEFENDANTS 1-20,

                    Defendants.

**DISMISS OR, IN THE
ALTERNATIVE, STRIKE;
DECLARATION OF MICHAEL J.
HARRIS; EXHIBITS "A" - "F";
CERTIFICATE OF SERVICE**

Judge:    Hon. J. Michael Seabright

## REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF (1) DEFENDANT IBM'S MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1404(A) AND (2) DEFENDANT IBM'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, STRIKE

Defendant International Business Machines Corporation ("IBM") hereby

requests that the Court, pursuant to Rule 201 of the Federal Rules of Evidence,

take judicial notice of the following documents, attached hereto:

      A.     The IBM Developer Agreement, Agreement No. STL97041, dated

June 23, 1997 between IBM and Responsive Systems Company.

      B.     The Description of Licensed Work, Agreement No. STL97041, DLW

No. 001, dated June 23, 1997 between IBM and Responsive Systems Company.

      C.     The Statement of Work, Agreement No. STL97041, SOW No. 001,

dated June 23, 1997 between IBM and Responsive Systems Company.

      D.     The Description of Licensed Work, Agreement No. STL97041, DLW

No. 002, dated April 21, 1998 between IBM and Responsive Systems Company.

      E.     The Statement of Work, Agreement No. STL 97041, SOW No. 002,

dated April 21, 1998 between IBM and Responsive Systems Company.

E.    The Statement of Work, Agreement No. STL 97041, SOW No. 002, dated April 21, 1998 between IBM and Responsive Systems Company.

F.    The August 11, 2003 Opinion and Order of the District Court of Hawaii in *Folium, Inc. v. Int'l Bus. Machs. Corp.*, Civil No. 03-92-DAE/LEK.

Exhibits A-E are true and correct copies of the contracts at issue in this case. *See, e.g.*, Declaration of Michael J. Harris, dated May 23, 2008, ¶¶ 9-13; Complaint, filed February 15, 2008, ¶¶ 6-9 (describing contracts).[1] These documents are referred to and relied on as the basis for relief in plaintiff's Complaint and their authenticity is not questioned, and therefore can be considered without the Court converting the motion into a motion for summary judgment. *See, e.g., Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002); *Townsend v. Columbia Operations*, 667 F.2d 844, 849-49 (9th Cir. 1982); *Regan v. Dep't of Pub. Safety*, Civ. No. 07-00029 JMS-BMK, 2007 WL 372775 at *2 (D. Haw. Oct. 18, 2007); *Walter v. Drayson*, 496 F. Supp. 2d 1162, 1165 (D. Haw. 2007); *In re Century 21-RE/MAX Real Estate Advertising Claims Litig.*, 882 F. Supp. 915, 920 (C.D. Cal. 1994).

---

[1]    Exhibits A-E to this Request for Judicial Notice are also submitted as documentary exhibits in support of Defendant IBM's Motion to Transfer Venue To The Northern District Of California Pursuant To 28 U.S.C. § 1404(A) and its Motion to Dismiss or Strike, filed concurrently herewith, irrespective of this Request for Judicial Notice.

Additionally, the Order is a matter of public record and is also capable of judicial notice. *See Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995) (taking judicial notice of order in federal case).

For the foregoing reasons, IBM respectfully requests that the Court consider and take judicial notice of the attached exhibits.

DATED:  Honolulu, Hawaii, May 27, 2008.

_____

JAMES KAWASHIMA
SHIRLEY M. KAWAMURA
SHON MORGAN
SCOTT L. WATSON
VALERIE RODDY
Attorneys for Defendant
INTERNATIONAL BUSINESS MACHINES
CORPORATION

KAWASHIMA LORUSSO & HARADA, LLP
  JAMES KAWASHIMA          #1145-0
  jkawashima@klhllp.com
  SHIRLEY M. KAWAMURA      #6978-0
  skawamura@klhllp.com
Topa Financial Center
Fort Street Tower
745 Fort Street, Suite 500
Honolulu, Hawaii 96813
Tel. No. 808-275-0300
Fax No. 808-275-0399

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  SHON MORGAN (appearing *pro hac vice*)
  shonmorgan@quinnemanuel.com
  SCOTT L. WATSON (appearing *pro hac vice*)
  scottwatson@quinnemanuel.com
  VALERIE RODDY (appearing *pro hac vice*)
  valerieroddy@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Tel. No. 213-443-3000
Fax No. 213-443-3100

Attorneys for Defendant
INTERNATIONAL BUSINESS
MACHINES CORPORATION

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RSI CORP., dba RESPONSIVE SYSTEMS COMPANY, a New Jersey corporation,<br><br>               Plaintiff,<br><br>vs.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION; and DOE DEFENDANTS 1-20,<br>               Defendants. | **CIVIL NO. CV 08-00066 JMS/BMK**<br><br><br>**DECLARATION OF MICHAEL J. HARRIS** |

01197/2511497.4

## DECLARATION OF MICHAEL J. HARRIS

I, Michael J. Harris, declare as follows:

1.    I am a Contract Administrator and Team Lead, Custom Software Procurement for International Business Machines Corporation ("IBM"), a party in the above-entitled action.  I make this declaration of personal, firsthand knowledge, unless otherwise indicated herein, and if called and sworn as a witness, I could and would testify competently thereto.

2.    This Declaration is made in lieu of an affidavit pursuant to Local Rule 7.6, Rules of the United States District Court for the District of Hawaii, as amended.

3.    I make this Declaration in support of Defendant IBM's Motion to Transfer Venue to the Northern District of California Pursuant to 28 U.S.C. § 1404(a) and in support of the Request for Judicial Notice in Support of (1) Defendant International Business Machines Corporation's Motion to Transfer Venue and (2) Defendant International Business Machines Corporation's Motion to Dismiss or, in the Alternative, Strike ("Request for Judicial Notice"), filed concurrently herewith.

4.    IBM is a New York corporation that does business in all 50 states and around the world.  IBM manufactures, designs and provides business computer hardware, software, and information technology services.

5.     As Contract Administrator and Team Lead, Custom Software Procurement, I work at IBM's Silicon Valley business campus in San Jose, California, from which IBM conducts many business activities, including the administration of the contracts at issue in this case.  I have personal knowledge of the negotiation of both contracts at issue in this matter, as well as many of the events at issue in this case.

6.     IBM licenses a database management product called DB2.  RSI developed a product called Buffer Pool Tool, which DB2 licensees can use to help manage their IBM DB2 systems.  In 1997, IBM and RSI entered into a series of agreements under which IBM could license the Buffer Pool Tool product to its customers as an optional feature for their DB2 software, and pay RSI royalties on those licenses.  RSI retained the right to market its own RSI-branded Buffer Pool Tool.  Employees in IBM's San Jose, California office have the primary responsibility for acquiring licensing rights to the software products that IBM incorporates into its DB2 system packages and for administering those licensing agreements, including the agreements with RSI.

7.     I am familiar with the underlying factual dispute between RSI and IBM and was involved in investigating the complaints and audit requests of Joel Goldstein, RSI's president, before RSI filed this lawsuit.  I live in the San Jose,

California area. I do not live or maintain a home in Hawaii, nor do I regularly travel there.

8.    In addition to myself, I am aware of the following other individuals who are familiar with the underlying facts of this case:

a.    Joel Goldstein. Mr. Goldstein was the primary negotiator and RSI contact. He was also the primary RSI correspondent regarding requests for audits of royalty payments and complaints relating to plaintiff's allegations. I am informed and believe that Joel Goldstein resides in or around Morganville, New Jersey.

b.    Ivan Gelb. Mr. Gelb was RSI's designated auditor of IBM's royalty payments. I am informed and believe that Mr. Gelb resides in or around Marlboro, New Jersey.

c.    Tom Ramey. Mr. Ramey was Mr. Goldstein's primary contact at IBM after 2005 when he demanded royalty payment audits and threatened litigation. Mr. Ramey is also very familiar with IBM's investigation into Mr. Goldstein's complaints. I am informed and believe that Mr. Ramey resides in or around San Jose, California.

d.    Sarah Karger. Ms. Karger was a Business Executive for DB2 Tools at IBM. Ms. Karger was closely involved in the administration of the IBM-RSI relationship during 2002-2004 and in responding to plaintiff's audit-related

requests. I am informed and believe that Ms. Karger resides in or around San Jose, California.

9.      A true and correct copy of the IBM Developer Agreement, Agreement No. STL97041, dated June 23, 1997 between IBM and Responsive Systems Company is attached as Exhibit A to the concurrently-filed Request for Judicial Notice.

10.      A true and correct copy of the Description of Licensed Work, Agreement No. STL97041, DLW No. 001, dated June 23, 1997 between IBM and Responsive Systems Company is attached as Exhibit B to the concurrently-filed Request for Judicial Notice.

11.      A true and correct copy of the Statement of Work, Agreement No. STL97041, SOW No. 001, dated June 23, 1997 between IBM and Responsive Systems Company is attached as Exhibit C to the concurrently-filed Request for Judicial Notice.

12.      A true and correct copy of the Description of Licensed Work, Agreement No. STL97041, DLW No. 002, dated April 21, 1998 between IBM and Responsive Systems Company is attached as Exhibit D to the concurrently-filed Request for Judicial Notice.

13.      A true and correct copy of the Statement of Work, Agreement No. STL97041, SOW No. 002, dated April 21, 1998 between IBM and Responsive

Systems Company is attached as Exhibit E to the concurrently-filed Request for Judicial Notice.

I declare under penalty of law that the foregoing is true and correct to the best of my knowledge and belief.

DATED:     San Jose, California, _____5/23/2008_____

_____
Michael J. Harris

# EXHIBIT A

# IBM Developer Agreement

## Agreement Number: STL97041

*Dated*

### June 23 , 1997

*between*

### International Business Machines Corporation
### Santa Teresa Laboratory
### 555 Bailey Avenue
### San Jose, CA 95141

*and*

### Responsive Systems Company
### 281 Highway 79
### Morganville, NJ 07751

### IBM CONFIDENTIAL

June 23, 1997                                          Agreement Number: STL97041

## IBM Developer Agreement

The IBM Developer Agreement ("IDA") consists of this Base Agreement and its Transaction Documents. The IDA is the complete agreement regarding our projects. It replaces all prior oral or written communications between us. The IDA covers many projects in which IBM may involve Responsive Systems Company (RSC) for:

    1. providing Services;

    2. developing IBM Materials; and

    3. licensing other Deliverables.

A specific project will be defined by its own Transaction Document(s). Each Transaction Document together with this Base Agreement forms a separate agreement.

By signing below, each of us agrees to the terms of this IDA. All Deliverables and Services RSC provides under the IDA are subject to it. Any signed copy of the IDA made by reliable means (for example, photocopy or facsimile) is considered an original.

**AGREED TO:**                                   **AGREED TO:**

International Business Machines              Responsive Systems Company
Corporation


By: _____C. F. S_____          By: _____Joel Goldstein, Pres._____
    Authorized Signature                          Authorized Signature


Print   C.F. Semones                     Print   Joel Goldstein
Name:                                              Name:


Date:  _7/15/97_____           Date:  _7/16/97_____


IBM Office Address:                          RSC Address:

    555 Bailey Avenue (Package Delivery        281 Highway 79
    Address)

    San Jose, CA 95141                         Morganville, NJ 07751


    P.O. Box 49023 (Mailing Address)
    San Jose, CA 95161-9023

IBM CONFIDENTIAL

June 23, 1997                                          Agreement Number: STL97041

## 1.0  DEFINITIONS

### 1.1  APPEARANCE DESIGN

shall mean the appearance presented by an object, formed in hardware or by software, that creates a visual impact or impression on an observer.  "Appearance Design" refers to the ornamental and not the functional aspects of the object.

### 1.2  BACKGROUND MATERIALS

shall mean items 1) in which the copyright rights are owned by a third party or 2) that RSC is prepared or had prepared outside the scope of the IDA.  Background Materials are contained within a Deliverable.

### 1.3  DELIVERABLES

shall mean items prepared or provided by RSC under a Transaction Document.  Where Deliverables include code, RSC will deliver object and fully commented source code in the form specified in the Transaction Document, or unless otherwise specified in a Transaction Document.

### 1.4  DERIVATIVE WORK

shall mean a work based on a preexisting work, including a compilation.  A Derivative Work prepared without the authorization of the copyright owner of the preexisting work would be a copyright infringement.

### 1.5  DEVELOPMENT ENVIRONMENT

shall includes devices, compilers, programming documentation, media or other items required for the development, maintenance, or implementation of a Deliverable.

### 1.6  ENHANCEMENTS

shall mean changes or additions, other than Maintenance Modifications, to the Deliverables.

### 1.6.1  BASIC ENHANCEMENTS

shall mean incidental updates or Enhancements that support new releases of operating systems and devices.  They do not include Major Enhancements.

### 1.6.2  MAJOR ENHANCEMENTS

shall mean enhancements which provide substantial additional value that could be offered to customers for an additional charge.

### 1.7  IBM LICENSEES

shall include IBM, its Subsidiaries, and those authorized by them to distribute IBM's Products.

### 1.8  IBM MATERIALS

shall mean Deliverables that IBM owns such as programs, program listings, programming tools, documentation, reports, and drawings.  IBM Materials do not include Background Materials, Licensed Works, equipment, or items specifically excluded in a Transaction Document.

IBM CONFIDENTIAL

June 23, 1997                                    Agreement Number: STL97041

## 1.9  INVENTION

shall mean an idea, design, technique, invention, discovery, or improvement, patentable or not, that is conceived or reduced to practice in performance of the IDA by RSC or RSC's Personnel. An Invention made by RSC or RSC's Personnel with IBM Personnel is a "Joint Invention."

## 1.10  LICENSED WORKS

shall mean Deliverables that RSC owns and licenses to IBM. Each Licensed Work is identified in a Description of Licensed Work ("DLW") Transaction Document.

## 1.11  MAINTENANCE MODIFICATIONS

shall mean revisions that correct errors and deficiencies in the Deliverables.

## 1.12  MORAL RIGHTS

shall mean personal rights associated with authorship of a work under applicable law. They include the rights to approve modifications and to require authorship identification.

## 1.13  PERSONNEL

shall mean either party's employees or subcontractors working under the IDA.

## 1.14  PRODUCTS

shall mean offerings to customers or other users that include a Licensed Work or Derivative Works of a Licensed Work. In a Transaction Document, "Products" refers to those based on the Licensed Work(s) described in that Transaction Document.

## 1.15  SERVICES

shall mean efforts expended by RSC or RSC's Personnel to perform the work described in a Transaction Document.

## 1.16  SUBSIDIARY

shall mean an entity while more than fifty percent (50%) of its voting stock is owned, or if no voting stock, decision-making power is controlled directly or indirectly by another entity.

## 2.0  AGREEMENT STRUCTURE

## 2.1  STRUCTURE

The structure of the IDA is as follows:

## 2.1.1  Base Agreement

defines the basic terms and conditions of our relationship for all projects. Both parties accept this Base Agreement by signing it.

## 2.1.2  Transaction Documents

describe specific projects. They must reference this Base Agreement and may include additional terms and conditions for the project. Transaction Documents include, but are not limited to, Statements of Work, Descriptions of Licensed Work, Descriptions of Exclusive Marketing

IBM CONFIDENTIAL

June 23, 1997                                      Agreement Number: STL97041

## IBM Developer Agreement

Rights, and their amendments, appendices, schedules, and exhibits. Both parties accept a Transaction Document by signing it.

IBM's Purchase Orders and RSC's invoices are used for administrative purposes only. Any terms and conditions on these documents are replaced by the IDA.

### 2.2   CONFLICTING TERMS

If there is a conflict of terms, a Transaction Document prevails over this Base Agreement.

### 2.3   AMENDMENTS

Amendments to this Base Agreement or a Transaction Document must be in writing and signed by the appropriate coordinator for both parties.

### 2.4   NO COMMITMENT

This Base Agreement is not a commitment by IBM to issue a Transaction Document.

### 3.0   OUR RELATIONSHIP

### 3.1   INDEPENDENT CONTRACTOR

RSC is an independent contractor. Neither of us is a legal representative or an agent of the other except as specifically stated in the IDA. Neither RSC or RSC's Personnel are IBM's employees nor have any rights under IBM's benefit plans or policies.

### 3.2   FREEDOM OF ACTION

Either of us may independently develop, acquire, and market competitive items and services. IBM has complete flexibility in the marketing, licensing and pricing of IBM's products and services. IBM is not obligated to announce or market any products or services. IBM does not guarantee the success of its marketing efforts.

### 3.3   CONFIDENTIALITY

Where confidential information must be exchanged, it will be done under an IBM Agreement for Exchange of Confidential Information ("AECI"). No Deliverable will contain RSC's or any third party's confidential or proprietary information. Without IBM's prior written approval, RSC will not disclose Deliverables to others until an AECI Supplement is accepted by both of us. At that time, the AECI terms will control RSC's use of the Deliverables.

### 3.4   LOANED ITEMS

If IBM lends RSC items ("Loaned Items"), it will do so under an IBM Equipment and Program Loan Agreement ("EPLA"). RSC and RSC's Personnel will use the Loaned Items only in support of the IDA. RSC will return the Loaned Items as specified in the EPLA or the Transaction Document, whichever is earlier.

### 3.5   FURNISHED ITEMS

IBM may provide RSC items for use in a project. These items will be identified as "IBM Furnished Items" in the Transaction Document(s). RSC and RSC's Personnel will use the IBM Furnished Items only in support of the IDA and will not disclose them to others without IBM's

Page 4 of 12

IBM CONFIDENTIAL

June 23, 1997                                    Agreement Number: STL97041

### IBM Developer Agreement

approval. At the end of the project, RSC will destroy these items, including any copies thereof, unless IBM requests that RSC return such IBM Furnished Items."

## 3.6 RECORDS

Both parties will maintain auditable records to support invoices issued or payments made to the other. The records will be retained and made available for three (3) years from the date of the related payment or invoice. If a party requests, the other party will make the records available to an independent auditor chosen and compensated by the requesting party. All requests will be in writing and will not occur more than once a year. The auditor will sign an agreement to protect the audited party's confidential information. The auditor will only disclose to the requesting party any payments due and payable for the period examined.

## 3.7 RSC WILL:

1. maintain records to verify authorship of all Deliverables for four (4) years after the termination or execution of the Transaction Document. Upon request, RSC will deliver or otherwise make available such information in a form specified by IBM (for example, a certificate of originality);

2. upon request, provide IBM with information regarding RSC's financial viability;

3. implement a process designed to prevent contamination by harmful code. RSC will promptly notify IBM if RSC suspects contamination. RSC will remain liable for resulting damages;

4. if applicable participate in progress reviews to demonstrate RSC's performance of RSC's obligations. RSC will do so as specified in a Transaction Document or as otherwise requested by IBM; and

5. obtain the necessary rights from all third parties and RSC's Personnel to convey the rights granted or assigned in the IDA.

