1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     Shon Morgan (Bar No. 187736)
2    shonmorgan@quinnemanuel.com
     Scott Watson (Bar No. 219147)
3    scottwatson@quinnemanuel.com
     Valerie Roddy (Bar No. 235163)
4    valerieroddy@quinnemanuel.com
5  865 South Figueroa Street, 10th Floor
   Los Angeles, California  90017-2543
6  Telephone:  (213) 443-3000
   Facsimile:   (213) 443-3100
7
8  Attorneys for Defendant International
   Business Machines Corporation
9

10

11                 UNITED STATES DISTRICT COURT

12                NORTHERN DISTRICT OF CALIFORNIA

13                      SAN JOSE DIVISION

14  RSI CORP., dba RESPONSIVE          CASE NO. 5:08-cv-3414 (RMW/HRL)
    SYSTEMS COMPANY, a New Jersey
15  corporation,
                                       **AMENDED NOTICE OF MOTION
16                                     AND MOTION TO DISMISS OR, IN
                                       THE ALTERNATIVE, STRIKE;
17              Plaintiff,             MEMORANDUM OF POINTS AND
                                       AUTHORITIES IN SUPPORT
18        vs.                          THEREOF**

19  INTERNATIONAL BUSINESS
20  MACHINES CORPORATION; and          Crtrm.:        6, 4th Floor
    DOE DEFENDANTS 1-20,               Judge:         Hon. Ronald M. Whyte
21                                     Hearing Date:  September 5, 2008
                                       Hearing Time:  9:00 a.m.
22              Defendants.

23

24

25

26

27

28

1   TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:

2       PLEASE TAKE NOTICE that on September 5, 2008, at 9:00 a.m. or as soon

3   thereafter as counsel may be heard, in the Courtroom of Hon. Ronald M. Whyte, at

4   the United States District Court for the Northern District of California, San Jose

5   Division, located at 280 South First Street, San Jose, California, defendant IBM

6   Corporation will and hereby does move this Court for an order dismissing plaintiff's

7   Complaint, pursuant to Federal Rules of Civil Procedure 7, 9 and 12(b)(6) or, in the

8   alternative, striking portions of plaintiff's Complaint pursuant to Federal Rule of

9   Civil Procedure 12(f), in defendant IBM's favor with regard to all causes of action

10  alleged in plaintiff's Complaint filed herein dated February 12, 2008.

11      Plaintiff's causes of action must be dismissed because they are time-barred by

12  the express terms of the parties' agreement.  Plaintiff's tort and unfair competition

13  claims are also barred by New York's economic loss rule.  Plaintiff's fraud and

14  intentional misrepresentation claims must be dismissed for plaintiff's failure to plead

15  facts with particularity.  Plaintiff has further failed to allege facts sufficient to state a

16  claim under the Lanham Act or for restraint of trade.  Plaintiff's purported causes of

17  action for unclean hands and punitive damages must be dismissed because they are

18  not causes of action at all.  Plaintiff's claim and prayer for punitive damages must

19  also be dismissed or stricken because punitive damages are barred by the express

20  terms of the parties' agreement and are unwarranted under New York law.

21      This motion is based upon this Amended Notice of Motion and Motion, the

22  Memorandum of Points and Authorities in support thereof (which has been

23  reformatted for filing in the United States District Court for the Northern District of

24  California), the concurrently-filed Request for Judicial Notice, all pleadings and

25

26

27

28

1  papers on file in this action, such other evidence or arguments as may be presented

2  to the Court, and such other matters of which this Court may take judicial notice.

3

4  DATED:  August 1, 2008          QUINN EMANUEL URQUHART OLIVER &
                                    HEDGES, LLP
5

6                                   By /s/
7                                      Shon Morgan
                                       Attorneys for Defendant International
8                                      Business Machines Corporation

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# <u>TABLE OF CONTENTS</u>

2                                                                               <u>Page</u>

3

4   MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

5   INTRODUCTION ................................................................................. 1

6   RELEVANT FACTUAL BACKGROUND ................................................... 1

7   ARGUMENT ........................................................................................ 3

8   I.       RULE 12 STANDARDS ................................................................. 3

9   II.      NEW YORK LAW GOVERNS ....................................................... 4

10  III.     PLAINTIFF'S CLAIMS ARE ALL TIME-BARRED BY THE
             PARTIES' CONTRACTUAL AGREEMENT ................................. 6

11

12  IV.      THE ECONOMIC LOSS RULE BARS RSI'S TORT AND UNFAIR
             COMPETITION CLAIMS ............................................................. 8

13           A.      The Economic Loss Rule ................................................. 8

14           B.      Plaintiff's Tort Claims Arise from the Same Facts as the Contract
                     Claim ........................................................................... 9

15
    V.       PLAINTIFF'S FRAUD CLAIMS ARE NOT PLEADED WITH THE
16           REQUISITE SPECIFICITY ........................................................ 12

17  VI.      PLAINTIFF HAS ALLEGED NO FACTS TO SUPPORT ITS
             LANHAM ACT OR RESTRAINT OF TRADE CLAIMS ........................ 13

18
    VII.     "UNCLEAN HANDS" AND "PUNITIVE DAMAGES" ARE NOT
19           CAUSES OF ACTION ................................................................ 14

20  CONCLUSION ................................................................................... 17

21

22

23

24

25

26

27

28

AMENDED NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM IN SUPPORT THEREOF

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

<u>Cases</u>

4    *518 E. 80th St. Co. v. Smith,*
         251 A.D.2d 215, 674 N.Y.S.2d 680 (1st Dept. 1998)...................................... 15
5
     *Airgo, Inc. v. Horizon Cargo Transp., Inc.,*
6        66 Haw. 590, 670 P.2d 1277 (1983) ............................................................... 4

7    *Allman v. UMG Recordings,*
         530 F. Supp. 2d 602 (S.D.N.Y. 2008) ............................................................. 7
8
     *Allstate Ins. Co. v. Kim,*
9        121 F. Supp. 2d 1301 (D. Haw. 2000) ............................................................. 5

