1  FORREST BOOTH (State Bar No. 74166)
   fb@severson.com
2  RYAN C. DONLON (State Bar No. 229292)
   rcd@severson.com
3  SEVERSON & WERSON
   A Professional Corporation
4  One Embarcadero Center, Suite 2600
   San Francisco, CA  94111
5  Telephone:  (415) 398-3344
   Facsimile:  (415) 956-0439
6
   Attorneys for Plaintiff
7  RSI CORPORATION

8

9              UNITED STATES DISTRICT COURT

10      NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

11

12 | RSI CORP., dba RESPONSIVE SYSTEMS       Case No.:  5:08-cv-3414 RMW (HRL)
   COMPANY, a New Jersey corporation,
13                                           **PLAINTIFF'S MEMORANDUM IN**
                   Plaintiff,                **OPPOSITION TO DEFENDANT'S**
14                                           **MOTION TO DISMISS OR, IN THE**
             vs.                             **ALTERNATIVE, STRIKE**
15
   INTERNATIONAL BUSINESS MACHINES           Hearing Date:  October 3, 2008
16 CORPORATION; and DOE DEFENDANTS           Time:              9:00 a.m.
   1-20,                                     Dept.:  Ctrm #6, 4th Fl.
17                                           Judge:  Hon. Ronald M. Whyte
18                 Defendants.
                                             Complaint Date:  February 15, 2008
19                                           Trial Date:  None

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ..................................................................................... 1

II.   STATEMENT OF ISSUES TO BE DECIDED ........................................... 1

III.  RELEVANT FACTS ................................................................................ 2

IV.   ARGUMENT ........................................................................................... 6

    A.    Rule 12 Standards. .......................................................................... 6

    B.    Governing Law Clause. ................................................................... 6

    C.    RSI'S Claims Are Not Time-Barred. ............................................... 7

        1.    The Limiting Period in the Developer Agreement is Ambiguous ............... 7

        2.    Multiple Breaches of the Agreements and Their Concealment ................... 8

        3.    Continuing Wrongs for Tort Claims ........................................................ 9

    D.    The Economic Loss Rule Does Not Bar RSI's Intentional Torts and Unfair Competition Claims. ....................................................... 10

        1.    The Economic Loss Rule ....................................................................... 10

        2.    IBM Has Not Negated the Possibility That The Fraud Arises From Different Facts Than The Contract Claim. ................................. 13

            a.    Count V:  Duty of Good Faith and Fair Dealing. .......................... 14

            b.    Counts II-IV: Negligent Misrepresentation, Intentional Misrepresentation, and Fraud. ................................................... 15

            c.    Count VI: Conversion. ............................................................... 15

            d.    Count VII:  Common Law Unfair Competition. ........................... 15

    E.    RSI's Fraud Claims Are Pled With The Requisite Specificity, Or Else Rule 9(b)'s Requirement Is Excused Under The Facts Of This Case. .................. 16

    F.    RSI Has Alleged Sufficient Facts To Support Its Lanham Act And Restraint Of Trade Claims. ........................................................ 17

    G.    The Transaction Documents Do Not Bar Punitive Damages. ............... 18

V.    CONCLUSION ..................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*American Telegraph & Telegraph Co. v. New York City Human Resources Admin.*,
    833 F. Supp. 962 (S.D.N.Y. 1993) .................................................................................. 11

*Anza v. Ideal Steel Supply Corp.*,
    547 U.S. 451 (2006) ............................................................................................................ 6

*Bowles v. Reade*,
    198 F.3d 752 (9th Cir. 1999) ........................................................................................... 20

*Bridgestone/Firestone, Inc. v. Recovery Credit Serv., Inc.*,
    98 F.3d 13 (2d Cir. 1996) ................................................................................................ 12

*Brink's Inc. v. City of N.Y.*,
    717 F.2d 700 (2d Cir. 1983) ............................................................................................ 19

*Canal Electric Co. v. Westinghouse Electric Co.*,
    973 F.2d 988 (1st Cir. 1992) ........................................................................................... 11

*Carrigan v. Cal. State Legis.*,
    263 F.2d 560 (9th Cir. 1959) ........................................................................................... 16

*Chrysler Credit Corp. v. Whitney National Bank*,
    824 F. Supp. 587 (E.D. La. 1993) ................................................................................... 17

*Commercial Data Servers, Inc. v. International Bus. Machine Corp.*,
    166 F. Supp. 2d 891 (S.D.N.Y. 2001) ............................................................................. 16

*Computer Data System, Inc. v. Kleinberg*,
    759 F. Supp. 10 (D.D.C. 1990) ......................................................................................... 8

*Conagra, Inc. v. Singleton*,
    743 F.2d 1508 (11th Cir. 1984) ....................................................................................... 18

*Conley v. Gibson*,
    355 U.S. 41 (1957) ............................................................................................................. 6

*Conocophillips v. 261 East Merrick Road Corp.*,
    428 F. Supp. 2d 111 (E.D.N.Y. 2006) ............................................................................. 18

*Continental Airlines, Inc. v. Mundo Travel Corp.*,
    412 F. Supp. 2d 1050 (E.D. Cal. 2006) ...................................................................... 8, 14

*County of Suffolk v. Long Island Lighting Co.*,
    728 F.2d 52 (2d Cir.1984) ............................................................................................... 11

*Daher v. G.D. Searle & Co.*,
    695 F. Supp. 436 (D. Minn. 1988) .................................................................................. 17

1

## TABLE OF AUTHORITIES

2

Page(s)

3

## FEDERAL CASES (Cont.)

4  *Deutsch v. Flannery,*
         823 F.2d 1361 (9th Cir. 1987) ........................................................................... 17
5
   *Durham Industrial, Inc. v. North River Insurance Co.,*
6         673 F.2d 37 (2d Cir. 1982) ............................................................................... 19

7  *EED Holdings v. Palmer Johnson Acquisition Corp.,*
         387 F. Supp. 2d 265 (S.D.N.Y. 2004) .............................................................. 11
8
   *Eminence Capital, LLC v. Aspeon, Inc.,*
9         316 F.3d 1048 (9th Cir. 2003) .......................................................................... 20

10 *Evans v. Singer,*
         518 F. Supp. 2d 1134 (D. Ariz. 2007) ........................................................ 15, 16
11
   *Giles v. General Motors Acceptance Corp.,*
12        494 F.3d 865 (9th Cir. 2007) ........................................................ 10, 11, 12, 13

13 *Gordon and Breach Science Publishers S.A. v. American Institute of Physics,*
         859 F. Supp. 1521 (S.D.N.Y. 1994) ................................................................... 9
14
   *Great Earth International Franchising Corp. v. Milks Development,*
15        311 F. Supp. 2d 419 (S.D.N.Y. 2004) .............................................................. 12

16 *Gruntal & Co., Inc. v. San Diego Bancorp,*
         901 F. Supp. 607 (S.D.N.Y. 1995) .................................................................... 14
17
   *H&R Industries, Inc. v. Kirshner,*
18        899 F. Supp. 995 (E.D.N.Y 1995) ..................................................................... 9

19 *Hargrave v. Oki Nursery, Inc.,*
         636 F.2d 897 (2d Cir. 1980) ............................................................................. 13
20
   *In re GlenFed, Inc. Sec. Litigation,*
21        42 F.3d 1541 (9th Cir. 1994) ........................................................................... 17

22 *International Audiotext Network, Inc. v. AT&T,*
         62 F.3d 69 (2d Cir. 1995) ................................................................................... 8
23
   *Leonhard v. United States,*
24        633 F.2d 599 (2d Cir. 1980), *cert. denied*, 451 U.S. 908 (1981) ..................... 10

25 *Marsh v. Burrell,*
         805 F. Supp. 1493 (N.D. Cal. 1992) ................................................................... 6
26
   *Martin Marietta Corp. v. International Telecomms. Satellite Organization,*
27        998 F.2d 94 (4th Cir. 1992) ............................................................................... 8

28

- iii -

# TABLE OF AUTHORITIES

Page(s)

## FEDERAL CASES (Cont.)

*McGhee v. Arabian American Oil Co.*,
871 F.2d 1412 (9th Cir. 1989) ........................................................................................ 7

*Mendiondo v. Centinela Hospital Medical Ctr.*,
521 F.3d 1097 (9th Cir. 2008) ........................................................................................ 6

*Mendoza v. Zirkle Fruit Co.*,
301 F.3d 1163 (9th Cir. 2002) ........................................................................................ 6

