QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  Shon Morgan (Bar No. 187736)
  shonmorgan@quinnemanuel.com
  Scott Watson (Bar No. 219147)
  scottwatson@quinnemanuel.com
  Valerie Roddy (Bar No. 235163)
  valerieroddy@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Defendant International
Business Machines Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RSI CORP., dba RESPONSIVE SYSTEMS COMPANY, a New Jersey corporation,<br><br>        Plaintiff,<br><br>vs.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION; and DOE DEFENDANTS 1-20,<br><br>        Defendants. | CASE NO. 5:08-cv-3414 (RMW/RS)<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STRIKE**<br><br>Crtrm.:      6, 4th Floor<br>Judge:     Hon. Ronald M. Whyte<br>Hrg. Date:  October 3, 2008<br>Hrg. Time:  9:00 a.m. |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................... 1

ARGUMENT ................................................................................................. 1

I.   ALL PLAINTIFF'S CLAIMS ARE TIME-BARRED BY THE PARTIES'
     AGREEMENT ...................................................................................... 1

     A.   The Limitations Provision Is Unambiguous .............................. 1

     B.   Plaintiff's Claims Are Time-Barred Under the Limitations
          Provision .................................................................................... 3

II.  THE COURT SHOULD ENFORCE THE NEW YORK CHOICE OF
     LAW PROVISION ............................................................................... 5

III. RSI'S TORT AND UNFAIR COMPETITION CLAIMS ARE BARRED
     BY THE ECONOMIC LOSS RULE ................................................... 7

     A.   Plaintiff's Tort Claims Simply Restate the Breach of Contract
          Claim .......................................................................................... 7

     B.   Plaintiff's Authorities Do Not Avoid the Economic Loss Rule ... 8

          1.   Breach of the Duty of Good Faith and Fair Dealing ......... 8

          2.   Misrepresentation Claims ................................................. 9

          3.   Conversion ...................................................................... 10

          4.   Common Law Unfair Competition ................................... 11

IV.  PLAINTIFF HAS NOT ALLEGED ANY BASIS FOR A LANHAM
     ACT CLAIM ...................................................................................... 11

V.   PLAINTIFF'S FRAUD CLAIMS LACK THE SPECIFICITY
     REQUIRED BY RULE 9(B) .............................................................. 12

VI.  PLAINTIFF DOES NOT DEFEND ITS "UNCLEAN HANDS" AND
     RESTRAINT OF TRADE CLAIMS ................................................. 13

VII. PLAINTIFF'S PUNITIVE DAMAGES REQUEST SHOULD BE
     STRICKEN ........................................................................................ 13

VIII. LEAVE TO AMEND SHOULD BE DENIED .................................. 14

CONCLUSION ............................................................................................ 15

1

## **TABLE OF AUTHORITIES**

2

**Page**

3

### Cases

4 *518 E. 80th Street Co. v. Smith,*
     251 A.D.2d 215, 674 N.Y.S.2d 680 (1st Dept. 1998) ...............................................13

5
 *Airgo, Inc. v. Horizon Cargo Transp., Inc.,*
6     66 Haw. 590, 670 P.2d 1277 (1983)........................................................................5

7 *Allen v. IBM,*
     308 F. Supp. 2d 638 (M.D.N.C. 2004) .....................................................................6

8
 *Allman v. UMG Recordings,*
9     530 F. Supp. 2d 602 (S.D.N.Y. 2008) ......................................................................3

10 *Canal Elec. Co. v. Westinghouse Elec. Co.,*
      973 F.2d 988 (1st Cir. 1992) ..................................................................................10

11
 *Cardonet Inc. v. IBM Corp.,*
12      No. C-06096637, 2007 WL 518909 (N.D. Cal. Feb. 14, 2007)................................6

13 *Carmania Corp. v. Hambrecht Terrell Int'l,*
      705 F. Supp. 936 (S.D.N.Y. 1989).........................................................................7

14
 *Catlin v. Manilow,*
15      170 A.D.2d 357, 566 N.Y.S.2d 59 (1st Dept. 1991) ................................................4

16 *Chaset v. Fleer/Skybox Intern., LP,*
      300 F.3d 1083 (9th Cir. 2002)................................................................................15

17
 *Comp. Data Sys., Inc. v. Kleinberg,*
18      759 F. Supp. 10 (D.D.C. 1990) ...............................................................................3

19 *Congregation B'Nai Jehuda v. Hiyee Realty Corp.,*
      35 A.D.3d 311, 827 N.Y.S.2d 42 (1st Dept. 2006) ..................................................5

20
 *Corcoran v. GATX Corp.,*
21      49 A.D.3d 1174, 852 N.Y.S.2d 913 (4th Dept. 2008)..............................................14

22 *Dayan Enters., Corp. v. Nautica Apparel, Inc.,*
      Case No. 03-Civ.-5706 (LLS), 2003 WL 22832706
23      (S.D.N.Y. Nov. 26, 2003).........................................................................................8

24 *Deutsch v. Flannery,*
      823 F.2d 1361 (9th Cir. 1987) ...............................................................................12

25
 *E & J Gallo Winery v. Andina Licores S.A.,*
26      440 F. Supp. 2d 1115 (E.D. Cal. 2006)....................................................................6

27 *Essex Ins. Co. v. Pingley,*
      41 A.D.3d 774, 839 N.Y.S.2d 208 (2d Dept. 2007)................................................2

28

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, STRIKE

*Folium, Inc. v. IBM,*
　Civ. No. 03-92-DAE/LEK.............................................................................5, 6

*In re Ford Motor Co. Vehicle Paint Litig.,*
　MDL No. 1063, 1997 WL 539665 (E.D. La. 1997)..........................................10

*Giles v. General Motors Acceptance Corp.,*
　494 F.3d 865 (9th Cir. 2007)..........................................................................10

