**E-FILED on** 03/09/09

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| RSI CORP., dba RESPONSIVE SYSTEMS COMPANY, a New Jersey corporation,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION; and DOE DEFENDANTS 1-20,<br><br>　　　　　Defendants. | No. 5:08-cv-3414 RMW (RS)<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND<br><br>**[Re Docket No. 51]** |

　　Defendant International Business Machines Corporation ("IBM") moves to dismiss or, in the alternative, strike plaintiff RSI Corp.'s ("RSI") first amended complaint, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f). For the reasons set forth below, the court grants defendant's motion. Plaintiff is given twenty days leave to make a final attempt to amend.

## I. BACKGROUND

Plaintiff RSI, which does business as Responsive Systems Company, created a software product called the Buffer Pool Tool that it licensed to IBM to remarket as part of its products to IBM customers. (First Amended Compl. ¶ 1, 4-5) ("FAC"). The parties entered into a series of licensing agreements including: (1) an IBM Developer Agreement and Statement No. STL 97041, dated June 23, 1997; and (2) the IBM Developer Agreement and Statement No. STL 97051, dated April 21, 1998 (collectively "Developer Agreement"). (*Id.* ¶ 5-6). Under these agreements, IBM was to pay RSI certain royalties for the Buffer Pool Tool. (*Id*. ¶ 6).

According to RSI, IBM failed to pay the license fees due to RSI as set forth in the agreements and, when RSI sought audits under the agreements, IBM failed and refused to provide the documents necessary for the audit. *Id.* ¶ 13-17. Furthermore, IBM created its own tool entitled "Buffer Pool Analyzer" to assist in the operation of its computers and in the operation of its data processing systems. *Id*. ¶ 7. RSI alleges that on or about 2004, it discovered for the first time certain IBM customers continued to utilize the Buffer Pool Tool in violation of any contract that the parties had. *Id*. ¶ 10.

On February 15, 2008, RSI filed a complaint against IBM in the U.S. District Court for the District of Hawaii alleging claims for breach of contract and a variety of other claims. The case was then transferred to this district. On October 9, 2008, this court granted IBM's motion to dismiss. RSI filed an amended complaint on October 31, 2008, and IBM filed a second motion to dismiss on November 20, 2008.

## II. ANALYSIS

A claim should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Gilligan v. Jamco Dev. Corp*., 108 F.3d 246, 248 (9th Cir. 1997) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Dismissal is proper only where there is either a lack of a cognizable legal theory or an absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). Leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Department of*

*Corrections*, 66 F.3d 245, 248 (9th Cir. 1995). When amendment would be futile, however, dismissal may be ordered with prejudice. *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

### A. Choice of Law

IBM contends that RSI's causes of action are governed by the laws of the State of New York based upon the choice of law provision in the Developer Agreement. Section 13.6 of the IBM Developer Agreement provides:

> GOVERNING LAW. The substantive laws of the State of New York applicable to agreements fully executed and performed in New York govern the IDA.

Def.'s Mot. to Dismiss, Ex. A at 12, § 13.6. IBM argues that the choice-of-law provision is enforceable because IBM's incorporation in New York provides the necessary nexus. Furthermore, IBM contends that New York law applies to RSI's tort claims, because they "merely restyle its breach of contract claims." *Id.* at 4:23-24. RSI does not oppose the application of New York law, and the court will therefore apply it to the claims here.

### B. Statute of Limitations

IBM argues that the claims against it are time-barred under a provision of the Developer Agreement. Section 13.3 of the Developer Agreement dated June 23, 1997 ("Limitations Provision") reads: "Except for actions brought to enforce Section 7.0, "INDEMNIFICATION AND LIABILITY," neither of us will bring a legal action against the other more than two (2) years after the cause of action arose." (Def's Mot. to Dismiss at Ex. A (Developer Agreement at 13.3)). Under this provision, any claim based on IBM's alleged breach of the Developer Agreement had to be brought within two years of the breach. RSI contends that its claims are not time-barred under the limitations provision because: (1) IBM should be equitably estopped from invoking the limitations provision; and (2) IBM's actions constitute a continuing violation of the contract.

