IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RSI CORP., dba RESPONSIVE SYSTEMS COMPANY, a New Jersey corporation,<br><br>v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION; and DOE DEFENDANTS 1-20,<br><br>Defendant. | No. C-08-3414 RMW (RS)<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS TO DISMISS AND TO STRIKE AND SETTING CASE MANAGEMENT CONFERENCE<br><br>**[Re Docket No. 72 ]** |

Defendant International Business Machines Corporation ("IBM") moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the first cause of action ("Breaches of Contract") and fourth cause of action ("Intentional Interference with Prospective Economic Advantage") in plaintiff RSI Corp.'s ("RSI") Second Amended Complaint ("SAC") and to strike from the SAC pursuant to Rule 12(f) RSI's request for restitution and punitive damages. For the reasons set forth below, the court grants in part and denies in part defendant's motions.

**I. BACKGROUND**

RSI and defendant IBM entered into agreements on June 23, 1997 and April 21, 1998 (collectively "Developer Agreement"). (SAC ¶¶ 5, 10). The Developer Agreement specified that

IBM would license RSI's "Buffer Pool Tool" to third parties and would remit to RSI royalties based upon the volume and type of usage by end users. Under the Agreement, each party was to maintain auditable records to support invoices issued or payments made to the other for three years from the date of invoice or payment. (Developer Agreement at 3.6). Upon request by either party not made more than once per year, the other party would make the records available to an independent auditor chosen by the requesting party. *Id.* The Developer Agreement also provided that "neither of us will bring a legal action against the other more than two (2) years after the cause of action arose." *Id.* at 13.3.

RSI alleges that it heard through third party conversations that IBM was using and licensing the Buffer Pool Tool without compensating RSI as called for in the Developer Agreement. (SAC ¶ 52). RSI does not allege in its SAC when it first heard this but in its prior complaint it alleged that "[i]n 2004, RSI was informed that third parties may have been using the Buffer Pool Tool with IBM's permission, but IBM was either not charging an appropriate licensing fee and/or not remitting royalties from licensing fees to RSI." (First Amended Complaint ("FAC") ¶ 10). RSI also alleges that IBM copied portions of the Buffer Pool Tool to create a competing piece of software called the "Buffer Pool Analyzer," and proceeded to give away the Buffer Pool Analyzer while overcharging for the Buffer Pool Tool. (*Id.* ¶¶ 11, 59, 66, 67). In 2004, RSI first exercised its right to procure audit records and continued to do so until October 2008, several months after RSI brought this claim. (SAC ¶ 13-46).

On February 15, 2008, RSI filed a complaint against IBM in the District Court for the District of Hawaii, which was then transferred to this court. This court granted IBM's motions to dismiss directed at the original complaint and FAC. IBM now moves to dismiss the first and fourth causes of action in the SAC and to strike RSI's requests for restitution and punitive damages.

## II. ANALYSIS

Under Rule 12(b)(6), in light of *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 550 U.S. ___, 129 S.Ct.1937 (2009), a plaintiff is required to plead enough facts to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. *Iqbal* confirmed that this pleading standard applies "in all civil actions and proceedings in the United States district courts."

1 *Iqbal*, 129 S.Ct. at 1953 (internal citation omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id* at 1949. (citation omitted). When a party seeks leave to amend, it should ordinarily be "freely given." *Foman v. Davis*, 371 U.S. 178, 182 (1962). However, a court can deny leave to amend in cases of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment." *Id.*

### A. Breach of Contract

In the SAC, RSI essentially alleges that IBM breached two provisions of the Developer Agreement: (1) it used and licensed the Buffer Pool Tool software without compensating RSI (SAC ¶ 52); and (2) it breached its duty to provide RSI with auditable information. (SAC ¶ 54).

