E-FILED on____4/16/12_____

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

RSI CORP., dba RESPONSIVE SYSTEMS COMPANY, a New Jersey corporation,

Plaintiff,

v.

INTERNATIONAL BUSINESS MACHINES CORPORATION; and DOE DEFENDANTS 1-20,

Defendant.

No. 5:08-cv-03414 RMW

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL

[Re Docket No. 110]

Plaintiff RSI Corporation ("RSI") moves to compel defendant International Business Machines Corporation ("IBM") to provide interrogatory responses and certain responsive documents in this action asserting contract, Lanham Act, and state law tort claims. RSI also asks the court to overrule IBM's objections to RSI's Notice of Deposition under Fed. R. Civ. P. 30(b)(6), pursuant to which IBM refused to disclose information that pre-dates February 15, 2005. For the reasons below, the motion to compel is granted in part and denied in part.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL–No. 08-cv-3414 RMW (EDM)

## I. BACKGROUND

Broadly speaking, the contract claims at issue in this case arise out of IBM's alleged failure to pay royalties and produce auditable records as required by a 1997 agreement (the "agreement") enabling IBM to license RSI's Buffer Pool Tool ("BPT") software to end users. RSI's remaining claims for trademark infringement, false advertising, intentional interference with prospective advantage and unfair competition relate to IBM's development and marketing of its own Buffer Pool Analyzer ("BPA") technology in a purported effort to "cannibalize" RSI's customer base. Dkt. No. 110 at 5.

In its March 9, 2009 order, the court found that any contract claims based on "non-payments of royalties … that occurred before 2006 are barred by the [agreement's two-year] limitations period." Dkt. No. 70 at 4. The court subsequently declined to dismiss claims asserting breaches of the agreement's audit provision, finding that "while some of the audit breaches … may be outside of the limitations period, the determination of the date of the alleged breaches would appear to present factual issues dependent on the circumstances, including when the requests for records were made and what IBM represented with respect to making the records available." Dkt. No. 81 at 5.[1] The court has yet to rule on what, if any, limitations periods may apply to RSI's other causes of action.

In light of the court's orders, the parties agreed to limit discovery to the period beginning on February 15, 2005, though RSI reserved its rights to seek earlier discovery. *See* Schtulz Decl., Ex. D. The parties now dispute the timeframe within which discovery should be allowed with respect to two categories of material: (1) information detailing the provision and cancellation of BPT licenses granted by IBM to end users ("Category 1 Information"), and (2) information related to IBM's licensing of and communications about BPA technology ("Category 2 Information"). RSI also contends that the revenue and inventory records already produced by IBM are self-serving and unintelligible, and that IBM should be compelled to produce "real time" information such as invoices or other "source" documents. *See* Dkt. No. 124 at 3-6.

---

[1] The question of what damages or other relief RSI would be entitled to if IBM were determined to have breached the audit provision has not yet been addressed by the parties or the court.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL–No. 08-cv-3414 RMW (EDM)
2

## II. DISCUSSION

Litigants may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Where a party fails to respond or provides an evasive answer to a reasonable discovery request, the opposing party may move for an order to compel. *See* Fed. R. Civ. P. 37(a)(3)(B). The court must limit the extent or frequency of discovery if it finds that: (a) the discovery sought is unreasonably cumulative or duplicative or can be obtained from a source that is more convenient, less burdensome or less expensive; (b) the party seeking discovery has had ample opportunity to obtain the information through discovery; or (c) the burden or expense of the discovery sought outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake, and the importance of the discovery in resolving those issues. Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

**A.     Category 1 information**

RSI has propounded numerous interrogatories and requests for production seeking "Category 1 Information"—material related to the provision and cancellation of BPT licenses—dating as far back as 1997. RSI argues that such information is relevant to determining: (1) whether IBM properly allocated royalties for each BPT license as required by the agreement, and (2) whether IBM's communications with end users regarding their cancellation of BPT licenses support RSI's Lanham Act, tortious interference and unfair competition claims.

In response, IBM has produced records allegedly "reflecting all revenues recognized by IBM in connection with, and data reflecting all monthly-license charge volumes relating to, IBM's licensing of the [BPT] for the period of 2005 through 2010." Bradshaw Decl. ¶ 9. IBM also turned over two spreadsheets containing customer fulfillment or "inventory" data related to the provision of the BPT since 2005. Commerson Decl. ¶ 11. According to IBM, the production of pre-2005 Category 1 information is not relevant to RSI's contract claims in light of the court's previous order barring recovery for the non-payment of royalties before 2006. IBM further argues that the contractual limitations period should also restrict discovery related to RSI's state law tort claims given the breadth of the limitations provision and the fact that RSI "has expressly tied its claims for unfair competition and intentional interference to alleged contractual duties." *Id*. at 13.

