QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Shon Morgan (Bar No. 187736)
  shonmorgan@quinnemanuel.com
  Scott Commerson (Bar No. 227460)
  scottcommerson@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:      (213) 443-3000
Facsimile:      (213) 443-3100

Attorneys for Defendant
International Business Machines Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RSI CORP., dba RESPONSIVE SYSTEMS COMPANY, a New Jersey corporation,<br><br>          Plaintiff,<br><br>    vs.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION; and DOE DEFENDANTS 1-20,<br><br>          Defendants. | CASE NO. 5:08-cv-3414 RMW (PVT)<br><br>**NOTICE OF MOTION AND MOTION TO RETAIN CONFIDENTIALITY DESIGNATION; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**Declaration of Scott Commerson Filed Concurrently Herewith; [Proposed] Order**<br><br>Date: July 13, 2012<br>Time: 9:00 a.m.<br>Courtroom: 6<br>Judge: Hon. Ronald M. Whyte<br><br>Filing Date: February 15, 2008<br>Trial Date: November 5, 2012 |

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS:**

NOTICE IS HEREBY GIVEN that on July 13, 2012 at 9:00 a.m. in Courtroom 8, Fourth Floor of the United States District Court for the Northern District of California, San Jose Division, 280 South First Street, San Jose, California, 95113, the Honorable Ronald Whyte presiding, Defendant International Business Machines Corporation ("IBM") will, and hereby does, move the Court pursuant to the Stipulated Protective Order entered on September 23, 2010, to retain the "Highly Confidential – Attorneys' Eyes Only" designation of the document produced by IBM during the course of discovery bearing Bates No. IBM0005556, including all IBM revenue and customer information contained therein.

DATED: May 31, 2012                     QUINN EMANUEL URQUHART &
                                        SULLIVAN, LLP


                                        By   /s/ Shon Morgan
                                            Shon Morgan
                                            Scott Commerson
                                            Attorneys for Defendant
                                            International Business Machines Corporation

1

## STATEMENT OF ISSUE (Civ. L. R. 7-4(a)(3))

2

Whether the document IBM produced in discovery bearing Bates No. IBM00055556 that

3

includes, *inter alia,* revenue and customer information for IBM's DB2 Buffer Pool Analyzer

4

product, should be protected as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY"

5

pursuant to the Stipulated Protective Order entered on September 23, 2010.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT IBM'S MOTION TO RETAIN CONFIDENTIALITY

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

Plaintiff Responsive Systems Corp. ("RSI") seeks to require IBM to reveal to RSI's principal Joel Goldstein the identities of IBM customers who licensed IBM's DB2 Buffer Pool Analyzer product.  Mr. Goldstein is primarily responsible for the marketing RSI's Buffer Pool Tool product, a product that RSI has repeatedly alleged in connection with its trademark infringement and unfair competition claims is a "direct competitor" of IBM's DB2 Buffer Pool Analyzer product.  IBM's customer list is precisely the type of highly sensitive, commercial business information that the "Highly Confidential – Attorneys' Eyes Only" designation of the Stipulated Protective Order is designed to protect, and courts have routinely upheld restrictions on the disclosure of such information to attorneys' eyes only in cases involving competitors.  Indeed, RSI has designated its *own* customer list "Highly Confidential – Attorneys' Eyes Only" under the Stipulated Protective Order.  There is no legitimate, litigation-related reason for RSI to challenge IBM's designation of IBM's customer information as "Highly Confidential – Attorneys' Eyes Only," particularly given the substantial risk that RSI may exploit—even if unwittingly—such information in connection with its future marketing of RSI's competing Buffer Pool Tool product to IBM customers.

## Statement of Facts

**The Protective Order.**  On September 23, 2010, the Court entered a Stipulated Protective Order ("Protective Order").  (Dkt. # 91.)  The Protective Order provides for two levels of protection: documents designated "Confidential" may be shared with certain employees of the receiving party (i.e., those "to whom disclosure is reasonably necessary for this litigation and who have signed the 'Acknowledgement and Agreement to Be Bound'") (Dkt. # 91, § 7.2.); and documents designated "Highly Confidential – Attorneys' Eyes Only" may be shared only with attorneys representing the receiving party—including outside counsel and designated in-house counsel (and experts working on their behalf)—and may not be shared with non-lawyer employees of the receiving party.  (Dkt. # 91, § 7.3.)