## 3.8 RSC WILL NOT:

Without IBM's prior written approval:

1. subcontract obligations under the IDA;

2. assign rights or delegate obligations under the IDA. Any attempt to do so is void;

3. issue press releases or other publicity regarding the IDA or Deliverables that RSC provides;

4. assume or create obligations on IBM's behalf, or make any representations for IBM; or

5. disclose the terms of the IDA except under a confidential disclosure agreement to RSC's financial advisors, attorneys and accountants, or to assert RSC's rights under it. If required by law to disclose the terms of the IDA, RSC will promptly notify IBM. Upon request, RSC will seek confidential treatment for the IDA.

IBM CONFIDENTIAL

Agreement Number: STL97041

IBM Developer Agreement

## 4.0   OWNERSHIP AND RIGHTS

### 4.1   IBM MATERIALS

1. IBM will own all IBM Materials, and copyright rights in them, as works made for hire under applicable law. If IBM Materials are not considered works made for hire owned by IBM by operation of law, RSC assigns the ownership of copyright rights in them to IBM. RSC will do all things necessary to perfect these rights.

2. RSC or RSC's Personnel may use copies, intermediate versions, drafts, and partial copies of IBM Materials only for purposes of the IDA. At the end of the project, RSC will destroy these items unless IBM requests that RSC delivers them to us.

### 4.2   BACKGROUND MATERIALS

1. RSC will identify in the applicable Transaction Document all Background Materials and their owners. RSC will not include any Background Materials in a Deliverable that have not been identified. RSC will revise the list for any changes.

2. RSC grants IBM an irrevocable, non-exclusive, worldwide, paid-up license to use, execute, reproduce, display, perform, transfer, distribute, sublicense, and prepare Derivative Works of, Background Materials and their Derivative Works. RSC grants IBM the right to authorize others to do any of the above. This license also applies to associated audio and visual works.

### 4.3   DEVELOPMENT ENVIRONMENT

1. For each Deliverable, RSC will list all items contained in its Development Environment that are not provided by IBM. RSC will deliver the listed items that are not commercially available. RSC will revise the list for any changes and deliver those updated items that are not commercially available.

2. RSC grants IBM an irrevocable, non-exclusive, worldwide, paid-up license to use, execute, reproduce, display, perform, and prepare Derivative Works of, all delivered Development Environment items and their Derivative Works. RSC grants IBM the right to authorize, others to do any of the above. This license applies to associated audio and visual works.

### 4.4   PATENTS

RSC grants IBM an irrevocable, non-exclusive, worldwide, paid-up license under any patents and patent applications that are 1) owned or licensable by RSC now or in the future, and 2) required to make, have made, use, have used, license, or otherwise transfer a Deliverable or its Derivative Works. This license applies to Deliverables or their Derivative Works operating either alone or in combination with equipment or software.

### 4.5   INVENTIONS

### 4.5.1   DISCLOSURE

RSC will promptly disclose each Invention to IBM in writing. RSC's disclosure will specify the features or concepts that RSC believes to be new or different.

IBM CONFIDENTIAL

June 23, 1997                                     Agreement Number: STL97041

IBM Developer Agreement

### 4.5.2 OWNERSHIP

RSC will own all Inventions and patent rights in them, except for Joint Inventions and Inventions relating to an Appearance Design.

### 4.5.3 JOINT INVENTIONS

RSC and IBM will jointly own all Joint Inventions and resulting patents. Either of us may license others under Joint Inventions and patent applications filed on or patents issuing from them, without accounting to or consent from the other.

If either party decides not to share equally in the expenses of seeking patent protection in a Joint Invention, the other party may do so at its own expense. The paying party will control the preparation and maintenance of such patents. The paying party may request the assistance of the non-paying party in obtaining patent protection. The non-paying party will provide reasonable assistance and have required documents signed at the expense of the paying party.

### 4.5.4 APPEARANCE DESIGN

RSC assigns to IBM all Inventions, and patents issuing on them, relating to an Appearance Design. RSC will, at IBM's expense, assist in the filing of patent applications on these Inventions and have required documents signed.

### 4.5.5 LICENSE

Except for Joint Inventions and Inventions relating to an Appearance Design, RSC grants IBM an irrevocable, non-exclusive, worldwide, paid-up license under any Inventions and patents issuing on and patent applications filed on Inventions. The license scope is to make, have made, use, have used, sell, license or otherwise transfer items and practice or have practiced methods.

### 4.5.6 NO OTHER PATENT RIGHTS

Except as specifically granted, the IDA does not grant either party any rights in any patents or patent applications.

### 4.6 TRADEMARKS AND ADVERTISING

This Base Agreement does not grant RSC rights to use IBM's trademarks, trade names, or service marks, or ones that are confusingly similar to IBM's. IBM may represent that RSC has provided a Deliverable. If RSC informs IBM in writing that RSC objects to such reference, IBM will take reasonable steps to modify it.

### 5.0 DELIVERY AND ACCEPTANCE

### 5.1 DELIVERY

RSC will provide all Deliverables according to the schedule in a Transaction Document.

### 5.2 EVALUATION

IBM has the right to evaluate each Deliverable before accepting it to verify that it meets the requirements of the Transaction Document. IBM will notify RSC if it accepts (in whole or in part) or rejects each Deliverable.

IBM CONFIDENTIAL

June 23, 1997                                    Agreement Number: STL97041

### 5.3  QUALITY

1. RSC will have processes in place or enhance existing processes to show consistent and sustained quality improvements in all Services and Deliverables RSC provides. RSC will also develop quality goals and evaluate RSC's progress toward them against measurements defined in the Transaction Document(s). IBM will consider the quality of RSC's performance when planning future projects.

2. IBM will notify RSC of errors or deficiencies identified during progress reviews or evaluations. RSC will either promptly correct the errors and deficiencies or obtain IBM's agreement on a plan to correct them within ten (10) working days after receiving notification. All corrections will be made at no charge to IBM.

   If RSC does not make the corrections, IBM may withhold part or all of payments due, or require a partial or full refund of payments made to RSC.

### 6.0  REPRESENTATIONS AND WARRANTIES

RSC make the following on-going representations and warranties:

1. RSC is not under and will not assume any obligation that conflicts with RSC's obligations or the rights granted in the IDA;

2. there are no proceedings or claims pending or threatened against RSC that relate to the Deliverables;

3. RSC has performed all obligations under existing agreements with RSC's customers. Claims from customers will not have an adverse affect on the rights granted to IBM;

4. RSC and RSC's Personnel will perform all work in a skillful, competent and workmanlike manner. All work will be completed according to the schedule in the Transaction Document(s);

5. all Deliverables and Services will conform to the specifications and requirements of the Transaction Document(s);

6. the Deliverables are not contaminated by harmful code;

7. the fully commented source code, if any, that RSC provides corresponds to the current release or version of the Deliverable;

8. RSC has listed in the Transaction Document all Background Materials and their owners;

9. RSC has listed in the Transaction Document the required items contained in each Deliverable's Development Environment;

10. RSC has the authority to convey the rights granted or assigned by RSC in the IDA. RSC will provide, upon request, copies of agreements granting RSC these rights;

11. none of the Deliverables infringe any intellectual property rights of a third party including, to the best of RSC's knowledge, any patents or patent applications. The Deliverables have not been the basis of a claim of infringement threatened or asserted against RSC or, to the best of RSC's knowledge, anyone else; and

IBM CONFIDENTIAL

12. all authors have waived their Moral Rights in all Deliverables to the extent permitted by law.

## 7.0   INDEMNIFICATION AND LIABILITY

## 7.1   INDEMNIFICATION

### 7.1.1  SCOPE

RSC indemnifies IBM, its Subsidiaries, IBM Licensees, and their respective customers against claims related to the IDA and based upon RSC's actual or alleged:

1. failure to perform RSC's obligations under the IDA;

2. improper preparation or design of a Deliverable;

3. noncompliance with Section 6.0, "Representations and Warranties";

4. negligent or willful acts or omissions;

5. failure to comply with governmental laws and regulations; and

6. infringement of patents, copyrights, trademarks, trade secrets, and other intellectual property rights.

### 7.1.2  CONTINUED USE

For any claims above, RSC will provide the continued, uninterrupted use of the Deliverables, or RSC will modify them or replace them with a functionally equivalent substitute. If none of these alternatives are reasonably available, IBM may at its sole option, return a Deliverable to RSC and receive a refund of all payments relating to it. IBM retains its rights to collect damages. RSC's indemnification obligations to IBM will continue.

RSC is not liable for indemnification for infringements that result solely from complying with IBM's detailed instructions or specifications.

### 7.2   PAYMENT

RSC will pay all damages finally awarded, settlements and costs, including reasonable attorneys' fees incurred by IBM, its Subsidiaries, IBM Licensees, and their respective customers arising out of the matters described in Section 7.1.1, "Scope." IBM will:

1. notify RSC of such claim;

2. cooperate with RSC in the defense at RSC's expense; and

3. obtain RSC's prior written approval for a settlement.

### 7.3   LIABILITY

Neither party will be liable to the other for lost profits or consequential, punitive, or incidental damages, even if informed of their possibility. This limitation does not apply to RSC's liabilities in Section 7.1, "Indemnification."

IBM's total liability for a project is limited to payments due to RSC.

IBM CONFIDENTIAL

June 23, 1997                                      Agreement Number: STL97041

IBM Developer Agreement

**8.0   AGREEMENT TERMINATION**

**8.1   TERMINATION FOR DEFAULT**

1. If either party breaches a term of this Base Agreement or a Transaction Document, the other party may terminate this Base Agreement or the Transaction Document for default on thirty (30) days' written notice. The defaulting party may cure the default within that period and the termination will not be effective.

2. If IBM terminates a Transaction Document for RSC's default, RSC is liable for any costs incurred by IBM, including reprocurement costs or other damages. IBM may require that RSC:

   a. return advance payments under the Transaction Document; and

   b. deliver works in progress to IBM. IBM may complete the work and offset payments due by IBM's completion costs and other damages. RSC will provide reasonable training to IBM or its designees to enable completion.

**8.2   TERMINATION FOR CONVENIENCE**

1. Either party may terminate this Base Agreement for their convenience on thirty (30) days' written notice. However, this Base Agreement will continue with respect to Transaction Documents already in place until they are terminated or completed.

2. IBM may terminate a Transaction Document for its convenience on thirty (30) days' written notice. RSC will provide IBM with all Deliverables, including work-in-progress (such as notes, drafts, and sketches). IBM will, pursuant to the terms of a Transaction Document, pay RSC, on a prorated basis, for Services and Deliverables that RSC provides through the date of termination.

**8.3   SURVIVAL**

Any terms of the IDA that by their nature extend beyond its termination (for example, Section 4.0, "OWNERSHIP AND RIGHTS," Section 7.0, "INDEMNIFICATION AND LIABILITY," Section 8.0, "AGREEMENT TERMINATION," and Section 10.0, "COMPLIANCE WITH LAWS" ) will survive. These terms will apply to either party's successors and assigns.

**9.0   PERSONNEL**

**9.1   REPRESENTATION**

Each party will appoint a coordinator to represent them in all matters regarding this Base Agreement. In addition, each Transaction Document will appoint a Technical and a Contract Coordinator to represent them in matters specific to a Transaction Document. Each party will address all notices, payments and deliveries to the appropriate coordinator. A party will notify the other in writing when coordinators change.

**9.2   RSC WILL:**

1. adequately train RSC's employees to perform all work;

IBM CONFIDENTIAL

June 23, 1997

### IBM Developer Agreement

2. have agreements with RSC's Personnel to perform obligations under the IDA and grant rights to IBM. The "Exhibit: Sample Employee Agreement", or its equivalent, may be used for this purpose;

3. be responsible for the direction, control, compensation, and actions of RSC's Personnel;

4. inform IBM if RSC plans to assign a former IBM or IBM Subsidiary employee to perform work under the IDA. IBM reserves the right to deny such assignment; and

### 9.3    ACTIVITY ON IBM's PREMISES

The "Exhibit: Activity on IBM's Premises" will apply to RSC and RSC's Personnel when RSC is on IBM's premises.

### 10.0  COMPLIANCE WITH LAWS

### 10.1  COMPLIANCE WITH LAWS AND REGULATIONS

Each party will, at its own expense, comply with all applicable governmental laws and regulations.

### 10.2  EXPORTS

Each party will comply with all applicable government export laws and regulations.

### 10.3  EEO/OSHA

To the extent applicable, each party will comply with Executive Order 11246 of the President of the United States on Equal Employment Opportunity and the Occupational Safety and Health Act of 1970.

### 11.0  INSURANCE

1. RSC will maintain the following minimal insurance coverage at RSC's own expense:

   a.  Worker's Compensation for the statutory required amount;

   b.  Comprehensive General Liability, including contractual liability assumed by RSC under the IDA, in the amount of one million dollars ($1,000,000) per event; and

   c.  Vehicular Liability for vehicles used in the performance of work under the IDA in the amount of one million dollars ($1,000,000) per event.

2. The insurance will provide that the insurer notify IBM at least thirty (30) days before any non-renewal, cancellation, or reduction of coverage. RSC will provide IBM with proof of such insurance upon request.

3. RSC remains liable for any damages above the stated minimums.

IBM CONFIDENTIAL

June 23, 1997                                           Agreement Number: STL97041

IBM Developer Agreement

## 12.0  PRICES, PAYMENTS AND TAXES

### 12.1  COMPENSATION

IBM will pay RSC for a project in accordance with this Base Agreement and its Transaction Document(s). RSC's applicable taxes, expenses, and payments to third parties are included in the compensation, unless identified otherwise in a Transaction Document.

### 12.2  INVOICES

RSC will submit invoices within thirty (30) days after completion of work specified in a Transaction Document. IBM will pay RSC within thirty (30) days of receiving RSC's acceptable invoice. The Transaction Document will define the information required for RSC's invoice.

### 12.3  MOST FAVORED CUSTOMER

If RSC offers another party lower rates or prices for equivalent Services or Deliverables during the term of the IDA, RSC will offer the same to IBM.

## 13.0  GENERAL

### 13.1  SUBSIDIARY RIGHTS

IBM may grant its rights under the IDA to its Subsidiaries, who may license their Subsidiaries, successors, or assigns. IBM may delegate its obligations to its Subsidiaries.

### 13.2  SEVERABILITY

If any provision of the IDA is unenforceable at law, the remaining provisions remain in full force and effect.

### 13.3  ACTIONS

Except for actions brought to enforce Section 7.0, "INDEMNIFICATION AND LIABILITY," neither of us will bring a legal action against the other more than two (2) years after the cause of action arose. Both parties will act in good faith to resolve disputes and waive rights to a jury trial in any resulting litigation.

### 13.4  WAIVER OF NONCOMPLIANCE

Failure by either party to insist on strict performance or to exercise a right when entitled, does not prevent that party from doing so at a later time in relation to that default or a subsequent one.

### 13.5  JURISDICTION

RSC will submit to personal jurisdiction in any forum where IBM is sued for claims related to the IDA.

### 13.6  GOVERNING LAW

The substantive laws of the State of New York applicable to agreements fully executed and performed in New York govern the IDA.

IBM CONFIDENTIAL

# EXHIBIT B

# DESCRIPTION OF LICENSED WORK

## Agreement Number: STL97041 DLW Number:001

*Dated*

### June 23, 1997

*between*

### International Business Machines Corporation
### Santa Teresa Laboratory
### 555 Bailey Avenue
### San Jose, CA 95141

*and*

### Responsive Systems Company
### 281 Highway 79
### Morganville, NJ 07751

### IBM CONFIDENTIAL

June 23, 1997                                   Agreement Number: STL97041
                      Description of Licensed Work Number: 001

This Description of Licensed Work ("DLW") is a Transaction Document issued under the IBM
Developer Agreement ("IDA") for the license to IBM of an existing Licensed Work that
Responsive Systems Company (RSC) owns. RSC retains ownership of RSC's intellectual
property rights in the Licensed Work, but grants IBM a non-exclusive license to the Licensed
Works.

By signing this Transaction Document, each of us agrees that the complete agreement between
us regarding this project consists of:

    1. this Transaction Document;

    2. the IBM Developer Base Agreement Number STL97041;

    3. Statement of Work ("SOW") Number STL97041 SOW number 001;

The following are related agreements between IBM and the Developer:

    4. the Agreement for Exchange of Confidential Information Number STL96352;

    5. the Source Code Custody Agreement Number STL97051;

    6. The Description of Escrowed Work Number STL97051 number 001.

**AGREED TO:**                                   **AGREED TO:**


International    Business    Machines         Responsive Systems Company
Corporation


By: _____              By: _____
Authorized Signature                          Authorized Signature


Print   C.F. Semones                         Print   Joel Goldstein
Name:                                        Name:


Date: ___7/15/97___                          Date: ___7/16/97___


IBM Office Address:                          RSC Address:

    555 Bailey Avenue (Package Delivery        281 Highway 79
    San Jose, CA 95141                         Morganville, NJ 07751


    P.O. Box 49023 (Mailing Address)
    San Jose, CA 95161-9023

IBM CONFIDENTIAL

June 23, 1997                          Agreement Number: STL97041
                    Description of Licensed Work Number: 001

## 1.0  DEFINITIONS

### 1.0.1 ROYALTY ACCOUNTING MONTH

Royalty Accounting Month is the time frame during which Royalty fees become due. The start and end date of a Royalty Accounting Month varies by the IBM geographic area where licenses are granted. The Royalty Accounting Months are:

1. United States/Puerto Rico: begins on the first business day of the current calendar month and ends on the last business day of that month.

2. Americas/Far East Countries (excluding U.S.): begins on the first business day of the prior calendar month, ending on the last business day of that month.

3. Europe/Middle East/Africa Countries: begins on the first business day of the last week of the prior calendar month. It includes the first three weeks of the current calendar month and ends on the last business day of that third week.

## 2.0  DESCRIPTION

### 2.1  The Licensed Work is

Code, documentation and any other related written material for Responsive Systems Buffer Pool Tool that RSC creates to meet the requirements of IBM Developer Agreement Number STL 97041 Statement of Work Number 001. The Buffer Pool Tool is an easy to use , new generation software product providing an in-depth analysis of DB2 buffer pool activity as more fully described in RSC's marketing material "Buffer Pool Tool the Ultimate DB2 Tuning Aid".