10   *Arcilla v. Adidas Promotional Retail Operations, Inc.,*
         488 F. Supp. 2d 965 (C.D. Cal. 2007)........................................................... 16
11
     *Balistreri v. Pacifica Police Dep't,*
12       901 F.2d 696 (9th Cir. 1988) ........................................................................... 3

13   *Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist.,*
         124 Wash. 2d 816, 881 P.2d 986 (1994).......................................................... 9
14
     *Branch v. Tunnell,*
15       14 F.3d 449 (9th Cir. 1994) ............................................................................. 4

16   *Cardonet, Inc. v. IBM Corporation,*
         No. C-06096637, 2007 WL 518909 (N.D. Cal. Feb. 14, 2007)........................ 5
17
     *Carmania Corp. v. Hambrecht Terrell Int'l,*
18       705 F. Supp. 936 (S.D.N.Y. 1989)............................................................... 8, 9

19   *City of Express, Inc. v. Express Ptrs,*
         87 Haw. 466, 959 P.2d 836 (1998) .................................................................. 9
20
     *Coffman v. Fed. Labs.,*
21       323 U.S. 325 (1945) ....................................................................................... 16

22   *Druckers', Inc. v. Pioneer Elecs. (USA), Inc.,*
         Civ. A. No. 93-1931, 1993 WL 431162 (D.N.J. Oct. 20, 1993) ....................... 5
23
     *DynCorp v. GTE Corp.,*
24       215 F. Supp. 2d 308 (S.D.N.Y. 2002) ........................................................... 16

25   *Firth v. State,*
         706 N.Y.S.2d 835 (N.Y. Ct. Cl. 2000) .......................................................... 15
26
     *Folium, Inc. v. Int'l Bus. Machs. Corp.,*
27       Civil No. 03-92-DAE/LEK, Opinion and Order
         (D. Haw. Aug. 11, 2003) ........................................................................... 4, 15

28

*Galbraith v. County of Santa Clara*,
   307 F.3d 1119 (9th Cir. 2002) ................................................................. 4

*Guerrero v. Gates*,
   442 F.3d 697 (9th Cir. 2006) ................................................................... 3

*H.P.S. Capitol, Inc. v. Mobil Oil Corp.*,
   186 A.D.2d 98, 588 N.Y.S.2d 29 (1st Dept. 1992) ................................... 7

*Hays v. City and County of Honolulu*,
   81 Haw. 391, 917 P.2d 718 (1996) ........................................................... 5

*Interstate Adjusters, Inc. v. First Fid. Bank, N.A.*,
   251 A.D.2d 232, 675 N.Y.S.2d 42 (1st Dept. 1998) ............................... 11

*JMS-BMK*,
   2007 WL. 372775 (D. Haw. Oct. 18, 2007) .............................................. 3

*Jaress & Leong v. Burt*,
   150 F. Supp. 2d 1058 (D. Haw. 2001) ...................................................... 5

*John J. Kassner & Co., Inc. v. City of New York*,
   46 N.Y.2d 544, 415 N.Y.S.2d 785 (1979) ................................................ 7

*LaSalle Nat'l Bank v. Ernst & Young LLP*,
   285 A.D.2d 101, 729 N.Y.S.2d 671 (1st Dept. 2001) ............................. 12

*Macmillan, Inc. v. Fed. Ins. Co.*,
   764 F. Supp. 38 (S.D.N.Y. 1991) ........................................................... 10

*McAdams v. Massachusetts Mut. Life Ins. Co.*,
   No. Civ. A. 99-30284-FHF,
   2002 WL 1067449 (D. Mass. May 15, 2002) ............................................ 5

*Met. Life Ins. Co. v. Noble Lowndes, Int'l, Inc.*,
   618 N.Y.S.2d  882 (1994) ................................................................. 15, 16

*Nat'l Football League Props., Inc. v. Dallas Cowboys Football Club, Ltd.*,
   922 F. Supp. 849 (S.D.N.Y. 1996) ......................................................... 10

*Nedlloyd Lines B.V. v. Superior Court*,
   3 Cal. 4th 459, 11 Cal. Rptr. 2d 330 (1992) ......................................... 4, 5

*Orlando v. Novuriana of America, Inc.*,
   162 F. Supp. 2d 220 (S.D.N.Y. 2001) ...................................................... 8

*Pub. Serv. Mut. Ins. Co. v. Tri-Con Constr. Corp.*,
   224 A.D.2d 508, 328 N.Y.S.2d 155 (2d Dept. 1996) .............................. 10

*QC Constr. Prods., LLC v. Cohill's Bldg. Specialties, Inc.*,
   423 F. Supp. 2d 1008 (D. Ariz. 2006) .................................................... 12

*R.H. Damon & Co. v. Softkey Software Prods. Inc.*,
   811 F. Supp. 2d 220 (E.D.N.Y. 1999) ............................................... 11, 16

*Redington v. Hartford Accident & Indem. Co.*,
    463 F. Supp. 83 (S.D.N.Y. 1978)..........................................................................7

*Regan v. Dep't of Pub. Safety*,
    Civ. No. 07-00029 JMS-BMK, 2007 WL 3072775
    (D. Haw. Oct. 18, 2007) ..............................................................................3, 4

*Salvador v. Uncle Sam's Auctions & Realty, Inc.*,
    307 A.D.2d 609, 763 N.Y.S.2d 360 (3d Dept. 2003) ........................................11

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
    806 F.2d 1393 (9th Cir. 1986) ............................................................................12

*Semegen v. Weidner*,
    780 F.2d 727 (9th Cir. 1985) ........................................................................12, 13

*Smith v. County of Erie*,
    295 A.D.2d 1010, 743 N.Y.S.2d 649 (4th Dept. 2002) ....................................15

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ..............................................................................14

*In re Syntex Corp. Sec. Litig.*,
    95 F.3d 922 (9th Cir. 1996) ..........................................................................14, 15

*Wolf v. Nat'l Council of Young Israel*,
    264 A.D.2d 416, 694 N.Y.S.2d 424 (2d Dept. 1999) ......................................11

*Wolff v. Rare Medium, Inc.*,
    171 F. Supp. 2d 354 (S.D.N.Y. 2001).................................................................10