*Odom v. Microsoft Corp.*,
486 F.3d 541 (9th Cir. 2007), *cert. denied*, 128 S.Ct. 464 (2007) ................................ 16

*Papa's-June Music, Inc. v. McLean*,
921 F. Supp. 1154 (S.D.N.Y. 1996) ............................................................................. 12

*QC Const. Prod., LLC v. Cohill's Building Specialties, Inc.*,
423 F. Supp. 2d 1008 (D. Ariz. 2006) ..................................................................... 15, 16

*R.H. Damon & Co., Inc. v. Softkey Software Prod., Inc.*,
811 F. Supp. 986 (S.D.N.Y. 1993) ......................................................................... 13, 14

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
806 F.2d 1393 (9th Cir. 1986) ..................................................................................... 16

*TVT Records v. Island Defense Jam Music Group*,
412 F.3d 82 (2d Cir. 2005) .......................................................................................... 19

*Topps Co., Inc. v. Cadbury Stani S.A.I.C.*,
380 F. Supp. 2d 250 (S.D.N.Y. 2005) ......................................................................... 19

*Triangle Underwriters, Inc. v. Honeywell, Inc.*,
604 F.2d 737 (2d Cir. 1979) .................................................................................. 11, 12

*Triangle Underwriters, Inc. v. Honeywell, Inc.*,
651 F.2d 132 (2d Cir. 1981) .................................................................................. 11, 12

*Westchester Resco Co., LP v. New England Reins. Corp.*,
818 F.2d 2 (2d Cir 1987) ............................................................................................. 20

*Wool v. Tandem Computers Inc.*,
818 F.2d 1433 (9th Cir. 1987) ..................................................................................... 17

## STATE CASES

*212 Investment Corp. v. Kaplan*,
843 N.Y.S.2d 222 ....................................................................................................... 20

*AGA Shareholders, LLC v. CSK Automobile, Inc.*,
2007 WL. 1101264 (D. Ariz. Apr. 12, 2007) ............................................................... 14

- iv -

# TABLE OF AUTHORITIES

Page(s)

## STATE CASES (Cont.)

*Airco Alloys Division, Airco Inc. v. Niagra Mohawk Power Corp.,*
    430 N.Y.S.2d 179 ..................................................................................8

*Atascadero v. Merrill Lynch,*
    68 Cal. App. 4th 445 (1998) .................................................................7

*Aventis Tech. Corp. v. JP Morgan Chase Bank,*
    2004 WL. 5137578 (D. Ariz. Jan. 26, 2004) ...............................15, 16

*Badie v. Bank of America,*
    67 Cal. App. 4th 779 (1998) ...............................................................20

*Congregation B'nai Jehuda v. Hiyee Realty Corp.,*
    827 N.Y.S.2d 42 (N.Y. App.Div. 2006) ............................................10

*Davidson v. Percy,*
    1991 WL. 22847 (E.D.N.Y. 1991) .....................................................19

*Giles Const., Inc. v. Commercial Federal Bank,*
    2006 WL. 2711501 (D. Ariz. Sept. 21, 2006) ...................................16

*Harvey v. Metropolitan Life Insurance Co.,*
    827 N.Y.S.2d 6 (N.Y. App.Div. 2006) ..............................................10

*In re Ford Motor Co. Vehicle Paint Litigation,*
    1997 WL. 539665 (E.D. La. Aug. 27, 1997) .....................................12

*Kalisch-Jarcho, Inc. v. City of N.Y.,*
    448 N.E.2d 413, 461 N.Y.S.2d 746 (N.Y. 1983) ..............................18

*Lambert v. Commonwealth Land Title Insurance Co.,*
    53 Cal. 3d 1072 (1991) .........................................................................8

*McBride v. Boughton,*
    123 Cal. App. 4th 379 (2004) .............................................................20

*Measom v. Greenwich and Perry Street Housing Corp.,*
    798 N.Y.S.2d 298 .................................................................................8

*Metropolitan Life Insurance Co. v. Noble Lowndes Int'l., Inc.,*
    643 N.E.2d 504 (N.Y. 1994) ..............................................................18

*N.Y. University v. Continental Ins. Co.,*
    662 N.E.2d 763, 639 N.Y.S.2d 283 (NY 1995) ................................19

*Pugliese v. Superior Court,*
    146 Cal. App. 4th 1444 (2007) ..........................................................10

- v -

# TABLE OF AUTHORITIES

Page(s)

## STATE CASES (Cont.)

*Robinson Helicopter Co., Inc. v. Dana Corp.*,
  34 Cal. 4th 979 (2004) .................................................................... 12, 15

*Rocanova v. Equitable Life Assur. Social of U.S.*,
  634 N.E.2d 940, 612 N.Y.S.2d 339 (NY 1994) ........................... 18

*Romano v. Rockwell International, Inc.*,
  14 Cal. 4th 479 (1996) ................................................................... 8

*Rozwell v. Philanz Oldsmobile, Inc.*,
  591 N.Y.S.2d 649 (N.Y.A.D. 1992) ............................................ 11, 12

*Stevenson Equipment, Inc. v. Chemig Construction Corp.*,
  565 N.Y.S.2d 318 (N.Y.App.Div. 1991) ..................................... 11, 12

*Strasser v. Prudential Sec., Inc.*,
  630 N.Y.S.2d 80 (N.Y. App.Div. 1995) ...................................... 11, 12

*Tommy L. Griffin Plumbing & Heating Co. v. Jordon, Jones & Goulding, Inc.*,
  463 S.E.2d 85 (S.C. 1995) ............................................................ 11

*Trump-Equitable Fifth Avenue Co. v. H.R.H. Const. Corp.*,
  485 N.Y.S.2d 65 .............................................................................. 7

*Walker v. Sheldon*,
  223 N.Y.S.2d 488 (N.Y. 1961) ..................................................... 19

## STATUTES

Cal. Civ. Code, § 1641 ......................................................................... 7
Cal. Civ. Code, § 1654 ......................................................................... 20
Cal. Civ. Proc. Code § 337 ................................................................... 9
Cal. Civ. Proc. Code § 338(d) .............................................................. 9
Cal. Civ. Proc. Code, § 1858 ............................................................... 7
15 U.S.C. § 1125 (Lanham Act) ........................................................... 17

## RULES

Rule 8(a) ............................................................................................... 1, 16
Rule 8(d)(1) .......................................................................................... 16
Rule 9(b) ............................................................................................... 1, 16, 17
Rule 12 ................................................................................................. 6
Rule 12(b)(6) ........................................................................................ 1, 6, 10
Rule 15(a) ............................................................................................. 1, 17, 20

## BOOK

W. Page Keeton *et al.*, PROSSER AND KEETON ON THE LAW OF TORTS
  § 116A (5th ed. 1984) ..................................................................... 11

- vi -

# I.    INTRODUCTION

Defendant International Business Machines Corporation ("IBM") hopes to floor Plaintiff RSI Corp. ("RSI") with a one-two punch of the statute of limitations and the economic loss rule. Neither glove lands.  IBM wrongfully withheld royalty payments due to RSI, and then prevented audits of its books which would have demonstrated the quantum of RSI's damages.  Under the Ninth Circuit's "any set of facts" standard for Rule 12(b)(6) motions, IBM's multiple breaches of the Transaction Documents, concealment by IBM and continuing wrongs (torts) defeat the statute of limitations argument.  The stand-alone nature of the torts vis-à-vis the Transaction Documents dodges the economic loss rule.  The Court should deny IBM's motion, as explained below.  If any claim does not satisfy Rule 8(a) or Rule 9(b) standards, RSI seeks leave under Rule 15(a) to amend its complaint to correct any deficiencies.

# II.    STATEMENT OF ISSUES TO BE DECIDED

IBM's motion presents the following legal issues:

1.    *Which state's law applies.*  It is RSI's position that the choice of law provision contained in the contract is vague and ambiguous.  The Court should therefore, under the relevant choice of law analysis, decide that California has the greatest contacts with this dispute, and apply the law of this forum.

2.    *Statue of limitations.*  RSI urges the Court to apply the California statutes of limitations for breach of contract and fraud, to the extent any statute of limitations is applicable.  That statute is four years in length for breach of contract and three years for fraud.  Alternatively, the New York statute of limitation for fraud is six years.

3.    *Tort claims.*  IBM seeks to strike all of RSI's tort-based claims, on the basis that the parties entered into a written contract.  The Court should find that the tort-based claims do not depend on or arise out of the written contract, but are independent of them, and are not barred by any of IBM's contractual defenses.