*In re GlenFed, Inc. Sec. Litig.,*
　42 F.3d 1541 (9th Cir. 1994)..........................................................................12

*Great Earth Int'l Franchising Corp. v. Milks Dev.,*
　311 F. Supp. 2d 419 (S.D.N.Y. 2004)...............................................................9

*Hargrave v. Oki Nursery, Inc.,*
　636 F.2d 897 (2d Cir. 1980)...........................................................................10

*IBM v. Bajorek,*
　191 F.3d 1033 (9th Cir. 1999)...........................................................................6

*Isaacs v. Westchester Wood Works, Inc.,*
　278 A.D.2d 184, 718 N.Y.S.2d 338 (1st Dept. 2000).........................................2

*Johnson v. IBM,*
　891 F. Supp. 522 (N.D. Cal. 1995)....................................................................6

*Kalisch-Jarcho, Inc. v. City of New York,*
　58 N.Y.2d 377, 461 N.Y.S.2d 746 (1983) ......................................................13

*King v. Fox,* 28 Fed. App'x. 95, 98 (2d Cir. 2002) ...............................................4

*Kronos, Inc. v. AVX Corp.,*
　81 N.Y.2d 90, 595 N.Y.S.2d 931 (1993) ..........................................................4

*Leonhard v. United States,*
　633 F.2d 599 (2d Cir. 1980) .............................................................................5

*Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.,*
　244 F.R.D. 204 (S.D.N.Y. 2007)......................................................................11

*Natl'l Football League Props., Inc. v. Dallas Cowboys Football Club, Ltd.,*
　922 F. Supp. 849 (S.D.N.Y. 1996)....................................................................8

*Net2Globe Intern., Inc. v. Time Warner Telecom of New York,*
　273 F. Supp. 2d 436 (S.D.N.Y. 2003)..............................................................13

*Odom v. Microsoft Corp.,*
　486 F.3d 541 (9th Cir. 2007), *cert. denied* 128 S. Ct. 464 (2007) ..................12

*Orlando v. Novuriana of America, Inc.,*
　162 F. Supp. 2d 220 (S.D.N.Y. 2001)............................................................7, 8

*Pugliese v. Superior Court,*
　146 Cal. App. 4th 1444, 53 Cal. Rptr. 3d 681 (2 Dist. 2007) .............................5

*Robinson Helicopter Co. v. Dana Corp.,*
   34 Cal. 4th 979, 22 Cal. Rptr. 3d 352 (2004) .......................................................... 10

*Rocanova v. Equitable Life Assur. Soc. of U.S.,*
   83 N.Y.2d 603, 612 N.Y.S.2d 339 (1994) ................................................................ 14

*Roy v. Gen. Elec. Co.,*
   544 F. Supp. 2d 103 (D.R.I. 2008) ............................................................................ 9

*Rozwell v. Philanz Oldsmobile, Inc.,*
   187 A.D.2d 938, 591 N.Y.S.2d 649 (4th Dept. 1992) ............................................. 10

*Samiento v. World Yacht Inc.,*
   10 N.Y.3d 70, 883 N.E.2d 990 (2008) ..................................................................... 14

*Serina v. Albertson's, Inc.,*
   744 F. Supp. 1114 (M.D. Fla. 1990) ........................................................................ 10

*In re Silicon Graphics, Inc.,*
   970 F. Supp. 746 (N.D. Cal. 1997) .......................................................................... 12

*Smith v. County of Erie,*
   295 A.D.2d 1010, 743 N.Y.S.2d 649 (4th Dept. 2002) ........................................... 14

*Spinap Corp. v. Cafagno,*
   302 A.D.2d 588, 756 N.Y.S.2d 86 (2d Dept. 2003) ................................................... 5

*Strasser v. Prudential Sec., Inc.,*
   218 A.D.2d 526, 630 N.Y.S.2d 80 (1st Dept. 1995) ................................................ 10

*Tommy L. Griffin, Plumbing & Heating Co. v. Jordon, Jones & Goulding, Inc.,*
   320 S.C. 49, 463 S.E.2d 85 (1995) .......................................................................... 10

*Tradex Europe SPRL, v. Conair Corp.,*
   2008 WL 1990464 (S.D.N.Y. May 7, 2008) ...................................................... 13, 14

*Triangle Underwriters, Inc. v. Honeywell, Inc.,*
   651 F.2d 132 (2d Cir. 1981) .................................................................................... 10

*Trump-Equitable Fifth Ave. Co. v. H.R.H. Constr. Corp.,*
   106 A.D.2d 242, 485 N.Y.S.2d 65 (1st Dept. 1985) .................................................. 2

*Van Dusen v. Barrack,*
   376 U.S. 612 (1964) ................................................................................................... 5

*Van Wagner Adv. Corp. v. S & M Enters.,*
   67 N.Y.2d 186, 501 N.Y.S.2d 628 (1986) .................................................................. 2

*W.W.W. Assocs., Inc. v. Giancontieri,*
   77 N.Y.2d 157, 565 N.Y.S.2d 440 (1990) .................................................................. 2

*Wash. Mut. Bank, FA v. Superior Court,*
   24 Cal. 4th 906, 103 Cal. Rptr. 2d 320 (2001) .......................................................... 6

*Wolff v. Rare Medium, Inc.*,
   171 F. Supp. 2d 354 (S.D.N.Y. 2001) .......................................................... 8

*Wool v. Tandem Computers Inc.*,
   818 F.2d 1433 (9th Cir. 1987) .................................................................. 12

*Yarmuth-Dion, Inc. v. D'ion Furs, Inc.*,
   835 F.2d 990 (2d Cir. 1987) .................................................................... 11

## **Statutes**

15 U.S.C. § 1125(a) ................................................................................... 11

28 U.S.C. § 1404(a) ..................................................................................... 5

**Preliminary Statement**

Without any legal basis, plaintiff asks this Court to disregard no less than *three* express contract provisions: (1) the choice-of-law provision; (2) the statute of limitations provision; and (3) the damages limitation. These routinely-enforced provisions require dismissal of plaintiff's case.