#### 1. Equitable Estoppel

"To establish estoppel, a plaintiff must present evidence of affirmative misconduct or misrepresentation on the part of the defendant which can be said to have induced the reasonable reliance of the plaintiff in failing to timely commence the action." *Allman v. UMG Recordings*, 530 F.Supp.2d 602, 608 (S.D.N.Y. 2008). RSI argues here that IBM's provision of incorrect and incomplete audit information, as well as its delay in doing so, should estop IBM from invoking the

contractual statute of limitations period. *Allman* also dealt with a statutory limitations provision in a contract, and plaintiffs there similarly contended that audit delays justified exercise of equitable estoppel as to the limitations provision. *Id.* at 608-10. The court in *Allman* found that permitting an audit, and even delaying it, could not induce reasonable reliance that defendants would forego their rights under the limitation. *Id.* at 610. In this case RSI does allege that some data provided was incomplete, and that RSI was led to believe that full data existed. FAC ¶ 12. Nonetheless, the court still finds RSI's purported reliance unreasonable. First, plaintiff does not allege that IBM engaged in any affirmative misconduct or made a misrepresentation. Rather, the complaint alleges only that IBM promised to provide the requested audit information, but did not. Second, IBM's obligation to pay royalties on sales and its obligation to provide audit information upon request are independent requirements of the contract. Even if IBM promised to provide full audit data, RSI cannot reasonably rely on such a promise to forego a suit for royalties on that basis. RSI needs to plead facts showing some misrepresentation or affirmative misconduct on which it relied and which caused it not to file suit.

### 2. Continuing Violation and Multiple Breaches

RSI makes two arguments in addition to the equitable estoppel argument that its complaint is not barred by the statute of limitations. First, it contends that IBM's actions constitute a continuing wrong, and the limitations period should toll until the wrong ceases. Second, RSI argues that the contractual limitation provision does not bar separate breaches that occurred within the limitations period. RSI cites *Measom v. Greenwich & Perry Street Housing Corp.*, 798 N.Y.S.2d 298, 300 (N.Y.App. Div. 2005), for the proposition that continuing wrongs toll the statute of limitations. In *Measom,* which dealt with a landlord's continuing obligation to provide a habitable apartment, the court found that "a cause of action accrues anew every day for each continuation of the wrong." *Id.* That is distinct from the situation here, where a cause of action for breach accrues once, upon the non-payment of a required royalty. Any non-payments of royalty, then, that occurred before 2006 are barred by the contractual limitations provision.

However, RSI may have a viable claim for non-payment of royalties that fell due within the two years before the complaint was filed. The complaint does not allege any non-payment besides

the one discovered in 2004. However, RSI may be able to amend to state a claim for a breach of contract action that has occurred within the limitations period.

### 3. Leave to Amend

RSI is given twenty days leave to amend to allege a breach within the limitations period or to allege facts justifying the tolling of the statute of limitations based upon the application of the doctrine of equitable estoppel.

### C. Breach of Contract as a Tort and Economic Loss

New York law includes a number of doctrines that "attempt to keep contract law from drowning in a sea of tort." *Carmania Corp., N.V. v. Hambrecht Terrell Int'l*, 705 F. Supp. 936, 938 (S.D.N.Y. 1989). Although the case law is not univocal, and the "line separating tort and contract claims may be elusive," the Court of Appeals of New York has identified several "guideposts for separating tort from contract claims." *Sommer v. Federal Signal Corp.*, 583 N.Y.S.2d 957, 961 (N.Y. 1992). First, a simple breach of contract is not actionable in tort unless a legal duty independent of the contract itself has been violated. *Clark-Fitzpatrick, Inc. v. Long-Island R. Co.*, 70 N.Y.2d 382, 389 (N.Y. 1987). Such a legal duty, actionable in tort, must "spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract." *Id.* The existence of a professional relationship, the nature of the injury, and the manner in which the injury occurred are also relevant in disentangling tort and contract claims. *Sommer*, 583 N.Y.S.2d at 961. "Where plaintiff is essentially seeking enforcement of the bargain, the action should proceed under a contract theory." *Id.* (citing *Clark-Fitzpatrick*, 70 N.Y.S.2d at 389-90). But tort liability may be available when, for example, a party fraudulently induces a plaintiff to enter into a contract or engages in conduct to defeat the contract. *New York University v. Continental Ins. Co.*, 87 N.Y.S.2d 308, 315 (N.Y. 1995) (citing *Channel Master Corp. v. Aluminium Ltd. Sales*, 4 N.Y.2d 403, 406-407 (N.Y. 1958), and *North Shore Bottling Co. v. Schmidt & Sons*, 22 N.Y.2d 171, 179 (N.Y. 1968), respectively).

Second, under New York's related "economic loss" doctrine, plaintiffs "who have suffered 'economic loss,' but not personal or property injury, are restricted to an action for the benefit of their bargain. If the damages are the type remedial in contract, a plaintiff may not recover in tort."