#### 1. Breaches Resulting From Alleged Failure to Make Royalty Payments Within the Limitation Period

In granting RSI leave to amend its complaint, the court explained that leave was given to allow RSI to allege a breach within the limitations period or to allege facts justifying the tolling of the statute of limitations based upon equitable estoppel. (Order Granting Def's Mot. to Dismiss or Strike dtd. Mar. 9, 2009 ("FAC Dmsl. Order") at 5:3-6). RSI asserts that "data in IBM's sole possession and control will show that IBM made multiple, repeated, separate and ongoing breaches of the Developer Agreement, accruing at various times, that continue to this day." (SAC ¶ 48). RSI then says in its opposition brief to the motion to dismiss that RSI believes that breaches of contract occurred "in 2004, 2005, 2006, 2007, 2008 and 2009, on specific dates known only to IBM." (Opp.'n to Mot. to Dismiss at 7:24-5). The statement in the brief is not part of the SAC. Nevertheless, the court finds that RSI marginally, but sufficiently, alleges in the SAC breaches within the two years prior to the filing of the complaint.

#### 2. Equitable Estoppel

RSI seeks to toll the running of the statute of limitations. The court previously suggested that "RSI needs to plead facts showing some misrepresentation or affirmative misconduct on which

it relied and which caused it not to file suit." (FAC Dmsl. Order at 4:12-14). Although RSI cites several exchanges between the parties with respect to RSI's unsuccessful requests for audit information, it does not plead facts, as opposed to legal conclusions, sufficient to show that IBM misrepresented its intent or engaged in affirmative misconduct that induced RSI not to file suit. In fact, RSI pleads that as early as February 2005 IBM had failed to provide audit information as requested. RSI also does not plead that IBM ever made any representation that it would extend the two-year period for filing suit or forego a limitation defense.

In the analogous case of *Allman v. UMG Recordings*, 530 F. Supp. 2d 602, 608-10 (S.D.N.Y. 2008), the court considered whether the running of a contractual limitation period should be tolled based upon equitable estoppel principles. The court found that a party's intentional delay of an audit to which the other party had a right under their agreement did not equitably toll the running of the contractual limitation period or justify reliance by the requesting party that the delaying party would forego its rights under the limitation provision. *Id.* In this case RSI does allege that some data provided was incomplete, and that RSI was led to believe that full data existed. (SAC ¶¶13-48). Nonetheless, as in *Allman*, RSI could not have justifiably relied on IBM's alleged delay and promises to supply audit information to toll the running of the two-year limitation period. First, as noted above, plaintiff does not allege that IBM engaged in any affirmative misconduct that reasonably induced reliance. Second, IBM's obligation to pay royalties on sales and its obligation to provide audit information are independent requirements of the contract. IBM made no representation that it would extend or waive enforcement of the limitation period. While RSI does provide numerous examples of IBM's delaying or frustrating RSI's attempt to exercise its right to audit, it does not provide any examples of IBM making an affirmative misrepresentation with regards to the royalty provision. Therefore, the court concludes that IBM's alleged misrepresentations with respect to providing audit data cannot serve as the basis for equitable tolling of the two-year contractual limitation period for filing suit on the failure to pay royalties.

**3.  Breach of Audit Provision of the Developer Agreement**

RSI's SAC includes a claim for breaches of the provision of the Developer Agreement requiring production of records for an audit. Part 3.6 of the Developer Agreement provides that

> Both parties will maintain auditable records to support invoices issued or payments made to the other. The records will be retained and made available for three (3) years from the date of the related payment or invoice. If a party requests, the other party will make the records available to an independent auditor chosen and compensated by the requesting party.

While some of the audit breaches RSI pleads may be outside of the limitations period, the determination of the date of the alleged breaches would appear to present factual issues dependent on the circumstances including when the requests for records were made and what IBM represented with respect to making the records available. For instance, RSI alleges that shortly after October 25, 2006, it requested audit records from IBM and provided IBM with a Confidential Disclosure Agreement, but that IBM "did not reciprocate with any information." (SAC ¶ 44).