**1. License provision and pricing information**

As an initial matter, the court agrees with RSI that materials showing the provision and pricing of BPT licenses before 2005 may be relevant to RSI's contract claims.[2] Because BPT licenses are "good until cancelled," any license executed after 1997 and not cancelled before 2006 would trigger a royalty requirement within the limitations period. As RSI asserts that the revenue and inventory records purporting to show which BPT licenses were active during the limitations period are inaccurate and unintelligible, IBM may ultimately be required to produce documentation enabling RSI to "examine and audit" such records, including materials that pre-date 2005. *See* Fed. R. Civ. P. 33(d) ("If the answer to an interrogatory may be determined by … summarizing a party's business records … the responding party may answer by … giving the interrogating party a reasonable opportunity to examine and audit the records."). Indeed, since the agreement requires IBM to maintain auditable records, its failure to adequately support its royalty calculations may reinforce RSI's claims that IBM breached the audit provision.[3]

That said, the court does not find that IBM must produce all "real time" revenue data, which RSI defines as "documentation of cash receipts and information which was not prepared for this litigation or solely in response to RSI's initiation of an audit," dating from 1997 onwards. Dkt. No. 110 at 21. Such a request is both vague and overly burdensome, particularly given that RSI appears to seek pre-2005 documentation only to verify and clarify the records produced by IBM purporting to show post-2005 revenue. There are other ways to achieve this result. The court therefore finds that IBM should be compelled to produce certain "audit" documentation, but limits such production at this time to post-2005 materials.

In its opposition brief, IBM has already indicated that it will agree to produce invoices

---

[2] Specifically, RSI seeks information relating to: (1) shipments of BPT to any end-user; (2) details of the processing capacity and upgrades of any end-user; (3) revenue, billings and/or IBM ledger information; (4) pricing; (5) gratis distributions of BPT; (6) agreements which include BPT as part of any license granted by IBM for a "bundle" of hardware or software products; (7) adjustments which subtracted from RSI's royalty payments; and (8) audit data. Dkt. No. 110 at 20.

[3] RSI has also argued that the contractual limitations period should be equitably tolled in light of new evidence of affirmative representations made by IBM delaying the initiation of an audit. *See* Dkt. No. 124 at 6-7; Goldstein Decl., Ex. F. Given the context of this motion, the court declines without prejudice to reconsider its previous ruling on the applicable statute of limitations.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL–No. 08-cv-3414 RMW (EDM)

4

1  identifying the prices paid by "external IBM customers" for BPT licenses since 2005. Dkt. No. 123
2  at 22. IBM must also produce invoices or other documentation for ELA and "outsourcing"
3  customers that were billed for BPT licenses as part of a "bundle" of products or services since 2005.
4  Even if such invoices are not itemized, a comprehensive list of customers to whom BPT was
5  licensed will be useful in verifying the accuracy of IBM's records. Production of this information
6  will likely go a long way towards showing which BPT licenses were active and how much revenue
7  they generated during the contractual limitations period. In addition, in view of RSI's difficulty in
8  understanding IBM's revenue and inventory records, RSI may depose a Rule 30(b)(6) witness
9  familiar with the production of such records, as well as IBM's billing practices, without any
10 limitation on the time period discussed during the deposition. *Cf. In re eBay Seller Antitrust*
11 *Litigation*, No. 07-1882, 2008 WL 5212170, at *2 (N.D. Cal. Dec. 11 2008) (denying without
12 prejudice eBay's motion to compel responses to contention interrogatories and noting that eBay can
13 obtain some of the same information through depositions). This ruling is without prejudice to RSI's
14 issuance of further Notices of Deposition. After reviewing IBM's additional production and
15 deposing its Rule 30(b)(6) witness, if RSI contends that production of pre-2005 licensing and pricing
16 information is still necessary, it may submit another motion to compel.