The Protective Order includes a dispute resolution procedure pursuant to which a receiving party may challenge the confidentiality designation applied to a given document by the producing

DEFENDANT IBM'S MOTION TO RETAIN CONFIDENTIALITY

1    party. (Dkt. # 91, §§ 6.1-6.3.) The procedure requires that the receiving party challenge the

2    designation in writing and engage in a meet and confer with the producing party in an attempt to

3    resolve the dispute. (Dkt. # 91, § 6.2.) If the meet and confer does not resolve the dispute, the

4    producing party waives its confidentiality designation unless it moves within thirty (30) days of the

5    meet and confer discussion to retain the applicable confidentiality designation applied to the

6    document. (Dkt. # 91, § 6.3.)

7         **RSI's Challenge and Meet and Confer** On March 28, 2012, RSI invoked the designation

8    challenge procedures in the Protective Order with respect to a spreadsheet produced by IBM bearing

9    Bates No. IBM00055556 and designated by IBM as "Highly Confidential – Attorneys' Eyes Only"

10    (the "Spreadsheet"). (Commerson Decl. Ex. A.) The Spreadsheet includes revenue information

11    relating to IBM's DB2 Buffer Pool Analyzer, DB2 Performance Expert (DB2PE) and Tivoli

12    OMEGAMON XE for DB2 Performance Expert (OMPE) products and identifies the licensees of—

13    i.e., IBM customers for—DB2 Buffer Pool Analyzer.[1] (Commerson Decl. Ex. B.) Since the DB2

14    Buffer Pool Analyzer product is specifically designed for use with IBM's DB2 for z/OS product, an

15    IBM licensee or customer of the DB2 Buffer Pool Analyzer is necessarily a licensee or customer of

16    IBM's DB2 for z/OS product. (Dkt. # 135, pp. 5-6.) Counsel for IBM responded with an offer to

17    meet and confer, and the parties did so on May 1, 2012. (Commerson Decl. Ex. C; ¶ 5.)

18         RSI admits that it is challenging the "Highly Confidential – Attorneys' Eyes Only"

19    designation of the Spreadsheet so RSI can reveal IBM's customer list to Joel Goldstein, RSI's

20    principal. (Commerson Decl. ¶ 5.) As a compromise and in hopes of obviating the need for this

21    motion, IBM offered to allow RSI to disclose to Mr. Goldstein the various revenue information

22    reflected in the Spreadsheet, but not the identities of IBM's customers. (Commerson Decl. Ex. D.)

23    That offer remains outstanding, but RSI's challenge to IBM's designation of the customer data as

24

25

---

26        [1] IBM did not include in the Spreadsheet any customer information relative to the DB2PE and

27    OMPE products on the grounds that such products include additional functionality not included in
the DB2 Buffer Pool Analyzer product or RSI's Buffer Pool Tool product and, thus, such customer

28    information was not likely to lead to the discovery of admissible evidence in this litigation.

"Highly Confidential – Attorneys' Eyes Only" remains.  Thus, IBM hereby moves to protect its customer information from disclosure to Mr. Goldstein (and other employees of RSI).

<u>**Argument**</u>

The Protective Order permits a producing party to designate as "Highly Confidential – Attorneys' Eyes Only" documents and information that constitute "extremely sensitive 'Confidential Information or Items,' the disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means."  (Dkt. # 91, § 2.8.)  The Spreadsheet is just such a document, and Mr. Goldstein is precisely the kind of person that could cause harm to IBM if given access to the customer information in the Spreadsheet.

RSI is a small company, and Mr. Goldstein directs the marketing and sales of its software products, as evidenced by RSI's interrogatory responses identifying communications between Mr. Goldstein and third parties which RSI claims to be its prospective customers.  (Commerson Decl. Ex. E, pp. 5, 20.)  The basic premise of RSI's Complaint is that RSI's Buffer Pool Tool directly competes with IBM's DB2 Buffer Pool Analyzer.  For example, the Complaint alleges that "IBM created its own software program, which it called the 'Buffer Pool Analyzer,' to compete with RSI's Buffer Pool Tool . . . ."[2]  (Dkt. # 82, ¶ 11.)  As RSI stated in recent briefing, "[a]ll users of DB2 are potential customers of RSI, and potential users of [RSI's Buffer Pool Tool]."  (Dkt. # 142, p. 2.)  RSI has also recently acknowledged that "IBM considers the identity of its customers confidential and maintains strict policies" regarding customer contacts.  (Dkt. # 139, p. 5.)  Given the foregoing, RSI's demand for disclosure of IBM's DB2 Buffer Pool Analyzer customers to the person in charge of marketing RSI's competing product—or any other RSI employee, for that matter—plainly must fail.