### 2.2  The Development Environment for the Licensed Work includes:

NOTE: RSC to provide information for this section.

### 2.3  The Background Materials associated with the Licensed Work are:

NOTE: RSC to provide information for this section if background materials are used.

## 3.0  GRANT OF LICENSE

### 3.1  SCOPE

RSC grants IBM a non-exclusive, irrevocable, worldwide license to use, execute, reproduce, display, perform, transfer, distribute, and sublicense the Licensed Work and to combine the Licensed Work with other code and products for Product packaging and distribution purposes. RSC grants IBM the right to authorize others to do any of the above. This license applies to associated audio and visual works.

### 3.2  PRODUCT NAMES AND TRADEMARKS

For IBM's marketing of the Licensed Work and Products , RSC grants IBM a non-exclusive, irrevocable, worldwide, paid-up license to use the names and trademarks that RSC uses to identify the Licensed Work. RSC grants IBM the right to authorize others to do any of the above. If RSC informs IBM in writing that RSC objects to IBM's use of RSC's Product names

June 23, 1997                                    Agreement Number: STL97041
              Description of Licensed Work Number: 001

and trademarks, IBM will take reasonable steps to satisfy RSC's objection. RSC may reasonably monitor the quality of Products bearing RSC's trademarks under this license.

## 4.0    LICENSED WORK

### 4.1    MAJOR ENHANCEMENTS

RSC will offer to IBM, within sixty (60) days after availability, all Major Enhancements to the Licensed Work that RSC creates or authorize others to create. The Major Enhancements will become part of the Licensed Work if we agree on terms. This DLW will be amended to include such Major Enhancements. If we do not agree, RSC will make the Major Enhancements available to IBM Licensee's customers under terms and conditions no less favorable than those RSC offers anyone else.

### 4.2    BASIC ENHANCEMENTS AND MAINTENANCE MODIFICATIONS

RSC will provide at no charge, to IBM Basic Enhancements and Maintenance Modifications for the Licensed Work that RSC creates or authorize others to create. They will automatically become part of the Licensed Work. This obligation will begin when IBM accepts the Licensed Work and will continue until the Agreement expires or is terminated.

### 4.3    DERIVATIVE WORKS OF THE LICENSED WORK

If a Derivative Work is created by IBM, pursuant to a release in the Source Code Custody Agreement, IBM may reasonably request that a reduced royalty be set that considers the percentage of the Licensed Work utilized. This DLW will be amended to describe the new royalty terms.

## 5.0    COPYRIGHT

### 5.1    REGISTRATION

RSC is responsible for copyright registration, maintenance and enforcement of the Licensed Work. RSC authorizes IBM to act as RSC's agent in the copyright registration of the Licensed Work.

### 5.2    INFRINGEMENT

If a third party is infringing RSC's copyright in the Licensed Work, and RSC does not immediately move to protect its copyrights, IBM may reasonably reduce its payments to RSC based on the reduced value of IBM's rights. Full payment will resume after RSC restores the full value.

## 6.0    ROYALTY TERMS

### 6.1    ROYALTIES

In consideration for the rights and licenses granted in this DLW, IBM will pay RSC royalties against revenue received by IBM as follows:

  1. thirty percent (30%) of all revenue recorded for the Products licensed on a stand alone basis; and

June 23, 1997                                    **Agreement Number: STL97041**
**Description of Licensed Work Number: 001**

2. thirty percent (30%) of the revenue recorded for and attributable to the Product(s) when incorporated in or bundled with other new or existing IBM or non-IBM products, code, and/or services. The revenue attributable to the Product(s) shall be the total license fee received by IBM for the complete offering multiplied by the ratio of the list price(s) of the Product(s) to the combined list prices of all offering products and components (or if no list price is known, then the reasonable market value(s))

3. notwithstanding the foregoing, in no event shall the royalty amount paid to RSC for each Licensed Work licensed in groups 40 thru 80 be less than three hundred dollars ($300.00).

## 6.2    NO ROYALTIES

IBM has no royalty obligation for:

1. the Licensed Work used for

   a. IBM's internal use, development, maintenance, or support activities;

   b. marketing, sales, demonstrations, customer testing periods, training, educational purposes;

      or

   c. backup purposes;

2. Maintenance Modifications or Basic Enhancements;

3. audio and visual works associated with the Licensed Work ; or

4. protocols or interfaces similar to those used in this Licensed Work.

5. the copying and distribution of Products on a CD ROM or other media on which the Product is capable of being secured (e.g. "locked" or "encrypted") to limit a recipient's use of the Product. IBM may allow some limited preview, trial, or demonstration use of the Product, but will deny the recipient the ability to make full, intended use of the Product, unless and until the recipient obtains a full license from IBM and receives an unlocking or de-encryption facility.

## 6.3    PAYMENTS

Royalties are paid against revenue received by IBM in Royalty Accounting Months that are completed within each calendar quarter. Payment will be made within forty five days (45) or less if possible following the calendar quarter.

Royalties will be paid less adjustments and refunds due to IBM. With each payment, IBM will provide a statement summarizing how the payment was determined.

IBM CONFIDENTIAL

June 23, 1997                          Agreement Number: STL97041
             Description of Licensed Work Number: 001

## 6.4   LOWER ROYALTY PAYMENTS

IBM may request a lower royalty for the Licensed Work for a transaction where a substantial discount is required. If RSC agrees, both parties will sign a letter specifying the transaction and its lower royalty payment.

## 6.5   EXCLUSIVE STATEMENT OF ROYALTIES

The royalty payments defined in this DLW fully compensate RSC for the non-exclusive rights and licenses granted in the Base Agreement and this DLW.

## 7.0   SURVIVAL

The termination of the Base Agreement or a Transaction Document will not affect previously granted paid-up rights or licenses to IBM or Product users.

If IBM's license to the Licensed Work is not paid-up at termination, rights and licenses will continue for IBM Licensees to a) perform maintenance and support for IBM's Products; and b) fill orders received before termination. IBM's royalty obligations for such orders will continue.

## 8.0   COORDINATORS

## 8.1   CONTRACT COORDINATOR

These coordinators are responsible for amendments and all nontechnical administrative matters associated with this DLW. The Contract Coordinators are:

### 8.1.1 IBM Contract Coordinator

Tom Bleier
555 Bailey Avenue (Package Delivery)
San Jose, CA 95141

P.O Box 49023 (Mailing Address)
San Jose, CA 95161-9023

Phone Number: 408-463-2720
Facsimile Number: 408-463-5605
Internal Zip: J74/G4

### 8.1.2 Vendor Contract Coordinator

Joel Goldstein
281 Highway 79
Morganville, NJ 07751

Phone Number: (908) 972-1261
Facsimile Number: (908) 972-9416

IBM CONFIDENTIAL

June 23, 1997                          Agreement Number: STL97041
                    Description of Licensed Work Number: 001

## 8.2   TECHNICAL COORDINATOR

These coordinators will administer and coordinate the technical matters associated with this DLW. They are responsible for accepting all Deliverables and will supervise all exchanges of confidential information under the AECI. The Technical Coordinators are:

### 8.2.1 IBM Technical Coordinator

Mike Beasley
555 Bailey Avenue (Package Delivery)
San Jose, CA 95141

P.O Box 49023 (Mailing Address)
San Jose, CA 95161-9023

Phone Number: 408-463-4543
Facsimile Number: 408-463-5605
Internal Zip: ICE/F270

### 8.2.2 Vendor Technical Coordinator

Joel Goldstein
281 Highway 79
Morganville, NJ 07751

Phone Number: 908-972-1261
Facsimile Number: 908-972-9416

## 9.0   TERMINATION

This DLW shall be effective from the date of execution and continue until terminated in accordance with Section 8.0 of the IDA Agreement Number: STL97041. For the purposes of this DLW, Subsection 2 of Section 8.2 of the IDA does not apply.

Either party may terminate for convenience by giving ninety (90) days advance written notice at any time during any period which is both (a) eighteen (18) months after GA of the Product and (b) prior to IBM having licensed fifty (50) copies of the Product to customers. Nothing in this provision is intended to modify or override Section 3.2 of the IDA Base Agreement.

# EXHIBIT C

# STATEMENT OF WORK

## Agreement Number: STL97041  SOW Number: 001

*Dated*

### June 23, 1997

*between*

**International Business Machines Corporation**
**Santa Teresa Laboratory**
**555 Bailey Avenue**
**San Jose, CA 95141**

*and*

**Responsive Systems Company**
**281 Highway 79**
**Morganville, NJ 07751**

**IBM CONFIDENTIAL**

June 23, 1997                                  Agreement Number:STL97041

## Statement of Work Number:001

This Statement of Work ("SOW") is a Transaction Document issued under the IBM Developer Agreement ("IDA") for a licensing agreement between IBM and Responsive Systems Company (RSC) to bring RSC's product, Buffer Pool Tool, to market under an IBM logo.

1. By signing this Transaction Document, each of us agrees that the complete agreement between us regarding this project consists of:

   a. this Statement of Work, STL97041 SOW number 001;

   b. the IBM Developer Agreement Base Agreement Number STL97041;

   c. the Description of Licensed Work ("DLW") number STL97041 DLW number 001;

2. The following are related agreements between IBM and the Developer:

   a. the Agreement for Exchange of Confidential Information ("AECI") number STL96352;

   b. the Source Code Custody Agreement number STL97051;

   c. the Description of Escrowed Work ("DEW") number STL97051 DEW number 001.

By signing below, each of us agrees to the terms of this SOW. All Deliverables and Services you provide under the SOW are subject to it. Any signed copy of the SOW made by reliable means (for example, photocopy or facsimile) is considered an original.

ACCEPTED AND AGREED TO:              ACCEPTED AND AGREED TO:

International Business Machines       Responsive Systems Company
Corporation

By: _____          By: _____
       Authorized Signature                 Authorized Signature

Print   C. F. Semones                 Print   Joel Goldstein
Name:                                 Name:

Date: _____7/15/97_____             Date: _____7/16/97_____

IBM Office Address:                   Developer Address:

      555 Bailey Avenue                     281 Highway 79
      San Jose, CA 95141                    Morganville, NJ 07751

Page 1 of 23

**IBM CONFIDENTIAL**

June 23, 1997                                    Agreement Number:STL97041

Statement of Work Number:001

## 1.0  DEFINITIONS

When used in this SOW, the capitalized terms will have the meanings defined in the IDA Base Agreement. In addition, the terms listed below will have the following meanings:

### 1.1  ESCROWED MATERIALS:

Escrowed Materials are the items associated with a Licensed Work that Developer will deposit with Custodian. A Description of Escrowed Work describes the Escrowed Materials for a Licensed Work. The Escrowed Materials include:

1. the Source Code for the Licensed Work in machine-readable form, including all updates to it;

2. the system documentation (including statements of principles of operation and schematics) related to the licensed Work in hard copy and machine-readable form;

3. commentary or explanation that may be required to understand and use the Source Code;

4. a list of all items in the Development Environment that are commercially available;

5. the Development Environment items that are not provided by IBM and are not commercially available;

6. a list of all Source Code modules of the Licensed Work; and

7. a directory listing for each machine-readable medium.

### 1.2  CODE :

Code means computer programming code, including both Object Code and Source Code.

### 1.2.1  Object Code

Object code is the computer programming code substantially in binary form. It is directly executable by a computer after processing, but without compilation or assembly.

### 1.2.2  Source Code

Source Code is the computer programming code, other than Object Code, and related source code level system documentation, comments and procedural code, such as job control language. It may be printed out or displayed in a form readable and understandable by a programmer of ordinary skill.

## 2.0  IBM'S RESPONSIBILITIES

IBM will accomplish the following under this SOW:

## 2.1  PROJECT MANAGEMENT

1. IBM will provide the following IBM documents to you for additional detail regarding IBM's design, development, documentation and test requirements:

IBM CONFIDENTIAL

June 23, 1997                           Agreement Number:STL97041

Statement of Work Number:001

    a. Information Development Format Specifications National Language and Design Guide

    b. IBM Style Guidelines

2. Announce, as IBM deems appropriate, the availability of this Product in IBM's standard product catalogues.

3. IBM will review and accept or reject all Deliverables according to the acceptance criteria specified in Section 8.0, "COMPLETION AND ACCEPTANCE CRITERIA." IBM's acceptance or rejection will be made within ten (10) days of receipt.

## 2.2 MARKETING

IBM will develop a marketing plan including announcement, promotion, and distribution of the Product and implement that marketing plan as modified in IBM's judgement. The plan will be provided to RSC for its comments.

## 2.3 MAINTENANCE AND SUPPORT

IBM will provide Level 1 maintenance and support for the Product as specified in Appendix A, Maintenance and Support.

## 2.4 COMPENSATION AND PAYMENT

In compensation for the rights granted and obligations assumed hereunder, IBM will pay royalties to RSC as specified in DLW 001.

## 3.0 RSC RESPONSIBILITIES

RSC will perform the following Services under this SOW:

1. RSC will provide all Deliverables in accordance with the specifications set out in Section 8.0, "COMPLETION AND ACCEPTANCE CRITERIA", and the timetable set out in Section 9.0, "SCHEDULE."

## 3.1 DESIGN, CODE AND DEVELOPMENT

1. RSC will ensure that the Deliverables provide for language translation of all acknowledgments, messages, and end user screens, and will accommodate single and double byte language translation conforming to the rules and guidelines described in the IBM publication titled, "National Language Design Guide";

2. RSC will ensure that if there are any user interfaces they will comply with the IBM CUA standards. There will be no undocumented, non-standard, interfaces in the final Deliverables to IBM;

3. RSC will provide a final version of the user documentation Deliverables (both soft copy and hard copy ) in a postscript format or in high quality hard copy and which conform to IBM Style Guidelines.

4. RSC will ensure that all Code (Source and Object) will comply with IBM naming conventions and be year 2000 compliant (i.e., able to handle dates beyond the year 1999 in

IBM CONFIDENTIAL

June 23, 1997                                    Agreement Number:STL97041

Statement of Work Number:001

the manner in which a user would intend and expect). This means that the Product must meet the following four criteria:

a. General Integrity: No value for current date will cause interruptions in desired operations -- especially from 20th to 21st centuries.

b. Date Integrity: All manipulations of time-related data (dates, duration, days of week, etc.) will produce desired results for all valid date values within the application domain.

c. Explicit Century: Date elements in interfaces and data storage permit specifying century to eliminate date ambiguity.

d. Implicit Century: For any date element represented without century, the correct century is unambiguous for all manipulations involving that element.

## 3.2  SKILLS TRANSFER FROM RSC TO IBM

RSC will conduct a skills transfer class, 'Teach The Teachers (T3)', for IBM as specified in Section Part 9.0, "SCHEDULE." The class will transfer the information needed for IBM's marketing forces, and IBM service people to support the new Deliverables.

## 3.3  MAINTENANCE AND SUPPORT

RSC will provide Level 2 and 3 maintenance and support for all Deliverables as specified in Appendix A, Maintenance and Support.

## 3.4  QUALITY

RSC will monitor and manage work activities against quality objectives, as set forth in Section 6.0 Specifications.

## 3.5  LIST OF DEVELOPMENT ENVIRONMENT ITEMS.

RSC will list in Appendix C Development Environment and describe in detail all Development Environment items required by the IDA. RSC will identify the owners for each of these items and identify those items that are commercially available.

## 4.0  DELIVERABLES

RSC will prepare or provide the following to IBM according to Section 6.0 "SPECIFICATIONS" and Section 9.0, "SCHEDULE."

## 4.1  LICENSED WORKS

Deliverable No. 1 - Buffer Pool Tool

This Deliverable consists of Code and Documentation which is an easy to use new generation software product providing an in depth analysis of DB2 buffer pool activity as described in RSC product brochures, and enhanced or modified to meet the requirements of this SOW. Using standard IBM supported interfaces and requiring no hooks into the DB2 system, the Buffer Pool Tool provides a level of statistical information about buffer pool activity unavailable from any

Page 4 of 23

IBM CONFIDENTIAL

June 23, 1997                                 Agreement Number:STL97041

Statement of Work Number:001

other source and predicts the performance effect of changes to pool sizes, thresholds, and placement of objects into different pools.

Deliverable No. 2 - Marketing Materials

This Deliverable consists of items specified in Section 15.3.(4)

## 4.2    DOCUMENTATION

Deliverable No. 3 - User's Guide

RSC will deliver in soft copy a User's Guide for Deliverable No. 1. This Deliverable will:

1. conform essentially to the IBM Style Guidelines.

2. include legal wording for editing notices page and notices page. Special text/instructions to be provided by IBM.

3. be in postscript format. If unable to provide postscript format, RSC will have to provide high quality hard copy from which IBM can reproduce copies.

## 4.3    DEVELOPMENT ENVIRONMENT

RSC will provide to IBM all Development Environment materials listed in Section 3.5 above, Development Environment that are identified as not commercially available.

## 4.4    CERTIFICATE OF ORIGINALITY

RSC will provide a Certificate of Originality for items identified in 4.1, "Licensed Works.." A blank Certificate of Originality is provided as Exhibit 1 to this SOW. IBM will notify RSC in writing of IBM's acceptance of the Certificate of Originality prior to the execution of this agreement. IBM's royalty payments to RSC for the Deliverables requiring this certificate is conditioned upon IBM's acceptance of the certificate.

## 5.0    BACKGROUND MATERIALS

RSC will describe these items in Appendix B, Background Materials, and will identify each item's owner. RSC will update this list as required to keep it current and accurate.

## 6.0    SPECIFICATIONS

RSC will deliver a buffer tool capable of operating in IBM's DB2 environment that will support DB2 versions 3, 4, and 5, which will provide an in depth analysis of DB2 buffer pool activity. It is RSC's intent to provide support for any follow on DB2 versions as well

## 7.0    QUALITY PROCESS MEASUREMENTS

RSC will provide to IBM a list of customers where their product is currently installed. This list will be used by IBM to do a sample test of customers to ensure customer satisfaction of RSC's product.

IBM CONFIDENTIAL

June 23, 1997                                Agreement Number: STL97041

Statement of Work Number: 001

## 8.0  COMPLETION AND ACCEPTANCE CRITERIA

In order to qualify for acceptance, each Deliverable and Service must be provided according to the criteria provided below:

1. Each Deliverable will operate successfully with all current levels and releases of IBM's DB2 product Versions 3, 4, and 5 according to the criteria provided in the product documentation by RSC. It is RSC's intent to provide support for any follow on DB2 versions as well.