*Yeterian v. Heather Mills N.V. Inc.*,
    183 A.D.2d 493, 583 N.Y.S.2d 439 (1st Dept. 1992)........................................12

## Statutes

15 U.S.C. § 1125(a) ....................................................................................................3

Federal Rules of Civil Procedure

    Rule 9(b) ......................................................................................................12, 13

    Rule 12 .................................................................................................................3

    Rule 12(b)(6) .......................................................................................................3

    Rule 12(f) ...........................................................................................................16

## Other Authorities

5 Corbin, *Contracts*, § 1068.....................................................................................16

N.Y. C.P.L.R. § 201 (McKinney 2003) .................................................................6, 7

## MEMORANDUM OF POINTS AND AUTHORITIES

### Introduction

Plaintiff RSI did not attach the agreements upon which it sues to its complaint for a simple reason: Their express terms bar all of plaintiff's claims.  At the outset of their business relationship, the parties agreed to a mutual provision requiring both parties to bring any claims against the other within two years.  Although plaintiff states it became aware in 2004 of IBM's alleged failure to pay royalties under the agreement—the purported breach of contractual duty which underlies every single one of plaintiff's causes of action—plaintiff did not file suit until long after 2006.  All of plaintiff's claims are thus time-barred.

Although the parties' agreement is dispositive, plaintiff's tort and unfair competition claims are also barred by New York's "economic loss rule," which prevents RSI from dressing up a straightforward breach of contract claim as no less than *eight* different torts and unfair competition claims.  Where a party alleges solely economic losses (no personal injury or property damage) and seeks only the benefit of a contractual bargain, New York law provides that the remedy lies exclusively in contract.

For these and other reasons discussed below, plaintiff's Complaint contains fatal defects and should be dismissed with prejudice.

### Relevant Factual Background

Plaintiff RSI Corp., which does business as Responsive Systems Company, created a software product called Buffer Pool Tool that it licensed to IBM to remarket to IBM's own customers.[1]  The parties entered into a series of written

---

[1]  Complaint, dated February 12, 2008 ("Compl.") ¶¶ 1, 4-5.  For the purposes of this motion to dismiss and motion to strike only, IBM relies on the factual allegations as pleaded by plaintiff, unless otherwise noted.

AMENDED NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM IN SUPPORT THEREOF

1    agreements: (1) an IBM Developer Agreement and Statement No. STL 97041, dated

2    June 23, 1997; and (2) the IBM Developer Agreement and Statement No. STL

3    97051, dated April 21, 1998.[2]  Plaintiff alleges that "[p]ursuant to such Agreement,

4    and others entered into between the parties, . . . IBM was to pay [p]laintiff certain

5    royalties for the [Buffer Pool Tool]."[3]

6        According to plaintiff, "[d]efendant IBM failed to pay the license fees due to

7    [p]laintiff as set forth in the Agreement and other agreements between the parties."[4]

8    Plaintiff further alleges that when plaintiff sought audits "as provided for in the

9    Agreement[,] IBM failed and refused to provide the necessary documents for a

10   proper audit."[5]

11

12

---

13   [2]  *Id.* ¶¶ 6-7 (tracking plaintiff's allegations).  In fact, the 1997 and 1998

14   contracts bear the same agreement number, STL97041, and consist of various

     component documents.  The 1997 Agreement consists of three documents: (1) the

15   IBM Developer Agreement, Agreement No.: STL97041, dated June 23, 1997

16   (Request for Judicial Notice in Support of Defendant IBM's Motion to Dismiss or,

     in the Alternative, Strike, dated May 27, 2008, filed concurrently herewith ("RJN")

17   Ex. A); (2) a Description of Licensed Work, Agreement No.: STL97041, DLW No.:

18   001, dated June 23, 1997 (RJN Ex. B); and (3) the Statement of Work, Agreement

     No. STL97041, SOW No.: 001, dated June 23, 1997 (RJN Ex. C).  *See* RJN Ex. B at

19   1 (listing components of agreement); RJN Ex. C at 1 (same).

20       The 1998 Agreement consists of the three documents comprising the 1997

21   agreement *plus* (1) the Description of Licensed Work, Agreement No.: STL97041,

     DLW No.: 002, dated April 21, 1998 (RJN Ex. D); and (2) the Statement of Work,

22   Agreement No.: STL97041, SOW No: 002, dated April 21, 1998 (RJN Ex. E).  *See*

23   RJN Ex. D at 1 (listing components of agreement, but with typographical error in

     agreement number); RJN Ex. E at 1 (listing components of agreement, but with

24   typographical error, referring to "this" agreement "number 001").

25   [3]  Compl. ¶ 8.

26   [4]  *Id.* ¶ 9.

27   [5]  *Id.*

28

1   IBM told plaintiff it discontinued remarketing the Buffer Pool Tool to IBM's

2  customers.[6]  Plaintiff alleges that in 2004, it "discovered for the first time [that]

3  certain [IBM customers] continued to utilize the Buffer Pool Tool in violation of

4  any contract that the parties had [and] in violation of any licensing agreement."[7]

5   Plaintiff alleges claims for: (1) breach of contract; (2) negligent

6  misrepresentation; (3) intentional misrepresentation; (4) fraud; (5) breach of the

7  covenant of good faith and fair dealing; (6) conversion; (7) unfair competition in

8  violation of 15 U.S.C. § 1125(a)); (8) common law unfair competition; (9) restraint

9  of trade; (10) "unclean hands"; and (11) punitive damages.[8]

10

11   **Argument**

12  I.   **RULE 12 STANDARDS**

13   A claim should be dismissed under Rule 12(b)(6) of the Federal Rules of

14  Civil Procedure if the plaintiff fails to state either a cognizable legal theory or

15  sufficient facts to obtain a remedy under a cognizable legal theory.  *See, e.g.*,

16  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  A Rule

17  12(b)(6) motion is properly granted when it is clear the pleader can prove no set of

18  facts that would entitle it to relief.  *Guerrero v. Gates*, 442 F.3d 697, 703 (9th Cir.