4.    *The economic loss rule.*  IBM claims that the economic loss rule bars RSI's claims.  The Court should find that this rule does not bar intentional torts such as fraud and conversion.

## III.   RELEVANT FACTS

RSI creates computer software programs. Compl. ¶ 4. RSI entered into an IBM form contract called a Developer Agreement ("**Developer Agreement**") dated June 23, 1997. *Id.* ¶ 6; IBM Mot. Ex. A.[1] Under the Developer Agreement, RSI agreed to provide IBM with Deliverables[2] under later agreements or "**Transaction Documents**," and IBM agreed to pay RSI in accordance with the Transaction Documents and the Developer Agreement. Ex. A ¶ 12.0. The Developer Agreement required parties to "maintain auditable records to support invoices issued or payments made to the other." *Id.* ¶ 3.6. Records were to "be retained and made available for three (3) years from the date of the related payment or invoice." *Id.* Each party was required to make "records available to an independent auditor chosen and compensated by the requesting party." *Id.*

RSI and IBM executed Transaction Documents entitled "Description of Licensed Work" and "Statement of Work" both dated June 23, 1997 ("**1997 Transaction Documents**"). Compl. ¶ 6; Exs. B, C. RSI was required by the 1997 Transaction Documents to create, deliver, and license to IBM a buffer tool ("**Buffer Pool Tool**") capable of operating in IBM's DB2 environment, to support DB2 versions 3, 4 and 5, and provide an in-depth analysis of DB2 buffer pool activity. Compl. ¶ 6; Ex. C ¶ 6.0. RSI was further required by the 1997 Transaction Documents to create, deliver, and license to IBM a User's Guide for the Buffer Pool Tool. *Id.* ¶ 4.2. IBM was obligated by the 1997 Transaction Documents to pay RSI royalties. Compl. ¶ 8; Ex. B, ¶ 6.0 ("Royalty Terms").

The royalties were based on: "(1) thirty percent (30%) of all revenue recorded for the

---

[1]  References to Exhibits ("Ex.") are to those attached to IBM's Motion, unless otherwise stated.

[2]  The Developer Agreement defines "Deliverables" as "items prepared or provided by RSC [RSI] under a Transaction Document." Ex. A ¶ 1.3. Transaction Documents are meant to describe specific projects and "include, but are not limited to, Statements of Work, Descriptions of Licensed Work, Descriptions of Exclusive Marketing Rights, and their amendments, appendices, schedules, and exhibits." Ex. A ¶ 2.1.2.

- 2 -

Products[3] licensed on a stand alone basis; and (2) thirty percent (30%) of the revenue recorded for and attributable to the Product(s) when incorporated in or bundled with other new or existing IBM or non-IBM products, code, and/or services."[4]  Ex. B ¶ 6.1.  In no event was the royalty amount paid to RSI for each Licensed Work licensed in groups 40 through 80 to be less than $300.00.  *Id.*  Royalties were to be "paid against revenue received by IBM in Royalty Accounting Months[5] completed within each calendar quarter[,]" and the royalties were to be paid "within forty-five days (45) or less if possible following the calendar quarter."  Ex. B ¶ 6.3.

RSI and IBM later executed additional Transaction Documents entitled "Description of Licensed Work" and "Statement of Work" dated April 21, 1998 ("**1998 Transaction Documents**").  Compl. ¶ 7; Exs. D, E.  Those 1998 Transaction Documents were virtually identical to the 1997 Transaction Documents—particularly the payment and accounting of royalties—except for a requirement that the Buffer Pool Tool be enhanced to support DB2 V6 (an updated version of DB2), and be "enabled with 'try and buy' capabilities which will allow the end user a limited period to try the product before a self-initiated timing mechanism will disable the program unless the end user licenses the product from IBM."  Ex. E ¶ 4.1.  In accordance with the terms of the Developer Agreement and the 1997 and 1998 Transaction Documents (collectively "**Transaction Documents**"), RSI created, delivered, and licensed the Buffer Pool Tool and User's Guide (collectively "**Products**" or "**Software**"), and the updated versions of the Products, to IBM.  Compl. ¶¶ 5-7.  As contemplated by the Transaction Documents, RSI patented or copyrighted the Products and trademarked the Buffer Pool Tool name.  Compl. ¶¶ 11, 12.

---

[3]  The term "Products" is defined by the Developer Agreement, the terms of which are incorporated into the Transaction Documents by reference, as "offerings to customers or other users that include a Licensed Work or Derivative Works of a Licensed Work."  "Licensed Works" under the Developer Agreement means "Deliverables that RSC [RSI] owns and licenses to IBM" as identified in the Transaction Documents.

[4]  The revenue attributable to the Products is the total license fee received by IBM for the complete offering multiplied by the ratio of the list prices of the Products to the combined list prices of all offering products and components (or if no list price is known, then the reasonable market values).  Ex. B ¶ 6.1.

[5]  "Royalty Accounting Month is the time frame during which Royalty fees become due[]" and "begins on the first business day of the current calendar month and ends on the last business day of that month."  Ex. B ¶ 1.0.1.

- 3 -

1    Due to IBM's failure to properly manage the sale, distribution, or both, of the Products

2  and to perform its accounting and recordkeeping responsibilities under the Transaction

3  Documents, the parties encountered problems with the royalty payments. One problem involved

4  IBM's distribution of the Products in software bundles, without charge to the recipients, in breach

5  of the Transaction Documents. When RSI became aware of that breach, IBM initially claimed

6  IBM was allowed to issue "gratis licenses" of the Buffer Pool Tool under the Transaction

7  Documents. IBM later reversed that position, after RSI requested that IBM produce records

8  relating to the gratis licenses. Instead of producing the records, IBM settled the matter, paying

9  RSI $248,400.00 and agreeing to revoke all gratis licenses. Despite that settlement, IBM

10  continued to list royalty-free licenses on its quarterly royalty statements. IBM also underpaid RSI

11  by understating the group levels of processors.

12    Another problem involved customer CNF (now Conway), where the IBM representative

13  on the account allowed them to run the Software on two machines while paying for only one

14  license. IBM refused to follow up on the issue, resulting in RSI being deprived of royalties for

15  many months. Still another problem arose with YKB Bank ("**YKB**") in Turkey. RSI's

16  distributor reported that IBM was giving YKB pricing on their machines far below agreed-upon

17  levels, and advising them that they could go in and out of licensing agreements to bypass the

18  normal way of doing business and depriving RSI of royalties. IBM told YKB that the first two

19  months usage was free. Because YKB had trialed the products through RSI, IBM's actions

20  deprived RSI of the sale. IBM gave Lufthansa in Germany a license for three machines, but

21  Lufthansa only paid for a portion of one license.

22    IBM's trivial efforts at investigation uncovered about $480,000.00 in royalties owed to

23  RSI. One problem was the suppression of billing for a client by one of IBM's branch offices.

24  Other errors included not recording licenses properly, and general errors in IBM's royalty and

25  accounting systems. Because of discrepancies in IBM's marketing, recordkeeping, and

26  accounting practices, and IBM's failure to provide timely and meaningful responses to RSI's

27  inquiries on those discrepancies, RSI was forced to hire Gelb Information Systems Corporation

28  ("**Gelb**") to audit IBM's records. Gelb encountered the same difficulties as RSI in obtaining

-4-

1  information from IBM; IBM refused to give even basic information for tracking and verifying the

2  issuance of licenses. IBM made many excuses for not giving the information, including lack of

3  manpower, change in personnel, and lack of access to information and tracking of client

4  processor levels and upgrades. Gelb was never able to complete the three audits RSI requested,

5  and thus RSI still does not know the total sum it is owed by IBM.

6      In or about 2001, IBM created its own software program, "Buffer Pool Analyzer," to

7  replace the Buffer Pool Tool. IBM's Buffer Pool Analyzer was inferior to RSI's Buffer Pool

8  Tool. IBM used RSI's copyrighted tuning methodologies and approaches in documentation for

9  the Buffer Pool Analyzer. To undermine RSI's sale of the Buffer Pool Tool, IBM marketed the

10  Buffer Pool Analyzer in bundles. When customers asked if the bundle's price could be reduced if

11  the Buffer Pool Analyzer was removed, IBM told them that removal would not affect the price.

12  IBM thereby distributed its Buffer Pool Analyzer to customers for free—a practice with which

13  RSI could not fairly compete.

14      IBM further undermined RSI's efforts to sell the Buffer Pool Tool by refusing and failing

15  to correct a serious bug in its DB2 environment, which made it impossible for RSI's large clients

16  to run the software because IBM degraded its online transaction response times. Although the

17  bug could be repaired easily, IBM chose not to do so, harming the Buffer Pool Tool's reputation

18  and sales. IBM distributed its Buffer Pool Analyzer to customers, and some refused to use it due

19  to inherent defects. Several of IBM's customers, such as Marriott International, Inc.