The statute of limitations provision bars all plaintiff's claims. Plaintiff is limited to bringing claims it knew (or should have known) of no earlier than August 2005, yet plaintiff admits it learned of IBM's alleged breaches in 2004. The choice-of-law provision requires that New York law applies to plaintiff's claims. Under New York law, plaintiff is not permitted to dress up a simple contract claim with rhetoric about "lying, hiding, and covering up" to plead seven different torts, including fraud. Without some additional wrong above and beyond the alleged breach of contract, plaintiff's claims must be dismissed for improperly casting a contract claim as various torts. Finally, the damages limitation provision expressly precludes plaintiff's request for punitive damages. Plaintiff's detail-barren (yet claim-heavy) Complaint should be dismissed for these reasons and others.

**Argument**

I.    **ALL PLAINTIFF'S CLAIMS ARE TIME-BARRED BY THE PARTIES' AGREEMENT**

A.    The Limitations Provision Is Unambiguous

Plaintiff asks the Court to find that the limitations provision stating that "neither of [them] will bring a legal action against the other more than two (2) years after the cause of action arose" is somehow "ambiguous."[1] Opp. at 7. In reality, however,

---

[1]    IBM Developer Agreement at § 13.3 (Request for Judicial Notice ("RJN") Ex. A) ("ACTIONS. Except for actions brought to enforce Section 7.0, 'INDEMNIFICATION AND LIABILITY,' neither of us will bring a legal action against the other more than two (2) years after the cause of action arose.").

(footnote continued)

plaintiff does not contend the statute of limitations provision is ambiguous in itself, merely that a separate provision requiring the parties to retain records for a longer period somehow conflicts with the two-year limitations provision. Opp. at 7-8. Differing lengths of the limitations provision and the record retention provision, however, create no conflict. In a potentially long-term business relationship, record retention serves legitimate business purposes entirely unrelated to possible litigation. There is no basis in the contract or logic to link the provisions the way RSI suggests. New York courts refuse to read ambiguity from multiple contract terms even where, unlike here, the two terms relate to the same issue. *See, e.g., Isaacs v. Westchester Wood Works, Inc.*, 278 A.D.2d 184, 184, 718 N.Y.S.2d 338, 339 (1st Dept. 2000) (express provision to arbitrate was not negated by provision vesting New York courts with exclusive jurisdiction in all actions and proceedings).

Moreover, plaintiff's speculation that the limitations provision "appears to be a boilerplate clause drafted for other [unspecified] purposes" and should therefore be discarded, Opp. at 7, requires the Court to ignore the fundamental canon that "a contract should be construed so as to give force and effect to all of its provisions." *See, e.g., Trump-Equitable Fifth Ave. Co. v. H.R.H. Constr. Corp.*, 106 A.D.2d 242, 244, 485 N.Y.S.2d 65, 67 (1st Dept. 1985) (cited by plaintiff). Plaintiff is bound by its mutual promise with IBM not to bring claims against the other party (excluding indemnification claims) more than two years after a cause of action arose. *W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 162, 565 N.Y.S.2d 440, 443 (1990) ("[W]hen parties set down their agreement in a clear, complete document, their writing

---

Whether a contract term is ambiguous is a question of law for the Court to decide. *Van Wagner Adv. Corp. v. S & M Enters.*, 67 N.Y.2d 186, 191, 501 N.Y.S. 2d 628, 631 (1986). A contract term is ambiguous only if it is "susceptible of two reasonable interpretations." *Essex Ins. Co. v. Pingley*, 41 A.D.3d 774, 776, 839 N.Y.S. 2d 208, 209-10 (2d Dept. 2007).

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, STRIKE

1 | should as a rule be enforced according to its terms.").

2 |     B.    <u>Plaintiff's Claims Are Time-Barred Under the Limitations Provision</u>

3 |     Plaintiff argues that two theories excuse its failure to bring timely claims:

4 | "multiple breaches" and "continuing wrongs." Neither notion applies here.

5 |     Under its "multiple breaches" argument, plaintiff cites a case applying the law of

6 | the District of Columbia to argue that "[e]ach allegedly wrongful sale constitute[d] a

7 | unique transaction or occurrence which [stood] on its own for statutory limitations

8 | purposes." Opp. at 8 (quoting *Comp. Data Sys., Inc. v. Kleinberg*, 759 F. Supp. 10, 17

9 | (D.D.C. 1990)). In assessing "multiple breaches" of a royalty-bearing license

10 | agreement, New York courts limit a plaintiff to actions for breaches occurring within

11 | royalty periods in the limitations period running back from initiation of the lawsuit.