*Carmania Corp.*, 705 F.Supp. at 939. The economic-loss doctrine was first applied in the area of products liability, but has been extended to other areas of tort as well. *Key Intern. Mfg. v. Morse/Diesel, Inc.*, 142 A.D.2d 448, 450-53 (N.Y. App. 1988) (tracing expanding scope of economic loss rule). IBM's motion to dismiss mentions both doctrines, but analyzes RSI's negligent misrepresentation and fraud claims under the former rule proscribing tort actions restating a breach of contract.

### 1. Negligent Misrepresentation and Fraud

A misrepresentation of intent to perform under a contract cannot support a fraud or intentional misrepresentation claim under New York law. *Manning v. Utils. Mut. Ins. Co.*, 254 F.3d 387, 401 (2nd Cir. 2001) (citing *Bridgestone/Firestone, Inc., v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19-20 (2nd Cir. 1996)). A plaintiff may not convert a breach of contract claim into a tort claim because otherwise he or she could "plead two independent claims, and recover twice, for the same conduct." *Blank v. Baronowski*, 959 F. Supp. 172, 180 (S.D.N.Y.1997). Such a relationship exists where the fraud claims do not allege facts extraneous and collateral to the contract. *See Mastropieri v. Solmar Construction Co.*, 553 N.Y.S.2d 187, 189 (2d Dep't 1990). To determine whether the fraud claims allege facts extraneous and collateral to the contract, courts should look to the source of the damages alleged. Thus, where a fraud claim seeks to enforce no more than the breached promises and obligations of a contract, rather than additional damages incurred as a result of the breach, the claims are merely redundant and must be dismissed. *See Tesoro Petroleum Corporation v. Holborn Oil Company Ltd.*, 484 N.Y.S.2d 834, 835 (1st Dep't 1985). To avoid a motion to dismiss common law fraud and misrepresentation claims, therefore, a plaintiff must allege that it sustained damages in addition to those it could have anticipated in the event of a breach. *Id.*

IBM argues that RSI's negligent misrepresentation and fraud claims are premised on IBM's alleged representation to RSI that it would not allow customers to use the Buffer Pool Tool without compensation to RSI. RSI has made no allegations that the alleged misrepresentations caused it any injury for which a breach of contract claim would not provide complete recovery. RSI's common law claims seek only the compensation it would have received had IBM performed the contract as expected. Thus, RSI has not alleged any facts extraneous and collateral to the breach of contract

claim. As such, RSI's claims for fraud and negligent misrepresentation are encompassed by its breach of contract claim. The fraud and negligent misrepresentation claims are therefore dismissed with leave to amend.

### 2. Breach of Obligation of Good Faith and Fair Dealing

RSI's allegation of a breach of the obligation of good faith is duplicative of the cause of action for breach of contract because New York courts generally assume an obligation of good faith and fair dealing between parties to a contract. *See National Football League Properties, Inc. v. Dallas Cowboys Football Club, Ltd.*, 922 F. Supp. 849, 855 (S.D.N.Y.1996). Furthermore, the obligation of good faith cannot be used to create independent obligations beyond those agreed upon and stated in the express language of the contract. *See Granite Partners, L.P., et al. v. Bear, Stearns & Co. Inc., et al.*, 17 F. Supp. 2d 275, 305 (S.D.N.Y.1998). RSI's separate claim for breach of the obligation of good faith is therefore dismissed.

### D. Insufficient Pleadings

IBM argues that RSI's fraud claims are not pleaded with the requisite specificity; that RSI has failed to allege the necessary elements of its claims for copyright and intentional interference with prospective economic advantage; that RSI's misappropriation claim is preempted by federal copyright law; and that the valid contract precludes RSI's claims for unjust enrichment and restitution. For the reasons stated below, the court agrees.

### 1. Failure to Plead Fraud Claims with Particularity

IBM seeks a dismissal of RSI's fourth cause of action for fraud for failure to plead with particularity. Rule 9(b) requires that "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). To provide such notice, the complaint must allege the time, place, speaker, and sometimes even the content of the misrepresentation. *Ouaknine v. MacFarlane,* 897 F.2d 75, 79 (2d Cir. 1990).

RSI argues that its allegations in ¶¶ 13-17 of the complaint satisfy Rule 9(b). These paragraphs do include the date and speaker of certain representations, but the complaint does not allege that any of the statements made were false when made. And moreover, the complaint provides no basis to conclude that they were. The complaint therefore fails to plead the fraud claim with the required particularity.

### 2. Copyright

Under 17 U.S.C. 411(a), "no action for infringement of copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." Neither the complaint nor any opposition alleges that any registration has been made. RSI's claim for copyright infringement is therefore dismissed.