IBM asserts that RSI's requests within the limitations period were merely renewals of requests that began outside of the limitations period and do not revive time-barred claims. (Mot. to Dismiss at 4:19-5:12). A plaintiff cannot renew stale claims simply by requesting reconsideration of that claim. *See Micciche v. Kemper Nat. Services*, 560 F.Supp. 2d 204, 214. (E.D.N.Y. 2008) (citation omitted). If it could, this would create the absurd result that a plaintiff could bring a claim within the limitations period by asking a defendant to reconsider a claim that occurred outside the period. *Id.* However, RSI pleads numerous factual representations by IBM's as to when audit records would be provided. (SAC ¶ 14-47). In cases arising under diversity jurisdiction, "[s]tate law . . . determines . . . what events serve to commence an action and to toll the statute of limitations." *Personis v. Oiler*, 889 F.2d 424, 426 (2nd Cir. 1989). The court cannot dismiss RSI's breach of contract claims for failure to provide audit records on a motion to dismiss because the dates upon which the statute of limitations commenced to run on those claims appear to present triable issues of fact.

**B.     Intentional Interference with Prospective Economic Advantage**

Under New York law, a plaintiff must allege that "(1) it had a business relationship with a third party; (2) that the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." *Johnson & Johnson v. American Nat. Red Cross*, 528 F.Supp. 2d 462, 464 (S.D.N.Y. 2008). "Tortious interference claims have a limited

scope and an extremely high pleading standard." *Diario El Pais v. The Nielsen Co., Inc.*, 2008 WL 4833012, *7 (S.D.N.Y. 2008). The business relationship with a third party can be a "continuing business or other customary relationship not amounting to a formal contract," but must nevertheless be some form of a current business relationship, and it must be between the plaintiff and a third party. *Hannex Corp v. GMI, Inc.*, 140 F.3d 194, 205 (2d Cir. 1998). The plaintiff must not only provide a factual allegation that the defendant tortiously interfered with the plaintiff's relationship with a third party, but additionally that "but for Defendants alleged acts, Plaintiff would have entered into contracts with specific prospective [companies] or maintained consistent levels of advertising with their existing [clients.]" *Diario El Pais*, 2008 WL 4833012 at *7.

In this case, RSI fails to state a claim. RSI does not clearly and specifically plead the business relationship it had with any third party. RSI lists seventeen "current and prospective" clients and then alleges that IBM knew of RSI's relationship with these seventeen clients and tortiously interfered with them. (SAC ¶¶ 73, 74). This list is inadequate both because it does not show whether RSI has any current relationship with each client, and because RSI fails to specify whether these are its direct customers or, alternatively, whether they are "customers" only in the sense that IBM licenses them to use RSI's tools. RSI pleads that IBM "charg[ed] RSI's existing and potential customers extra fees to run the Buffer Pool Tool," and "refus[ed] to provide technical support to potential customers who wished to switch from the Buffer Pool Analyzer and license the Buffer Pool Tool from RSI." (SAC ¶ 74(d), 74(e)). These allegations imply that RSI's customers may be, in fact, customers of IBM, who license RSI's software through IBM pursuant to the Developer Agreement. If that is the case, the parties need to address whether such an arrangement can provide the relationship necessary for an intentional interference claim.

Even assuming that each of the seventeen clients had a business relationship with RSI, the claim still fails to allege any facts to support the claim that these seventeen clients discontinued its business relationship with RSI because of IBM's misconduct. In its Opposition to the Motion to Dismiss the Second Amended Complaint, RSI simply states that "IBM interfered with these 17 customers/prospects by making false representations about the pricing, features and capabilities of the Buffer Pool Analyzer and Buffer Pool Tool, while it bundled the Buffer Pool Analyzer with

other software programs." (Opp. to Mot. to Dismiss 17:12-15). RSI fails to allege in the SAC or even in its opposition facts sufficient to support an interference with prospective economic advantage claim. *Diario el Pais*, 2008 WL 4833012, at *7. The allegations are "devoid of any factual support for the assertions . . . that, but for Defendants' alleged act, Plaintiff would have entered into a contract with . . . customers." *Genal Strap, Inc. v. Irat Dar, et al*, 2005 WL 525547 *3 (E.D.N.Y. 2005).

### C. Requests for Relief

#### 1. Restitution

"The basic rule of damages in a case of unfair competition is the amount which the plaintiff would have made, except for the defendant's wrong." *Ronson Art Metal Works, Inc. v. Gibson Lighter Mfg. Co.*, 159 N.Y.S. 2d 606, 611 (App. Div. 1957). Nevertheless, accounting for damages from unfair competition may in certain circumstances include "profits earned by the defendant that are derived from unfair competition." *24/7 Records v. Sony Music Entertainment, Inc.*, 566 F.Supp. 2d 305, 320 (S.D.N.Y. 2008).