17 **2. Cancellation information**

18 IBM indicates that it has agreed to produce "termination-related documentation for
19 customers who were actively licensing [BPT] as of 2005," but that it has taken additional time to
20 locate such material using IBM's tracking systems. Dkt. No. 123 at 19.[4] Assuming the discovery
21 discussed above shows which BPT licenses were active at the beginning of the limitations period,
22 such cancellation data should be sufficient to corroborate the royalty calculations relevant to RSI's
23 contract claims.

24 On the other hand, it appears that *pre*-2005 cancellation-related information may be relevant
25 to RSI's state law tort claims. As RSI points out, IBM's communications with an end user regarding

---

[4] With respect to the cancellation of BPT licenses, RSI's requests concern: (1) events or communications leading up to an end-user's cancellation of BPT or substitution of BPA for BPT; (2) actual cancellation; and (3) how, when and why the license was cancelled. *Id.* at 23.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL–No. 08-cv-3414 RMW (EDM)
5

the cancellation of a BPT license may have taken place over a period of months or years before the license was actually cancelled. So long as RSI's claims accrued within the applicable limitations period[5]—either upon the end user's cancellation of the license or the date of IBM's alleged interference—it is actionable, and IBM's prior communications may be relevant in determining whether its conduct is tortious or not. *See, e.g.*, *Cooper v. Parsky*, No. 99-10543, 1997 U.S. Dist. LEXIS 4391, at *87 (S.D.N.Y. Jan. 8, 1997) (tortious interference with prospective advantage claim accrued when alleged interference occured). Since the longest statute of limitations period potentially applicable to RSI's state tort claims is six years, the court compels IBM to produce cancellation-related materials from February 15, 2002 onwards. *See Mopex, Inc. v. AMEX, LLC*, No. 02-1656, 2002 U.S. Dist. LEXIS 3532, at *41 (S.D.N.Y. Mar. 4, 2002) (unfair competition claim based on breach of contract subject to six-year statute of limitations, while claim based on injury to property subject to three-year limitations period).

**B.   Category 2 Information**

In "Category 2," RSI seeks a broad array of information relating to IBM's marketing and sales of the BPA and related technology.[6] RSI claims that such information is relevant primarily to its Lanham Act and state law tort claims.

With the instant motion, RSI asks the court to "ascertain" the timeframe within which such discovery is appropriate so that it can "further discuss" the narrowing or phasing of its requests with IBM. Dkt. No. 110 at 25. In response, IBM contends that it does not oppose the timeframe of such discovery, but suggests that it is overbroad and impermissibly vague. IBM therefore asks the court to delay ruling on the timeframe issue until the scope of discovery has been narrowed by the parties and the court has ruled on a soon-to-be-submitted summary judgment motion asserting a laches

---

[5]   As noted above, the parties dispute whether the contractual limitations period applies to RSI's tort claims. The parties also appear to disagree as to whether RSI's tort claims are governed by New York or California law. The court finds that resolution of this issue is not necessary to decide the instant motion, and is better reserved for partial summary judgment.

[6]   Specifically, RSI seeks information concerning: (1) shipments of BPA/DB2PE; (2) pricing of BPA/DB2PE; (3) billings with respect to BPA/DB2PE; (4) IBM's comparisons between BPA and BPT; (5) IBM's knowledge as to the differences between BPA and BPT and its intent in representing the attributes of those products; and (6) IBM's marketing efforts with respect to BPA/DB2PE. Dkt. No. 110 at 24.

defense. *See* Dkt. No. 123 at 21.

Given that there appears to be no dispute as to the timeframe of Category 2 information, the court declines to issue an advisory opinion on the issue. The court assumes that IBM will timely respond to RSI's requests as ultimately drafted as long as such requests are not otherwise objectionable. The fact that IBM may bring a motion for summary judgment based upon laches may not be used as a basis for delaying a response to reasonable discovery requests.

### III. ORDER

Accordingly, the court orders as follows:

(1) IBM must produce invoices or other documentation showing revenues generated since 2005 from any customer who received a BPT license, either as stand-alone software or as part of a bundle of products and/or services;

(2) IBM must make available for deposition a Rule 30(b)(6) witness familiar with the production of IBM's revenue and inventory records without limitation as to time period;

(3) IBM must produce cancellation-related documentation generated since February 15, 2002, but records prior to that date do not need to be produced at this time;

(4) IBM must respond to RSI's discovery requests concerning BPA and related technology, but may object to such requests on overbreadth or vagueness grounds if the parties fail to appropriately narrow the requests in a meet and confer.

DATED:     4/16/12

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL–No. 08-cv-3414 RMW (EDM)
7