"Courts commonly issue protective orders limiting access to sensitive information to counsel and their experts."  *Nutratech, Inc. v. Syntech (SSPF) Int't, Inc.*, 242 F.R.D. 552, 555 (C.D. Cal.

---

[2]  This is but one example among many.  RSI also alleges that "IBM used its access to the Buffer Pool Tool and other proprietary information and copied large portions thereof in order to develop its own Buffer Pool Analyzer, which it then marketed and licensed in *direct* and unfair *competition* with the Buffer Pool Tool."  (Dkt. # 82, ¶¶ 26, 50 (emphasis added).)

2007) (citing *Vesta Corset Co., Inc. v. Carmen Found, Inc.*, 1999 WL 13257, at *3 (S.D.N.Y. Jan. 11, 1999)).  Such "sensitive information" often involves the identities of a party's customers.  *Id.* at 556; *see also ASCH/Grossbardt Inc. v. Asher Jewelry Co., Inc.*, 002 WL 31867716 (S.D.N.Y. Dec. 19, 2002) (denying access to customer list and noting with approval that previously produced customer information was produced pursuant to "attorneys' eyes only" restriction).  Moreover, restricting access to customer information to attorneys only is particularly appropriate where the party seeking discovery directly competes with the producing party.  *Netquote, Inc. v. Byrd*, 2007 WL 2438947, at *1 (D. Col. Aug. 23, 2007) ("With regard to an attorney's-eyes-only provision, confidential information that may be used against the company by a direct competitor in the lawsuit is generally afforded more protection.").

RSI's challenge to the designation of the Spreadsheet as "Highly Confidential – Attorneys' Eyes' Only" in this litigation is remarkably similar to the situation in *Nutratech*.  In *Nutratech*, the producing party sought to limit disclosure of customer information to attorneys and experts, while the receiving party sought to disclose the information to its president.  *Nutratech*, 242 F.R.D. at 554.  Noting that the receiving party was a competitor, the court reasoned that:

> If this [that the principal of the receiving party company needed customer information to litigate its case] were true, then courts would never issue 'attorney's eyes only' protective orders in cases involving customer and supplier lists, as plaintiffs would always 'need' to see this information to prosecute their cases.  *Many cases involving claims of trademark infringement require the production of customer and supplier information and such lists are customarily produced subject to an 'attorney's eyes only' order.*  The attorneys from plaintiffs commonly manage without revealing such information to their clients.  Plaintiff has not shown how this case is unique or why Nutratech's prosecution of this case is different from other such infringement cases.  As such, the Court finds that plaintiff has failed to show that its prosecution of this case will be impaired by an 'attorney's eyes only' protective order.

*Id.* at 556 (emphasis added).  As with the plaintiff in *Nutratech*, RSI seeks to share customer information with the principal of a direct competitor.  The result here should be the same, with the information remaining attorneys' eyes only.  *See also Nat'l Envelope Corp. v. Am. Pad & Paper Co. of Del., Inc.*, 2009 WL 229955 (S.D.N.Y. Jan. 30, 2009) (maintaining attorneys' eyes only protection over customer information in response to challenge from competitor).

1    RSI's own designation of its documents under the Stipulated Protective Order further

2  supports the limited access to the Spreadsheet.  RSI designated its *own* customer information as

3  "Highly Confidential – Attorneys' Eyes Only" and has since reiterated that such "commercially-

4  sensitive" and "customer-sensitive" information warrants heightened protection.  (Commerson Decl.

5  Ex. E, at Exhibit A; Dkt. # 120, ¶ 3.)  RSI cannot insist on attorneys' eyes only protection for its own

6  customer information while simultaneously insisting that similar "commercially-sensitive" customer

7  information of IBM is entitled to lesser protection.  Such a position is not only unjustifiable but

8  contrary to applicable case authority.  *See National Envelope*, 2009 WL 229955, at *2 (preventing

9  receiving party from sharing information with principal after noting that receiving party used the

10  same designation on its own documents).

11                                        **<u>Conclusion</u>**

12    For the foregoing reasons, IBM respectfully requests this Court grant IBM's motion to retain

13  confidentiality and maintain the attorneys' eyes only protection under the Protective Order for the

14  customer information in the Spreadsheet.

15

16  DATED: May 31, 2012                    QUINN EMANUEL URQUHART &
                                           SULLIVAN, LLP
17

18

19                                         By   /s/ Shon Morgan
                                              Shon Morgan
20                                            Scott Commerson
                                              Attorneys for Defendant
21                                            International Business Machines Corporation

22

23

24

25

26

27

28