2. Complete a successful verification of customer satisfaction as identified in Section 7.0.

## 9.0  SCHEDULE

The schedule for performance and completion of work, including milestones and delivery dates, is as follows:

| EVENT | DUE DATE |
|-------|----------|
| 1. IBM furnished items to RSC | |
| 2. Verification of customer satisfaction | |
| 3. Licensed Work delivery to IBM | |
| 4. Product Announcement | |
| 5. Product Ship | |
| 6. RSC Skills Transfer Class | |
| 7. Marketing Presentations (in PowerPoint) | |
| 8. Demonstration of the Product | |

Note: RSC to provide additional dates and specific events

**This schedule is for planning purposes only and may be changed upon mutual agreement of the parties.**

## 10.0 COMPENSATION

1. Compensation will be paid according to criteria stated in the Description of Licensed Work STL97041 DLW 001.

## 11.0  TERM AND TERMINATION

The term of this SOW shall be coextensive with the terms of Agreement Number STL97041 DLW Number 001. Notwithstanding any termination of the DLW and this SOW, RSC shall continue to provide the maintenance and support specified in Section 3.4 of this SOW for a period of eighteen (18) months following the termination of the DLW and this SOW. All the provisions that would naturally apply to such ongoing maintenance and support shall continue and survive.

Page 6 of 23

IBM CONFIDENTIAL

June 23, 1997                                    Agreement  Number:STL97041

Statement of Work Number:001

## 12.0   COORDINATORS

### 12.1  CONTRACT COORDINATOR

These coordinators are responsible for amendments and all non-technical administrative matters associated with this SOW.  Our Contract Coordinators are:

#### 12.1.1 For IBM

Tom Bleier
555 Bailey Avenue (Package Delivery)
San Jose, CA 95141

P.O. Box 49023 (Mailing Address)
San Jose, Ca 95161-9023

Phone Number: 408 463-2720
Facsimile Number: 408- 463-5605
Internal Zip: J74/G4

#### 12.1.2 For RSC

Joel Goldstein
281 Highway 79
Morganville, NJ 07751

Phone Number: 908-972-1261
Facsimile Number: 908-972-9416

### 12.2  TECHNICAL COORDINATOR

These coordinators will administer and coordinate the technical matters associated with this SOW.  They are responsible for accepting all Deliverables and will supervise all exchanges of confidential information under the AECl.  Our Technical Coordinators are:

#### 12.2.1 For IBM

Mike Beasley
555 Bailey Avenue (Package Delivery)
San Jose, CA 95141

P.O. Box 49023 (Mailing Address)
San Jose, Ca 95161-9023

Phone Number: 408-463-4543
Facsimile Number: 408-463-2633
Internal Zip: ICE/F270

IBM CONFIDENTIAL

June 23, 1997                                    Agreement Number:STL97041

Statement of Work Number:001

**12.2.2 For RSC**

Joel Goldstein
281 Highway 79
Morganville, NJ 07751

Phone Number: 908-972-1261
Facsimile Number: 908-972-9416

## 13.0  UNIQUE TERMS AND CONDITIONS

### 13.1  MODIFICATIONS

Refer to IDA Base Agreement, STL97041, and modify the following terms for purposes of this SOW only:

Section 3.8, RSC WILL NOT, item 1 is replaced with the following

3.8.(1) subcontract obligations under the IDA; provided that IBM shall not unreasonably withhold approval to subcontract obligations.

Section 5.3, Quality, does not apply.

Section 6.0, Representations and Warranties, item 7 is replaced with the following:

7. the reasonably well documented source code, if any, that RSC provides corresponds to the current release or version of the Deliverable.

Section 9.2 RSC WILL, item 2 is replaced with the following:

2. have agreements with RSC's Personnel to perform obligations under the IDA, relating to the Buffer Pool Tool, and to grant rights to IBM. The "Exhibit Sample Employee Agreement", or its equivalent, may be used for this purpose.

Section 9.0 RSC WILL, item 4 is replaced with the following:

4. inform IBM if RSC plans to assign a former IBM or IBM Subsidiary employee to perform work under the IDA. IBM reserves the right to deny such assignment but will not be unreasonable in its decision.

Section 11.0 Insurance, item 1c., does not apply.

### 13.2  ADDITIONAL TERMS AND CONDITIONS.

Refer to IDA Base Agreement and add the following terms for purposes of this SOW only:

1. **SOURCE CODE CUSTODY AGREEMENT.** The Escrowed Materials, including the reasonably well documented Source Code and the Development Environment associated with the Licensed Works identified in DEW 001 will be escrowed under the terms and

Page 8 of 23

IBM CONFIDENTIAL

June 23, 1997                          Agreement Number:STL97041

Statement of Work Number:001

conditions of the Source Code Custody Agreement. RSC will sign the SCCA at the same time that RSC signs this SOW.

2. This Statement of Work does not require RSC to do any Derivative Work of the Buffer Pool Tool. If IBM requires such a Derivative Work, a new or amended and restated Transaction Document will be prepared.

## 14.0  MARKETING ASSISTANCE

## 14.1  MARKET SUPPORT PLAN

IBM may prepare a market support plan for each Product it announces. It will be summarized and provided to RSC under the AECI. IBM may change the plan without RSC's prior approval. RSC will not rely upon information or statements provided by IBM, including the market support plan, for RSC's business forecasts.

## 14.2  NOTIFICATION OF GENERAL AVAILABILITY

For each Product IBM announces, IBM will provide RSC with a copy of its notice of availability to customers and distributors.

## 14.3  MARKETING ASSISTANCE

Upon IBM's request and RSC's agreement , RSC will:

1. review and comment on any press release or marketing materials;

2. participate in demonstrations of Products at trade  shows, conferences and sales meetings when mutually agreed to; and

3. participate with IBM marketing representatives in executive sales calls for large prospects and major distributors when mutually agreed to; and

4. RSC will provide a marketing presentation in "PowerPoint" format, with speaker notes to IBM at the time of delivery to IBM of the Licensed Works. Further RSC will provide any enhancements to such marketing presentation and also any demonstration materials (code, videos, etc.), brochures and other marketing material produced or developed by or for RSC during the term of this SOW. Such materials shall be provided as soon as they are available.

IBM CONFIDENTIAL

June 23, 1997                              Agreement Number:STL97041

Statement of Work Number:001

## APPENDIX A. MAINTENANCE AND SUPPORT

This Appendix sets out IBM's and RSC's obligations relative to providing maintenance and support for Products that are Licensed Works or are derived from the Licensed Works described in Section 4.0, Deliverables.

1. **DEFINITIONS:** Except to the extent specifically modified or supplemented in this section, the capitalized terms in this Appendix will have the meanings defined in the SOW and the IDA Base Agreement. Capitalized terms not defined in those documents will have the meanings below:

   a. **APAR** is the completed form entitled "Authorized Program Analysis Report," that is used to report suspected code or documentation errors and to request their correction.

   b. **APAR SEVERITY LEVELS** is a designation assigned to errors that is intended to indicate the seriousness of the error based upon the impact that the error has on the user's operations.

   i. "Severity 1" is a "critical problem;" the program is unusable   and the error severely impacts the user's operation;

   ii. "Severity 2" is a "major problem;" important function is not   available resulting in operations being severely restricted;

   iii. "Severity 3" is a "minor problem;" inability to use a function   occurs, but it does not seriously affect the user; and

   iv. "Severity 4" is a "minor problem;" that is not significant to the   user's operations. The user may be able to circumvent the   problem.

   c. **APAR CORRECTION TIMES** are the objectives that you must achieve for resolution of errors and distribution of the correction to IBM.

   i. "Severity 1" requires maximum effort support until an emergency fix or bypass is developed and available to be shipped to IBM.   Critical situations may require customer, IBM, and your Personnel   to be at their respective work locations, or available on an   around-the-clock basis. The objective will be to provide relief   to the user within 24 hours;

   ii. "Severity 2" must be resolved within 10 calendar days;

   iii. "Severity 3" must be resolved within 15 calendar days; and

   iv. "Severity 4" within 28 calendar days.

   The number of days indicated represents the time from receipt of the APAR and supporting documentation by you until the correction or other resolution is shipped by

IBM CONFIDENTIAL

June 23, 1997                                    Agreement Number:STL97041

you to IBM. IBM will allow exceptions from these objectives when warranted by technical or business considerations.

d. **APAR CLOSING CODES** are the established set of codes used to denote the final resolution of an APAR. Closing codes will be provided to you sixty (60) days prior to the start of the maintenance obligations.

e. **LEVEL 1 SUPPORT** are those activities that assist the user in resolving "how to" and operational questions, as well as technical questions on installation procedures.

f. **LEVEL 2 SUPPORT** are those activities that require additional research and analysis of a user problem. The Problem Management System data base is checked to locate a duplicate of the problem being reported and the previous solution applied to that problem.

g. **LEVEL 3 SUPPORT** are those activities that require duplication of the user problem, analysis of the APAR record, and creation and distribution of a Program Temporary Fix (PTF) to resolve the user problem.

h. **PROBLEM DETERMINATION** is the process of determining whether a problem is being caused by hardware, software, or documentation.

i. **PROBLEM MANAGEMENT RECORD (PMR)** is a record created when a user makes the initial support request. This record becomes a part of the Problem Management System database and records the essential information about the user question or problem.

j. **PROBLEM MANAGEMENT SYSTEM (PMS)** is an internal IBM developed software system used to record customer demographic information and encode data about the question or problem being reported. The PMS will handle the dispatching of the call record to you. The PMS will provide management reports of the call activity and the recording and tracking of all questions and problems to final resolution. The PMS will verify that each customer is "entitled" to program support.

k. **PROBLEM SOURCE IDENTIFICATION** is the process of determining which software or documentation component is failing, or attributing the failure to some external cause such as operator/user error, or no trouble found.

l. **PROGRAM TEMPORARY FIX (PTF)** is an interim correction to an error. A PTF is distributed to the user who originally identified the error, and all other users who report the same error.

m. **READER COMMENT FORM (RCF)** is the form which is used to communicate errors in and comments on the documentation. The Reader Comment Form is generally the last page of a manual or brochure, and is completed by the user and mailed to the address specified thereon.

IBM CONFIDENTIAL

June 23, 1997                                    Agreement Number: STL97041

Statement of Work Number: 001

n. **DEVELOPER TEST SYSTEM** is an appropriate configuration of installed hardware and software that is representative of typical IBM customer installations using the Product(s). This test system will contain at a minimum the following:

    i. the current and current minus 1 level of the Product(s);

    ii. the current and current minus 1 level of prerequisite/co-requisite IBM hardware and software as defined to RSC by IBM; and

    iii. such system will consist of programmable workstation components only unless IBM specifies and provides other equipment at no charge to RSC.

## 2. GENERAL RESPONSIBILITIES

1. IBM will be the primary customer contact point for questions, problems, and assistance concerning the Product(s). It is IBM's intention to provide support services for the Product(s) as follows:

    a. Telephone customer response line to respond to questions regarding installation and use of the Product(s);

    b. Telephone customer response line to respond to end user's suspected code defects and documentation errors regarding installation and operation of the Product(s); and

    c. Product maintenance through Maintenance Modifications to end users.: You will provide to IBM Product training, technical support, Level 3 maintenance and corrections for verified errors.

## 3. SPECIFIC RESPONSIBILITIES BY SUPPORT LEVEL.

Product users will initiate requests for support by contacting IBM. The IBM representative will call the request originator back to begin work on the problem.

    a. To effect their respective support responsibilities, IBM will maintain an IBM Test System and you will maintain a Developer Test System.

**IBM will perform the following Level 1 responsibilities:**

**Level 1**

    i. create the Problem Management Record (PMR);

    ii. call the request originator, and obtain a description of the problem, and verify its severity;

    iii. search the IBM data base for known problems;

    iv. provide available resolution if known problem;

    v. recommend local IBM assistance as required;

    vi. if no resolution, pass PMR to Level 2; and

**IBM CONFIDENTIAL**

June 23, 1997                                        Agreement Number:STL97041

Statement of Work Number:001

    vii.update PMR, documenting Level 1 actions.

**RSC will perform the following Level 2 responsibilities:**

**Level 2**

    i.  receive the PMR from Level 1;

    ii. analyze problem symptoms and gather additional data from request originator as required;

    iii.search the IBM data base for known problems;

    iv. provide available resolution if known problem;

    v.  recommend local IBM assistance as required;

    vi. recreate problem on IBM Test System;

    vii.determine if error is due to improper installation of the Product(s) by the request originator;

    viii.determine if suspected error is due to prerequisite or operationally related equipment or software at the request originator location;

    ix. attempt bypass or circumvention for high impact problems, i.e., Severity 1 and 2;

    x. if no resolution, and problem appears to be a newly discovered code or documentation error, create APAR record. If the request is a technical question, obtain assistance from Developer to provide an answer;

    xi. if suspected error appears to belong to Developer, notify Developer of the APAR, providing problem description and supporting documentation and materials;

    xii.if Developer requests, IBM will assist Developer in obtaining additional information or materials from request originator to support Level 3 Problem Determination, Problem Source Identification, and Problem Resolution; and

    xiii.update PMR, documenting Level 2 actions.

**RSC will perform the following Level 3 Support responsibilities:**

**Level 3**

    i.  receive the APAR and supporting documentation and materials;

    ii. analyze the problem symptoms and diagnose the suspected error;

    iii.notify Level 2 if additional information, materials, or documentation is required;

    iv. attempt recreation of problem on Developer Test System, if required;

    v. assist Level 2 in attempting to develop a bypass or circumvention for high impact problems, e.g., Severity 1 and 2;

**IBM CONFIDENTIAL**

June 23, 1997                              Agreement Number:STL97041

Statement of Work Number:001

vi. determine if Maintenance Modifications are required to the Licensed Work;

vii. if Maintenance Modifications are required to the Licensed Work, provide code correction to IBM in the format specified by IBM;

viii. return all APARs to IBM with one of the defined APAR Closing Codes assigned, including text describing the resolution of the error. In the event a code error was found, provide the rationale for the closing of the APAR;

ix. provide resolution to APARs in accordance with the assigned APAR Severity Level and within the defined APAR Correction Times. The APAR Correction Times include build, test, certification of    successful test of fix; and packaging for shipment to IBM or any applicable code fixes in the format specified by IBM;

x. receive technical questions and supporting documentation and materials; and

xi. analyze the technical questions and provide answers.

## 4. RSC's OTHER SUPPORT RESPONSIBILITIES

### a. TECHNICAL BACKUP SUPPORT TO IBM.

RSC will provide technical backup support to IBM on Product(s) including assistance in Problem Determination, Problem Source Identification, and problem diagnosis. In addition, you will provide assistance in answering questions that may arise concerning the operation and use of the Licensed Work that cannot be resolved by IBM.

### b. PRODUCT MAINTENANCE.

If corrections are made, RSC will provide a corrected version of the Licensed Work that includes all Maintenance Modifications to the Licensed Work. Additional corrected versions of the Licensed Works will be provided as determined and mutually agreed upon by IBM and you in the event they become necessary due to the frequency or severity of newly discovered defects. In order to provide Maintenance Modifications RSC will maintain a current copy of the Product(s).

RSC will maintain procedures to ensure that new fixes are compatible with previous fixes.

Packaging of Maintenance Modifications and migration code will be done as mutually agreed to by IBM and RSC.

## 5. APAR ORIGINATION/CORRECTION FOR VERIFIED APARS.:

Generally, APARs will originate from IBM and IBM Customers reporting problems or sending Reader Comment Forms. RSC will also report to IBM as APARs all valid errors discovered by RSC or RSC's end users. After receiving an APAR, IBM will assign an APAR number and Severity Level and forward the APAR to RSC for action.

IBM CONFIDENTIAL

June 23, 1997                                    Agreement Number:STL97041

## Statement of Work Number:001

For verified APARs for the Licensed Work, you will provide corrections as set out below within the applicable APAR Correction Times.

   i. the fix to the object code in machine-readable form, including a hardcopy description of the correction (which may include a paper submission of the fix);

   ii. the fix to the source code in machine-readable form, that corresponds to the object code fix; and

   iii. for a procedural workaround, supply corrected procedure in machine-readable form.

Reader Comment Forms received by IBM that do not form the basis of an APAR, will be forwarded to RSC for proper and prompt handling as appropriate.

### a. PRODUCT EDUCATION.

RSC will provide training on the Licensed Work at the scope and level of effort described below. This training will be provided on IBM's premises.

Level 1 and Level 2 training on the source code version of the Licensed Work will be provided for IBM Personnel within Sixty (60) days of delivery of the Licensed Work. This training will consist of a class when deemed necessary by IBM. RSC will supply to IBM, for review and concurrence in advance, a detailed course description including course objectives, specific outline and subjects to be covered, required advance reading and study assignments, and course completion and achievement criteria.

Refresher and update source code version training in a similar format to the initial course, will be provided by RSC on an annual basis at the request of the IBM Technical Coordinator.

### b. MISCELLANEOUS.

   i. RSC will provide to IBM the name and phone numbers of Personnel to contact when high priority problems are encountered outside of normal working hours that require immediate assistance. Your normal working hours are defined as 8:30 AM to 5:00 PM, Monday through Friday, Eastern Standard Time.

   ii. RSC will provide to IBM, upon request, information regarding the status of reported APARs related to the Licensed Work.

## 6. IBM/VENDOR COMMUNICATIONS.

It is desirable that IBM report APARs and status requests to RSC via an electronic interface and that RSC send APAR corrections, code fixes, status updates, and requests for additional documentation to IBM via the same interface. IBM and RSC will jointly plan the electronic system. IBM will fund the costs of this interface at its location and RSC will fund the costs at your location.

Critical situations may dictate use of the telephone for immediate communications, but will be followed up via electronic interface for tracking and recording purposes.

IBM CONFIDENTIAL

June 23, 1997                        Agreement Number:STL97041
Statement of Work Number:001

In circumstances where materials have to be exchanged utilizing Facsimile Courier services, IBM will be responsible for costs where IBM is the sender and RSC will be responsible for costs where RSC are the sender.

7. **MEETINGS.**

RSC agrees to participate with IBM in monthly telephone conference calls to review the status and performance of the parties' obligations. These calls may be scheduled more or less frequently upon mutual agreement of the Technical Coordinators.