19  2006).  A motion to dismiss is also properly granted if an affirmative defense or

20  other bar to relief is apparent from the face of the complaint, such as a statute of

21  limitation.  *Regan v. Dep't of Pub. Safety*, Civ. No. 07-00029 JMS-BMK, 2007 WL

22  372775 at *3 (D. Haw. Oct. 18, 2007).

23

24  _____

25   [6]  *Id.* ¶ 10.

26   [7]  *Id.* ¶ 11.

27   [8]  *Id.* ¶¶ 14-18, 20-24, 26-30, 32, 35-36, 38-41, 43-46, 48-49, 51-53, 55, 57-58.

28

1    The Court is not confined to the plaintiff's allegations alone but may consider

2    "[d]ocuments whose contents are alleged in a complaint and whose authenticity no

3    party questions, but which are not physically attached to the pleading," such as the

4    contracts upon which plaintiff sues here.  *Branch v. Tunnell*, 14 F.3d 449, 454 (9th

5    Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307

6    F.3d 1119, 1126 (9th Cir. 2002); *Regan*, 2007 WL 3072775 at \*2.

7    II.    **NEW YORK LAW GOVERNS**

8    The parties' contracts expressly provide that New York law governs.  *See*

9    IBM Developer Agreement, Agreement No. STL97041, dated June 23, 1997, at §

10   13.6 (RJN Ex. A) ("GOVERNING LAW.  The substantive laws of the State of New

11   York applicable to agreements fully executed and performed in New York govern

12   the IDA.") (emphasis added).  Hawaii courts will enforce a choice-of-law provision

13   if "the chosen law has some nexus with the parties or the contract."  *Airgo, Inc. v.*

14   *Horizon Cargo Transp., Inc.*, 66 Haw. 590, 595, 670 P.2d 1277, 1281 (1983).

15   IBM's incorporation in New York provides that nexus.  *See, e.g.*, *id.*, 66 Haw. at

16   591, 670 P.2d at 1279 (applying Texas law where contract stated that Texas law

17   would apply and one party was "a Texas freight transport company"); *see also*

18   *Folium, Inc. v. Int'l Bus. Machs. Corp.*, Civil No. 03-92-DAE/LEK, Opinion and

19   Order (D. Haw. Aug. 11, 2003) (RJN Ex. F) (dismissing claims on similar facts and

20   applying same choice of law provision; "the choice-of-law clause is enforceable

21   under Hawaii law because IBM is a New York corporation").  Thus, the choice-of-

22   law provision is enforceable.

23   New York law also applies to RSI's tort claims, which merely restyle its

24   breach of contract claim.  Although Hawaii courts have not addressed this issue, the

25   California Supreme Court has held that tort claims related to a contract claim fall

26   within a contractual choice-of-law provision, especially where (as here) those tort

27   claims are simply the "alter-ego" of the contract claims.  *Nedlloyd Lines B.V. v.*

28   *Superior Court*, 3 Cal. 4th 459, 470, 11 Cal. Rptr. 2d 330, 337 (1992) ("[A] valid

1    choice-of law clause, which provides that a specified body of law 'governs' the

2    'agreement' between the parties, encompasses all causes of action arising from or

3    related to that agreement, regardless of how they are characterized, including

4    tortious breaches of duties emanating from the agreement or the legal relationships it

5    creates.").[9]  Hawaii courts often look to California law on issues of first impression.

6    *See, e.g.*, *Jaress & Leong v. Burt*, 150 F. Supp. 2d 1058, 1065 (D. Haw. 2001)

7    (noting that "the Hawaii Supreme Court would likely follow the California

8    reasoning" on effect of dismissals against nonconsenting defendants); *Allstate Ins.*

9    *Co. v. Kim*, 121 F. Supp. 2d 1301, 1307 n.3 (D. Haw. 2000) ("The Hawaii Supreme

10   Court has frequently followed California [c]ourts in rendering opinions on insurance

11   matters."); *Hays v. City and County of Honolulu*, 81 Haw. 391, 396, 917 P.2d 718,

12   723 (1996) ("[I]n interpreting our statute, we reject the [federal] rule and adopt, with

13   clarification, the California rule.").  Accordingly, Hawaii would likely follow

14   *Nedlloyd* and other courts to apply the choice of law clause to related tort claims.

15        Notably, the choice-of-law provision in IBM's Developer Agreement has

16   already been applied to tort and unfair competition claims in a case alleging similar

17   facts.  *See Cardonet, Inc. v. IBM Corporation*, No. C-06096637, 2007 WL 518909

18   at *3 (N.D. Cal. Feb. 14, 2007) (applying New York law to interpret breadth of

19   _____

20        [9]  *Accord McAdams v. Massachusetts Mut. Life Ins. Co.*, No. Civ. A. 99-30284-
     FHF, 2002 WL 1067449 at *12-13 (D. Mass. May 15, 2002) ("[A] choice of law
21   provision should apply to non-contract claims where the basic source of any duty
     owed by defendants to the plaintiff is derived from the contractual relationship
22   structured by the underlying agreement."); *id.* ("[T]he federal common law, as
     articulated by the Court of Appeals for the First Circuit, holds that 'contract-related
23   tort claims involving the same operative facts as a parallel claim for breach of
24   contract should be heard in the forum selected by the contracting parties.'");
     *Druckers', Inc. v. Pioneer Elecs. (USA), Inc.*, Civ. A. No. 93-1931, 1993 WL
25   431162 at *7 (D.N.J. Oct. 20, 1993) (choice-of-law clause applied to tort claims
26   where there was "no basis for [them] independent of the Agreement—absent the
     contractual relationship[,] [defendant]'s actions would not have occurred").
27

28

1  choice-of-law provision and concluding "the choice-of-law provision reaches all of

2  plaintiff's claims [including fraud, negligent misrepresentation, conversion, and

3  California statutory unfair competition claims] since the claims as pled seek the

4  benefit of plaintiff's bargain with IBM and seek damages of the type remedial in

5  contract under New York laws.").  Under the similar facts of this case, New York

6  law should apply to plaintiff's tort and common law unfair competition claims.