20  ("**Marriott**"), went back to using the Buffer Pool Tool, at IBM's suggestion or with IBM's

21  knowledge and consent, without paying any licensing fees to RSI. RSI learned from a Marriott

22  employee that Marriott was using the Buffer Pool Tool long after its license through IBM had

23  expired and without paying royalties to RSI. After RSI discovered that, Marriott and IBM

24  conspired to delete the Buffer Pool Tool from Marriot's system. Marriott's corporate attorney

25  later admitted their internal audits showed the software had been installed on their system and had

26  been used. Marriott has refused to reasonably compensate RSI for the use of the Software.

27      IBM was required by the Transaction Documents to make accurate records available to

28  RSI. Despite numerous requests by RSI and promises by IBM, IBM never produced the

- 5 -

1    documentation needed to do the audits.  Compl. ¶ 17.  IBM's failure to produce the records and

2    information materially breached its obligations under the Transaction Documents, *Id.*, and

3    prevented RSI from discovering how and to what extent RSI had been damaged by IBM's acts

4    and omissions.  IBM's records will show IBM failed to pay RSI a substantial amount of royalties

5    due under the Transaction Documents.  The records will identify the IBM customers who

6    received RSI's products, and allow RSI to determine (through discovery) whether any IBM

7    customer continued to use RSI's Products after the expiration of its license and without paying

8    royalties to RSI.  Such discovery may lead to RSI initiating litigation against certain of IBM's

9    customers for copyright infringement and related causes of action.  IBM is only the tip of the

10   iceberg.

11   IV.   **ARGUMENT**

12        A.    **Rule 12 Standards.**

13        In reviewing a complaint under Rule 12(b)(6), the court must accept as true the plaintiff's

14   factual allegations.  *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 453 (2006).  Dismissal is

15   proper "only if it is clear that no relief could be granted under ***any set of facts*** that could be

16   proved consistent with the allegations."  *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1167 (9th

17   Cir. 2002) (emphasis added); *Conley v. Gibson*, 355 U.S. 41, 45-6 (1957) ["complaint should be

18   dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no

19   set of facts in support of his claim"].  "Dismissal under Rule 12(b)(6) is appropriate only where

20   the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal

21   theory."  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  IBM

22   carefully ignores this controlling, liberal "***any set of facts***" standard.

23        B.    **Governing Law Clause.**

24        A district court sitting in diversity defaults to the law of the state in which it is located.[6]

25   As the party attempting "to dislodge the law for the forum," and apply New York law, IBM bears

26

27

28   [6] *Marsh v. Burrell*, 805 F.Supp. 1493, 1496-97 (N.D. Cal. 1992).

- 6 -

1 the burden of establishing that New York law applies.[7]

2       IBM argues that New York law applies because "[t]he parties' contracts expressly provide

3 that New York law governs." Admittedly, the Developer Agreement, a form contract which IBM

4 drafted, does say that "[t]he substantive laws of the State of New York applicable to agreements

5 fully executed and performed in New York govern the" Developer Agreement. Still, California

6 law should apply. First, as part of an adhesion contract, the putative choice of law provision

7 should not be given dispositive effect. Further, the transaction was Californian, and did not even

8 touch New York. Both parties agreed to transfer this case to California from Hawaii, where it

9 was initially commenced, because California has the greatest nexus to this action. Neither party

10 contends that New York had anything to do with this transaction. IBM's remark that it, a global

11 company, is headquartered in New York is not supported by any admissible evidence. IBM has

12 not carried its burden of dislodging California law.

13      **C.**    **RSI'S Claims Are Not Time-Barred.**

14          **1.**    **The Limiting Period in the Developer Agreement is Ambiguous**

15      IBM contends that a contractual 2-year limiting period applies, but this appears to be a

16 boilerplate clause drafted for other purposes. IBM ignores conflicting language in the same

17 contract requiring the parties to retain records and make them available "for three (3) years from

18 the date of the related payment or invoice." Ex. A, ¶ 3.6. If a two-year statute of limitations had

19 been contemplated, there would have been no reason for the parties to specifically agree to retain

20 all records and make them available for audit for three years. When interpreting a contract, "[t]he

21 whole of a contract is to be taken together, so as to give effect to every part, if reasonably

22 practicable, each clause helping to interpret the other."[8] Furthermore, "[w]here a court considers

23 contractual documents beyond the face of the complaint in the context of a motion to dismiss for

24 failure to state a claim, it should 'strive to resolve any contractual ambiguities in the [nonmoving

25

26 [7] *McGhee v. Arabian American Oil Co.*, 871 F.2d 1412, 1424 (9th Cir. 1989).

27 [8] Cal. Civ. Code, § 1641; see also Cal. Civ. Proc. Code, § 1858; *Atascadero v. Merrill Lynch*, 68 Cal.App.4th 445, 473 (1998); *Trump-Equitable Fifth Ave. Co. v. H.R.H. Const. Corp.*, 485

28 N.Y.S.2d 65, 67; 106 A.D.2d 242, 244 (N,Y. App. Div. 1985) ["a contract should be construed so as to give force and effect to all of its provisions"].

-7-

party's] favor.' "[9] " 'The construction of ambiguous contract provisions is a factual determination that precludes dismissal on a motion for failure to state a claim.' "[10]

### 2.    Multiple Breaches of the Agreements and Their Concealment.

IBM's simplistic statute of limitations argument ignores RSI's claim for fraud and for recovery under a multiple-breach theory. The "any set of facts" standard applies, and it appears that IBM has continued to breach the Transaction Documents over and over, up to the present. **IBM's failure to provide an audit only obscures the scope and multiplicity of its breaches, and prevents the truth from being discovered.** RSI's breach of contract claims are analogous to those made in *Computer Data Sys., Inc. v. Kleinberg*, 759 F.Supp. 10 (D.D.C. 1990). In *Kleinberg*, the defendants counterclaimed that the plaintiff breached a licensing agreement by trying to reduce its royalty obligations through selling software programs in packages instead of separately. *Id.* at 17. The district court considered whether, for purposes of applying the statute of limitations, it should treat each sale of the programs separately or all sales as one ongoing wrong. *Id.* The court focused on the obligations created by the contract, noting each sale covered by the contract created a severable royalty obligation, and each such obligation became due within 30 days of the end of the calendar quarter in which the sale was made. The court reasoned the defendants suffered a ***separate harm*** each time a royalty was underpaid, holding: "[E]ach allegedly wrongful sale constitute[d] a unique transaction or occurrence which [stood] on its own for statutory limitations purposes." *Id.*[11]

---

[9] *Continental Airlines, Inc. v. Mundo Travel Corp.*, 412 F.Supp.2d 1050, 1065-66 (E.D. Cal. 2006); quoting *International Audiotext Network, Inc. v. AT&T*, 62 F.3d 69, 72 (2d Cir. 1995).

[10] *Continental Airlines, supra*, 412 F.Supp. at 1066; quoting *Martin Marietta Corp. v. Int'l Telecomms. Satellite Org.*, 998 F.2d 94, 97 (4th Cir. 1992).

[11] See *Romano v. Rockwell Int'l, Inc.*, 14 Cal.4th 479, 489-90 (1996) ["where there are ongoing contractual obligations the plaintiff may elect to rely on the contract dispute the breach, and the statute of limitations does not begin to run until the plaintiff has elected to treat the breach as terminating the contract"]; quoting *Lambert v. Commonwealth Land Title Ins. Co.*, 53 Cal.3d 1072, 1078 (1991); see also *Airco Alloys Div., Airco Inc. v. Niagra Mohawk Power Corp.*, 430 N.Y.S.2d 179, 186; 76 A.D.2d 68, 80-1 (N.Y. App. Div. 1980); *Measom v. Greenwich and Perry Street Housing Corp.*, 798 N.Y.S.2d 298, 300 [breach of contract is "not referable exclusively to the day the original wrong was committed ... [i]nstead, 'a cause of action accrued anew every day' for each continuation of the wrong"].

- 8 -

The Transaction Documents created independent, ongoing payment obligations each calendar quarter, for royalties flowing from a multitude of customers.[12]  Under "any set of facts," numerous breaches were made within two years[13] of RSI's filing its complaint, as further expanded by the parties' tolling agreement.  The Transaction Documents created a series of separable obligations, each standing on its own terms, the content of which was known in advance to IBM, and each of which gave rise to an independent action for breach of contract.  IBM's persistent refusal to provide RSI with an audit concealed the number, date, scope and multiplicity of IBM's breaches.