12 | *See, e.g., Allman v. UMG Recordings*, 530 F. Supp. 2d 602, 606-07 (S.D.N.Y. 2008)

13 | (applying New York law); *accord Kleinberg*, 759 F. Supp. at 17 (dismissing claims of

14 | which party was on notice before limitations period). Having filed its action in

15 | February 2008, and factoring in the parties' six-month tolling agreement, plaintiff is

16 | limited to actions for breaches in royalty periods between August 2005 and February

17 | 2008. However, plaintiff admits it discovered in **2004** that certain of IBM's customers

18 | "continued to utilize the Buffer Pool Tool" in alleged violation of the parties'

19 | agreement. Compl. ¶ 11. Although plaintiff offers a stream of additional details in its

20 | Opposition not alleged in its Complaint, Opp. at 4-6, plaintiff makes no reference to a

21 | single date after that (except to state without further explanation that IBM's alleged

22 | torts "continued, even into the present." Opp. at 10.)[2] Where, as here, plaintiff has not

23 |

_____

24 |    [2] Plaintiff's Complaint also makes a vague reference to "discover[ing] for the first

25 | time that IBM was infringing upon materials copyrighted by Plaintiff in its manuals for the Buffer Pool Analyzer" in 2006. Compl ¶ 12. This allegation was seemingly errant;

26 | plaintiff has brought no copyright infringement claim. *But see* Opp. at 13 (citing

27 | paragraph 12 of the Complaint for proposition that "RSI seeks to hold IBM accountable for . . . infringing on copyright"). Moreover, it does not pertain to any of plaintiff's

28 |    (footnote continued)

1  alleged breaches within the limitations period (as tolled), and the multiple breaches

2  referenced in opposition to a motion to dismiss are conspicuously silent regarding

3  timing, the Court must look to the factual allegations set forth in the complaint to

4  determine if a breach or injury falls within the limitations period. *See, e.g., Kronos,*

5  *Inc. v. AVX Corp.*, 81 N.Y.2d 90, 92, 96-97, 595 N.Y.S.2d 931, 932-33, 936-37 (1993).

6  Having failed to allege a single breach during the limitations period, plaintiff's multiple

7  breach theory is irrelevant.[3]

8      Plaintiff next invokes the "continuing wrong" doctrine, under which the

9  limitations period applied to certain torts is tolled until the continuing wrong ceases.

10  Opp. at 9-10. Notably, the *Kleinberg* case plaintiff cites held the "continuing wrong"

11  doctrine *did not apply* to claims RSI describes as "analogous" to its own. Opp. at 8;

12  *Kleinberg*, 759 F. Supp. at 17 ("The present case does not present a situation involving

13  a continuing wrong. . . . [E]ach allegedly wrongful sale constitutes a unique transaction

14  or occurrence which stands on its own for statutory limitations purposes."). *Kleinberg*

15  was right: the continuing wrong doctrine does not apply here for two reasons: New

16  York law does not extend the continuing wrong doctrine to claims for conversion based

17  on the alleged wrongful appropriation of royalties, the essence of plaintiff's tort claims.

18  *See, e.g., King v. Fox*, 28 Fed. App'x. 95, 98 (2d Cir. 2002) (wrongful taking of royalty

19  payments was conversion, not trespass, thus continuing wrong doctrine did not apply);

20  *Catlin v. Manilow*, 170 A.D.2d 357, 358, 566 N.Y.S. 2d 59, 60 (1st Dept. 1991)

21

22  ―――――――――――――――――

23  theories or arguments regarding the ongoing breaches of the software licensing
agreement. *See, e.g.*, Opp. at 2-6, 8-10.

24  [3] Plaintiff also contends IBM "ignores" that RSI has brought claims arising under
the Lanham Act and for fraud. IBM did not ignore these causes of action; they too are

25  time-barred under the agreement's limitations provision. *See* IBM Developer

26  Agreement at § 13.3 (RJN Ex. A) ("ACTIONS. Except for actions brought to enforce
Section 7.0, 'INDEMNIFICATION AND LIABILITY,' neither of us will bring a legal

27  action against the other more than two (2) years after the cause of action arose.").

28

1  (conversion claim for failure to pay for script was not continuing tort); *see also Spinap*

2  *Corp. v. Cafagno*, 302 A.D.2d 588, 588, 756 N.Y.S.2d 86, 87 (2d Dept. 2003) (tortious

3  interference with contract not continuous tort).  Plaintiff's authorities do not suggest

4  otherwise.  *See, e.g., Congregation B'Nai Jehuda v. Hiyee Realty Corp.*, 35 A.D.3d

5  311, 313, 827 N.Y.S.2d 42, 44 (1st Dept. 2006) (applying continuous tort doctrine to

6  claims of negligence, trespass and nuisance involving failure to repair drainage

7  system); *Leonhard v. United States*, 633 F.2d 599 (2d Cir. 1980) (discussing doctrine in

8  context of claims of constitutional violations based on custodial interference); *Pugliese*

9  *v. Superior Court*, 146 Cal. App. 4th 1444, 53 Cal. Rptr. 3d 681 (2d Dist. 2007)

10  (applying continuing tort doctrine to domestic violence under California law).

11  II.    **THE COURT SHOULD ENFORCE THE NEW YORK CHOICE OF LAW**

12        **PROVISION**

13        Plaintiff concedes the parties' Developer Agreement provides that "[t]he

14  substantive laws of the State of New York applicable to agreements fully executed and

15  performed in New York govern" the Developer Agreement, Opp. at 7, but nevertheless

16  argues California law should apply.  *Id.*

17        As an initial matter, RSI incorrectly suggests this Court would "default[] to the

18  law of the state in which it is located," *i.e.*, California, unless IBM can "dislodge the

19  law of the forum."  Opp. at 6.  In fact, this Court would apply Hawaii's law—including

20  Hawaii's choice-of-law rules—to this action because plaintiff first filed it there.  *See,*

21  *e.g., Van Dusen v. Barrack*, 376 U.S. 612, 637-39 (1964) (following transfer pursuant

22  to 28 U.S.C § 1404(a), transferee court sitting in diversity continues to apply law of

23  transferor court).

24        Not only will Hawaiian courts enforce a choice-of-law provision if "the chosen

25  law has some nexus with the parties or the contract," *see, e.g., Airgo, Inc. v. Horizon*

26  *Cargo Transp., Inc.*, 66 Haw. 590, 595, 670 P.2d 1277, 1281 (1983), a Hawaiian court

27  has enforced this *exact* choice-of-law provision in a similar IBM contract dispute.