### 3. Intentional Interference With Prospective Economic Advantage

A party seeking to state a claim under New York law for tortious interference with prospective economic advantage must allege that "(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." *Johnson & Johnson v. American Nat. Red Cross*, 528 F.Supp.2d 462, 464 (S.D.N.Y. 2008). IBM contends that the complaint does not allege any existing business relationship with a third party with which IBM interfered. The complaint's allegations deal only with royalty revenue that RSI would have received had IBM paid the required royalties under the contract. Those allegations do not show a business relationship between RSI and a third party. Nonetheless, RSI is given twenty days leave to amend to state a claim for interference with prospective economic advantage, if it can do so in good faith.

### 4. Misappropriation

Plaintiff's ninth claim alleges that IBM misappropriated RSI's proprietary information by developing the Buffer Pool Analyzer and by distributing RSI's Buffer Pool Tool without paying RSI required royalties. According to the allegations in the complaint, the factual predicates of RSI's misappropriation claim are grounded in infringements of those exclusive rights reserved for copyright owners. *See* 17 U.S.C. 106 (reserving preparation of derivative works and reproduction

for copyright holders). State law claims, like these, "grounded solely in the copying of plaintiff's protected expression are preempted by Section 301." *Nat'l Basketball Assoc. v. Motorola, Inc.*, 105 F.3d 841, 851 (2d Cir. 1997). RSI's misappropriation claim is therefore preempted and subject to dismissal.

### 5.     Unjust Enrichment

The parties agree that no claim for unjust enrichment is available when there is a valid contract, and both parties agree that there is a valid contract. *See Cox v. NAP Contr. Co.*, 10 N.Y.3d 592, 607 (2008) ("A party may not recover in quantum meruit or unjust enrichment where the parties have entered into a contract that governs the subject matter."). RSI contends that it pleads unjust enrichment in the alternative. Without some suggestion that the governing contract is invalid, RSI's claim for unjust enrichment is subject to dismissal.

### 6.     Punitive Damages

IBM's motion to strike RSI's demand for punitive damages is granted since the tort claims under which punitive damages may be recoverable are being dismissed. However, because the court has given RSI leave to amend the dismissed tort claims, punitive damages may yet be recoverable. In this case, RSI claims entitlement to punitive damages based on IBM's alleged grossly negligent, reckless, wanton, oppressive behavior. Compl. ¶ 57. Section 7.3 of the Developer Agreement, however, states that "neither party will be liable to the other for lost profits or consequential, punitive or incidental damages, even if informed of their possibility." Def's Mot. to Dismiss at Ex. A (Developer Agreement at 7.3). New York courts are split as to the requisite showing of wrongful conduct needed to invalidate a liability limitation provision, but they generally require malice and intentional wrongdoing. *See Net2Globe Intern., Inc. v. Time Warner Telecom of New York*, 273 F. Supp. 2d 436, 453-455 (S.D.N.Y. 2003) ("[S]everal other decisions on point illustrate the far higher mark at which New York courts place the bar and, also, the effects of wrongful conduct sufficient as a matter of law to nullify a limitations of liability clause in contract-demanding nothing short of a compelling demonstration of egregious intentional misbehavior evincing extreme culpability: malice, recklessness, deliberate or callous indifference to the rights of others, or an extensive pattern of wanton acts."). While RSI cannot show on these facts that IBM acted with malice and intentional

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS OR STRIKE—No. 5:08-cv-3414 RMW (RS)
JAS                                                                    9

wrongdoing in order for RSI to void the liability limitation and get punitive damages, RSI is allowed leave to amend to plead additional facts to show an entitlement to punitive damages, if it can do so in good faith.

### III. ORDER

For the reasons set forth above, the court:

1. grants the motion to dismiss RSI's claim for breach of contract with leave to amend to plead breaches within the limitations period, or to establish a factual basis for equitable estoppel.
2. grants the motion to dismiss RSI's claims for unjust enrichment, misappropriation, and breach of the implied covenant of good faith and fair dealing with prejudice.
3. grants the motion to dismiss the claims for fraud, negligent misrepresentation, copyright infringement, and intentional interference with prospective economic advantage with leave to amend.
4. strikes the allegations seeking punitive damages with leave to amend.

Where given, plaintiff shall have 20 days leave to amend.

DATED: 03/09/09

RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

Robert D. Triantos  rcd@severson.com
Forrest Booth  fb@severson.com

**Counsel for Defendants:**

Shon Morgan  shonmorgan@quinnemanuel.com
Schott Watson  scottwatson@quinnemanuel.com
Valerie Roddy  valerieroddy@quinnemanuel.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**   03/09/09                                             JAS
                                                          **Chambers of Judge Whyte**