While IBM correctly observes that disgorgement of profits is not the usual remedy in an unfair competition claim, its motion to strike is denied at this time. RSI alleges that IBM unfairly competed by copying the Buffer Pool Tool to create its own Buffer Pool Analyzer, and confusing and deceiving clients as to "origin, developer, and capabilities," of the two pieces of software. (SAC ¶ 66, 68). RSI's request for disgorgement of profits from IBM survives because RSI may be able to prove that IBM's profit through wrongful conduct is an accurate measure of RSI's damage. At this stage, RSI's request is not too speculative.

#### 2. Punitive Damages

Under New York law, a party cannot generally recover punitive damages on a breach of contract claim. *Rocanova v. Equitable Life Assur. Soc. of U.S.*, 83 N.Y. 2d 603, 613 (1994). Where the breach of contract claim "also involves a fraud evincing a 'high degree of moral turpitude' and demonstrating 'such wanton dishonesty as to imply a criminal indifference to civil obligations', punitive damages are recoverable if the conduct was 'aimed at the public generally." *Id*. Therefore, RSI cannot recover punitive damages on its breach of contract claim because it does not plead that

IBM's misconduct was aimed at the public generally. *See* (SAC ¶ 49-57). Nor can RSI recover punitive damages under its Lanham Act claim. *Getty Petroleum Corp. v. Bartco Petroleum Corp.*, 858 F. 2d 103 (2nd Cir. 1988) (in light of the statutory language, legislative history and relevant case law, "the Lanham Act does not authorize an additional award of punitive damages for willful infringement of a registered trademark.") Notwithstanding the fact that RSI cannot recover punitive damages under either its breach of contract or Lanham Act causes of action, the court denies IBM's motion to strike punitive damages because RSI may be able to recover punitive damages under its unfair competition cause of action. "In the context of unfair competition . . . New York law clearly permits punitive damages where a wrong is aggravated by recklessness or willfulness . . . whether or not directed at the public generally." *Getty Petroleum Corp. v. Island Transp. Corp.*, 878 F. 2d 650, 657 (2nd Cir. 1989) (internal quotations omitted). RSI alleges that IBM has made its Buffer Pool Analyzer available to its customers for free to gain a commercial advantage, concealed its customers' use to avoid royalty obligations and used the term "Buffer Pool" to cause mistake, confusion, and deception. (SAC ¶ 67-68).

### III. ORDER

For the foregoing reasons, the court:

1. grants the motion to dismiss RST's breaches of contract claim without leave to amend as to the failure to pay royalty fees except as to those falling due within two years before the suit was filed;

2. grants the motion to dismiss RSI's claim for intentional interference with prospective economic advantage with twenty days leave to amend;

3. denies the motion to dismiss RSI's claim for breaches of contract as to the audit provision;

4. denies the motion to strike restitution in the form of disgorgement of profits;

5. grants the motion to strike punitive damages except as to the unfair competition claim; and

6. sets a case management conference for March 26, 2010 at 10:30 a.m.

DATED: 2/25/10

*Ronald M Whyte*

RONALD M. WHYTE
United States District Judge

| | |
|---|---|
| 1 | |
| 2 | **THIS SHALL CERTIFY THAT A COPY OF THIS ORDER WAS PROVIDED TO:** |
| 3 | **Counsel for plaintiff:** |

Edmund W.K. Haitsuka
Gary G. Grimmer  ggrimmer@carlsmith.com
Robert D. Triantos
Forrest Booth  fb@severson.com
Ryan Conor Donlon  rcd@severson.com

**Counsel for defendant:**

Shon Morgan  shonmorgan@quinnemanuel.com
Scott Watson  scottwatson@quinnemanuel.com
Valerie Roddy  valerieroddy@quinnemanuel.com
Shirley Kawamura  skawamura@kltlaw.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

Date: 2/26/10  /s/ JG
Chambers of Judge Whyte