IBM CONFIDENTIAL

June 23, 1997

Agreement Number:STL97041

Statement of Work Number:001

## APPENDIX B. BACKGROUND MATERIALS

NOTE: RSC WILL LIST, BY DELIVERABLE, ALL BACKGROUND MATERIALS CONTAINED IN THE BUFFER POOL TOOL. RSC WILL SPECIFY ALL PERTINENT INFORMATION TO ADEQUATELY IDENTIFY EACH ITEM, SUCH AS, PART NUMBER, NOMENCLATURE, REVISION OR VERSION NUMBER, MANUFACTURER OR OWNER, ETC. THIS LISTING MUST BE KEPT CURRENT THROUGHOUT THE PROJECT.

IBM CONFIDENTIAL

June 23, 1997                          Agreement Number: STL97041

## APPENDIX C. DEVELOPMENT ENVIRONMENT

NOTE:  ADD THIS APPENDIX TO LIST, BY DELIVERABLE, ALL DEVELOPMENT ENVIRONMENT ITEMS THAT ARE NOT FURNISHED TO DEVELOPER BY IBM FOR THIS PROJECT.  YOU SHOULD SPECIFY ALL PERTINENT INFORMATION TO ADEQUATELY IDENTIFY EACH ITEM, SUCH AS, PART NUMBER, NOMENCLATURE, REVISION OR VERSION NUMBER, MANUFACTURER OR OWNER, ETC.  THE LIST SHOULD ALSO IDENTIFY THOSE ITEMS THAT ARE COMMERCIALLY AVAILABLE.  FOR THOSE THAT ARE NOT COMMERCIALLY AVAILABLE, THE DEVELOPER IS REQUIRED TO DELIVER THEM TO IBM AND PART 9.0, "COMPLETION AND ACCEPTANCE CRITERIA" MUST REFERENCE THESE ITEMS AS DELIVERABLES.  THIS LISTING MUST BE KEPT CURRENT THROUGHOUT THE PROJECT.

IBM CONFIDENTIAL

June 23, 1997                          Agreement Number:STL97041

Statement of Work Number:001

# EXHIBIT I - CERTIFICATE OF ORIGINALITY

If RSC is furnishing to IBM any program product, offering, related documentation, microcode or other software material (collectively, "Software Material"), this questionnaire must be completed by RSC and sent to the IBM Contract Coordinator. IBM's royalty payments to RSC for the Deliverables requiring this certificate is conditioned upon IBM's acceptance of the certificate.

RSC has an obligation to communicate any additional information which IBM may require for copyright registration and/or enforcement of legal rights relating to the furnished Software Material.

**One questionnaire can cover one complete product, even if that product includes multiple modules. However, a separate questionnaire must be completed for code and another for its related documentation.**

**Please leave no questions blank. Write "not applicable" or "N/A" if a question is not relevant to the furnished Software Material.**

1. Name of the Software Material (provide complete identification including version, release and modification numbers for programs and documentation):

2. Was the Software Material or any portion thereof:

   a. Written by any person(s) other than RSC, or RSC employees working within their job assignment? YES _____ NO _____

      If 2a is NO, skip to question number 3; If 2a is YES, please answer the remaining sections of question number 2.

   b. Indicate if the whole Software Material or only a portion thereof was written by such person(s), and identify such portion. WHOLE_____ PORTION_____ (_____%)

   c. Indicate if the Software Material was furnished to RSC by companies or individuals: COMPANY(IES)_____ INDIVIDUAL(S)_____

      Explain how RSC acquired the Software Material written by the other party:

   d. If 2c is COMPANY(IES), provide for each Company the following information:

      i. Name

      ii. Address

      iii. Explain how the Company acquired title to the Software Material (e.g., Software Material was written by company's employees as part of their job assignment)

**IBM CONFIDENTIAL**

June 23, 1997                                    Agreement Number:STL97041

Statement of Work Number:001

iv. Did the Company have each non-U.S. author who contributed to the Software Material sign a waiver of moral rights agreement? YES_____ NO_____

   If YES, please attach a copy of the waiver agreement.

e. If 2c is INDIVIDUAL(S), provide for each person the following information:

i. Name

ii. Citizenship

iii. Address

iv. Did the person create the Software Material while employed by or under contractual relationship with another party? YES_____ NO_____

v. If YES, provide name and address of the other party.

vi. Did the person create the Software Material in a foreign country? YES_____ NO_____

vii. If 2e is YES, did that person sign a waiver of moral rights agreement? YES_____ NO_____

   If YES, please attach a copy of the waiver agreement.

3. Was the Software Material or any portion thereof registered at any Copyright Office? YES_____ NO_____

If YES, provide the registration data.

4. Was the Software Material or any portion thereof published? YES_____ NO_____

If YES, provide the following information,

a. When and where was it published?

b. Was any copyright notice present on the published material(s)?

   YES_____ NO_____

If YES, provide the copyright notice.

5. Was the Software Material or any portion thereof released by RSC to any outside person or company other than IBM? YES_____ NO_____

If YES, provide the following information:

a. When and where was the Software Material released?

b. To whom was the Software Material released.

c. Why was the Software Material released?

Page 20 of 23

IBM CONFIDENTIAL

June 23, 1997                          Agreement Number:STL97041

Statement of Work Number:001

d. Under what conditions (e.g., contract) was the Software Material released?

6. Was the Software Material or any portion thereof derived from preexisting material(s)?

YES_____  NO_____

If YES, provide the following information for each of the preexisting materials:

a. Name of the material

b. Author (if known)

c. Owner

d. Copyright notice appearing on the material (if any)

e. Was any new function added to the preexisting software? YES_____  NO_____

If YES, briefly describe below, or in an attachment, the new function(s)

f. State approximately:

i. ____ percent of preexisting material used

ii. ____ percent of preexisting material modified

iii. ____ percent of new material consisting of or deriving from preexisting materials

g. Briefly describe below, or in an attachment, how the preexisting material has been used.

7. Were the "external characteristics" of the Software Material or any portion thereof copied or derived from the "external characteristics" of another RSC or third party program or product? ("External characteristics" include display screens, data formats, instruction or command format, operator messages, interfaces, etc.) YES_____  NO_____

If YES, provide the following information for each of the preexisting materials:

a. Name of RSC or third party program or product

b. Author (if known)

c. Owner

d. Copyright notice relating to the preexisting "external characteristics" (if any)

e. Have the preexisting "external characteristics" been modified? YES_____  NO_____

If YES, briefly explain how such "external characteristics" have been modified?

8. Identify below, or in an attachment, any other circumstance which might affect IBM's ability to reproduce and market the Software Material, including:

IBM CONFIDENTIAL

June 23, 1997                           Agreement Number:STL97041

Statement of Work Number:001

a. confidentiality or trade secrecy of preexisting materials;

b. known or expected royalty obligations to others;

c. preexisting materials developed for another party or customer (including government) where you may not have retained full rights to the material;

d. materials acquired from a person or company possibly having no title to them.

9. Employee Identification:

a. Attach a list reporting the full name, address and citizenship of each of your employees who actually wrote code or largely contributed to the internal design and organization of the software Material.

If the legal or business requirements of any specific country do not permit the use of the wording of paragraph 9a, then the wording of paragraph 9b shall apply.

b. RSC recognizes that for purposes of copyright registration or enforcement of legal rights relating to the furnished Software Material, IBM may need to know the names and addresses of all the persons who wrote or contributed to the writing of the Software Materials. RSC hereby agrees to keep accurate records of all such names and addresses, and to provide them to IBM at IBM's request.

Please note that the following questions relate to any ICONS included as part of the furnished Software Material. (An ICON is generally defined as a symbol on a display screen that a user can point to with a device such as a mouse in order to select a particular operation or software application.) A separate set of answers should be furnished for each ICON and should be signed by the creator of the ICON.

10. Word(s), function or thing represented by the ICON:

11. Creator's

a. Name: _____

b. Job Title: _____

c. Business Address: _____

d. Business Telephone: _____

e. Citizenship: _____

f. Date of Creation of ICON in written form: _____

g. Certification: _____

I certify that the attached ICON was created by me as an assigned work task and that I created it without reference to any preexisting ICONS or other works authored or owned by another. YES_____ NO_____

Page 22 of 23

IBM CONFIDENTIAL

June 23, 1997                          Agreement Number:STL97041

Statement of Work Number:001

h. If 11g is NO, identify the preexisting ICONS or other works which were referenced (attach copies if available).

i. If the ICON was created for inclusion in a specific product, identify the product in which it will be (or was) used and provide the planned availability date and country of first publication.

j. Identify or describe any preexisting ICONS which are known to you to represent the same word or function which are similar in appearance to the ICON (attach copies if available).

k. Please attach a copy of the ICON and, for identification purposes, include on the drawing the information you provided in response to Item 11 above.

Creator's Signature _____

Date _____

IN CERTIFICATION OF, RSC has caused this Certificate to be executed by an authorized representative.

RSC

CERTIFICATION:

By:
Print Name:
Title:
Date:

IBM CONFIDENTIAL

June 23, 1997                                    Agreement Number: STL97041
Exhibit: Sample Employee Agreement

1. In consideration of my employment or my continued employment at will by Responsive Systems Company ("RSC") and the compensation that I receive during my employment, I agree:

   a. I will not disclose any Confidential Information to anyone outside Developer;

   b. I will not use Confidential Information for other than Developer's business purposes;

   c. I will not use, disclose, or cause Developer to disclose, any third party information unless the third party has authorized Developer to do so;

   d. I will not incorporate any third party's copyrighted material into my work unless the third party has authorized Developer to do so; and

   e. when I leave my employment with Developer, I will return to Developer all Developer property and any third party property, including all Confidential Information, drawings, computer programs, documentation, notebooks, reports, and other materials on electronic or printed media.

2. I assign to Developer my entire right, title, and interest in all Developments. The copyrights and other intellectual property rights in Developments created within the scope of my employment, belong to Developer by operation of law, or to a party contracting with Developer, as works made for hire.

   To the extent the rights may not be owned by Developer or such contracting party by operation of law, I assign to Developer or that contracting party, as the case may be, all of my rights in Developments.

   Items not assigned by this agreement are listed and described on the attached "Schedule of Separate Works." I will not include any part of such items in the materials I prepare for Developer unless such items are licensed or assigned to Developer under separate written agreement.

3. For any Developments assigned by the agreement, I will:

   a. disclose them to Developer; and

   b. at Developer's request, promptly execute a separate assignment to Developer and assist Developer in securing patent, copyright, or other form of protection in the United States and other countries. If I fail or am unable to do so, I authorize Developer to do all things necessary to secure such rights.

4. Developer, its subsidiaries, licensees, successors, or assigns, (direct and indirect) are not required to designate me as author of any Development when distributed publicly or otherwise. To the extent permitted by law, I waive and release my rights to such designation and those concerning future modifications of such Developments.

5. Developer may assign any rights, assignments, and representations made or granted by me in this agreement. Such rights, assignments, and representations are for the benefit of Developer's successors, and assigns, and parties contracting with Developer.

IBM CONFIDENTIAL

June 23, 1997                                    Agreement Number: STL97041
**Exhibit: Sample Employee Agreement**

6. This agreement supersedes all previous oral or written communications, representations, understandings, undertakings, or agreements with Developer on this subject. It can only be amended in writing by both parties.

7. For purposes of this agreement,

   a. Confidential Information means information or materials that are not publicly available, and:

   i. marked as confidential;

   ii. developed by Developer relating to Developer's past, present and future business. This includes Developments, technical data, specifications, designs, product plans, research and development information, personal and financial information, customer lists and marketing programs; or

   iii. information Developer has acquired or received from a third party in confidence.

   b. Developments are the actual or anticipated business, research or development of Developer or any work product suggested by or resulting from any task assigned or performed on behalf of Developer. They include any idea, invention, process, design of useful article (ornamental or otherwise), computer program, documentation, literary work, audio or visual work, and any other work of authorship, whether or not subject to patent, copyright or other forms of protection.

8. The laws of the State of New York govern this agreement.

9. I have received a copy of this agreement.

**EMPLOYEE**                          **DEVELOPER REPRESENTATIVE**

Signature: _____    Signature: _____

Name: _____    Name: _____

Date: _____    Date: _____

## 1.0  SCHEDULE OF SEPARATE WORKS

(Attachment to Exhibit for __(Employee's Name)__)

The following are works that are not assigned by the agreement, in which I have right, title, or interest, and that were conceived or written either wholly or in part by me, prior to or outside the scope of my employment with Developer:

Description: (if none enter the word "None")

Page 2 of 3

IBM CONFIDENTIAL

**June 23, 1997**                                         Agreement Number: STL97041
**Exhibit: Sample Employee Agreement**

Please indicate if any item listed is published, registered as a copyright, patented, or is the subject of a patent application:

Please indicate the name of any organization or third party who also has rights in any of the listed items:  (such as former employers, partners, etc.)

**Title**                                  **Third Party**

The foregoing is complete and accurate to the best of my knowledge.

Employee Signature:        _____

Print Full Name of Employee: _____

Date:                      _____

IBM CONFIDENTIAL

# EXHIBIT D

# DESCRIPTION OF LICENSED WORK

### Agreement Number: STL97041 DLW Number:002

*Dated*

## April 21, 1998

*between*

## International Business Machines Corporation
## Santa Teresa Laboratory
## 555 Bailey Avenue
## San Jose, CA 95141

*and*

## Responsive Systems Company
## 281 Highway 79
## Morganville, NJ 07751

## IBM CONFIDENTIAL

April 21, 1998

Agreement Number: STL97041

Description of Licensed Work Number: 002

This Description of Licensed Work ("DLW") is a Transaction Document issued under the IBM Developer Agreement ("IDA") for the license to IBM of an existing Licensed Work that Responsive Systems Company (RSC) owns. RSC retains ownership of RSC's intellectual property rights in the Licensed Work, but grants IBM a non-exclusive license to the Licensed Works.

By signing this Transaction Document, each of us agrees that the complete agreement between us regarding this project consists of:

1. this Transaction Document;

2. the IBM Developer Base Agreement Number STL97041;

3. The Description of Licensed Work Number STL97051 number 001;

4. Statement of Work ("SOW") Number STL97041 SOW number 001;

5. Statement of Work ("SOW") Number STL97041 SOW number 002;

The following are related agreements between IBM and the Developer:

6. the Agreement for Exchange of Confidential Information Number STL96352;

7. the Source Code Custody Agreement Number STL97051;

8. The Description of Escrowed Work Number STL97051 number 001; and

9. The Description of Escrowed Work Number STL97051 number 002.

AGREED TO:                                          AGREED TO:

International    Business    Machines          Responsive Systems Company
Corporation

By: _____          By: _____
        Authorized Signature                          Authorized Signature

Print    Rich Beckert                          Print    Joel Goldstein
Name:                                          Name:

Date: _____ 6/2/98 _____                    Date: _____ 5/24/98 _____

IBM Office Address:                            RSC Address:

        555 Bailey Avenue (Package Delivery          281 Highway 79
        San Jose, CA 95141                          Morganville, NJ 07751
        P.O. Box 49023 (Mailing Address)
        San Jose, CA 95161-9023

IBM CONFIDENTIAL

April 21, 1998

Agreement Number: STL97041
Description of Licensed Work Number: 002

## 1.0 DEFINITIONS

### 1.0.1 ROYALTY ACCOUNTING MONTH

Royalty Accounting Month is the time frame during which Royalty fees become due. The start and end date of a Royalty Accounting Month varies by the IBM geographic area where licenses are granted. The Royalty Accounting Months are:

1. United States/Puerto Rico:  begins on the first business day of the current calendar month and ends on the last business day of that month.

2. Americas/Far East Countries (excluding U.S.):  begins on the first business day of the prior calendar month, ending on the last business day of that month.

3. Europe/Middle East/Africa Countries:  begins on the first business day of the last week of the prior calendar month.  It includes the first three weeks of the current calendar month and ends on the last business day of that third week.

## 2.0 DESCRIPTION

### 2.1 The Licensed Work is

Code, documentation and any other related written material for Responsive Systems Buffer Pool Tool  that RSC creates to meet the requirements of IBM Developer Agreement  Number STL 97041 Statement of Work Number 002. The Buffer Pool Tool  is an easy to use , new generation software product providing an in-depth analysis  of DB2 buffer pool activity which shall be enhanced pursuant to Statement of Work 002 to support DB2 V6,  including any needed buffer management changes, and will be enabled with "try and buy" capabilities which will allow the end user a limited period to try the product before a self initiated timing mechanism will disable the program unless the end user licenses the product from IBM.

### 2.2 The Development Environment for the Licensed Work includes:

NOTE: RSC to provide information for this section.

### 2.3 The Background Materials associated with the Licensed Work are:

NOTE: RSC to provide information for this section if background materials are used.

## 3.0 GRANT OF LICENSE

### 3.1 SCOPE

RSC grants IBM a non-exclusive, irrevocable, worldwide license to use, execute, reproduce, display, perform, transfer, distribute, and sublicense the Licensed Work and to combine the Licensed Work with other code and products for Product packaging and distribution purposes. RSC grants IBM the right to authorize others to do any of the above.  This license applies to associated audio and visual works.

### 3.2 PRODUCT NAMES AND TRADEMARKS

For IBM's marketing of the Licensed Work and Products , RSC grants IBM a non-exclusive, irrevocable, worldwide, paid-up license to use the names and trademarks that RSC uses to

Page 2 of 6

IBM CONFIDENTIAL

April 21, 1998                              Agreement Number: STL97041
                    Description of Licensed Work Number: 002

identify the Licensed Work. RSC grants IBM the right to authorize others to do any of the
above. If RSC informs IBM in writing that RSC objects to IBM's use of RSC's Product names
and trademarks, IBM will take reasonable steps to satisfy RSC's objection. RSC may reasonably
monitor the quality of Products bearing RSC's trademarks under this license.

## 4.0  LICENSED WORK

### 4.1  MAJOR ENHANCEMENTS

RSC will offer to IBM, within sixty (60) days after availability, all Major Enhancements to the
Licensed Work that RSC creates or authorize others to create. The Major Enhancements will
become part of the Licensed Work if we agree on terms. This DLW will be amended to include
such Major Enhancements. If we do not agree, RSC will make the Major Enhancements
available to IBM Licensee's customers under terms and conditions no less favorable than those
RSC offers anyone else.

### 4.2  BASIC ENHANCEMENTS AND MAINTENANCE MODIFICATIONS

RSC will provide at no charge, to IBM Basic Enhancements and Maintenance Modifications for
the Licensed Work that RSC creates or authorize others to create. They will automatically
become part of the Licensed Work. This obligation will begin when IBM accepts the Licensed
Work and will continue until the Agreement expires or is terminated.

### 4.3  DERIVATIVE WORKS OF THE LICENSED WORK

If a Derivative Work is created by IBM, pursuant to a release in the Source Code Custody
Agreement, IBM may reasonably request that a reduced  royalty be set that considers the
percentage of the Licensed Work utilized. This DLW will be amended to describe the new
royalty terms.