7  III.  **PLAINTIFF'S CLAIMS ARE ALL TIME-BARRED BY THE**

8  **PARTIES' CONTRACTUAL AGREEMENT**

9      RSI and IBM agreed in writing that, except for indemnification actions,

10  "neither of [them] will bring a legal action against the other more than two (2) years

11  after the cause of action arose."[10]  Plaintiff admits that "[o]n or about the year 2004,

12  [p]laintiff discovered for the first time certain . . . [IBM] customers . . . continued to

13  utilize the Buffer Pool Tool in violation of any contract that the parties had[.]"[11]

14  Thus, plaintiff's claims—all of which are based on IBM's alleged failure to pay

15  royalties—had to be brought within two years, i.e., in 2006, under the express terms

16  of the parties' agreement.[12]

17      It is well-established that parties can shorten limitations periods by

18  agreement.  *See, e.g.*, N.Y. C.P.L.R. § 201 (McKinney 2003) (actions "must be

19  ───────────────

20  [10]  IBM Developer Agreement at § 13.3 (RJN Ex. A) ("ACTIONS.  Except for
actions brought to enforce Section 7.0, "INDEMNIFICATION AND LIABILITY,"
21  neither of us will bring a legal action against the other more than two (2) years after
the cause of action arose.").
22

23  [11]  Compl. ¶ 11.

24  [12]  Plaintiff includes a seemingly errant allegation that "[o]n or about 2006,
[p]laintiff discovered for the first time that IBM was infringing upon materials
25  copyrighted by [p]laintiff in its manuals for the Buffer Pool Analyzer."  Compl. ¶
12.  RSI has brought no copyright infringement claim.  Even if this allegation was
26  intentionally included by plaintiff, it is irrelevant to all of RSI's claims, which are
based on IBM's alleged failure to pay royalties to RSI or facilitate audits.
27

28

1  commenced within the time specified in this article unless . . . a shorter time is

2  prescribed by written agreement"); *Allman v. UMG Recordings*, 530 F. Supp. 2d

3  602, 606-07 (S.D.N.Y. 2008) ("Courts applying New York law have routinely

4  upheld the enforceability of contractual limitations periods similar to the Limitation

5  Provision.") (collecting cases); *John J. Kassner & Co., Inc. v. City of New York*, 46

6  N.Y.2d 544, 550-51, 415 N.Y.S.2d 785, 789 (1979) (agreements reasonably

7  shortening limitations periods are enforceable).

8          That is exactly what the parties did here, with a mutual limitation that can

9  benefit either party.  A two-year period in which to sue is reasonable and

10  enforceable by any standard.[13]  *Redington v. Hartford Accident & Indem. Co.*, 463

11  F. Supp. 83, 85-86 (S.D.N.Y. 1978) (enforcing contractual limitation that party

12  bring action on bond within two years); *H.P.S. Capitol, Inc. v. Mobil Oil Corp.*, 186

13  A.D.2d 98, 98-99, 588 N.Y.S.2d 29, 30 (1st Dept. 1992) (one-year shortened

14  limitations period in retail dealer agreement was reasonable, valid, and enforceable).

15  Because all plaintiff's claims arise from the parties' agreements, the limitations

16  provision of the IBM Developer Agreement bars all plaintiff's claims.[14]

17

18

19      [13]   Such a provision was particularly reasonable where, as here, New York's six-
20  year statute of limitations for contract actions is very long for a contract involving a
    quickly evolving industry (software) undergoing constant innovation, and royalty
21  audits, for which identification, location, and retention of copious records may be
    required.  N.Y. C.P.L.R. § 213 (McKinney 2003) (providing six-year statute of
22  limitations); IBM Developer Agreement (RJN Ex. A) at § 3.6 (requiring parties to
    maintain auditable records for only three years from the date of relevant payment or
23  invoice under the agreements).

24
        [14]   In June 2007, the parties agreed to toll any limitations periods in order to
25  explore a possible pre-filing resolution of the dispute.  By its express terms, the
    tolling agreement did not revive any claim already time-barred as of its effective
26  date or waive any limitations defense.  This tolling agreement was unilaterally
    terminated by plaintiff on November 18 and 19, 2007.  Because by the allegations of
27
        (footnote continued)
28

IV.  **THE ECONOMIC LOSS RULE BARS RSI'S TORT AND UNFAIR COMPETITION CLAIMS**

A.   The Economic Loss Rule

New York courts consistently hold that, where a contracting party alleges only economic loss (with no damage to person or property), tort claims will not lie, and the remedy lies exclusively in contract. *See, e.g., Orlando v. Novuriana of America, Inc.*, 162 F. Supp. 2d 220, 224-26 (S.D.N.Y. 2001) (applying New York law to find that if the damages are the type remedial in contract, a plaintiff may not recover in tort). The courts sometimes state this "economic loss rule" another way—if the plaintiff alleges only that it lost the benefit of its bargain and not the breach of any duty independent of the contractual obligations, tort claims will not lie. *See Carmania Corp. v. Hambrecht Terrell Int'l*, 705 F. Supp. 936, 938 (S.D.N.Y. 1989) (buyer of architectural services could recover in contract only since loss was purely economic).

The basis for the economic loss rule is that contractual claims and remedies should be distinct from, and not overwhelmed by, tort doctrines. *See id.* at 938. The *Carmania* court described it as an attempt to prevent "contract law 'from drown[ing] in a sea of tort'":

> The law of contracts is meant to facilitate voluntary economic exchange. Plaintiffs who sue successfully for breach of contract are entitled to damages providing them with the benefit of the bargains they and the defendants chose to strike—i.e., to be placed in the positions they would have enjoyed had the parties' expectations panned out. The law of torts, in contrast, has different goals: to deter people from inflicting harm when they behave unreasonably, and to compensate those injured by restoring them to the state they occupied before they suffered harm. New York law preserves these distinctions by restricting plaintiffs who have suffered "economic

plaintiff's own Complaint the applicable limitations period expired in 2006, the tolling agreement has no effect on the limitations issues raised in this motion.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> loss," but not personal or property injury, to an action for the benefits of their bargains.  If the damages suffered are of the type remediable in contract, a plaintiff may not recover in tort.