The statute of limitations here did not begin to run until RSI discovered each breach, Cal.Civ.Proc.Code § 338(d), and IBM has prevented RSI from learning how many breaches there were, and when they occurred.  Therefore IBM cannot now rely on a two-year statute to deny recovery to RSI.

IBM also ignores that RSI has sued it under the Lanham Act, and for fraud.  Even assuming New York law applies, which RSI disputes, New York would apply the six-year statute of limitations for fraud to a Lanham Act claim.  *Gordon and Breach Science Publishers S.A. v. American Institute of Physics*, 859 F.Supp. 1521, 1529-30 (S.D.N.Y. 1994); *H&R Industries, Inc. v. Kirshner*, 899 F.Supp. 995, 1002 (E.D.N.Y 1995).  Compl. Count VII.  In addition, RSI specifically sued IBM for fraud in Count IV.  There is no question but that under a six-year statute of limitations, RSI's claims are timely.

### 3.    Continuing Wrongs for Tort Claims.

IBM ignores a key point of law:  under the ***continuing wrong*** theory, a limitations period

---

[12]  IBM's Mot. Ex. B [Description of Licensed Work dated 6/23/97] ¶ 6.3 ("Payment will be made within forty-five days (45) or less if possible following the calendar quarter."); IBM's Mot. Ex. D [Description of Licensed Work dated 4/21/98] ¶ 6.3.

[13]  This assumes a two year statute applies; RSI asserts that this Court should apply the California four-year statute for breach of contract, Cal. Civ. Proc. Code § 337, and/or the three-year statute for fraud, Cal. Civ. Proc. Code § 338(d).

- 9 -

1  is tolled until the continuing wrong ceases.[14]  A "continuing wrong" for statute of limitations

2  purposes is "deemed to have accrued on the date of the last wrongful act."[15]  For each continuing

3  wrong, each day gives rise to a new cause of action and new limitations period.[16]  IBM contends

4  the suit is untimely because RSI alleges it *first* discovered the wrongs in 2004, four years before

5  filing this suit.  IBM Mem. at 6.  IBM fails to negate RSI's assertion that the alleged torts

6  continued, even into the present.  The Ninth Circuit's "any set of facts" standard applies, and each

7  tort is a "continuing wrong," which under the law is "deemed to have accrued on the date of the

8  last wrongful act."[17]  Under the Ninth Circuit's liberal Rule 12(b)(6) standard, RSI's filing this

9  suit in 2008 for continuing wrongs was timely.

**D.      The Economic Loss Rule Does Not Bar RSI's Intentional Torts and Unfair Competition Claims.**

**1.      The Economic Loss Rule.**

13  The economic loss rule is stated with ease but applied with difficulty.  *Giles v. General*

14  *Motors Acceptance Corp.*, 494 F.3d 865, 874 (9th Cir. 2007).  It seeks to define the gray, blurred

15  border between overlapping theories of tort and contract law, by barring the recovery of purely

---

[14]  *E.g., Congregation B'nai Jehuda v. Hiyee Realty Corp.*, 827 N.Y.S.2d 42, 44 (N.Y. App.Div. 2006) (affirming lower court's ruling that defendants' negligence, if any, in failing to repair their drainage system constitutes a ***continuing wrong*** that gives rise to a new cause of action for each injury that occurred within statute of limitations).

[15]  *See Leonhard v. United States*, 633 F.2d 599, 613 (2d Cir. 1980), *cert. denied*, 451 U.S. 908 (1981) ("a claim to redress a continuing wrong will be deemed to have accrued on the date of the last wrongful act") (interpreting NY law). *See also Harvey v. Metropolitan Life Ins. Co.*, 827 N.Y.S.2d 6, 6-7 (N.Y. App.Div. 2006) (citing *Leonhard* for that proposition).

[16] Under California law, "where a tort involves a continuing wrong, the statute of limitations does not begin to run until the date of the last injury or when the tortious acts cease." *Pugliese v. Superior Court*, 146 Cal.App.4th 1444, 1452 (2007).

[17]  *Leonhard, supra*, 633 F.2d at 613.

- 10 -

economic loss in tort, **particularly** in strict liability and negligence cases.[18]  It does not apply to

**intentional torts** such as fraud and conversion:  "[T]orts such as fraud and conversion *exist* to

remedy purely economic losses." *Giles*, 494 F.3d at 875.  "Many courts have explicitly refused to

extend the economic loss doctrine beyond the product liability context or beyond claims for

negligence and strict liability." *Id.*  For that proposition, the Ninth Circuit cited *EED Holdings v.*

*Palmer Johnson Acquisition Corp.*, 387 F.Supp.2d 265, 278-79 (S.D.N.Y. 2004), whose holding

it summarized: "allowing fraud claim to go forward because New York law permits recovery of

economic loss on claims of fraud and fraud in the inducement even 'in tandem' with contract

claims." *Giles*, 494 F.3d at 875.

　　　　IBM nonetheless argues the economic loss doctrine bars fraud and other tort claims

herein.  IBM overplays its hand:  New York courts allow intentional tort claims seeking recovery

for economic injuries to proceed.[19]  "The general rule under New York[20] law is that economic

loss is not recoverable under a theory of negligence or strict products liability."[21]  New York does

---

[18]  Torts allowing recovery of economic loss include defamation, conversion, malicious prosecution, invasion of privacy, and tortious interference with business advantage.  W. Page Keeton *et al.*, PROSSER AND KEETON ON THE LAW OF TORTS § 116A, at 843-44, § 119, at 887-88, § 130, at 1006 (5th ed. 1984); *see also Tommy L. Griffin Plumbing & Heating Co. v. Jordon, Jones & Goulding, Inc.*, 463 S.E.2d 85, 88 (S.C. 1995) ("Purely 'economic loss' may be recoverable under a variety of tort theories.").  Courts readily conclude the economic loss rule does not apply to other torts that permit the recovery of economic loss. *E.g.*, *Canal Elec. Co. v. Westinghouse Elec. Co.*, 973 F.2d 988, 998 (1st Cir. 1992) (explaining that law permits recovery of economic loss for intentional torts).

[19]  *See, e.g., Triangle Underwriters, Inc. v. Honeywell, Inc.*, 604 F.2d 737, 743-48 (2d Cir. 1979) (reversing district court's dismissal of a fraud claim that sought purely economic losses); *see also Triangle Underwriters, Inc. v. Honeywell, Inc.*, 651 F.2d 132 (2d Cir. 1981) (allowing damages after a jury verdict); *Stevenson Equip., Inc. v. Chemig Constr. Corp.*, 565 N.Y.S.2d 318 (N.Y.App.Div. 1991) (upholding jury verdict that awarded plaintiff economic recovery based upon claim of fraudulent concealment); *Rozwell v. Philanz Oldsmobile, Inc.*, 591 N.Y.S.2d 649 (N.Y.A.D. 1992) (affirming jury award on cause of action for fraud); *Strasser v. Prudential Sec., Inc.*, 630 N.Y.S.2d 80 (N.Y. App.Div. 1995) (dismissing breach of contract and fraudulent misrepresentation claims, but finding that allegations of fraud by nondisclosure was adequately pled).

[20]  RSI cites certain New York cases herein without prejudice to its argument that this Court should apply California law in this matter.

[21]  *American Tel. & Tel. Co. v. New York City Human Resources Admin.*, 833 F. Supp. 962, 982 (S.D.N.Y. 1993) (citing *County of Suffolk v. Long Island Lighting Co.*, 728 F.2d 52, 62 (2d Cir.1984)).

- 11 -

1  not apply the economic loss doctrine bar to fraud claims.[22]  A like rationale and result applies to

2  conversion,[23] and the same rule and result obtain under California law.[24]

3         Fraud is an exception to the economic loss rule.  Recovery is not barred in cases where the

4  breach of contract is the independent tort of fraud.[25]  In *Great Earth Int'l Franchising Corp. v.*

5  *Milks Dev.*, 311 F.Supp.2d 419 (S.D.N.Y. 2004), the court reiterated that New York law requires

6  a fraud claim, in a case arising from a breach of contract, to be sufficiently distinct from the

7  breach of contract claim.[26]  The court recognized three ways in which a party could distinguish its

8  fraud claim from a breach of contract claim; a party may show: (1) its adversary breached some

9  legal duty separate from the contract duty; (2) a misrepresentation extraneous to or outside of the

10 contract; or (3) it incurred special damages as a result of the misrepresentation not recoverable

11 under the contract.[27]  By meeting one of those criteria, a party may distinguish a fraud claim from

12 a breach of contract claim, when both relate to a contract.