28  *Folium, Inc. v. IBM*, Civ. No. 03-92-DAE/LEK, Opinion and Order (D. Haw. Aug. 11,

1    2003) (Request for Judicial Notice ("RJN") Ex. F).[4]

2          And contrary to plaintiff's claim that no connection exists between the contract

3    and New York, IBM is incorporated and has its primary place of business there, as

4    recognized by other courts (and this one). *See, e.g., id.; Allen v. IBM*, 308 F. Supp. 2d

5    638, 641 (M.D.N.C. 2004) ("IBM is incorporated in the state of New York and its

6    principal place of business is in Armonk, New York[.]"); *IBM v. Bajorek*, 191 F.3d

7    1033, 1036 (9th Cir. 1999) ("IBM is a New York corporation with its principal place of

8    business in New York."); *Johnson v. IBM*, 891 F. Supp. 522, 525 (N.D. Cal. 1995)

9    ("IBM is a New York corporation with its principal place of business in that State").

10          Plaintiff's claim that California law should apply despite this choice-of-law

11    provision is unsupported by authority or reason.  Simply dubbing the Developer

12    Agreement an "adhesion contract"—apparently on the sole ground that it was drafted

13    by IBM—does not make it one, nor does it negate the choice-of-law provision. *See*

14    *e.g., Wash. Mut. Bank, FA v. Superior Court*,  24 Cal. 4th 906, 917-918, 103 Cal. Rptr.

15    2d 320, 329 (2001).  Nor does plaintiff's decision not to oppose a venue transfer motion

16    from the completely unrelated venue it chose (Hawaii) to a more suitable forum

17    (California) render the choice-of-law provision unenforceable. *See, e.g., E & J Gallo*

18    *Winery v. Andina Licores S.A.*, 440 F. Supp. 2d 1115, 1127-29 (E.D. Cal. 2006)

19    (choice-of-law provisions not easily set aside).

20          Notably, although RSI claims the parties' choice-of-law should not be enforced,

21    it does not otherwise contest that it extends to RSI's tort claims.  Because RSI's torts

22    merely restyle its contract claim, New York law applies to all RSI's claims. *See*

23    *Cardonet Inc. v. IBM Corp.*, No. C-06096637, 2007 WL 518909 at *3 (N.D. Cal. Feb.

24    14, 2007) (concluding in similar case that 'the choice-of-law provision reaches all of

25    plaintiff's claims [including fraud, negligent misrepresentation, conversion, and

26    ───────────────

27    [4]   Incorporation in the state is a sufficient nexus. *See, e.g., Folium*, Opinion and
      (footnote continued)

28

1  California statutory unfair competition claims] since the claims as pled seek the benefit

2  of plaintiff's bargain with IBM and seek damages of the type remedial under New York

3  laws.").

4  III.  **RSI'S TORT AND UNFAIR COMPETITION CLAIMS ARE BARRED BY**

5  **THE ECONOMIC LOSS RULE**

6      A.    Plaintiff's Tort Claims Simply Restate the Breach of Contract Claim

7          It is black-letter law that if a plaintiff alleges only that it lost the benefit of its

8  bargain and not the breach of any duty independent of the contractual obligations, tort

9  claims will not lie. *Carmania Corp. v. Hambrecht Terrell Int'l*, 705 F. Supp. 936, 938

10  (S.D.N.Y. 1989).  Similarly, New York courts consistently hold that, where a

11  contracting party alleges only economic loss (with no damage to person or property),

12  the remedy lies exclusively in contract. *See, e.g., Orlando v. Novuriana of America,*

13  *Inc.*, 162 F. Supp. 2d 220, 224-26 (S.D.N.Y. 2001).

14          Plaintiff's opposition repeatedly recites that IBM "lied," "hid," and "covered up"

15  its continued use of RSI's Buffer Pool Tool by its customers and its failure to pay

16  royalties to RSI, hoping to infuse its breach of contract claims with a tortious flavor.

17  *See, e.g.*, Opp. at 13.  Plaintiff's overheated terminology, however, simply describes

18  alleged breaches of the parties' licensing agreement, which required IBM to pay

19  royalties, provide auditable records, and submit to audits of its royalty payments.[5]  *See,*

20  *e.g.*, Opp. at 4 ("Due to IBM's failure to properly manage the sale, distribution, or both,

21  of the Products and to perform its accounting and recordkeeping responsibilities under

22  the Transaction Documents, the parties encountered problems with the royalty

23  payments."); *id.* ("IBM . . . underpaid RSI[.]"); *id.* ("RSI [was] deprived of royalties for

_____

25  Order at 4 (RJN Ex. F.).

26      [5]  *See, e.g.*, IBM Developer Agreement, Agreement No. STL97041, dated June 23,
1997 (RJN Ex. A) ¶ 3.6; Description of Licensed Work, Agreement No.: STL97041,

27  dated June 23, 1997 (RJN Ex. B) ¶¶ 6.1, 6.3.

1    many months."); *id.* at 4-5 (complaining of IBM's "trivial efforts at investigation,"

2    errors in IBM's royalty and accounting systems, and difficulties with auditing

3    procedure).[6] As discussed below, because no independent duty is alleged other than

4    those created by the parties' contractual relationship, plaintiff's remedy lies exclusively

5    in contract. *Orlando*, 162 F. Supp. 2d at 224-26.