## 5.0  COPYRIGHT

### 5.1  REGISTRATION

RSC is responsible for copyright registration, maintenance and enforcement of the Licensed
Work. RSC authorizes IBM to act as RSC's agent in the copyright registration of the Licensed
Work.

### 5.2  INFRINGEMENT

If a third party is infringing RSC's copyright in the Licensed Work, and RSC does not
immediately move to protect its copyrights, IBM may reasonably reduce its payments to RSC
based on the reduced value of IBM's rights. Full payment will resume after RSC restores the full
value.

## 6.0  ROYALTY TERMS

### 6.1  ROYALTIES

In consideration for the rights and licenses granted in this DLW, IBM will pay RSC royalties
against revenue received by IBM as follows:

IBM CONFIDENTIAL

April 21, 1998                           Agreement Number: STL97041
                        Description of Licensed Work Number: 002

1. thirty percent (30%) of all revenue recorded for the Products licensed on a stand alone basis; and

2. thirty percent (30%) of the revenue recorded for and attributable to the Product(s) when incorporated in or bundled with other new or existing IBM or non-IBM products, code, and/or services. The revenue attributable to the Product(s) shall be the total license fee received by IBM for the complete offering multiplied by the ratio of the list price(s) of the Product(s) to the combined list prices of all offering products and components (or if no list price is known, then the reasonable market value(s))

3. notwithstanding the foregoing, in no event shall the royalty amount paid to RSC for each Licensed Work licensed in groups 40 through 80 be less than three hundred dollars ($300.00).

## 6.2    NO ROYALTIES

IBM has no royalty obligation for:

I. the Licensed Work used for

 a. IBM's internal use, development, maintenance, or support activities;

 b. marketing, sales, demonstrations, customer testing periods, training, educational purposes;

 or

 c. backup purposes;

2. Maintenance Modifications or Basic Enhancements;

3. audio and visual works associated with the Licensed Work ; or

4. protocols or interfaces similar to those used in this Licensed Work.

5. the copying and distribution of Products on a CD ROM or other media on which the Product is capable of being secured (e.g. "locked" or "encrypted") to limit a recipient's use of the Product. IBM may allow some limited preview, trial, or demonstration use of the Product, but will deny the recipient the ability to make full, intended use of the Product, unless and until the recipient obtains a full license from IBM and receives an unlocking or de-encryption facility.

## 6.3    PAYMENTS

Royalties are paid against revenue received by IBM in Royalty Accounting Months that are completed within each calendar quarter. Payment will be made within forty five days (45) or less if possible following the calendar quarter.

Royalties will be paid less adjustments and refunds due to IBM. With each payment, IBM will provide a statement summarizing how the payment was determined.

IBM CONFIDENTIAL

April 21, 1998                              Agreement Number: STL97041
                      Description of Licensed Work Number: 002

## 6.4  LOWER ROYALTY PAYMENTS

IBM may request a lower royalty for the Licensed Work for a transaction where a substantial discount is required. If RSC agrees, both parties will sign a letter specifying the transaction and its lower royalty payment.

## 6.5  EXCLUSIVE STATEMENT OF ROYALTIES

The royalty payments defined in this DLW fully compensate RSC for the non-exclusive rights and licenses granted in the Base Agreement and this DLW.

## 7.0  SURVIVAL

The termination of the Base Agreement or a Transaction Document will not affect previously granted paid-up rights or licenses to IBM or Product users.

If IBM's license to the Licensed Work is not paid-up at termination, rights and licenses will continue for IBM Licensees to a) perform maintenance and support for IBM's Products; and b) fill orders received before termination. IBM's royalty obligations for such orders will continue.

## 8.0  COORDINATORS

## 8.1  CONTRACT COORDINATOR

These coordinators are responsible for amendments and all non-technical administrative matters associated with this DLW. The Contract Coordinators are:

### 8.1.1 IBM Contract Coordinator

Roy Maharaj
555 Bailey Avenue (Package Delivery)
San Jose, CA 95141

P.O Box 49023 (Mailing Address)
San Jose, CA 95161-9023

Phone Number: 408-463-2719
Facsimile Number: 408-463-5605
Internal Zip: J74/G4

### 8.1.2 Vendor Contract Coordinator

Joel Goldstein
281 Highway 79
Morganville, NJ 07751

Phone Number:  732-972-1261
Facsimile Number:  732-972-9416

IBM CONFIDENTIAL

April 21, 1998                         Agreement Number: STL97041
                 Description of Licensed Work Number: 002

## 8.2  TECHNICAL COORDINATOR

These coordinators will administer and coordinate the technical matters associated with this DLW. They are responsible for accepting all Deliverables and will supervise all exchanges of confidential information under the ABCI. The Technical Coordinators are:

### 8.2.1  IBM Technical Coordinator

Brian Starr
555 Bailey Avenue (Package Delivery)
San Jose, CA 95141

P.O Box 49023 (Mailing Address)
San Jose, CA 95161-9023

Phone Number: 408-463-4199
Facsimile Number: 408-463-2633
Internal Zip: ICE/F270

### 8.2.2  Vendor Technical Coordinator

Joel Goldstein
281 Highway 79
Morganville, NJ 07751

Phone Number: 732-972-1261
Facsimile Number: 732-972-9416

## 9.0  TERMINATION

This DLW shall be effective from the date of execution and continue until terminated in accordance with Section 8.0 of the IDA Agreement Number: STL97041. For the purposes of this DLW, Subsection 2 of Section 8.2 of the IDA does not apply.

Either party may terminate for convenience by giving ninety (90) days advance written notice at any time during any period which is both (a) eighteen (18) months after GA of the Product and (b) prior to IBM having licensed fifty (50) copies of the Product to customers. Nothing in this provision is intended to modify or override Section 3.2 of the IDA Base Agreement.

# EXHIBIT E

# STATEMENT OF WORK

## Agreement Number: STL97041  SOW Number: 002

*Dated*

### April 21, 1998

*between*

**International Business Machines Corporation**
**Santa Teresa Laboratory**
**555 Bailey Avenue**
**San Jose, CA 95141**

*and*

**Responsive Systems Company**
**281 Highway 79**
**Morganville, NJ 07751**

## IBM CONFIDENTIAL

April 21, 1998                          Agreement Number:STL97041

Statement of Work Number:002

This Statement of Work ("SOW") is a Transaction Document issued under the IBM Developer Agreement ("IDA") for a licensing agreement between IBM and Responsive Systems Company (RSC) to bring RSC's product, Buffer Pool Tool, to market under an IBM logo.

1. By signing this Transaction Document, each of us agrees that the complete agreement between us regarding this project consists of:

   a. this Statement of Work, STL97041 SOW number 001;

   b. the IBM Developer Agreement Base Agreement Number STL97041;

   c. the Description of Licensed Work ("DLW") number STL97041 DLW number 001;

   d. the Description of Licensed Work ("DLW") number STL97041 DLW number 002;

2. The following are related agreements between IBM and the Developer:

   a. the Agreement for Exchange of Confidential Information ("AECI") number STL96352;

   b. the Source Code Custody Agreement number STL97051;

   c. the Description of Escrowed Work ("DEW") number STL97051 DEW number 001

   d. the Description of Escrowed Work ("DEW") number STL97051 DEW number 002.

By signing below, each of us agrees to the terms of this SOW. All Deliverables and Services you provide under the SOW are subject to it. Any signed copy of the SOW made by reliable means (for example, photocopy or facsimile) is considered an original.

ACCEPTED AND AGREED TO:                ACCEPTED AND AGREED TO:

International    Business    Machines   Responsive Systems Company
Corporation

By: _____           By: _____
    Authorized Signature                  Authorized Signature

Print   Rich Beckert                   Print   Joel Goldstein
Name:                                  Name:

Date:   6/2/98                         Date:   5/21/98

IBM Office Address:                    Developer Address:

   555 Bailey Avenue                      281 Highway 79
   San Jose, CA 95141                     Morganville, NJ 07751

Page 1 of 23

**IBM CONFIDENTIAL**

April 21, 1998            Agreement Number:STL97041

Statement of Work Number:002

## 1.0 DEFINITIONS

When used in this SOW, the capitalized terms will have the meanings defined in the IDA Base Agreement. In addition, the terms listed below will have the following meanings:

## 1.1 ESCROWED MATERIALS:

Escrowed Materials are the items associated with a Licensed Work that Developer will deposit with Custodian. A Description of Escrowed Work describes the Escrowed Materials for a Licensed Work. The Escrowed Materials include:

1. the Source Code for the Licensed Work in machine-readable form, including all updates to it;

2. the system documentation (including statements of principles of operation and schematics) related to the licensed Work in hard copy and machine-readable form;

3. commentary or explanation that may be required to understand and use the Source Code;

4. a list of all items in the Development Environment that are commercially available;

5. the Development Environment items that are not provided by IBM and are not commercially available;

6. a list of all Source Code modules of the Licensed Work; and

7. a directory listing for each machine-readable medium.

## 1.2 CODE :

Code means computer programming code, including both Object Code and Source Code.

### 1.2.1 Object Code

Object code is the computer programming code substantially in binary form. It is directly executable by a computer after processing, but without compilation or assembly.

### 1.2.2 Source Code

Source Code is the computer programming code, other than Object Code, and related source code level system documentation, comments and procedural code, such as job control language. It may be printed out or displayed in a form readable and understandable by a programmer of ordinary skill.

## 2.0 IBM'S RESPONSIBILITIES.

IBM will accomplish the following under this SOW:

## 2.1 PROJECT MANAGEMENT

1. IBM will provide the following IBM documents to you for additional detail regarding IBM's design, development, documentation and test requirements:

**IBM CONFIDENTIAL**

April 21, 1998    Agreement Number:STL97041

Statement of Work Number:002

   a. Information Development Format Specifications National Language and Design Guide, which has already been provided to RSC as a part of (STL97041 SOW 001).

   b. IBM Style Guidelines which has already been provided to RSC as a part of (STL97041 SOW 001).

   c. Standard Packaging Rules for MVS based products.

2. Announce, as IBM deems appropriate, the availability of this Product in IBM's standard product catalogues.

3. IBM will review and accept or reject all Deliverables according to the acceptance criteria specified in Section 8.0, "COMPLETION AND ACCEPTANCE CRITERIA." IBM's acceptance or rejection will be made within ten (10) days of receipt.

4. If available, IBM shall inform RSC of DB2 V6 testing environments available within IBM. IBM may also inform RSC of possible methods to populate the DB2 V6 testing environment with data. RSC agrees that it shall be obligated to pay for all fees or expenses associated with testing the Licensed Works in any DB2 V6 testing environments.

## 2.2 MARKETING

IBM will develop a marketing plan including announcement, promotion, and distribution of the Product and implement that marketing plan as modified in IBM's judgment. The plan will be provided to RSC for its comments.

## 2.3 MAINTENANCE AND SUPPORT

IBM will provide Level 1 maintenance and support for the Product as specified in Appendix A, Maintenance and Support.

## 2.4 COMPENSATION AND PAYMENT

In compensation for the rights granted and obligations assumed hereunder, IBM will pay royalties to RSC as specified in DLW 002.

## 3.0 RSC RESPONSIBILITIES

RSC will perform the following Services under this SOW:

1. RSC will provide all Deliverables in accordance with the specifications set out in Sections 3.1 "DESIGN, CODE AND DEVELOPMENT", 6.0 "SPECIFICATIONS", 7.0, "COMPLETION AND ACCEPTANCE CRITERIA", and the timetable set out in Section 8.0, "SCHEDULE."

## 3.1 DESIGN, CODE AND DEVELOPMENT

1. RSC will ensure that the Deliverables provide for language translation of all acknowledgments, messages, and end user screens, and will accommodate single and double byte language translation conforming to the rules and guidelines described in the IBM publication titled, "National Language Design Guide";

Page 3 of 23

**IBM CONFIDENTIAL**

April 21, 1998                                  Agreement Number:STL97041

Statement of Work Number:002

2. RSC will ensure that if there are any user interfaces they will comply with the IBM CUA standards. There will be no undocumented, non-standard, interfaces in the final Deliverables to IBM;

3. RSC will provide a final version of the user documentation Deliverables (both soft copy and hard copy ) in a postscript format or in high quality hard copy and which conform to IBM Style Guidelines.

4. RSC will ensure that all Code (Source and Object) will comply with IBM naming conventions and be year 2000 compliant (i.e., able to handle dates beyond the year 1999 in the manner in which a user would intend and expect). This means that the Product must meet the following four criteria:

   a. General Integrity: No value for current date will cause interruptions in desired operations -- especially from 20th to 21st centuries.

   b. Date Integrity: All manipulations of time-related data (dates, duration, days of week, etc.) will produce desired results for all valid date values within the application domain.

   c. Explicit Century: Date elements in interfaces and data storage permit specifying century to eliminate date ambiguity.

   d. Implicit Century: For any date element represented without century, the correct century is unambiguous for all manipulations involving that element.

## 3.2   SKILLS TRANSFER FROM RSC TO IBM

RSC will conduct a skills transfer class, 'Teach The Teachers (T3)', for IBM as specified in Section Part 9.0, "SCHEDULE." The class will transfer the information needed for IBM's marketing forces, and IBM service people to support the new Deliverables.

## 3.3   MAINTENANCE AND SUPPORT

RSC will provide Level 2 and 3 maintenance and support for all Deliverables as specified in Appendix A, Maintenance and Support.

## 3.4   QUALITY

RSC will monitor and manage work activities against quality objectives, as set forth in Section 6.0 Specifications.

## 3.5   LIST OF DEVELOPMENT ENVIRONMENT ITEMS.

RSC will list in Appendix C Development Environment and describe in detail all Development Environment items required by the IDA. RSC will identify the owners for each of these items and identify those items that are commercially available.

## 4.0   DELIVERABLES

RSC will prepare or provide the following to IBM according to Section 6.0 "SPECIFICATIONS" and Section 9.0, "SCHEDULE."

**IBM CONFIDENTIAL**

April 21, 1998                          Agreement Number:STL97041

Statement of Work Number:002

## 4.1   LICENSED WORKS

Deliverable No. 1 - Buffer Pool Tool –

This Deliverable consists of Code and Documentation which is an easy to use new generation software product providing an in depth analysis of DB2 buffer pool activity as described in RSC product brochures, and enhanced or modified to meet the requirements of this SOW. Using standard IBM supported interfaces and requiring no hooks into the DB2 system, the Buffer Pool Tool provides a level of statistical information about buffer pool activity unavailable from any other source and predicts the performance effect of changes to pool sizes, thresholds, and placement of objects into different pools. Pursuant to this SOW the Buffer Pool Tool will be enhanced to support DB2 V6, including any needed buffer management changes, and will be enabled with "try and buy" capabilities which will allow the end user a limited period to try the product before a self initiated timing mechanism will disable the program unless the end user licenses the product from IBM.

Deliverable No. 2 - Updates to Marketing Materials.

## 4.2   DOCUMENTATION

Deliverable No. 3 - User's Guide

RSC will deliver in soft copy a User's Guide for Deliverable No. 1. This Deliverable will:

1. conform essentially to the IBM Style Guidelines.

2. include legal wording for editing notices page and notices page. Special text/instructions to be provided by IBM.

3. be in postscript format. If unable to provide postscript format, RSC will have to provide high quality hard copy from which IBM can reproduce copies.

## 4.3   DEVELOPMENT ENVIRONMENT

RSC will provide to IBM all Development Environment materials listed in Section 3.5 above, Development Environment that are identified as not commercially available.

## 4.4   CERTIFICATE OF ORIGINALITY

RSC will provide a Certificate of Originality for items identified in 4.1, "Licensed Works.." A blank Certificate of Originality is provided as Exhibit 1 to this SOW. IBM will notify RSC in writing of IBM's acceptance of the Certificate of Originality prior to the execution of this agreement. IBM's royalty payments to RSC for the Deliverables requiring this certificate is conditioned upon IBM's acceptance of the certificate.

## 5.0   BACKGROUND MATERIALS

RSC will describe these items in Appendix B, Background Materials, and will identify each item's owner. RSC will update this list as required to keep it current and accurate.

IBM CONFIDENTIAL

April 21, 1998                          Agreement Number:STL97041

Statement of Work Number:002

## 6.0    SPECIFICATIONS

RSC will deliver a buffer tool capable of operating in IBM's DB2 environment that will be enhanced to support DB2 V6, including any needed buffer management changes, and will be enabled with "try and buy" capabilities which will allow the end user a limited period to try the product before a self initiated timing mechanism will disable the program unless the end user licenses the product from IBM.

## 7.0    COMPLETION AND ACCEPTANCE CRITERIA

In order to qualify for acceptance, each Deliverable and Service must be provided according to the criteria provided below:

1. Each Deliverable will operate successfully with all current levels and releases of IBM's DB2 product Version 6 according to the criteria provided in the product documentation by RSC. It is RSC's intent to provide support for any follow on DB2 versions as well.

2. Complete a successful verification of customer satisfaction as identified in Section 7.0.

3. IBM will conduct a Beta Test Program by providing the beta object code to a select group of IBM customers for evaluation. From time to time during the course of the Beta Test Program IBM shall inform RSC of the customer feedback it receives regarding the new functionality of the beta code. RSC agrees to implement all commercially reasonable Error Corrections and Enhancements reflecting the customer feedback into the Licensed Work prior to delivering the completed Licensed Works to IBM. If upon the completion of the Beta Test Program IBM is satisfied with the functionality of the Licensed Works then IBM shall include the Licensed Work in the IBM Product.

## 8.0    SCHEDULE

The schedule for performance and completion of work, including milestones and delivery dates, is as follows:

| EVENT | DUE DATE |
|---|---|
| 1. Licensed Work delivery to IBM for FCS | 7/10/98 |
| 2. Publication provided to IBM for FCS | 8/14/98 |
| 3. Participation in IBM First Customer Shipment | 9/25/98 |
| 4. Licensed Work delivery to IBM for GA | 3/xx/99 |
| 5. Publication provided to IBM for GA | 4/xx/99 |
| 6. Product Announcement | |

IBM CONFIDENTIAL

**April 21, 1998**                          Agreement Number:STL97041

Statement of Work Number:002

7. Product General Availability                          6/xx/99

Note: RSC to provide additional dates and specific events

**This schedule is for planning purposes only and may be changed upon mutual agreement of the parties.**

## 9.0 COMPENSATION

1. Compensation  will be paid according to criteria stated in the Description of Licensed Work STL97041 DLW 002.

## 10.0  TERM AND TERMINATION

The term of this SOW shall be coextensive with the terms of Agreement Number STL97041 DLW Number 002.  Notwithstanding any termination of the DLW and this SOW, RSC shall continue  to provide the maintenance and support specified in Section 3.4 of this SOW for a period of eighteen (18) months following the termination of the DLW and this SOW.  All the provisions that would naturally apply to such ongoing maintenance and support shall continue and survive.