*Id.* at 938.  Thus, New York courts have sensibly sought to prevent precisely what RSI is trying to do here—a recasting of every alleged breach of contract as a tort claim (or, as here, *eight* tort and unfair competition claims) and expose defendants to the possibility of punitive damages and more expansive, wide-ranging, and invasive discovery.[15]

      B.    <u>Plaintiff's Tort Claims Arise from the Same Facts as the Contract Claim</u>

That plaintiff has attempted to plead *eleven* causes of action based on only twelve short paragraphs of factual allegations is not surprising when the claims are analyzed: The multitude of tort and unfair competition claims merely restate plaintiff's breach of contract claim.  The economic loss rule has been consistently applied to bar these types of claims.

     •    <u>Count V: Breach of the Covenant of Good Faith and Fair Dealing.</u>  Plaintiff's breach of the covenant of good faith and fair dealing claim states merely that "[a] covenant of good faith and fair dealing is implied in the terms of the contractual arrangements imposed upon . . . IBM" and that IBM breached that covenant by "its conduct and course of dealings with plaintiff."[16]  Plaintiff alleges

----

[15]   Hawaii, like New York, also recognizes the economic loss rule.  *See City of Express, Inc. v. Express Ptrs*, 87 Haw. 466, 469, 959 P.2d 836 (1998) ("The economic loss rule marks the fundamental boundary between the law of contracts, which is designed to enforce expectations created by agreement, and the law of torts, which is designed to protect citizens and their property by imposing a duty of reasonable care on others.  The economic loss rule was designed to prevent disproportionate liability and allow parties to allocate risk by contract.") (quoting *Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist.*, 124 Wash. 2d 816, 881 P.2d 986 (1994)).

[16]   Compl. ¶¶ 34-35.

1  no extra-contractual act that breached the covenant.  New York law is clear that

2  where a claimed breach of an implied covenant of good faith and fair dealing is

3  duplicative of a breach of contract claim in the same case, the former must be

4  dismissed.  *Wolff v. Rare Medium, Inc.*, 171 F. Supp. 2d 354, 359 (S.D.N.Y. 2001)

5  ("Plaintiff's allegation of a breach of the obligation of good faith is duplicative of the

6  cause of action for breach of contract since New York courts generally assume an

7  obligation of good faith and fair dealing between parties to a contract."); *Pub. Serv.*

8  *Mut. Ins. Co. v. Tri-Con Constr. Corp.*, 224 A.D.2d 508, 508, 328 N.Y.S.2d 155,

9  156 (2d Dept. 1996) ("The test is whether the duty of care alleged is one expressly

10  or impliedly stemming from the contractual relationship or one existing

11  independently.").  Plaintiff admits that the covenant of good faith and fair dealing at

12  issue is the one implied in the contract that was allegedly breached; it is redundant

13  of plaintiff's breach of contract claim and is barred by the economic loss rule.  *See,*

14  *e.g.*, *Nat'l Football League Props., Inc. v. Dallas Cowboys Football Club, Ltd.*, 922

15  F. Supp. 849, 855 (S.D.N.Y. 1996) ("'Under New York law, parties to an express

16  contract are bound by an implied duty of good faith, but breach of that duty is

17  merely a breach of the underlying contract."); *Macmillan, Inc. v. Fed. Ins. Co.*, 764

18  F. Supp. 38, 41 (S.D.N.Y. 1991) ("A simple breach of contract is not to be

19  considered a tort unless a duty independent of the contract itself has been

20  violated.").  Plaintiff's fifth cause of action should be dismissed.

21  •  Count II-IV: Negligent Misrepresentation, Intentional

22  Misrepresentation and Fraud.  Plaintiff's negligent misrepresentation, intentional

23  misrepresentation, and fraud claims are premised on IBM's alleged representation to

24  plaintiff that it would not allow customers to use the Buffer Pool Tool without

25  compensation to plaintiff.[17]  The alleged wrong is that IBM's customers continued to

26  ─────────────

27  [17]  *Id.* ¶¶ 20, 26-27, 32.

28

1  use the Buffer Pool Tool without royalties flowing to RSI as required under the

2  parties' agreement.  This conduct falls within the scope of the parties' agreement: If

3  IBM customers used Buffer Pool Tool, IBM owed RSI a percentage of the revenues

4  it collected.  Under New York law, "where a fraud claim seeks to enforce no more

5  than the breached promises and obligations of a contract, rather than additional

6  damages incurred as a result of the breach, the claims are merely redundant and

7  must be dismissed." *R.H. Damon & Co. v. Softkey Software Prods. Inc.*, 811 F.

8  Supp. 2d 220, 228 (E.D.N.Y. 1999) (dismissing fraud claims because "[p]laintiffs'

9  [fraud] claims seek only the compensation they would have received had defendants

10  performed the contract as expected."); *see also Salvador v. Uncle Sam's Auctions &*

11  *Realty, Inc.*, 307 A.D.2d 609, 611, 763 N.Y.S.2d 360, 362 (3d Dept. 2003).

12  Plaintiff's misrepresentation and fraud causes of action should be dismissed because

13  they do nothing more than allege that IBM allowed customers to use the Buffer Pool

14  Tool without paying royalties.

15  •  Count VI: Conversion.  The conversion claim is premised on

16  IBM's alleged use of the Buffer Pool Tool without compensation to plaintiff.[18]  Here

17  again plaintiff's claim amounts to nothing more than a royalty dispute in disguise,

18  and is barred by the economic loss rule.  *See, e.g.*, *Wolf v. Nat'l Council of Young*

19  *Israel*, 264 A.D.2d 416, 416-17, 694 N.Y.S.2d 424, 425 (2d Dept. 1999) (affirming

20  dismissal of conversion counterclaim based upon allegations that plaintiff

21  improperly deducted late fees from monthly mortgage payments in manner not

22  authorized by mortgage agreements because claim did not stem from wrong

23  independent of alleged breach of mortgage agreements); *Interstate Adjusters, Inc. v.*

24  *First Fid. Bank, N.A.*, 251 A.D.2d 232, 234, 675 N.Y.S.2d 42, 44 (1st Dept. 1998)

25  ("A conversion claim cannot be based only on the allegation that a defendant

26  _____

27  [18]  *Id.* ¶ 38.