13        The Ninth Circuit similarly has held a fraud claim was not barred by the economic loss

14 rule, if the defendant's conduct allegedly breached a duty imposed by law ***independent*** of the

---

15 [22]  *See In re Ford Motor Co. Vehicle Paint Litig.*, 1997 WL 539665, at *7 (E.D. La. Aug. 27,

16 1997) (applying New York law, "[t]he Court ... notes that New York courts commonly permit

17 fraud claims seeking recovery for economic injuries to proceed").

18 [23]  *See Giles, supra*, 494 F.3d at 875, *citing Indemnity Ins. Co. of No. Am. v. Am. Aviation, Inc.*,

19 891 So.2d 532, 543 n.3 (Fla. 2004), for this proposition: "'[i]ntentional tort claims such as ***fraud, conversion***, intentional interference, civil theft, abuse of process, and other torts requiring proof
of intent generally remain viable' despite economic loss doctrine." (Emphasis added.)

20 [24] *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal.4th 979, 989 & fn. 7 (2004) (contract does

21 not bar independent tort claims under California law).

22 [25]  *See Triangle Underwriters, Inc., supra*, 604 F.2d at 743-48 (reversing district court's dismissal

23 of fraud claim that sought purely economic losses); *see also Triangle Underwriters, Inc., supra*,
651 F.2d 132 (allowing fraud damages after jury verdict).

24 [26]  *See Bridgestone/Firestone, Inc. v. Recovery Credit Serv., Inc.*, 98 F.3d 13, 21 (2d Cir. 1996).
New York courts allow fraud claims seeking recovery for economic injuries to proceed.  *E.g.*,

25 *Stevenson Equip., Inc., supra*, 565 N.Y.S.2d 318 (upholding jury verdict that awarded plaintiff
economic recovery based upon claim of fraudulent concealment); *Rozwell*, 591 N.Y.S.2d 649

26 (affirming jury award on cause of action for fraud); *Strasser, supra*, 630 N.Y.S.2d 80 (dismissing
breach of contract and fraudulent misrepresentation claims but finding that allegations of fraud by
nondisclosure were adequately pled).

27

28 [27]  *Papa's-June Music, Inc. v. McLean*, 921 F.Supp. 1154, 1161 (S.D.N.Y. 1996); *see also*
*Bridgestone/Firestone, Inc., supra*, 98 F.3d at 20 (stating same requirements, citing cases).

- 12 -

parties' contract.[28]  It concluded the tort claims were not "a mere contract claim cloaked in the language of tort[,]" and did "not duplicate a contract suit[.]"[29]  It distinguished fraudulent conduct "'extraneous' to the contract" from claims alleging misrepresentation regarding the quality of goods or services that were "the subject of the contract."[30]  Fraud "extraneous to the contract" is not barred by the economic loss rule.

IBM cites *R.H. Damon & Co., Inc. v. Softkey Software Prod., Inc.*, 811 F.Supp. 986 (S.D.N.Y. 1993), for the proposition that damages flowing solely from breach of a contract bar the assertion of a fraud claim.  IBM reads *R.H. Damon* too broadly.  *R.H. Damon* concluded: "where a fraud claim seeks to enforce no more then (sic) the breached promises and obligations of a contract," the claim is "redundant and must be dismissed." *Id.* at 992.  RSI does not seek to hold IBM only to the terms of a contract.  Instead, RSI seeks to hold IBM accountable for hiding, lying about, and covering up the continued use of RSI's Software and license fees owed, Compl. ¶¶ 9-11, 17, 20-24, 26-30, and infringing on copyright, Compl. ¶ 12, in order to harm RSI as IBM's competitor, and to damage the reputation and marketability of RSI's competing Software.

### 2.    IBM Has Not Negated the Possibility That The Fraud Arises From Different Facts Than The Contract Claim.

Under the Ninth Circuit's "any set of facts" standard, IBM has not negated the possibility that RSI's claim is one of intentional fraud for hiding, lying about, and covering up the continued use of RSI's Software, and infringing on copyrighted material.  The foundation of the fraud claim lies not in a duty created by the agreements, but in IBM's intentional misconduct to undermine RSI, a competitor holding competing Software.[31]  A claim of fraud for hiding, lying about, and covering up the unauthorized use of another's property and infringing on copyrighted material to harm a competitor and its competing product is not the type of tort claim barred by the economic

---

[28] *Giles, supra*, 494 F.3d at 873 (applying Nevada law).

[29] *Giles, supra*, 494 F.3d at 880.

[30] *Id.*

[31] *Cf. Hargrave v. Oki Nursery, Inc.*, 636 F.2d 897, 898-99 (2d Cir. 1980) (holding that fraud breaches a legal duty that exists independently of any contractual duties; plaintiff may recover under that theory).

- 13 -

1  loss doctrine. The complaint therefore alleges "facts extraneous and collateral to the contract"

2  sufficient to withstand the present motion. *R.H. Damon, supra*, 811 F.Supp. at 992. *See*

3  *Gruntal & Co., Inc. v. San Diego Bancorp*, 901 F.Supp. 607, 615 (S.D.N.Y. 1995) (distinguishing

4  and declining to extend *R.H. Damon*).

5      Although the events giving rise to RSI's fraud claim occurred in the context of a

6  contractual relationship between the parties, the fraud claim is not a mere contract claim cloaked

7  in the language of tort. RSI alleges that IBM hid, lied about, and covered up the continued

8  unauthorized use of RSI's Software and the revenue due to RSI, and infringement on copyrighted

9  material, to harm RSI as a competitor and undermine RSI's Software, a competing product.

10  Compl. ¶¶ 11-12, 20-23, 26-29, 32, 43, 45. Unlike a fraud claim that duplicates a contract claim

11  by alleging misrepresentation about the characteristics or quality of goods subject of the contract,

12  RSI's fraud claim is "extraneous" to the contract. IBM had an independent duty imposed by law

13  not to commit fraud against RSI, not to damage RSI's and RSI's products' reputation, and not to

14  infringe on copyrighted material. The economic loss doctrine does not bar RSI's fraud claim. In

15  any event, because a plaintiff can plead in the alternative, and because "dismissal is only

16  appropriate 'where plaintiff can prove no set of facts to support the claim,' " the possibility of an

17  eventual finding that IBM breached its contract does not warrant dismissing the tort claims

18  against it.[32]

19          **a.    Count V: Duty of Good Faith and Fair Dealing.**

20      A party can breach the implied covenant of good faith and fair dealing without breaching

21  an express term of the underlying contract. *AGA Shareholders, LLC v. CSK Auto, Inc.*, 2007 WL

22  1101264 at *2 (D. Ariz. Apr. 12, 2007) (applying Arizona law). Even if IBM had breached no

23  express term of the Transaction Documents, IBM deliberately kept RSI from receiving royalties

24  under the Transaction Documents, before and after IBM introduced its competing software. Even

25  if the damages for both claims are the same, RSI may plead alternate theories of liability.

26  Furthermore, IBM used RSI's own proprietary information, that it obtained though the contract,

27

28  [32] *Continental Airlines, supra*, 412 F.Supp.2d at 1069.

- 14 -

1    to unfairly compete with RSI, thus constituting a separate tort.

2        **b.    Counts II-IV: Negligent Misrepresentation, Intentional**
3               **Misrepresentation, and Fraud.**

4        Viewing the allegations under the *"any set of facts"* standard, RSI has pled a viable fraud

5    claim. As discussed above, RSI alleges that IBM hid, lied about, and covered up the continued

6    use of RSI's Software and fees owed to RSI, and infringed copyrighted material, to harm RSI, the

7    owner of Software competing with IBM's. As discussed above, the economic loss doctrine does

8    not insulate IBM from that fraud.[33]

9        **c.    Count VI: Conversion.**

10       Viewing the allegations under the *"any set of facts"* standard, IBM converted RSI's

11   copyrighted Software by hiding and lying about the continued use of RSI's Software, without

12   RSI's consent. The economic loss doctrine does not bar a conversion claim. IBM had an

13   independent duty under tort law not to misappropriate RSI's Software without authority.