6            B.    <u>Plaintiff's Authorities Do Not Avoid the Economic Loss Rule</u>

7                    1.    <u>Breach of the Duty of Good Faith and Fair Dealing</u>

8            Plaintiff does not appear to dispute that breach of the implied duty of good faith

9    and fair dealing in a contract is merely a breach of the contract itself, and not an

10    independent tort. *See, e.g., Natl'l Football League Props., Inc. v. Dallas Cowboys*

11    *Football Club, Ltd.*, 922 F. Supp. 849, 855 (S.D.N.Y. 1996); Mot. at 10. Although

12    plaintiff cites Arizona authority for the proposition that a breach of the implied

13    covenant may occur without breaching an express term of the underlying contract, it

14    does not identify such an independent duty here, claiming only that "[e]ven if IBM had

15    breached no express term of the Transaction Documents, IBM deliberately kept RSI

16    from receiving royalties under the Transaction documents." Opp. at 14. That vague

17    suggestion—which appears to do no more than allege a breach of contract—does not

18    suffice to state an independent duty.[7]

19

---

20        [6]   Although plaintiff complains that IBM also infringed copyrighted material, it has

21    not sued for copyright infringement.

22        [7]   Plaintiff suggests that "[e]ven if the damages for both claims are the same, RSI
may plead alternate theories of liability." This is not the law. To the contrary, New

23    York law requires that the duplicative breach of the implied duty of good faith and fair

24    dealing claim—not the breach of contract claim—be dismissed. *Wolff v. Rare Medium,*

25    *Inc.*, 171 F. Supp. 2d 354, 359 (S.D.N.Y. 2001) (dismissing claim as "duplicative of the
cause of action for breach of contract since New York courts generally assume an

26    obligation of good faith and fair dealing between parties to a contract."); *Dayan*

27    *Enters., Corp. v. Nautica Apparel, Inc.*, Case No. 03-Civ.-5706 (LLS), 2003 WL
22832706 (S.D.N.Y. Nov. 26, 2003).

28

2.    Misrepresentation Claims

Plaintiff cites numerous authorities in support of its contention that fraud and misrepresentation claims are not barred by the economic loss rule, but fails to appreciate the important distinctions between those cases and its allegations. Misrepresentation claims based on breaches of contract *are* barred by New York's economic loss rule. *See, e.g.*, *Roy v. Gen. Elec. Co.*, 544 F. Supp. 2d 103, 110 (D.R.I. 2008) (dismissing negligent misrepresentation and fraud claims under economic loss rule on motion to dismiss).  Importantly, plaintiff concedes that "New York law requires a fraud claim, in a case arising from a breach of contract, to be sufficiently distinct from breach of contract claim." Opp. at 12 (citing *Great Earth Int'l Franchising Corp. v. Milks Dev.*, 311 F. Supp. 2d 419 (S.D.N.Y. 2004)).  Plaintiff further cites three ways a fraud claim can exist distinct from a contract claim, including by alleging: (1) breach of a separate legal duty; (2) an extracontractual misrepresentation; or (3) separate damages not recoverable under the contract.  Opp. at 12.

Yet plaintiff's allegations do not bring its fraud claims within any of these exceptions: "RSI seeks to hold IBM accountable for hiding, lying about, and covering up the continued use of RSI's Software and license fees owed . . . and infringing on copyright [an injury that has nothing to do with any fraud or misrepresentation], in order to harm RSI as IBM's competitor, and to damage the reputation and marketability of RSI's competing Software." Opp. at 13.  Regardless *why* IBM allegedly breached the contract, these allegations do not amount to any fraud or misrepresentation independent of the alleged contract breaches.  Plaintiff cites no authority to the contrary, and the cases it does cite illustrate that these distinguishing features are lacking here.

For example, RSI has not suggested there was any fraud in the inducement or other fraud or misrepresentation before the execution and operation of the parties' agreement, a common reason courts in the cases RSI cited allowed fraud claims to

1  proceed. *See, e.g.,* *In re Ford Motor Co. Vehicle Paint Litig.*, MDL No. 1063, 1997

2  WL 539665 (E.D. La. 1997) (allowing fraud claim to proceed under New York law

3  because "[t]he foundation of [plaintiff's] fraud claim lies not in a duty created by the

4  contract of sale but in Ford's intentional failure to disclose a material existing fact and

5  plaintiff's reliance upon the non-disclosure"); *Hargrave v. Oki Nursery, Inc.* 636 F.2d

6  897 (2d Cir. 1980) (allowing claim for fraud where misrepresentation induced contract

7  to purchase grape vines, but noting that "[i]f the only interest at stake is that of holding

8  the defendant to a promise, the courts have said that the plaintiff may not transmogrify

9  the contract claim into one for tort"). Further, plaintiff has failed to plead any

10  independent duty that IBM breached, as present in other cases RSI cited. *See, e.g.,*

11  *Strasser v. Prudential Sec., Inc.*, 218 A.D.2d 526, 630 N.Y.S.2d 80, 82 (1st Dept. 1995)

12  (fraud claim based on allegations that defendants misrepresented intent to perform

13  under contract was properly dismissed, while fraud claims based on breach of

14  independent duty to disclose facts survived).[8]

15          3.   <u>Conversion</u>

16       Plaintiff states without authority that "[t]he economic loss doctrine does not bar a

17  conversion claim," Opp. at 15, while at the same time describing IBM's alleged

18

---

19     [8]  Other cases cited by plaintiff apply other states' different economic loss rules.

20  *See, e.g.,* *Giles v. General Motors Acceptance Corp.*, 494 F.3d 865, 874 (9th Cir. 2007) (applying Nevada law); *Tommy L. Griffin, Plumbing & Heating Co. v. Jordon, Jones &*

21  *Goulding, Inc.*, 320 S.C. 49, 463 S.E.2d 85 (1995) (applying South Carolina law);

22  *Canal Elec. Co. v. Westinghouse Elec. Co.*, 973 F.2d 988 (1st Cir. 1992) (reviewing cases from Massachusetts and Third Circuit); *Robinson Helicopter Co. v. Dana Corp.*,

23  34 Cal. 4th 979, 22 Cal. Rptr. 3d 352 (2004) (applying California law). Still others do not discuss the economic loss rule at all. *See, e.g.,* *Triangle Underwriters, Inc. v.*

24  *Honeywell, Inc.*, 651 F.2d 132 (2d Cir. 1981) (affirming fraud *in the inducement*

25  claim); *Rozwell v. Philanz Oldsmobile, Inc.*, 187 A.D.2d 938, 591 N.Y.S.2d 649 (4th Dept. 1992). Such cases have little bearing here. *See, e.g.,* *Serina v. Albertson's, Inc.*,

26  744 F. Supp. 1114, 1116-17 (M.D. Fla. 1990) (dismissing fraud claim under economic

27  loss rule and reasoning that cases allowing both tort and contract claims to coexist were unpersuasive because the courts did not address the rule).