## 11.0   COORDINATORS

## 11.1 CONTRACT COORDINATOR

These coordinators are responsible for amendments and all non-technical administrative matters associated with this SOW.  Our Contract Coordinators are:

### 11.1.1 For IBM

Roy Maharaj
555 Bailey Avenue (Package Delivery)
San Jose, CA 95141

P.O. Box 49023 (Mailing Address)
San Jose, Ca 95161-9023

Phone Number: 408 463-2719
Facsimile Number: 408- 463-5605
Internal Zip: J74/G4

### 11.1.2 For RSC

Joel Goldstein
281 Highway 79
Morganville, NJ 07751

Phone Number: 732-972-1261

IBM CONFIDENTIAL

April 21, 1998                          Agreement Number:STL97041

Statement of Work Number:002

Facsimile Number: 732-972-9416

## 11.2  TECHNICAL COORDINATOR

These coordinators will administer and coordinate the technical matters associated with this SOW. They are responsible for accepting all Deliverables and will supervise all exchanges of confidential information under the AECI. Our Technical Coordinators are:

### 11.2.1  For IBM

Brian Starr
555 Bailey Avenue (Package Delivery)
San Jose, CA 95141

P.O. Box 49023 (Mailing Address)
San Jose, Ca 95161-9023

Phone Number: 408-463-4199
Facsimile Number: 408-463-2633
Internal Zip: ICE/F270

### 11.2.2  For RSC

Joel Goldstein
281 Highway 79
Morganville, NJ 07751

Phone Number: 732-972-1261
Facsimile Number: 732-972-9416

## 12.0  UNIQUE TERMS AND CONDITIONS

### 12.1  MODIFICATIONS

Refer to IDA Base Agreement, STL97041, and modify the following terms for purposes of this SOW only:

Section 3.8, RSC WILL NOT, item 1 is replaced with the following

3.8.(1) subcontract obligations under the IDA; provided that IBM shall not unreasonably withhold approval to subcontract obligations.

Section 5.3, Quality, does not apply.

Section 6.0, Representations and Warranties, item 7 is replaced with the following:

7. the reasonably well documented source code, if any, that RSC provides corresponds to the current release or version of the Deliverable.

Section 9.2 RSC WILL, item 2 is replaced with the following:

Page 8 of 23

**IBM CONFIDENTIAL**

April 21, 1998                    Agreement Number:STL97041

2. have agreements with RSC's Personnel to perform obligations under the IDA, relating to the Buffer Pool Tool, and to grant rights to IBM. The "Exhibit Sample Employee Agreement", or its equivalent, may be used for this purpose.

Section 9.0 RSC WILL, item 4 is replaced with the following:

4. inform IBM if RSC plans to assign a former IBM or IBM Subsidiary employee to perform work under the IDA. IBM reserves the right to deny such assignment but will not be unreasonable in its decision.

Section 11.0 Insurance, item 1c., does not apply.

## 12.2 ADDITIONAL TERMS AND CONDITIONS.

Refer to IDA Base Agreement and add the following terms for purposes of this SOW only:

1. **SOURCE CODE CUSTODY AGREEMENT.** The Escrowed Materials, including the reasonably well documented Source Code and the Development Environment associated with the Licensed Works identified in DEW 002 will be escrowed under the terms and conditions of the Source Code Custody Agreement. This Statement of Work does not require RSC to do any Derivative Work of the Buffer Pool Tool. If IBM requires such a Derivative Work, a new or amended and restated Transaction Document will be prepared.

## 13.0 MARKETING ASSISTANCE

### 13.1 MARKET SUPPORT PLAN

IBM may prepare a market support plan for each Product it announces. It will be summarized and provided to RSC under the AECL. IBM may change the plan without RSC's prior approval. RSC will not rely upon information or statements provided by IBM, including the market support plan, for RSC's business forecasts.

### 13.2 NOTIFICATION OF GENERAL AVAILABILITY

For each Product IBM announces, IBM will provide RSC with a copy of its notice of availability to customers and distributors.

### 13.3 MARKETING ASSISTANCE

Upon IBM's request and RSC's agreement , RSC will:

1. review and comment on any press release or marketing materials;

2. participate in demonstrations of Products at trade shows, conferences and sales meetings when mutually agreed to; and

3. participate with IBM marketing representatives in executive sales calls for large prospects and major distributors when mutually agreed to; and

4. RSC will provide any updates to the marketing presentation in "PowerPoint" format, with speaker notes to IBM at the time of delivery to IBM of the Licensed Works. Further RSC will provide any enhancements to such marketing presentation and also any demonstration

IBM CONFIDENTIAL

April 21, 1998                          Agreement Number:STL97041

Statement of Work Number:002

materials (code, videos, etc.), brochures and other marketing material produced or developed by or for RSC during the term of this SOW. Such materials shall be provided as soon as they are available.

IBM CONFIDENTIAL

April 21, 1998

Agreement Number:STL97041

Statement of Work Number:002

# APPENDIX A. MAINTENANCE AND SUPPORT

This Appendix sets out IBM's and RSC's obligations relative to providing maintenance and support for Products that are Licensed Works or are derived from the Licensed Works described in Section 4.0, Deliverables.

1. **DEFINITIONS:** Except to the extent specifically modified or supplemented in this section, the capitalized terms in this Appendix will have the meanings defined in the SOW and the IDA Base Agreement. Capitalized terms not defined in those documents will have the meanings below:

   a. **APAR** is the completed form entitled "Authorized Program Analysis Report," that is used to report suspected code or documentation errors and to request their correction.

   b. **APAR SEVERITY LEVELS** is a designation assigned to errors that is intended to indicate the seriousness of the error based upon the impact that the error has on the user's operations.

   i. "Severity 1" is a "critical problem;" the program is unusable and the error severely impacts the user's operation;

   ii. "Severity 2" is a "major problem;" important function is not available resulting in operations being severely restricted;

   iii. "Severity 3" is a "minor problem;" inability to use a function occurs, but it does not seriously affect the user; and

   iv. "Severity 4" is a "minor problem;" that is not significant to the user's operations. The user may be able to circumvent the problem.

   c. **APAR CORRECTION TIMES** are the objectives that you must achieve for resolution of errors and distribution of the correction to IBM.

   i. "Severity 1" requires maximum effort support until an emergency fix or bypass is developed and available to be shipped to IBM. Critical situations may require customer, IBM, and your Personnel to be at their respective work locations, or available on an around-the-clock basis. The objective will be to provide relief to the user within 24 hours;

   ii. "Severity 2" must be resolved within 10 calendar days;

   iii. "Severity 3" must be resolved within 15 calendar days; and

   iv. "Severity 4" within 28 calendar days.

The number of days indicated represents the time from receipt of the APAR and supporting documentation by you until the correction or other resolution is shipped by you to IBM. IBM will allow exceptions from these objectives when warranted by technical or business considerations.

IBM CONFIDENTIAL

April 21, 1998                    Agreement Number: STL97041

Statement of Work Number: 002

d. **APAR CLOSING CODES** are the established set of codes used to denote the final resolution of an APAR. Closing codes will be provided to you sixty (60) days prior to the start of the maintenance obligations.

e. **LEVEL 1 SUPPORT** are those activities that assist the user in resolving "how to" and operational questions, as well as technical questions on installation procedures.

f. **LEVEL 2 SUPPORT** are those activities that require additional research and analysis of a user problem. The Problem Management System data base is checked to locate a duplicate of the problem being reported and the previous solution applied to that problem.

g. **LEVEL 3 SUPPORT** are those activities that require duplication of the user problem, analysis of the APAR record, and creation and distribution of a Program Temporary Fix (PTF) to resolve the user problem.

h. **PROBLEM DETERMINATION** is the process of determining whether a problem is being caused by hardware, software, or documentation.

i. **PROBLEM MANAGEMENT RECORD (PMR)** is a record created when a user makes the initial support request. This record becomes a part of the Problem Management System database and records the essential information about the user question or problem.

j. **PROBLEM MANAGEMENT SYSTEM (PMS)** is an internal IBM developed software system used to record customer demographic information and encode data about the question or problem being reported. The PMS will handle the dispatching of the call record to you. The PMS will provide management reports of the call activity and the recording and tracking of all questions and problems to final resolution. The PMS will verify that each customer is "entitled" to program support.

k. **PROBLEM SOURCE IDENTIFICATION** is the process of determining which software or documentation component is failing, or attributing the failure to some external cause such as operator/user error, or no trouble found.

l. **PROGRAM TEMPORARY FIX (PTF)** is an interim correction to an error. A PTF is distributed to the user who originally identified the error, and all other users who report the same error.

m. **READER COMMENT FORM (RCF)** is the form which is used to communicate errors in and comments on the documentation. The Reader Comment Form is generally the last page of a manual or brochure, and is completed by the user and mailed to the address specified thereon.

n. **DEVELOPER TEST SYSTEM** is an appropriate configuration of installed hardware and software that is representative of typical IBM customer installations using the Product(s). This test system will contain at a minimum the following:

  i.  the current and current minus 1 level of the Product(s);

**IBM CONFIDENTIAL**

April 21, 1998

Agreement Number:STL97041

Statement of Work Number:002

ii. the current and current minus 1 level of prerequisite/co-requisite IBM hardware and software as defined to RSC by IBM; and

iii. such system will consist of programmable workstation components only unless IBM specifies and provides other equipment at no charge to RSC.

## 2. GENERAL RESPONSIBILITIES

1. IBM will be the primary customer contact point for questions, problems, and assistance concerning the Product(s). It is IBM's intention to provide support services for the Product(s) as follows:

   a. Telephone customer response line to respond to questions regarding installation and use of the Product(s);

   b. Telephone customer response line to respond to end user's suspected code defects and documentation errors regarding installation and operation of the Product(s); and

   c. Product maintenance through Maintenance Modifications to end users.: You will provide to IBM Product training, technical support, Level 3 maintenance and corrections for verified errors.

## 3. SPECIFIC RESPONSIBILITIES BY SUPPORT LEVEL.

Product users will initiate requests for support by contacting IBM. The IBM representative will call the request originator back to begin work on the problem.

   a. To effect their respective support responsibilities, IBM will maintain an IBM Test System and you will maintain a Developer Test System.

IBM will perform the following Level 1 responsibilities:

### Level 1

   i. create the Problem Management Record (PMR);

   ii. call the request originator, and obtain a description of the problem, and verify its severity;

   iii. search the IBM data base for known problems;

   iv. provide available resolution if known problem;

   v. recommend local IBM assistance as required;

   vi. if no resolution, pass PMR to Level 2; and

   vii. update PMR, documenting Level 1 actions.

RSC will perform the following Level 2 responsibilities:

### Level 2

   i. receive the PMR from Level 1;

IBM CONFIDENTIAL

April 21, 1998                          Agreement Number:STL97041

Statement of Work Number:002

ii. analyze problem symptoms and gather additional data from request originator as required;

iii. search the IBM data base for known problems;

iv. provide available resolution if known problem;

v. recommend local IBM assistance as required;

vi. recreate problem on IBM Test System;

vii. determine if error is due to improper installation of the Product(s) by the request originator;

viii. determine if suspected error is due to prerequisite or operationally related equipment or software at the request originator location;

ix. attempt bypass or circumvention for high impact problems, i.e., Severity 1 and 2;

x. if no resolution, and problem appears to be a newly discovered code or documentation error, create APAR record. If the request is a technical question, obtain assistance from Developer to provide an answer;

xi. if suspected error appears to belong to Developer, notify Developer of the APAR, providing problem description and supporting documentation and materials;

xii. if Developer requests, IBM will assist Developer in obtaining additional information or materials from request originator to support Level 3 Problem Determination, Problem Source Identification, and Problem Resolution; and

xiii. update PMR, documenting Level 2 actions.

**RSC will perform the following Level 3 Support responsibilities:**

**Level 3**

i. receive the APAR and supporting documentation and materials;

ii. analyze the problem symptoms and diagnose the suspected error;

iii. notify Level 2 if additional information, materials, or documentation is required;

iv. attempt recreation of problem on Developer Test System, if required;

v. assist Level 2 in attempting to develop a bypass or circumvention for high impact problems, e.g., Severity 1 and 2;

vi. determine if Maintenance Modifications are required to the Licensed Work;

vii. if Maintenance Modifications are required to the Licensed Work, provide code correction to IBM in the format specified by IBM;

Page 14 of 23

**IBM CONFIDENTIAL**

April 21, 1998              Agreement Number:STL97041

Statement of Work Number:002

viii. return all APARs to IBM with one of the defined APAR Closing Codes assigned, including text describing the resolution of the error. In the event a code error was found, provide the rationale for the closing of the APAR;

ix. provide resolution to APARs in accordance with the assigned APAR Severity Level and within the defined APAR Correction Times. The APAR Correction Times include build, test, certification of   successful test of fix, and packaging for shipment to IBM or any applicable code fixes in the format specified by IBM;

x. receive technical questions and supporting documentation and materials; and

xi. analyze the technical questions and provide answers.

## 4. RSC's OTHER SUPPORT RESPONSIBILITIES

### a. TECHNICAL BACKUP SUPPORT TO IBM.

RSC will provide technical backup support to IBM on Product(s) including assistance in Problem Determination, Problem Source Identification, and problem diagnosis. In addition, you will provide assistance in answering questions that may arise concerning the operation and use of the Licensed Work that cannot be resolved by IBM.

### b. PRODUCT MAINTENANCE.

If corrections are made, RSC will provide a corrected version of the Licensed Work that includes all Maintenance Modifications to the Licensed Work. Additional corrected versions of the Licensed Works will be provided as determined and mutually agreed upon by IBM and you in the event they become necessary due to the frequency or severity of newly discovered defects. In order to provide Maintenance Modifications RSC will maintain a current copy of the Product(s).

RSC will maintain procedures to ensure that new fixes are compatible with previous fixes.

Packaging of Maintenance Modifications and migration code will be done as mutually agreed to by IBM and RSC.

## 5. APAR ORIGINATION/CORRECTION FOR VERIFIED APARS.:

Generally, APARs will originate from IBM and IBM Customers reporting problems or sending Reader Comment Forms. RSC will also report to IBM as APARs all valid errors discovered by RSC or RSC's end users. After receiving an APAR, IBM will assign an APAR number and Severity Level and forward the APAR to RSC for action.

For verified APARs for the Licensed Work, you will provide corrections as set out below within the applicable APAR Correction Times.

i. the fix to the object code in machine-readable form, including a hardcopy description of the correction (which may include a paper submission of the fix);

IBM CONFIDENTIAL

April 21, 1998                          Agreement Number:STL97041

Statement of Work Number:002

   ii. the fix to the source code in machine-readable form, that corresponds to the object
      code fix; and

   iii. for a procedural workaround, supply corrected procedure in machine-readable form.

Reader Comment Forms received by IBM that do not form the basis of an APAR, will be
forwarded to RSC for proper and prompt handling as appropriate.

### a. MISCELLANEOUS.

   i. RSC will provide to IBM the name and phone numbers of Personnel to contact when
     high priority problems are encountered outside of normal working hours that require
     immediate assistance. Your normal working hours are defined as 8:30 AM to 5:00
     PM, Monday through Friday, Eastern Standard Time.

   ii. RSC will provide to IBM, upon request, information regarding the status of reported
     APARs related to the Licensed Work.

### 6. IBM/VENDOR COMMUNICATIONS.

It is desirable that IBM report APARs and status requests to RSC via an electronic
interface and that RSC send APAR corrections, code fixes, status updates, and requests for
additional documentation to IBM via the same interface. IBM and RSC will jointly plan
the electronic system. IBM will fund the costs of this interface at its location and RSC will
fund the costs at your location.

Critical situations may dictate use of the telephone for immediate communications, but will
be followed up via electronic interface for tracking and recording purposes.

In circumstances where materials have to be exchanged utilizing Facsimile Courier
services, IBM will be responsible for costs where IBM is the sender and RSC will be
responsible for costs where RSC are the sender.

### 7. MEETINGS.

RSC agrees to participate with IBM in monthly telephone conference calls to review the
status and performance of the parties' obligations. These calls may be scheduled more or
less frequently upon mutual agreement of the Technical Coordinators.

IBM CONFIDENTIAL

April 21, 1998                                  Agreement Number:STL97041

Statement of Work Number:002

## APPENDIX B. BACKGROUND MATERIALS

NOTE: RSC WILL LIST, BY DELIVERABLE, ALL BACKGROUND MATERIALS CONTAINED IN THE BUFFER POOL TOOL. RSC WILL SPECIFY ALL PERTINENT INFORMATION TO ADEQUATELY IDENTIFY EACH ITEM, SUCH AS, PART NUMBER, NOMENCLATURE, REVISION OR VERSION NUMBER, MANUFACTURER OR OWNER, ETC. THIS LISTING MUST BE KEPT CURRENT THROUGHOUT THE PROJECT.

IBM CONFIDENTIAL

April 21, 1998

Agreement Number:STL97041

Statement of Work Number:002

## APPENDIX C: DEVELOPMENT ENVIRONMENT

NOTE:  ADD THIS APPENDIX TO LIST, BY DELIVERABLE, ALL DEVELOPMENT ENVIRONMENT ITEMS THAT ARE NOT FURNISHED TO DEVELOPER BY IBM FOR THIS PROJECT.  YOU SHOULD SPECIFY ALL PERTINENT INFORMATION TO ADEQUATELY IDENTIFY EACH ITEM, SUCH AS, PART NUMBER, NOMENCLATURE, REVISION OR VERSION NUMBER, MANUFACTURER OR OWNER, ETC.  THE LIST SHOULD ALSO IDENTIFY THOSE ITEMS THAT ARE COMMERCIALLY AVAILABLE.  FOR THOSE THAT ARE NOT COMMERCIALLY AVAILABLE, THE DEVELOPER IS REQUIRED TO DELIVER THEM TO IBM AND PART 9.0, "COMPLETION AND ACCEPTANCE CRITERIA" MUST REFERENCE THESE ITEMS AS DELIVERABLES.  THIS LISTING MUST BE KEPT CURRENT THROUGHOUT THE PROJECT.