28

AMENDED NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM IN SUPPORT THEREOF

1  received money and failed to remit payment to the plaintiff."); *Yeterian v. Heather*

2  *Mills N.V. Inc.*, 183 A.D.2d 493, 494, 583 N.Y.S.2d 439, 440 (1st Dept. 1992)

3  ("Concerning the cause of action for conversion, . . . it merely restates the cause of

4  action for breach of contract and alleges no independent facts sufficient to give rise

5  to tort liability.  Since an action for conversion cannot be predicated on a mere

6  breach of contract, plaintiff's conversion claim was properly dismissed.").

7  •  Count VII: Common Law Unfair Competition.  Plaintiff's claim

8  for unfair competition is also a tort claim based on conduct governed entirely by the

9  parties' written agreements, i.e., IBM's continued use of the Buffer Pool Tool in

10  commerce, and thus should be dismissed.[19]  *See, e.g.*, *QC Constr. Prods., LLC v.*

11  *Cohill's Bldg. Specialties, Inc.*, 423 F. Supp. 2d 1008, 1015-16 (D. Ariz. 2006)

12  (economic loss rule barred unfair competition tort claim under Arizona law).

13  V.  **PLAINTIFF'S FRAUD CLAIMS ARE NOT PLEADED WITH THE**

14  **REQUISITE SPECIFICITY**

15  Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with

16  particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

17  The Rule requires claimants to plead specific details of the alleged fraud, including

18  the time, place, and specific content of the false representations at issue, and the

19  identities of the parties to the misrepresentation.  *Schreiber Distrib. Co. v. Serv-Well*

20  *Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *see also LaSalle Nat'l Bank v.*

21  *Ernst & Young LLP*, 285 A.D.2d 101, 109, 729 N.Y.S.2d 671, 677 (1st Dept. 2001)

22  (under New York law, plaintiff must allege material misrepresentation of fact,

23  falsity, *scienter*, deception and injury, "and each element must be pleaded with

24  particularity").  Failure to plead these specifics is fatal.  *See, e.g.*, *Semegen v.*

25

26  [19]  *Id.* ¶ 48 ("IBM's continued use of the Buffer Pool Tool in commerce
27  constitutes unfair competition.").

28

1    *Weidner*, 780 F.2d 727, 731 (9th Cir. 1985) (when fraud is alleged, "the absence of

2    specification of any times, dates, places or other details of that alleged fraudulent

3    involvement is contrary to the fundamental purposes of Rule 9(b)").

4              Despite the heightened pleading standard and the seriousness of fraud and

5    intentional misrepresentation claims, RSI has failed to allege sufficient detail to

6    support its claims.  Plaintiff alleges only that IBM represented it would not continue

7    to use or allow its customers to use the Buffer Pool Tool; its remaining allegations

8    are pleaded in conclusions that mirror the legal elements of fraud claims without

9    necessary supporting facts.[20]  The generality of plaintiff's allegations makes it

10   impossible to assess potentially dispositive details—which should be within RSI's

11   own knowledge—such as when IBM allegedly made and knew about the purported

12   false statements to RSI.  Nor is it possible to assess the basis for plaintiff's reliance

13   or damages allegations; there is no indication plaintiff took or refrained from taking

14   any action on the basis of the alleged statement, or that it cost plaintiff anything

15   other the royalties provided for under the parties' agreement (and is therefore

16   compensable only in contract as described above).  *See, e.g.*, *Semegen*, 780 F.2d at

17   731 ("The requirements of Rule 9(b) are designed to prohibit a plaintiff from

18   unilaterally imposing upon the court, the parties and society enormous social and

19   economic costs absent some factual basis.").

20   VI.    **PLAINTIFF HAS ALLEGED NO FACTS TO SUPPORT ITS**

21          **LANHAM ACT OR RESTRAINT OF TRADE CLAIMS**

22              Plaintiff completely fails to plead any facts in support of its seventh cause of

23   action for unfair competition under the Lanham Act and ninth cause of action for

24   _____

25   [20]   *Id.* ¶¶ 26, 32; *see also id.* ¶ 27 (IBM "knew" its customers were continuing to

26   utilize Buffer Pool Tool without compensation to plaintiff); *id.* ¶ 28 (IBM "knew
     that Plaintiff would rely on the misrepresentations"); *id.* ¶ 29 (plaintiff relied on

27   IBM's representations); *id.* ¶ 30 (plaintiff was damaged).

28

1  restraint of trade.  Plaintiff's claims merely recite legal elements and conclusions of

2  law supported only by vague statements that IBM has led the public to believe the

3  Buffer Pool Tool is inferior or engaged in "concerted actions" to restrain trade.[21]

4  The Court is not required to accept conclusory allegations.  *Sprewell v. Golden State*

5  *Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *In re Syntex Corp. Sec. Litig.*, 95 F.3d

6  922, 926 (9th Cir. 1996) ("Conclusory allegations of law and unwarranted

7  inferences are insufficient to defeat a motion to dismiss for failure to state a

8  claim.").[22]

9  VII.  **"UNCLEAN HANDS" AND "PUNITIVE DAMAGES" ARE NOT**

10      **CAUSES OF ACTION**

11      Plaintiff's tenth and eleventh claims are not causes of action at all.  Styled as

12  "Unclean Hands," plaintiff's tenth cause of action is in fact an affirmative defense to

13  a hypothetical counterclaim or affirmative defense that IBM has not yet asserted:

14  _____

15  [21]    *See, e.g., id.* ¶¶ 43-46 (alleging as basis of Lanham Act claim only that IBM
16  used Buffer Pool Tool in commerce without authorization, confusing, or likely
    confusing, public into believing Buffer Pool Tool was inferior, but not alleging how
17  or why, and referring to unidentified false or misleading representations or
    descriptions of fact and unalleged "foregoing acts of disparagement").  Plaintiff's
18  restraint of trade allegations are unintelligible and insufficient to put IBM on notice
19  of the challenged conduct.  *Id.* ¶ 51 ("IBM has made agreements, or has refused to
    correct known errors in software for the purpose and/or the effect of unreasonably
20  restraining trade, commerce, and industry with respect to the supply and bundling of
21  the software known as the Buffer Pool Tool.  The Defendants' [sic] agreements
    violate common law against such conduct in restraint of trade.").  Plaintiff alleges in
22  conclusory fashion that: "Defendant IBM has been and is acting for the purpose, and
23  with the effect, of unreasonably restraining trade, commerce, and industry with
    respect to the processing of software.  The Defendant's concerted actions violate
24  common law against such conduct in restraint of trade."  *Id.* ¶ 52.
25

26  [22]    IBM notes that plaintiff has not made a single factual allegation connecting
    any purported "Doe" defendants to any of its claims, and their improper inclusion as
27  parties does not bar outright dismissal of plaintiff's Complaint.

28

1  "Defendant IBM's unlawful or wrongful conduct in its course of dealing with

2  Plaintiff constitutes unclean hands which precludes it from asserting or receiving

3  any equitable relief, remedies, or defenses."[23]  Unclean hands is an affirmative

4  defense under New York law; not a cause of action.  *See, e.g.*, *518 E. 80th St. Co. v.*

5  *Smith*, 251 A.D.2d 215, 216, 674 N.Y.S.2d 680, 681 (1st Dept. 1998) (unclean

6  hands is an equitable defense);  *Folium, Inc. v. Int'l Bus. Machs. Corp.*, Civil No.

7  03-92-DAE/LEK, Opinion and Order (D. Haw. Aug. 11, 2003) (RJN Ex. F) at 7 (on

8  similar facts, dismissing cause of action for "unclean hands" because it is an

9  affirmative defense).

10       Similarly, it is well-settled that New York law does not recognize a separate

11  cause of action for punitive damages.  *Smith v. County of Erie*, 295 A.D.2d 1010,

12  1011, 743 N.YS.2d 649, 651 (4th Dept. 2002) ("There is no separate cause of action

13  for punitive damages, inasmuch as punitive damages are but an incident of ordinary

14  damages") (internal quotations omitted); *Firth v. State*, 706 N.Y.S.2d 835, 838

15  (N.Y. Ct. Cl. 2000) ("The third cause of action is quickly disposed of as the law is

16  settled that there is not a separate cause of action for punitive damages.").

17       Moreover, plaintiff's prayer for punitive damages is barred by the express

18  terms of the parties' agreements.  In Section 7.3 of the Developer Agreement, RSI

19  and IBM mutually agreed that "[n]either party will be liable to the other for lost

20  profits or consequential, <u>punitive</u>, or incidental damages, even if informed of their

21  possibility."[24]  This type of damages limitation is consistently enforced by New

22  York courts.  *See, e.g.*, *Met. Life Ins. Co. v. Noble Lowndes, Int'l, Inc.*, 618 N.Y.S.2d

23  _____

24       [23]  *Id.* ¶ 55.

25       [24]  IBM Developer Agreement at § 7.3 (RJN Ex. A) ("LIABILITY.  Neither

26  party will be liable to the other for lost profits or consequential, <u>punitive</u>, or
    incidental damages, even if informed of their possibility. . . . IBM's total liability for

27  a project is limited to payments due to RSC.") (emphasis added).

28

1  882, 885 (1994) (New York law upholds contracts that limit recovery to money paid

2  and bar consequential damages: "A limitation of liability provision in a contract

3  represents the parties' [a]greement on the allocation of the risk of economic loss in

4  the event that the contemplated transaction is not fully executed, which the courts

5  should honor."); *id.* ("Where a contract provides that damages for breach shall not

6  be recoverable beyond a specified sum, it is obvious that the risk of loss beyond that

7  sum is being assumed by the promisee," quoting 5 Corbin, *Contracts*, § 1068, at

8  386); *DynCorp v. GTE Corp.*, 215 F. Supp. 2d 308, 317-18 (S.D.N.Y. 2002)

9  (enforcing provisions limiting amount of recovery and barring recovery of

10  consequential, special, or punitive damages).

11      Even assuming punitive damages were not barred by the parties' written

12  agreement, plaintiff's request for punitive damages would still be inappropriate and

13  subject to an order to strike.[25]  Under New York law, punitive damages should be

14  stricken unless a fraud has been perpetrated on the public at large or the defendant

15  has "manifested a gross and wanton departure from the moral norms of society."

16  *R.H. Damon & Co.*, 811 F. Supp. at 993.  Here, RSI has not alleged (and cannot

17  allege) that IBM aimed any improper conduct at the general public or evinced the

18  requisite "gross and wanton" disregard for morality.  This case is a simple contract

19  dispute between sophisticated commercial parties; there is no hint of the type of

20  public deception or moral turpitude that would warrant punitive damages under New

21  York law.

22

23      [25] Rule 12(f) provides that the Court may "strike from a pleading . . . any
24  redundant, immaterial, impertinent, or scandalous matter."  Courts have authority to
   strike a prayer for relief seeking damages that are not recoverable as a matter of law.
25  *See, e.g.*, *Arcilla v. Adidas Promotional Retail Operations, Inc.*, 488 F. Supp. 2d
26  965, 968 (C.D. Cal. 2007); *see also Coffman v. Fed. Labs.*, 323 U.S. 325, 326-27
   (1945) (affirming striking of prayer for injunction where appellant showed no
27  grounds for equitable relief).

28

1    For all these reasons, plaintiff's eleventh claim and its prayer for punitive

2  damages should be dismissed.

3                                    **Conclusion**

4    For the foregoing reasons, defendant IBM respectfully requests that the Court

5  dismiss plaintiff's Complaint with prejudice or, in the alternative, strike plaintiff's

6  prayer for punitive damages.

7

8  DATED:  August 1, 2008                QUINN EMANUEL URQUHART OLIVER &
                                          HEDGES, LLP
9

10                                        By /s/_____

11                                          Shon Morgan
                                            Attorneys for Defendant
12                                          International Business Machines
                                            Corporation
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28