14       **d.    Count VII:  Common Law Unfair Competition.**

15       IBM argues that the economic loss rule negates RSI's claim for unfair competition, citing

16   only *QC Const. Prod., LLC v. Cohill's Bldg. Specialties, Inc.*, 423 F.Supp.2d 1008, 1015-16

17   (D. Ariz. 2006). That court lumped together several torts (interference with business

18   relationships, fraud and deceit, and unfair competition) and broadly decided they were barred

19   under the economic loss rule. It did not address the unfair competition claim per se. That federal

20   court's interpretation of Arizona's economic loss rule is questionable since it contradicts other

21   decisions by the same district. *See Evans v. Singer*, 518 F.Supp.2d 1134, 1144 (D. Ariz. 2007)

22   (discussing same and noting "four district court decisions have questioned the broad reading of

23   Arizona's economic loss rule."). In *Aventis Tech. Corp. v. JP Morgan Chase Bank*, 2004 WL

24   5137578 (D. Ariz. Jan. 26, 2004), for instance, the court held the economic loss rule did not

25   prevent Aventis from suing JP Morgan for negligent misrepresentation regarding information it

26   provided, later relied on by Aventis when entering into a contract with a third party. *Aventis*

27   rejected a broad reading of the economic loss rule: "Were the economic loss rule given the

28   [33] *Robinson Helicopter, supra*, 34 Cal.4th at 989 & fn. 7.

- 15 -

1    breadth ascribed to it by JP Morgan, ... there would be no remedy for fraud, nor any remedy for

2    negligent misrepresentation. Yet, this is not the law of Arizona." *Id.* at \*3.

3        The only district court case squarely to confront the overall treatment of the Arizona

4    economic loss rule in federal courts is *Giles Const., Inc. v. Commercial Fed. Bank*, 2006 WL

5    2711501 at \*9-10 (D. Ariz. Sept. 21, 2006). *See Evans, supra*, 518 F.Supp.2d at 1145 (stating

6    same). The court in *Giles Const., Inc.* stated: "Federal courts ... have construed Arizona's

7    economic loss rule more broadly than the Arizona courts[,]" resulting in a number of decisions

8    that "are not firmly supported by Arizona law[.]" *Id.* at \*10. That court also noted Arizona state

9    appellate courts have never used the economic loss rule to bar tort claims outside of the

10   construction defects and products liability areas. *Id.* IBM's reliance on *QC Const. Prod., LLC* is

11   misplaced, if not misleading.

12       Under New York law, "[t]he 'essence' of an unfair competition claim 'is the bad faith

13   misappropriation of the labors and expenditures of another, likely to cause confusion or to

14   deceive purchasers as to the origin of the goods.'" *Commercial Data Servers, Inc. v.*

15   *International Bus. Mach. Corp.*, 166 F.Supp.2d 891, 894 (S.D.N.Y. 2001). RSI has alleged IBM

16   used RSI's copyrighted materials in IBM's manuals for IBM's like-named software. Compl.

17   ¶ 12. RSI has alleged IBM used RSI's Software in ways likely to cause confusion or deceive

18   regarding the affiliation between RSI and IBM. *Id.* ¶ 43-44. Under Rule 8(a) those allegations

19   suffice to plead unfair competition.

20       **E.**      **RSI's Fraud Claims Are Pled With The Requisite Specificity, Or Else**
21                 **Rule 9(b)'s Requirement Is Excused Under The Facts Of This Case.**

22       Rule 8(a) only requires a short and plain statement of the claim. Rule 8(d)(1) states that

23   pleadings must be "simple, concise, and direct." The Ninth Circuit recognizes: "When fraud is

24   alleged, it must be particularized as Rule 9(b) requires, but it still must be as short, plain, simple,

25   concise, and direct, as is reasonable under the circumstances[.]" *Carrigan v. Cal. State Legis.*,

26   263 F.2d 560, 565 (9th Cir. 1959). "Rule 9(b) 'requires the identification of the circumstances

27   constituting fraud so that the defendant can prepare an adequate answer from the allegations.'"

28   *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007), *cert. denied*, 128 S.Ct. 464 (2007),

- 16 -

1   *citing Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400 (9th Cir. 1986).

2   "In certain cases, to be sure, the requisite particularity might be supplied with great simplicity."

3   *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994). "Fraud by silence ... 'is, by its

4   very nature, difficult to plead with particularity.'"[34]  IBM hid and lied about the continued use of

5   RSI's Software, to avoid payment to RSI for that use. How, when, where and why, only

6   IBM knows; absent discovery, RSI cannot provide those details.

7       A plaintiff also is not required to plead evidentiary matters that may be in the sole control

8   of a defendant. Rule 9(b) may be relaxed to permit discovery in fraud cases where (as here) the

9   evidence of fraud is within a defendant's exclusive possession. *Wool v. Tandem Computers Inc.*,

10   818 F.2d 1433, 1439 (9th Cir. 1987);[35] *Deutsch v. Flannery*, 823 F.2d 1361, 1366 (9th Cir. 1987).

11   At the pleading stage, without the benefit of discovery, the facts relevant hereto are in the

12   exclusive possession of IBM, or third parties. That reality entitles the plaintiff to a lenient

13   application of Rule 9(b) here. The information supporting RSI's claims—including accounting

14   information that IBM has concealed and withheld from RSI—is in IBM's possession.

15       The Court should reject IBM's Rule 9(b) argument, or at least permit RSI to amend its

16   negligent misrepresentation, intentional misrepresentation, and fraud claims under Rule 15(a).

17   **F.    RSI Has Alleged Sufficient Facts To Support Its Lanham Act And Restraint
18         Of Trade Claims.**

19       RSI alleges that IBM has withdrawn RSI's "Buffer Pool Tool [for DB2]" from the market

20   and introduced something equivalent called the "Buffer Pool Analyzer [for DB2]". Compl. ¶ 10.

21   That software is very similar, and so is its name. The two elements RSI must prove under § 43(a)

22   of the Lanham Act (15 U.S.C. § 1125) are that it has rights in the "Buffer Pool Tool" name, and

23   that those rights have been violated by IBM's confusingly similar use of the name "Buffer Pool

24

---

25   [34] *Chrysler Credit Corp. v. Whitney Nat'l Bank*, 824 F.Supp. 587, 598 (E.D. La. 1993) (quoting *Daher v. G.D. Searle & Co.*, 695 F.Supp. 436, 440 (D. Minn. 1988)).

26   [35] "[P]leading is sufficient under Rule 9(b) if it identifies 'the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations.'" ... "[S]tatements of the
27   time, place and nature of the alleged fraudulent activities are sufficient." *Wool, supra*, 818 F.2d 1439 (citations omitted). To the limited extent it can, before discovery is done, RSI has pled the
28   circumstances of IBM's fraud.

- 17 -

Analyzer." *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1512 (11th Cir. 1984). RSI has met its burden.

### G.    The Transaction Documents Do Not Bar Punitive Damages.

New York law recognizes exceptions to the enforceability of agreements barring punitive damages:

> [A]n exculpatory agreement, no matter how flat and unqualified its terms, will not exonerate a party from liability under all circumstances. Under announced public policy, it will not apply to exemption of willful or grossly negligent acts.
>
> . . .
>
> More pointedly, an exculpatory clause is unenforceable when, in contravention of acceptable notions of morality, the misconduct for which it would grant immunity smacks of intentional wrongdoing. This can be explicit, as when it is fraudulent, malicious or prompted by the sinister intention of one acting in bad faith.

*Kalisch-Jarcho, Inc. v. City of N.Y.*, 448 N.E.2d 413, 416-17, 461 N.Y.S.2d 746, 749-50 (N.Y. 1983) (internal citations omitted).[36]

RSI's complaint alleges IBM committed intentional torts when it hid, lied about, and covered up the continued use of RSI's copyrighted Software without compensation. Compl. ¶¶ 10-12. That conduct "smacks of intentional wrongdoing." *Kalisch-Jarcho, supra*, 448, N.E.2d at 416, 461 N.Y,S.2d at 749-50. IBM should not be permitted to use the Transactional Documents as a license to commit intentional torts against RSI. The Court should find that the damages limitation clause in the Transactional Documents does not insulate IBM from its intentional torts perpetrated on RSI.

Punitive damages generally are unavailable for a breach of contract.[37] New York law allows punitive damages, however, where the conduct that gives rise to a breach of contract claim

---

[36] *See also Metropolitan Life Ins. Co. v. Noble Lowndes Int'l, Inc.*, 643 N.E.2d 504, 509 (N.Y. 1994) ("A term exempting a party from tort liability for harm caused intentionally or recklessly is unenforceable on grounds of public policy[.]") (quoting RESTATEMENT (SECOND) CONTRACTS § 195 [1]).