28

1  conversion as the alleged "hiding and lying about the continued use of RSI's Software,

2  without RSI's consent." *Id.* In other words, RSI alleges only that IBM licensed RSI's

3  software without paying RSI royalties in breach of the licensing agreement. Plaintiff

4  does not—and cannot—distinguish the New York cases holding that a conversion

5  claim cannot be premised on a mere breach of contract. *See, e.g.*, Mot. at 11-12 (citing

6  cases).

7          4.    Common Law Unfair Competition

8        Plaintiff's opposition misses the problem with its unfair competition claim: The

9  *only* factual allegation supporting this cause of action—"IBM's continued use of the

10  Buffer Pool Tool in commerce constitutes unfair competition"[9]—does *nothing* more

11  than restate RSI's breach of contract claim, *i.e.*, IBM has allegedly sold the Buffer Pool

12  Tool without paying royalties to RSI under the contract. Accordingly, this claim

13  should also be dismissed under the economic loss rule. *Cf. Manhattan Motorcars, Inc.*

14  *v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204, 220 (S.D.N.Y. 2007) (applying

15  New York's economic loss rule based on type of injury alleged).

16  IV.  **PLAINTIFF HAS NOT ALLEGED ANY BASIS FOR A LANHAM ACT**

17        **CLAIM**

18        Plaintiff attempts to add substance to its skeletal Lanham Act claim for the first

19  time in its Opposition, claiming that IBM violated RSI's rights in the "Buffer Pool

20  Tool" name by releasing a "confusingly similar" software called "Buffer Pool

21  Analyzer." Opp. at 17-18. Aside from the fact that these allegations are nowhere

22  found in the Complaint, they also remain insufficient to plead a Lanham Act claim.

23  Section 43(a) requires a plaintiff to allege facts indicating that its trade name is entitled

24  to protection and that there is a likelihood of confusion in the defendant's use of a

25  similar name. *See Yarmuth-Dion, Inc. v. D'ion Furs, Inc.*, 835 F.2d 990, 992-93 (2d

---

27    [9]  Compl. ¶ 48.

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, STRIKE

1  Cir. 1987).  Plaintiff has not alleged any protectable interest in "Buffer Pool Tool," nor

2  can it: "buffer pool" is a generic descriptive term referring to an area of memory in a

3  computer system, entitled to no more name protection than "printer."  Even crediting

4  the supplemental allegations in plaintiff's Opposition, plaintiff's Lanham Act claim is

5  inadequately pleaded.

6  V.    **PLAINTIFF'S FRAUD CLAIMS LACK THE SPECIFICITY REQUIRED**

7        **BY RULE 9(B)**

8        Plaintiff does not argue it has met the traditional Rule 9(b) pleading requirement

9  to specify the time, place, speaker, and specific content of the alleged

10 misrepresentations.  Rather, plaintiff relies, for example, on *In re GlenFed, Inc. Sec.*

11 *Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994)[10] to attempt to relax the pleading standard it

12 has failed to meet.  *See* Opp. at 17.  However, plaintiff ignores the Ninth Circuit's

13 holding in that case that, in alleging fraud, a plaintiff cannot simply allege the statement

14 was false, but must explain *how* it was false.  *Id.* at 1551.  Here, RSI merely states that

15 IBM falsely represented it would not continue to use or allow its customers to use the

16 Buffer Pool Tool, asking the Court to assume its falsity without any alleging any facts

17 to show how this statement was in fact false at the time IBM made it.  The lack of

18 particularized allegations regarding the elements of plaintiff's fraud claims—

19 particularly plaintiff's reliance and damages, which plaintiff does not supplement in its

20 opposition briefing—make plaintiff's claims impossible to assess and defend.  "Rule

21 9(b) requires the identification of the circumstances constituting fraud so that the

22 defendant can prepare an adequate answer from the allegations."  *Odom v. Microsoft*

23 _____

24  [10] *In re GlenFed* was superseded by the Private Securities Litigation Reform Act of
    1995 ("PSLRA"), which heightened the pleading standards required for pleading
25  federal securities fraud.  *See In re Silicon Graphics, Inc.*, 970 F. Supp. 746, 754 (N.D.
26  Cal. 1997).  Plaintiff cites numerous other securities cases pre-dating the PSLRA.  *See,*
    *e.g.*, *Wool v. Tandem Computers Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987); *see also*
27  *Deutsch v. Flannery*, 823 F.2d 1361, 1366 (9th Cir. 1987).

28

1  *Corp.*, 486 F.3d 541, 553 (9th Cir. 2007), *cert. denied* 128 S. Ct. 464 (2007) (internal

2  citations omitted).  Plaintiff's fraud claims—among their numerous deficiencies—are

3  pleaded with insufficient particularity and must be dismissed.

4  VI.  **PLAINTIFF DOES NOT DEFEND ITS "UNCLEAN HANDS"  AND**

5      **RESTRAINT OF TRADE CLAIMS**

6      Nowhere does plaintiff attempt to salvage its tenth cause of action for "unclean

7  hands," which is, indisputably, an affirmative defense in equity, not a cause of action.