IBM CONFIDENTIAL

April 21, 1998

Agreement Number:STL97041

Statement of Work Number:002

# EXHIBIT I - CERTIFICATE OF ORIGINALITY

If RSC is furnishing to IBM any program product, offering, related documentation, microcode or other software material (collectively, "Software Material"), this questionnaire must be completed by RSC and sent to the IBM Contract Coordinator. IBM's royalty payments to RSC for the Deliverables requiring this certificate is conditioned upon IBM's acceptance of the certificate.

RSC has an obligation to communicate any additional information which IBM may require for copyright registration and/or enforcement of legal rights relating to the furnished Software Material.

One questionnaire can cover one complete product, even if that product includes multiple modules. However, a separate questionnaire must be completed for code and another for its related documentation.

Please leave no questions blank. Write "not applicable" or "N/A" if a question is not relevant to the furnished Software Material.

1. Name of the Software Material (provide complete identification including version, release and modification numbers for programs and documentation):

2. Was the Software Material or any portion thereof:

   a. Written by any person(s) other than RSC, or RSC employees working within their job assignment? YES _____ NO _____

   If 2a is NO, skip to question number 3; If 2a is YES, please answer the remaining sections of question number 2.

   b. Indicate if the whole Software Material or only a portion thereof was written by such person(s), and identify such portion. WHOLE_____ PORTION_____ (_____%)

   c. Indicate if the Software Material was furnished to RSC by companies or individuals: COMPANY(IES)_____ INDIVIDUAL(S)_____

   Explain how RSC acquired the Software Material written by the other party:

   d. If 2c is COMPANY(IES), provide for each Company the following information:

   i. Name

   ii. Address

   iii. Explain how the Company acquired title to the Software Material (e.g., Software Material was written by company's employees as part of their job assignment)

   iv. Did the Company have each non-U.S. author who contributed to the Software Material sign a waiver of moral rights agreement? YES_____ NO_____

   If YES, please attach a copy of the waiver agreement.

Page 19 of 23

IBM CONFIDENTIAL

April 21, 1998                              Agreement Number:STL97041

Statement of Work Number:002

e. If 2c is INDIVIDUAL(S), provide for each person the following information:

   i. Name

   ii. Citizenship

   iii. Address

   iv. Did the person create the Software Material while employed by or under contractual relationship with another party? YES_____ NO_____

   v. If YES, provide name and address of the other party.

   vi. Did the person create the Software Material in a foreign country? YES_____ NO_____

   vii. If 2e is YES, did that person sign a waiver of moral rights agreement? YES_____ NO_____

   If YES, please attach a copy of the waiver agreement.

3. Was the Software Material or any portion thereof registered at any Copyright Office? YES_____ NO_____

   If YES, provide the registration data.

4. Was the Software Material or any portion thereof published? YES_____ NO_____

   If YES, provide the following information,

   a. When and where was it published?

   b. Was any copyright notice present on the published material(s)?

      YES_____ NO_____

      If YES, provide the copyright notice.

5. Was the Software Material or any portion thereof released by RSC to any outside person or company other than IBM? YES_____ NO_____

   If YES, provide the following information:

   a. When and where was the Software Material released?

   b. To whom was the Software Material released.

   c. Why was the Software Material released?

   d. Under what conditions (e.g., contract) was the Software Material released?

6. Was the Software Material or any portion thereof derived from preexisting material(s)?

   YES_____ NO_____

Page 20 of 23

**IBM CONFIDENTIAL**

April 21, 1998                    Agreement Number: STL97041

Statement of Work Number: 002

If YES, provide the following information for each of the preexisting materials:

a. Name of the material

b. Author (if known)

c. Owner

d. Copyright notice appearing on the material (if any)

e. Was any new function added to the preexisting software? YES_____ NO_____

    If YES, briefly describe below, or in an attachment, the new function(s)

f. State approximately:

    i. _____ percent of preexisting material used

    ii. _____ percent of preexisting material modified

    iii. _____ percent of new material consisting of or deriving from preexisting materials

g. Briefly describe below, or in an attachment, how the preexisting material has been used.

7. Were the "external characteristics" of the Software Material or any portion thereof copied or derived from the "external characteristics" of another RSC or third party program or product? ("External characteristics" include display screens, data formats, instruction or command format, operator messages, interfaces, etc.) YES_____ NO_____

If YES, provide the following information for each of the preexisting materials:

a. Name of RSC or third party program or product

b. Author (if known)

c. Owner

d. Copyright notice relating to the preexisting "external characteristics" (if any)

e. Have the preexisting "external characteristics" been modified? YES_____ NO_____

    If YES, briefly explain how such "external characteristics" have been modified?

8. Identify below, or in an attachment, any other circumstance which might affect IBM's ability to reproduce and market the Software Material, including:

a. confidentiality or trade secrecy of preexisting materials;

b. known or expected royalty obligations to others;

c. preexisting materials developed for another party or customer (including government) where you may not have retained full rights to the material;

Page 21 of 23

**IBM CONFIDENTIAL**

April 21, 1998                              Agreement Number: STL97041

Statement of Work Number: 002

d. materials acquired from a person or company possibly having no title to them.

9. Employee Identification:

a. Attach a list reporting the full name, address and citizenship of each of your employees who actually wrote code or largely contributed to the internal design and organization of the software Material.

If the legal or business requirements of any specific country do not permit the use of the wording of paragraph 9a, then the wording of paragraph 9b shall apply.

b. RSC recognizes that for purposes of copyright registration or enforcement of legal rights relating to the furnished Software Material, IBM may need to know the names and addresses of all the persons who wrote or contributed to the writing of the Software Materials. RSC hereby agrees to keep accurate records of all such names and addresses, and to provide them to IBM at IBM's request.

Please note that the following questions relate to any ICONS included as part of the furnished Software Material. (An ICON is generally defined as a symbol on a display screen that a user can point to with a device such as a mouse in order to select a particular operation or software application.) A separate set of answers should be furnished for each ICON and should be signed by the creator of the ICON.

10. Word(s), function or thing represented by the ICON:

11. Creator's

a. Name: _____

b. Job Title: _____

c. Business Address: _____

d. Business Telephone: _____

e. Citizenship: _____

f. Date of Creation of ICON in written form: _____

g. Certification: _____

I certify that the attached ICON was created by me as an assigned work task and that I created it without reference to any preexisting ICONS or other works authored or owned by another. YES_____ NO_____

h. If 11g is NO, identify the preexisting ICONS or other works which were referenced (attach copies if available).

i. If the ICON was created for inclusion in a specific product, identify the product in which it will be (or was) used and provide the planned availability date and country of first publication.

Page 22 of 23

**IBM CONFIDENTIAL**

April 21, 1998                          Agreement Number:STL97041

Statement of Work Number:002

    j. Identify or describe any preexisting ICONS which are known to you to represent the same word or function which are similar in appearance to the ICON (attach copies if available).

    k. Please attach a copy of the ICON and, for identification purposes, include on the drawing the information you provided in response to Item 11 above.

Creator's Signature _____

Date_____

IN CERTIFICATION OF, RSC has caused this Certificate to be executed by an authorized representative.

RSC
CERTIFICATION:

By:
Print Name:
Title:
Date:

IBM CONFIDENTIAL

# EXHIBIT F

ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

AUG 1 1 2003

at _____ o'clock and _____ min. ___ M.
WALTER A. Y. H. CHINN, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| FOLIUM, INC., a South Carolina corporation, ) | |
| Plaintiff, ) | Civil No. 03-92-DAE/LEK |
| vs. ) | |
| INTERNATIONAL BUSINESS MACHINES ) CORPORATION; and DOE DEFENDANTS ) 1-10, ) | OPINION AND ORDER |
| Defendants. ) | |

Carl Smith Ball LLP
Robert D. Triantos
Kevin E. Moore
Edmund W.K. Haitsuka
P.O. Box 1720
Kailua-Kona, Hawaii 96745-1720
        Attorneys for plaintiff

Watanabe Ing Kawashima & Komeiji LLP
James Kawashima
Seth M. Reiss
R. Scott Simon
First Hawaiian Center
999 Bishop Street, 23rd Floor
Honolulu, Hawaii 96813

Quinn Emanuel Urquhart Oliver & Hedges, LLP
A. William Urquhart
Shon Morgan
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
        Attorneys for defendant International Business
        Machines Corporation

AIKEN, Judge:

1 - OPINION AND ORDER



1   Defendant International Business Machines Corporation
2   ("IBM"), pursuant to Fed. R. Civ. P. 12(b)(6), moved to dismiss
3   Counts Three, Four, Five, Six and Seven of plaintiff's complaint.
4   On July 21, 2003, the court heard oral argument on defendant's
5   motion, and now grants defendant's motion in its entirety;
6   however, plaintiff is allowed leave to amend its complaint.
7                            BACKGROUND
8       Plaintiff Folium, Inc. is a South Carolina corporation whose
9   principal officer and director is a resident of the State of
10  Hawaii. Defendant IBM has its principal place of business in New
11  York. Plaintiff sued the defendant for breach of contract, among
12  other claims. Defendant removed this case to federal court based
13  on diversity jurisdiction.
14      Plaintiff, as part of its business operations, creates
15  software for use in main frame computers. Plaintiff created an
16  "IMS index builder" as part of its software products and licensed
17  that product to IBM. On January 30, 1997, plaintiff and
18  defendant entered into a License Agreement under which the
19  defendant was allowed to use the IMS index builder in exchange
20  for the payment of certain royalties. Specifically, in exchange
21  for the license provided to IBM by plaintiff, IBM agreed to pay
22  royalties under a formula that amounted to approximately 26% of
23  the license fees IBM collected for using the software. Plaintiff
24  alleges that defendant failed to pay the license fees as set
25  forth in the Agreement. When plaintiff sought the compensation
26  due to it under these Agreements, defendant terminated the
27  marketing of plaintiff's product. Plaintiff alleges that IBM
28  then attempted to construct its own "IMS index builder." In

2 - OPINION AND ORDER

2002, plaintiff alleges that it discovered for the first time that IBM had utilized a source code created and constructed by plaintiff as part of the products licensed under the Agreement to IBM in a new data processing system then being utilized by IBM in violation of any contract that the parties had, in violation of any Licensing Agreement, and as a "usurpation and infringement of the rights of plaintiff in the products it creates."

Plaintiff filed a complaint alleging breach of contract (Count I), declaratory relief (count II), breach of the covenant of good faith and fair dealing (count III), misrepresentation (count IV), conversion (count V), unclean hands (count VI), and punitive damages (count VII).

## STANDARDS

Under Fed. R. Civ. P. 12(b)(6), dismissal for failure to state a claim is proper only when it appears to a certainty that the plaintiffs can prove no set of facts in support of their claim that would entitle them to relief. <u>Litchfield v. Spielberg</u>, 736 F.2d 1352, 1357 (9th Cir. 1984), <u>cert</u>. <u>denied</u>, 470 U.S. 1052 (1985). For the purpose of the motion to dismiss, the complaint is liberally construed in favor of the plaintiffs, and its allegations are taken as true. <u>Rosen v. Walters</u>, 719 F.2d 1422, 1424 (9th Cir. 1983).

## MOTION TO DISMISS COUNTS III – VII

IBM alleges that Counts III, IV and V (breach of the covenant of good faith and fair dealing, misrepresentation, and conversion) are barred by New York law, which the parties have agreed for purposes of this motion is the governing law under the terms of the contract. Hawaii courts enforce a choice-of-law

3 - OPINION AND ORDER

provision so long as "the chosen law has some nexus with the parties or the contract." <u>Airgo, Inc. v. Horizon Cargo Transport, Inc.</u>, 66 Haw. 590, 595, 670 P.2d 1277 (Haw. 1983). This test is satisfied if one of the parties is incorporated in the chosen state. <u>Id.</u> Here, the choice-of-law clause is enforceable under Hawaii law because IBM is a New York corporation.

Regarding plaintiff's claim for breach of the covenant of good faith and fair dealing, New York law provides that where a party alleges only economic losses (no personal injury or property damage) and alleges only to have been deprived of the benefit of its bargain, the remedy lies exclusively in contract.

The Complaint alleges that IBM breached the parties' contract in two ways: (1) IBM "failed to pay the license fees due to plaintiff as set forth in the Agreement and other agreements between the parties;" and (2) "IBM attempted to construct its own 'IMS index builder' . . . in violation of any contract that the parties had, in violation of any licensing agreement."

New York courts explain the "economic loss rule" as follows – if the plaintiff alleges only loss of the benefit of its bargain and not the breach of any duty that existed independent of the contractual obligation to perform, tort claims will not lie. <u>Carmania Corp. v. Hambrecht Terrell Int'l</u>, 705 F. Supp. 936, 938 (S.D.N.Y. 1989).

The plaintiff seems to argue that the economic loss rule originated in product liability cases, and therefore, applies only when plaintiff is a purchaser of goods or services. Plaintiff asserts that the rationale of the economic loss rule to

4 - OPINION AND ORDER

protect manufacturers of products from claims by purchasers does
not apply in this case. I disagree. New York courts now apply
the economic loss rule to bar tort recovery for economic loss in
<u>any</u> context where a contract already provides an economic remedy
and defines the parties' responsibilities and liabilities. <u>See</u>
<u>Bristol-Myers Squibb, Indus. Div. v. Delta Star, Inc.</u>, 206 A.D.2d
177, 181, 620 N.Y.S.2d 196 (N.Y.App. 1994). There the court
held:

> The economic loss rule reflects the principle that
> damages arising from the failure of the bargained-for-
> consideration to meet the expectations of the parties are
> recoverable in contract, not tort. That principle
> extends <u>beyond the relationship between consumers and</u>
> <u>manufacturers or suppliers of goods.</u>

<u>Id.</u> at 198-99 (internal citations omitted)(emphasis added).

Plaintiff relies on an unpublished case that found when the
alleged tortuous conduct goes beyond failing to perform the terms
of the agreement and instead includes deceitful conduct before
formation of the contract, plaintiff can bring a cause of action
for breach of the covenant of good faith and fair dealing. Here,
however, plaintiff has not alleged any conduct beyond IBM's
alleged failure to adhere to the contract, and therefore, has no
independent basis to bring a claim for breach of the covenant of
good faith and fair dealing. Defendant's motion to dismiss is
granted as to this claim.

As for plaintiff's misrepresentation count, there are two
exceptions recognized in New York that allow a claim separate
from breach of contract. Those are: where a special relationship
exists, and where there is fraud in a collateral promise. I find
that neither exception applies. There was no special

5 - OPINION AND ORDER

relationship existing between plaintiff and IBM, and plaintiff does not allege it was fraudulently induced to enter into the IBM contract. Therefore, this claim is dismissed.

Regarding plaintiff's conversion claim, plaintiff relies exclusively on cases where the allegations underlying the conversion claim differed from the contract claim. In other words, in those cases, the plaintiffs alleged facts such that, even if the defendants had complied with the contract, they could still be liable for conversion. Those are not the facts at bar. Plaintiff here fails to allege any facts beyond those that support a straight breach of contract claim. This claim is dismissed.

Finally, regarding Counts VI and VII (unclean hands and punitive damages), IBM argues that those counts should also be dismissed because they are, respectively, a remedy and an affirmative defense, and not separate causes of action.

It is well-settled law that New York does not recognize a separate cause of action for punitive damages. <u>Smith v. County of Erie</u>, 295 A.D.2d 1010, 1011, 743 N.Y.S.2d 649 (N.Y.App. 2002)("there is no separate cause of action for punitive damages, inasmuch as punitive damages are but an incident of ordinary damages"). Further, IBM argues that the parties' contract bars recovery of punitive damages. This type of damages limitation is consistently enforced by the New York courts. <u>Met. Life Ins. Co. v. Noble Lowndes Int'l</u>, 618 N.Y.S.2d 882, 885 (1994)(New York upholds contracts that limit recovery to money paid and bar consequential damages: "A limitation of liability provision in a contract represents the parties' agreement on the allocation of

6 - OPINION AND ORDER

the risk of economic loss in the event that the contemplated transaction is not fully executed, which the courts should honor.").

Therefore, IBM's motion to dismiss Count VII is granted, however, plaintiff is granted leave to amend its complaint to allege punitive damages as a remedy for a cause of action. <u>See Smith v. County of Erie</u>, 295 A.D.2d 1010, 1011, 743 N.Y.S.2d 649 (N.Y. App. 2002)("There is no separate cause of action for punitive damages, inasmuch as punitive damages are but an incident of ordinary damages"); <u>Firth v. State</u>, 706 N.Y.S.2d 835, 838 (N.Y. Ct. Cl. 2000)("The third cause of action is quickly disposed of as the law is settled that there is not a separate cause of action for punitive damages").

Regarding Count VI for unclean hands, IBM argues that it is an affirmative defense, not a separate cause of action. <u>See 518 East 80th Street Co., LLC v. Smith</u>, 251 A.D.2d 215, 216, 674 N.Y.S.2d 680 (N.Y.App. 1998)("The eighth affirmative defense, alleging unclean hands . . . is an equitable defense").

I agree, and grant defendant's motion to dismiss this claim, also allowing plaintiff leave to amend its complaint.

<u>CONCLUSION</u>

Defendant's motion to dismiss (doc. 7) is granted. Claims III, IV, V, VI and VII of the complaint are dismissed. Plaintiff is granted leave to amend its complaint.

///

///

///

///

7 - OPINION AND ORDER

1    IT IS SO ORDERED.

2    Dated this 6 day of August 2003.

3

4

5

6                              _____
                                      Ann Aiken
7                              United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8 - OPINION AND ORDER

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RSI CORP., dba RESPONSIVE SYSTEMS COMPANY, a New Jersey corporation, | CIVIL NO. CV 08-00066 JMS/BMK |
| Plaintiff, | CERTIFICATE OF SERVICE |
| vs. | |
| INTERNATIONAL BUSINESS MACHINES CORPORATION; and DOE DEFENDANTS 1-20, | |
| Defendants. | |

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was duly served on the following by depositing same in the United States Mail, postage prepaid, addressed to the following last known address:

ROBERT D. TRIANTOS
EDMUND W.K. HAITSUKA
CARLSMITH BALL LLP
75-1000 Henry Street, Suite 209
P.O. Box 1720
Kailua-Kona, HI  96745-1720

Attorneys for Plaintiff
RSI Corp.

DATED:  Honolulu, Hawaii, May 27, 2008.

JAMES KAWASHIMA
SHIRLEY M. KAWAMURA
SHON MORGAN
SCOTT L. WATSON
VALERIE RODDY
Attorneys for Defendant
INTERNATIONAL BUSINESS MACHINES
CORPORATION