[37] *Rocanova v. Equitable Life Assur. Soc. of U.S.*, 634 N.E.2d 940, 944, 612 N.Y.S.2d 339, 343 (NY 1994); *see also Conocophillips v. 261 East Merrick Road Corp.*, 428 F. Supp. 2d 111, 128-129 (E.D.N.Y. 2006).

- 18 -

also is tortious.[38] Punitive damages are appropriate where the conduct that constitutes the breach rises to the level of a "fraud 'aimed at the public generally'" that evinces a "high degree of moral turpitude" and demonstrates "such wanton dishonesty as to imply a criminal indifference to civil obligations."[39] Those are known, respectively, as the "public wrong" and "extraordinary egregiousness" requirements. To recover punitive damages for a breach of contract which also is tortious, a plaintiff must prove both a public wrong and an extraordinary egregiousness.[40] A claim for punitive damages as an additional and exemplary remedy can arise from a breach of contract if a plaintiff alleges: (1) conduct by a defendant that is actionable as an independent tort; (2) the tortious conduct is of an egregious nature; (3) the egregious conduct is directed to plaintiff; and (4) such conduct is part of a pattern directed at the public generally.[41]

Under the "any set of facts" standard, IBM has failed to negate the possibility that IBM's conduct was not a "public wrong" and was not "extraordinarily egregious." There were a multitude of users of RSI's Software. IBM's failure to permit an audit prevents RSI from knowing how "public" IBM's wrongs may be, and how "extraordinarily egregious" they are. IBM hid, lied, and covered up the continued use of RSI Software, to harm RSI and undermine RSI's competing Software. At this stage of the proceeding, it is too early to conclude RSI cannot prove punitive damages under "any set of facts;" indeed, it appears that RSI can.

## V.   CONCLUSION

The Court should deny IBM's motion to dismiss. IBM must not be allowed to defraud RSI and breach its contract by giving away RSI's Software, denying RSI royalties due to it, hiding and lying about its activities, and then preventing an audit of IBM's books which would

---

[38] *Brink's Inc. v. City of N.Y.*, 717 F.2d 700, 704 (2d Cir. 1983); *accord, Davidson v. Percy*, 1991 WL 22847 (E.D.N.Y. 1991).

[39] *Durham Indus., Inc. v. North River Ins. Co.*, 673 F.2d 37, 41 (2d Cir. 1982) (quoting *Walker v. Sheldon*, 223 N.Y.S.2d 488, 491 (N.Y. 1961)).

[40] *Topps Co., Inc. v. Cadbury Stani S.A.I.C.*, 380 F.Supp.2d 250, 262 (S.D.N.Y. 2005) (owner could recover punitive damages for trade secret misappropriation).

[41] *N.Y. Univ. v. Continental Ins. Co.*, 662 N.E.2d 763, 767, 639 N.Y.S.2d 283, 287 (NY 1995); *see also TVT Records v. Island Def Jam Music Group*, 412 F.3d 82, 93-94 (2d Cir. 2005).

- 19 -

1  have disclosed the extent of IBM's wrongdoing, and the sums IBM owes to RSI. Sanctioning

2  IBM's conduct would be unjust, unfair and a violation of both California and New York law,

3  especially in light of the continuing and ongoing nature of IBM's torts and breaches of contract.

4       If the Court is persuaded that any of RSI's claims are deficient, RSI hereby requests leave

5  to amend its complaint under Rule 15(a) to correct those deficiencies. The strong policy

6  permitting amendment rather than the striking of a complaint is to be applied with "extreme

7  liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). The

8  only factors meriting departure from the usual "[l]iberality in granting a plaintiff leave to amend"

9  include bad faith and futility, *Bowles v. Reade*, 198 F.3d 752, 757 (9th Cir. 1999), neither of

10  which apply here. Amendment will not be futile: the appropriate statute of limitations does not

11  bar the contract claims, and the economic loss doctrine does not bar the tort claims. Further, RSI

12  intends to seek leave to amend its complaint to include a new cause of action for unjust

13  enrichment. As a restitutionary claim born of equity,[42] unjust enrichment is not subject to the

14  contractual limitation period, which IBM drafted and which specifies that only "*legal* actions," as

15  opposed to equitable ones, must be brought within two years of accrual.[43]

16       RSI respectfully asks the court to deny IBM's motion in its entirety, or alternatively to

17  grant RSI leave to amend its complaint.

18  DATED: August 26, 2008               SEVERSON & WERSON
                                   A Professional Corporation

19

20

21                                   By:_____
                                       Forrest Booth

22

23                                   Attorneys for Plaintiff
                                 RSI CORPORATION

24

---

25  [42] *212 Inv. Corp. v. Kaplan*, 843 N.Y.S.2d 222, 223; 44 A.D.3d 332, 334 (N.Y. App. Div. 2007)
26  ["unjust enrichment claim" is "equitable relief in the form of restitution"]; *McBride v. Boughton*, 123 Cal.App.4th 379, 388 & fn. 6 (2004).

27  [43] *Westchester Resco Co., LP v. New England Reins. Corp.*, 818 F.2d 2, 3 (2d Cir 1987) [pursuant
28  to the rule of *contra proferentem*, contractual ambiguities are interpreted against the drafter]; see also; Cal. Civ. Code, § 1654 and *Badie v. Bank of America*, 67 Cal.App.4th 779, 803 (1998).

- 20 -

## CERTIFICATE OF SERVICE

I, the undersigned, declare that I am over the age of 18 and am not a party to this action. I am employed in the City of San Francisco, California; my business address is Severson & Werson, One Embarcadero Center, Suite 2600, San Francisco, CA 94111.

On the date below I served a copy, with all exhibits, of the following document(s):

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, STRIKE**

on all interested parties in said case addressed as follows:

| | |
|---|---|
| Robert D. Triantos | Shon Morgan |
| Edmund W.K. Haitsuka | Scott Watson |
| CARLSMITH BALL LLP | Valerie Roddy |
| 75-1000 Henry Street, Suite 209 | QUINN EMANUEL URQUHART OLIVER |
| P.O. Box 1720 | & HEDGES, LLP |
| Kailua-Kona, HI 96745-1720 | 865 South Figueroa Street, 10th Floor |
| **Tel:** (808) 329-6464 | Los Angeles, CA 90017-2543 |
| **Fax:** (808) 329-9450 | **Tel:** (213) 443-3000 |
| **Email:** rtriantos@carlsmith.com | **Fax:** (213) 443-3100 |
| | **Email:** shonmorgan@quinnemanuel.com |

Attorneys for Plaintiff *RSI Corporation dba Responsive Systems Co.*

scottwatson@quinnemanuel.com
valerieroddy@quinnemanuel.com

Attorneys for Defendant *International Business Machines*

☐ **(BY MAIL)** By placing the envelope for collection and mailing following our ordinary business practices. I am readily familiar with the firm's practice of collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in San Francisco, California in sealed envelopes with postage fully prepaid.

☐ **(BY HAND)** By placing the documents in an envelope or package addressed to the persons listed above and providing them to a professional messenger service for delivery.

☐ **(BY FEDERAL EXPRESS)** By depositing copies of the above documents in a box or other facility regularly maintained by Federal Express with delivery fees paid or provided for.

☐ **(BY EXPRESS MAIL)** By placing the above documents in the United States mail for Express Mail delivery at One Embarcadero Center, Suite 2600, San Francisco, CA 94111, in a sealed envelope addressed as above, with Express Mail postage thereon fully prepaid.

☐ **(BY FAX)** By use of facsimile machine telephone number (415) 956-0439, I faxed a true copy to the addressee(s) listed above at the facsimile number(s) noted after the party's address. The transmission was reported as complete and without error.

☒ **(BY ELECTRONIC SERVICE)** Pursuant to CM/ECF System, registration as a CM/ECF user constitutes consent to electronic service through the Court's transmission facilities. The Court's CM/ECF system sends an e-mail notification of the filing to the parties and counsel of record listed above who are registered with the Court's EC/ECF system.

☐ **(BY ELECTRONIC TRANSMISSION)**  By sending a file of the above documents(s) via electronic transmission (e-mail) at _____ am./pm. using e-mail address (dhd@severson.com) to the e-mail address designed for each party identified above.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.  This declaration is executed in San Francisco, California, on August 26, 2008.

_____
D. Helen Davis

15280/0001/685602.1

PROOF OF SERVICE
Case No.: 5:08-cv-3414 RMW (HRL)