8  *See, e.g.*, *518 E. 80th Street Co. v. Smith*, 251 A.D.2d 215, 216, 674 N.Y.S.2d 680, 681

9  (1st Dept. 1998).  Similarly, plaintiff's only nod to its ninth cause of action for restraint

10 of trade in its opposition is a bold-font section heading concluding that RSI has alleged

11 sufficient facts to state a claim.  These causes of action should be dismissed with

12 prejudice.

13 VII.  **PLAINTIFF'S PUNITIVE DAMAGES REQUEST SHOULD BE**

14     **STRICKEN**

15     Plaintiff also attempts to dispose of the parties' agreement that "[n]either party

16 will be liable to the other for . . . punitive damages."[11]  Under New York law,

17 contractual liability limitations are unenforceable only where the provision would bar

18 damages for conduct that "smacks of intentional wrongdoing" or "egregious intentional

19 misbehavior evincing extreme culpability: malice, recklessness, deliberate or callous

20 indifference to the rights of others, or an extensive pattern of wanton acts." *Kalisch-*

21 *Jarcho, Inc. v. City of New York*, 58 N.Y.2d 377, 385, 461 N.Y.S.2d 746, 750 (1983);

22 *Net2Globe Intern., Inc. v. Time Warner Telecom of New York*, 273 F. Supp. 2d 436,

23 454 (S.D.N.Y. 2003).  However, New York courts "set the bar quite high" for finding

24 such intentional wrongdoing. *Tradex Europe SPRL, v. Conair Corp.*, 2008 WL

25 1990464, at *3 (S.D.N.Y. May 7, 2008) (citations omitted).  In particular, several New

27     [11]  IBM Developer Agreement at § 7.3 (RJN Ex. A).

1  York courts have determined that economically-motivated conduct does not amount to
2  "egregious intentional misbehavior" that can render damages limitation provisions
3  unenforceable. *See e.g.*, *Tradex Europe SPRL*, 2008 WL 1990464 at *3.

4        Aside from the enforceable damages limitation in the parties' agreement, RSI
5  concedes that under New York law plaintiffs cannot generally recover punitive
6  damages for a breach of contract because punitive damages are designed "not to
7  remedy private wrongs but to vindicate public rights." *Rocanova v. Equitable Life*
8  *Assur. Soc. of U.S.*, 83 N.Y.2d 603, 613, 612 N.Y.S.2d 339, 343 (1994) (citations
9  omitted); Opp. at 18.  Plaintiff has failed to allege any conduct by IBM that "evinc[ed]
10  a 'high degree of moral turpitude' and demonstrat[ed] 'such wanton dishonesty as to
11  imply a criminal indifference to civil obligations' and was 'aimed at the public
12  generally'" to meet the difficult standard for the *only* exception to the rule that punitive
13  damages are not available for breach of contract. *Id.* (quoting *Walker v. Sheldon*, 10
14  N.Y.2d 401, 404-05, 223 N.Y.S.2d 488 (1961)).[12]

15  VIII.  **LEAVE TO AMEND SHOULD BE DENIED**

16        Finally, plaintiff requests leave to amend, not only to avoid dismissal with
17  prejudice, but also include a new cause of action for unjust enrichment.  Amendment
18  for either reason would be futile, however, because plaintiff has already alleged the
19  essential facts, which support nothing more a breach of contract claim barred by a
20  contractual limitations provision, and any unjust enrichment claim would be barred by
21  both the existence of an express contract governing the same subject matter and the
22  availability of an adequate remedy at law. *See, e.g.*, *Corcoran v. GATX Corp.*, 49
23  A.D.3d 1174, 852 N.Y.S.2d 913, 914 (4th Dept. 2008); *Samiento v. World Yacht*

---

25  [12]  It is well-settled that New York law does not recognize a separate cause of
26  action for punitive damages, as alleged in plaintiff's Complaint. *See e.g. Smith v.*
27  *County of Erie*, 295 A.D.2d 1010, 1011, 743 N.Y.S.2d 649,651 (4th Dept. 2002). RSI's
   claim for punitive damages should be dismissed on this ground as well.

1    *Inc.*,10 N.Y.3d 70, 883 N.E.2d 990 (2008) (dismissing unjust enrichment claim because

2    plaintiff has adequate remedy at law); *Chaset v. Fleer/Skybox Intern., LP*, 300 F.3d

3    1083, 1087-88 (9th Cir. 2002) (denying leave to amend because "[t]he basic underlying

4    facts have been alleged by plaintiffs and have been analyzed" and "plaintiffs cannot

5    cure the basic flaw in their pleading").

6    <u>**Conclusion**</u>

7       For the foregoing reasons, defendant IBM respectfully requests that the Court

8    dismiss plaintiff's Complaint with prejudice or, in the alternative, strike plaintiff's

9    prayer for punitive damages.

10

11    DATED:  September 5, 2008      QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

12

13

14                            By /s/ Shon Morgan

                               Shon Morgan

15                             Attorneys for Defendant International

                               Business Machines Corporation

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543.

On September 5, 2008, I served true copies of the following document(s) described as:

1.    **REPLY IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STRIKE**

on the parties in this action as follows:

*Counsel for Plaintiff RSI Corp.*        Robert D. Triantos
                                          Edmund W.K. Haitsuka
                                          **Carlsmith Ball LLP**
                                          75-1000 Henry St. Ste. 209
                                          Kailua-Kona, HI 96740

**BY FEDEX:** I deposited such document(s) in a box or other facility regularly maintained by FedEx, or delivered such document(s) to a courier or driver authorized by FedEx to receive documents, in sealed envelope(s) or package(s) designated by FedEx with delivery fees paid or provided for, addressed to the person(s) being served.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on September 5, 2008, at Los Angeles, California.

*Tiffany Garcia*
Tiffany Garcia