UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RSI CORP., dba RESPONSIVE SYSTEMS COMPANY, a New Jersey corporation,<br><br>Plaintiff,<br><br>vs.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION, a New York corporation; and DOE DEFENDANTS 1-20,<br><br>Defendants. | Case No. C-08-03414 RMW<br><br>**ORDER GRANTING IN PART AND DENIING IN PART IBM'S MOTIONS FOR SUMMARY JUDGMENT**<br><br>[Re Docket Nos. 134, 135, 271] |

## I. BACKGROUND

This dispute arises out of a licensing agreement between RSI Corp. ("RSI") and International Business Machines Corporation ("IBM") for RSI's Buffer Pool Tool ("BPT"). On June 23, 1997, RSI and IBM executed a Developer Agreement ("Developer Agreement") wherein RSI licensed its Buffer Pool Tool to IBM.[1] *See* Developer Agreement, Dkt. No. 271-10. In 2000

---

[1] The parties' entire agreement spans multiple documents including the Developer Agreement, the Statement of Work, and the Description of the Licensed Work. *See* Dkt. No. 271-10 through 12.

after the parties could not agree on amended contractual terms, RSI refused to make new versions of the BPT available to IBM, and IBM stopped marketing the BPT. *See* Mink Decl. ¶¶ 11-12, Dkt. No. 135-4. In September 2001, IBM announced the development of its own buffer-tuning tool called "DB2 Buffer Pool Analyzer" ("BPA"). *Id.* ¶¶ 7-8. It began to license it as a stand-alone product in December 2001 and as part of a bundle of products in March 2002. *Id.* The Developer Agreement allowed the parties to develop their own competing products. Developer Agreement § 3.2. IBM nevertheless remained obligated under the Developer Agreement to pay RSI royalties on outstanding BPT licenses. In 2001, RSI expressed concerns about the royalties it was receiving from IBM, and, in June 2002, RSI formally notified IBM of its intent to conduct an audit for the three-year period from June 1999 to June 2002. *See id.* The Developer Agreement specifically provided that both parties would maintain "auditable records" to support invoices issued or payments made to the other and, "[i]f a party requests, the other party will make the records available to an independent auditor chosen and compensated by the requesting party." Developer Agreement § 3.6. Between 2002 and early 2008, RSI continued to request an audit of the preceding three years and for production of the records it felt were necessary for the audit. RSI contends that IBM continually promised to supply further necessary supporting documents but never provided what RSI needed for an audit.

IBM asserts it made the required "auditable records" available to RSI but the parties continually disagreed about the provision's requirements. Def.'s Br. 4, Dkt. No. 271.

Finally on February 15, 2008, RSI filed a complaint against IBM, which was subsequently amended to include the following causes of action: breaches of the Developer Agreement (first cause of action), violation of the Lanham Act (15 U.S.C. § 1125(a)) (second cause of action), intentional interference with prospective economic advantage (third cause of action) and unfair competition (fourth cause of action). *See* Third Amended Complaint, Dkt. No. 82 ("TAC").

## II.  RELEVANT PROCEDURAL HISTORY

On May 11, 2012, IBM filed a motion for partial summary judgment, arguing that all of RSI's claims, including the tort claims, were barred by the provision in the Developer Agreement

limiting the time in which each party had to bring suit against the other and, if not, by various state law statutes of limitation. Dkt. No. 134. On May 11, 2012, IBM also filed a motion for summary judgment, claiming that RSI's claims for trademark infringement and unfair competition were barred by the doctrine of laches and further that RSI could not demonstrate likelihood of confusion between the marks "DB2 Buffer Pool Analyzer" and "Buffer Pool Tool." Dkt. No. 135. The court addressed both motions in its Order Granting in Part and Denying in Part IBM's Motions for Partial Summary Judgment dated July 26, 2012 (Dkt. No. 184) ("July 2012 Order")[2] and held that the limitation provision of the contract did not apply to RSI's tort claims. However, it did find the following tort claims untimely under the California law: (1) "misappropriation-style" unfair competition; (2) unfair competition claims based on identified instances of alleged misconduct that occurred before February 18, 2004; and (3) tortious interference claims based on identified instances of alleged misconduct that occurred before February 18, 2006. *Id.* at 21. Pursuant to Federal Rule of Civil Procedure 56(d), the court deferred for ninety days ruling on IBM's assertion that RSI had no facts sufficient to support a claim of willful trademark infringement and on RSI's claim that IBM was estopped from asserting the two-year limitation period for bringing a lawsuit as set forth in the parties' Developer Agreement. *See* Developer Agreement § 13.3. Thereafter, the parties submitted supplementary briefs. The deferred summary adjudication issues are now ripe for decision.

On January 25, 2013, IBM filed another motion for summary judgment. In the motion, IBM submits that RSI's intentional interference with prospective economic advantage and unfair competition claims fail as a matter of law. IBM further argues that claims for the alleged breach of the royalty provision of their agreement is time-barred and that any damages for the breach of contract for the failure to make royalty payments are limited to those not made following the commencement of the limitation period on February 15, 2006.

---

[2] Docket number 184 refers to the sealed version of the order. The lightly redacted version is available at docket number 190, filed on August 9, 2012.

The court will first address the deferred issues from the May 21, 2012 summary judgment motions and then will address the current motion for summary judgment.

### III. ANALYSIS

**A. Deferred Issues from May 11, 2013 Partial Summary Judgment Motions**

    **1. Estoppel to Assert Contractual Limitation**

The parties disagree as to whether the limitation period set forth in their Developer Agreement for bringing a lawsuit bars recovery of any portion of the royalty payments RSI claims it is owed by IBM. RSI contends that IBM is estopped from asserting the two-year limitation period set forth in the agreement and that RSI is entitled to recover for any shortage of royalty payments from the beginning date of the first audit it requested. It asserts that IBM's conduct in failing to provide requested audit information that IBM repeatedly promised to provide estops it from asserting the limitations period. RSI also argues that the audit provision of the Developer Agreement should be construed to mean that RSI's claim for unpaid royalties did not arise until IBM provided the promised audit information. IBM, on the other hand, asserts that any claim for unpaid royalties that became due more than two years prior to the filing of RSI's complaint is barred.

Section 13.3 of the Developer Agreement dated June 23, 1997, ("Limitations Provision") reads: "Except for actions brought to enforce Section 7.0, 'INDEMNIFICATION AND LIABILITY,' neither of us will bring a legal action against the other more than two (2) years after the cause of action arose." Developer Agreement § 13.3. Section 3.6 ("Audit Provision") requires the parties to "maintain auditable records to support invoices issued or payments made to the other. The records will be retained and made available for three (3) years from the date of the related payment or invoice. If a party requests, the other party will make the records available to an independent auditor chosen and compensated by the requesting party." Developer Agreement § 3.6.

The court has previously tentatively held that IBM's conduct does not support estoppel based upon the reasoning of *Allman v. UMG Recordings*, 530 F. Supp. 2d 602, 608 (S.D.N.Y. 2008). As the court explained in its July 2012 Order, a plaintiff may equitably estop a defendant

1   from asserting a time limitation defense only under extraordinary circumstances. July 2012 Order
2   13, Dkt. No. 184. In order to establish estoppel on a motion for summary judgment, a plaintiff
3   must "offer evidence that it was misled or lulled by the defendant into failing to bring its claim in
4   a timely manner." *N. Am. Foreign Trading Corp. v. Mitsui Sumitomo Ins. USA, Inc.*, 477 F.
5   Supp. 2d 576, 582 (S.D.N.Y. 2006). This type of evidence may include affirmative
6   misrepresentations by a defendant upon which a plaintiff reasonably relies in delaying legal
7   action. *See id.* at 582 (finding estoppel applicable where an insurer misrepresented to its insured
8   that the status of its claim was uncertain although it had already determined it would be denied).

9   The court previously found that RSI had failed to identify evidence showing that estoppel
10  tolled the contractual limitations period as to its claim that IBM breached the audit provision.
11  July 2012 Order 13, Dkt. No. 184. In its supplemental brief, RSI failed to produce any new
12  evidence raising an issue of fact that IBM mislead RSI into failing to bring its claim.

13  Although RSI has not offered new evidence that is sufficient to persuade the court that it
14  should change its tentative ruling, the estoppel ruling was made on the assumption that the only
15  reasonable construction of the Dealer Agreement was that RSI's cause of action accrued when the
16  royalty payment questioned was due and not paid or was underpaid. However, the court does not
17  find that the Dealer Agreement is only susceptible to one reasonable construction. "The proper
18  inquiry in determining whether a contract is ambiguous is whether the agreement on its face is
19  reasonably susceptible of more than one interpretation. A party seeking summary judgment has
20  the burden of establishing that the construction it favors is the only construction which can fairly
21  be placed thereon." *Arrow Commc'n Labs., Inc. v. Pico Prods., Inc.*, 206 A.D.2d 922, 922-23
22  (N.Y. Ct. App. 1994).

23  The Dealer Agreement is susceptible to the interpretation that the parties intended to have
24  a claim for unpaid royalties "arise" only after "auditable records" were provided based upon a
25  request made within three years of a related payment or invoice.[3] If a party could not claim a

---

[3] The court recognizes that it did not consider this possible construction of the (cont.)

1  royalty that fell due more than two years before an action was instituted for unpaid royalties, there
2  would seem to be little point in requiring records to be maintained for three years for the purpose
3  of allowing an audit by the other party. In reading Section 13.3 in light of Section 3.6, it appears
4  that the parties may have intended a cause of action to "arise" only after a party made the required
5  audit materials available to the requesting party. That makes sense here because the records
6  which show RSI's entitlement to royalty payments were almost exclusively under the control of
7  IBM. Therefore, the court finds that a reasonable construction of the contract could be that the
8  parties intended a cause of action to "arise" when the earliest of the following occurred: (1) IBM
9  provided the required records for audit by RSI's auditor; (2) IBM stated that it had provided all
10 the records it was going to provide; or (3) a reasonable person in RSI's position would have
11 concluded that further auditable records would not be forthcoming.

12       The practical application of this construction of the Dealer Agreement would be that a
13 party could file a lawsuit seeking payments that were slightly over five years overdue if the other
14 party timely provided auditable records upon request. Under New York law, a breach of contract
15 claim must be brought within six years. *See* NY C.P.L.R. § 213. Thus, under this interpretation
16 of the Dealer Agreement, the limitations period would be about the same as that under New York
17 law. This adds some support to the view that the parties may have intended this interpretation.

18       In summary, IBM's conduct does not estop it from claiming the bar of the limitation
19 period. However, that may not result in precluding RSI's claim for unpaid royalties falling due
20 before February 18, 2006, if RSI shows that under a correct construction of the Dealer Agreement
21 RSI's claim did not arise until it received auditable records or it was clear that it was not going to
22 receive auditable records.

---

Developer Agreement in issuing prior orders although it noted that no determination had been made as to when RSI's claim arose. *See* July 2012 Order 9, Dkt. No. 184.

ORDER RE IBM'S SUMMARY JUDGMENT MOTIONS
CASE NO. C-08-03414 RMW
SG/SW
- 6 -

### 2. Lack of Evidence of Willful Infringement

RSI has contended that IBM willfully infringed its Buffer Pool Tool mark, which, if correct, would preclude IBM's laches defense to trademark infringement. *See Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 956 (9th Cir. 2001) ("Laches does not bar a suit against a deliberate infringer."). As the court previously held, RSI has a heavy burden to show willful infringement. July 2012 Order, Dkt. No. 184; *see also Conan Properties, Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 150 (5th Cir. 1985); *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 842 (9th Cir. 2002) ("A plaintiff can escape laches under the unclean hands doctrine only if the court is left with a firm conviction that the defendant acted with a fraudulent intent . . . ."). RSI fails to meet this burden.

RSI claims twelve disputed facts support an inference of willfulness, Supp. Br. at 4-6, Dkt. No. 220, but the court previously considered most of the evidence. The majority of RSI's new evidence comes from the deposition of David McGorry, IBM's Program Manager for Corporate Naming and Trademarks. IBM designated him its 30(b)(6) witness concerning a number of topics noticed by RSI, most of which were related to the naming of the Buffer Pool Analyzer. *See* Schultz Decl. Ex. B (Notice of 30(b)(6) Depo.), Dkt. No. 252-2. RSI complains that McGorry was an inappropriate witness as he was not personally involved in the naming and inadequately prepared himself. Supp. Br. at 6, Dkt. No. 220. Although the deposition transcript suggests that McGorry could have done more to prepare, he did speak with parties involved in the IBM's choice of Buffer Pool Analyzer. Commerson Decl. Ex. N, Dkt. No. 246-15. Furthermore, the events in question took place in 2001, and thus the people still working at IBM previously involved in the decision will not have perfect recollection of events dating back over 10 years. The excerpts of the McGorry deposition offered by RSI do not create an issue of material fact as to willful infringement.

In order to bolster its willfulness argument, RSI hired a purported expert, Irving S. Rappaport, to opine on whether the evidence supports a finding of willfulness. *See* Rappaport Decl., Dkt. No. 255. IBM moves to strike the entirety of the declaration. Mot. to Strike, Dkt. No.

ORDER RE IBM'S SUMMARY JUDGMENT MOTIONS
CASE NO. C-08-03414 RMW
SG/SW
- 7 -

245. Trial courts have broad discretion in admitting or excluding expert testimony. *Little Oil Co., Inc. v. Atl. Richfield Co.*, 852 F.2d 441, 446 (9th Cir. 1988). Experts may only assist the trier of fact in understanding the evidence or determining a fact in issue. Fed. R. Evid. 702; *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008). An expert cannot give an opinion on "an ultimate issue of law." *Id*. Although Rappaport has an impressive resume, his declaration is mostly legal opinion and an unhelpful restatement of the facts as he sees them. Therefore, the court strikes the entirety of the declaration of Irving S. Rappaport.

**B. Current Summary Judgment Motion**

### 1. Choice of law and statutes of limitation

The court applies New York law to the parties' substantive contractual disputes. March 2009 Order 3, Dkt. No. 70. The reason is that the Developer Agreement contains a New York law choice of law provision. Developer Agreement § 13.6. However, California statutes of limitations apply to RSI's tort claims. July 2012 Order 17, Dkt. No. 184.

Under New York law, parties to a contract may agree to shorten the statute of limitations for claims that arise between them. *See* N.Y. C.P.L.R. § 201 ("[A]n action . . . must be commenced within the time specified in this article unless . . . a shorter time is prescribed by written agreement."). "Absent proof that the contract is one of adhesion or the product of overreaching, or that [the] altered period is unreasonably short, the abbreviated period of limitation will be enforced." *Incorporated Village of Saltaire v. Zagata*, 280 A.D.2d 547, 547-48 (N.Y. Ct. App. 2001) (citation omitted). Hence, in this case, the breach of contract claim is limited by the two-year limitations provision in the Developer Agreement. Developer Agreement § 13.3. Therefore, any breach of contract claim is untimely if it accrued or arose before February 15, 2006.

California's statute of limitations is two years for intentional interference with prospective economic advantage (Cal. Code Civ. Pro. 339(1)) and four years for unfair competition (*ATM*

*Exp., Inc. v. ATM Exp., Inc.*, 2009 WL 2973034 (S.D. Cal. Sept. 11, 2009)).[4] Therefore, these claims are untimely if they accrued before February 15, 2006, and February 15, 2004, respectively.

### 2. Repeated motions for summary judgment

RSI argues that IBM's current summary judgment motion is duplicative of its May 11, 2012, motions and, therefore, should not be allowed. Opp'n 2, Dkt. No. 278. There is some overlap but the current motion does not seek to have the court reconsider prior rulings and it does address the tort claims in their entirety. *See* Dkt. Nos. 134, 135; Def.'s Br 1. The consideration of IBM's summary judgment motion at this stage will save time and resources. *See Hoffman v. Tonnemacher*, 593 F.3d 908, 912 (9th Cir. 2010) ("Allowing a successive summary judgment motion potentially can save all concerned the far greater expenses of a trial.").

### 3. Rule 56(d)

RSI asks the court to delay ruling to provide it more time to provide evidence in support of its opposition. *See* Rule 56(d) Decl. of Pamela Schultz. The discovery cutoff was November 21, 2012. The court allowed some limited additional discovery of communications of IBM sales people that was due on March 1, 2013. The court allowed parties to file any newly uncovered evidence by March 4, 2013. *See* Order, Dkt. No. 354. The court is aware that RSI had little time to review late produced discovery but RSI opposed even a short continuance of the trial to allow it to do so. Under these circumstances, the court declines to allow RSI more time to respond to IBM's motion. Further, RSI presumably had some factual support for its tort claims when it made its allegations—at least sufficient evidence to survive summary judgment.

---

[4] It is not clear that the statute of limitations is four years for common law unfair competition. *Compare Garcia v. Coleman*, 2008 WL 4166854 (N.D. Cal. Sept. 8, 2008) (two-year statute of limitations for common law misappropriation).

ORDER RE IBM'S SUMMARY JUDGMENT MOTIONS
CASE NO. C-08-03414 RMW
SG/SW

- 9 -

### 4.     Intentional interference with prospective economic advantage

RSI opposes IBM's summary judgment motion on the tort claims by arguing that IBM raises factual questions that are inappropriate for summary judgment. Opp'n 4.

IBM seeks summary judgment against RSI's intentional interference with prospective economic advantage claims because it contends that RSI cannot prove all the elements of the tort. Although IBM must show that there is no genuine dispute as to any material fact entitling it to judgment as a matter of law, Fed. R. Civ. P. 56(a), it can meet this burden by pointing out the "absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). To counter such a showing, RSI must establish that "a reasonable trier of fact" could find in its favor. *Galen v. Cnty. of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007). A mere scintilla of evidence is insufficient to meet this burden. *Id.*

"The tort of intentional . . . interference with prospective economic advantage imposes liability for improper methods of disrupting or diverting the business relationship of another . . ." *CrossTalk Productions, Inc. v. Jacobson*, 65 Cal. App. 4th 631, 646 (1998). In California, the elements of the tort are: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003) (quoting *Buckaloo v. Johnson*, 14 Cal.3d 815, 827 (1975)).

IBM argues that RSI cannot prove that (1) it engaged in wrongful conduct; (2) its conduct was a substantial factor in causing RSI harm; and (3) RSI had a relationship that "probably" would have resulted in economic gain. Def.'s Br. 6-10.

RSI provides a series of alleged misdeeds that it argues were wrongful. Opp'n 10-12. However, California's competition privilege protects much of IBM's behavior. It "protects one from liability for inducing a third person not to enter into a prospective contractual relation with a business competitor." *Gemini Aluminum Corp. v. Cal. Custom Shapes, Inc.*, 95 Cal. App. 4th

ORDER RE IBM'S SUMMARY JUDGMENT MOTIONS
CASE NO. C-08-03414 RMW
SG/SW
- 10 -

1249, 1256 (2002). "[A] competitor is free to divert business to himself as long as he uses fair and reasonable means." *Tri-Growth Ctr. City, Ltd. v. Silldorf, Burdman, Duignan & Eisenberg*, 216 Cal. App. 3d 1139, 1153 (1989). The Developer Agreement specifically provided that "[either of us may independently develop, acquire, and market competitive items and services." Developer Agreement § 3.2. It is RSI's burden to prove, as an element of the cause of action, that IBM's conduct "was independently wrongful and, therefore, was *not* privileged." *Gemini Aluminum Corp.*, 95 Cal. App. 4th at 1257 (emphasis added).

Although RSI provides a list of alleged misdeeds, it provides little information about actual business relationships that IBM interfered with that were likely to result in economic gain to RSI. *See* Opp'n 10-12. RSI only specifically mentions one customer, RSI's Supp. Br. 2, and for that customer it fails to adequately establish its case. RSI cites to a May 3, 2006 email in which IBM developers working on BPA asked to see a sample BPT report. Hubel Decl. Ex. C. This request was in the context of an attempt by IBM to convince a BPT customer that it could cancel its BPT license in favor of BPA. *Id.* However, RSI fails to establish that the requested report was actually proprietary and confidential or otherwise establish that IBM was wrongfully competing by requesting it. For example, there is no evidence that RSI took reasonable efforts to keep the report secret or that it had independent economic value from being kept secret. *See* Cal. Civ. Code § 3426.1(d). For the above reasons, the court grants IBM's motion for summary judgment on RSI's tortious interference with business relationship claim.

### 5. Unfair Competition

IBM also moves for summary judgment on RSI's unfair competition claim. California recognizes two types of unfair competition: passing-off and misappropriation. *See Balboa Ins. Co. v. Trans Global Equities,* 218 Cal. App. 3d 1327, 1342 (Cal. Ct. App. 1990) (elements of misappropriation style unfair competition); *Bank of the W. v. Superior Court*, 2 Cal. 4th 1254, 1263 (1992) ("The common law tort of unfair competition is generally thought to be synonymous with the act of 'passing off' one's goods as those of another. The tort developed as an equitable remedy against the wrongful exploitation of trade names and common law trademarks that were

ORDER RE IBM'S SUMMARY JUDGMENT MOTIONS
CASE NO. C-08-03414 RMW
SG/SW
- 11 -

1  not otherwise entitled to legal protection."). The court already ruled that the misappropriation-
2  style claims were time-barred. July 2012 Order 18-21, Dkt. 184. It now concludes that an unfair
3  competition claim based upon passing-off lacks merit. RSI claims that IBM unfairly competed
4  with RSI in the following ways:

> Utilization of RSI's product to compete against RSI's product and drive it out of business; utilization of Buffer Pool Tool internally to better its own product and win customers; retaliated against RSI' s experts in this litigation; diverted customers who contacted IBM for Buffer Pool Tool to its competing product; offered drastic discounts for its competing product to monopolize the market and punish RSI for refusing to drop the price of its product; insisting on mediation in bad faith; trying to convert Buffer Pool Tool customers to a product which did not operate on their systems; fraudulent concealment of RSI software at 100% discounts; intentionally extending the formal audit period to delay RSI's ability to ascertain its damages; adopting a confusingly similar name to RSI's product; and passing off Buffer Pool Tool features as its own product.

12 Opp'n 8; RSI's Supp. Br. 3.

13      However, many of RSI's allegations are not supported by evidence and the evidence RSI
14 does cite fails to support a viable common-law unfair competition claim. Some of the evidence
15 relates to the alleged misappropriation of BPT, which the court has already ruled is time-barred.
16 The only allegations that relate to passing-off appear to be (c) "Diverted customers who contacted
17 IBM for Buffer Pool Tool to its competing product," (h) "Adopting a confusingly similar name to
18 RSI's product" and (i) "Passing off Buffer Pool Tool features as its own product."

19       The evidence supporting the claim that IBM diverted customers is an email which
20 proposed a sales strategy for the rollout of BPA to existing BPT customers. Hubel Dec. Ex. N.
21 The strategy included informing customers that IBM would no longer support BPT, offering to
22 upgrade them to BPA at a discount, and notifying them that they needed to contact RSI if they
23 wanted to continue to receive BPT support. *See id.* Although offering to upgrade BPT to BPA
24 might offer some support for a passing-off claim, the fact that IBM also proposed directing
25 customers to RSI if they wanted to continue with BPT would have made it clear that they are
26 separate products made by different companies.

27       RSI does not have specific citations for its other two passing-off allegations. It claims that
28 the "totality of the evidence" supports its "[a]dopting a confusingly similar name" claim and that

1  IBM has recently produced documents will provide evidence of passing off BPT features as its
2  own product. RSI's Supp. Br. 3. The court finds that any claim based on the first allegation is
3  time-barred and that the evidence does not support the second. First, the statute of limitations for
4  unfair competition claims is four years. The court has already ruled that RSI's Lanham Act claim
5  based on the confusingly similar name accrued in 2001 when IBM announced the name of its
6  competing product. *See* July 2012 Order 23, Dkt. No. 184. RSI has based its passing-off and
7  Lanham Act claims on the same allegation. *Compare* TAC ¶ 27 *with* ¶ 52. The claim accrued in
8  2001 and is therefore time-barred. Finally, at this late stage in the litigation, even absent time to
9  review IBM's final production on the limited issues allowed by the court's prior discovery orders,
10 RSI should have been able set forth enough evidence to survive summary judgment if it had a
11 viable claim. As it cannot point to any evidence sufficient to raise an issue of fact, summary
12 judgment on the remaining aspects of the unfair competition allegation must be granted in IBM's
13 favor.

### 6. Breach of contract

#### (a) Unpaid royalties

The unpaid royalties that may be collected depends upon the interpretation of the Dealer Agreement as discussed above. Summary judgment, therefore, is denied on IBM's claim that royalties may not be recovered if they fell due before February 15, 2006.

#### (b) Duty to market BPT

The parties dispute whether IBM had an obligation to market RSI's BPT. Def.'s Br. 14; Opp'n 13. IBM refers to the "Freedom of Action" provision in the agreement, which explicitly allowed parties to "independently develop, acquire, and market competitive items and services." Reply 3, Dkt. No. 289. On the other hand, the Statement of Work includes the provision that "IBM will develop a marketing plan including announcement, promotion, and distribution of the Product [BPT] and implement that marketing plan as modified in IBM's judgment." Commerson Decl., Ex. M § 2.2, Dkt. No. 246-14 (emphasis added). The fact that the marketing plan could be "modified in IBM's judgment," and that IBM could "change the plan without RS[I]'s prior approval," shows that IBM had significant leeway in marketing the product. But, it does not

indicate that IBM had no obligation to market BPT. Nevertheless, the court does not have to resolve IBM's marketing duties at this stage since any claim based on such duty- both in tort and contract-is time-barred. IBM publicly announced in 2001 that it would withdraw BPT from marketing on March 4, 2002. Def.'s Br. 15. The longest limitations period applicable to RSI's claims only extends back to February 2004. *See* July 2012 Order 21, Dkt. No. 184. RSI provides evidence that IBM continued to license BPT after its announcement, but there is no indication that IBM continued to market BPT such that RSI's cause of action would only have accrued later. See Opp'n 13. The only evidence indicates that RSI's cause of action accrued before 2004 and is time-barred. Therefore, the court grants summary judgment in IBM's favor on any claim that relies on IBM's alleged duty to market BPT.

(c) Duty to provide technical support for BPT

IBM also moves for summary judgment on any claim related to IBM's promise to "provide product technical support for licensees' installation and use of the Buffer Pool Tool." TAC 7. IBM argues that any claims based on IBM's duty to provide technical support for BPT are time-barred because it publicly announced on February 5, 2002, that it would stop servicing BPT as a feature of DB2 on March 31, 2003, and BPT as a standalone product on May 4, 2003. Def.'s Br. 16. There does not appear to be any request for technical service within the applicable limitation period that IBM failed to address. RSI does not appear to specifically oppose this portion of IBM's motion. Therefore, the court grants summary judgment in favor of IBM on any claims based on IBM's duty to provide technical support.

(d) Unpaid license fees by sub-licensees

The parties also dispute IBM's responsibility under the Developer Agreement to account for the unpaid royalties by its customers who used RSI's BPT. Def.'s Br. 16; Opp'n 14-15. RSI believes that it can recover damages based on the use of BPT by IBM customers who had stopped paying licensing fees to IBM. Opp'n 14. IBM counters that in the absence of express contractual language, it was not required to monitor licensees' continued use. Def.'s Br. 16. IBM argues

ORDER RE IBM'S SUMMARY JUDGMENT MOTIONS
CASE NO. C-08-03414 RMW
SG/SW
- 14 -

that it only owes RSI royalties on BPT revenue that IBM actually received and recorded; it seeks summary judgment on this issue.

"The plain, common, or normal meaning of language will be given to the words of a contract unless the circumstances show that in a particular case a special meaning should be attached to them." 11 Williston on Contracts § 32:3 (4th ed.). "A party seeking summary judgment has the burden of establishing that the construction it favors 'is the only construction which can fairly be placed thereon.'" *Arrow Commc'n*, 206 A.D.2d at 923 (*quoting Dowdle v. Richards*, 2 A.D.2d 486, 489 (N.Y. App. Div. 1956)). Although RSI insists that the terms are ambiguous because they were not defined, the court disagrees and holds that there is only one reasonable construction.

The parties agreement defines IBM's royalty obligation as requiring IBM to pay RSI "royalties against revenue received by IBM." Description of Licensed Work § 6.1, Commerson Decl. Ex. N, Dkt. No. 271-12. The agreement defines those royalty obligations as:

> (1) thirty percent (30%) of all revenue recorded for Products licensed on a standalone basis; and
>
> (2) thirty percent (30%) of all revenue recorded and attributable to the Product(s) when . . . bundled with other . . products . . .The revenue attributable to the Product(s) shall be the total license fee received by IBM for the complete offering multiplied by the ratio of the list price(s) of the Product(s) to the combined list price(s) . . .
>
> (3) notwithstanding the foregoing, in no event shall the royalty amount paid to RS[I] for each Licensed Work licensed in groups 40 through 80 be less than three hundred dollars.

*Id*. The court finds nothing in the subject matter, the context, or the purpose of this Developer Agreement to indicate that the parties intended to use the terms "revenue received" or "revenue recorded" other than in accordance with their plain meaning. Under the plain meaning of the terms, the court agrees with IBM that there is no issue of fact as to the royalty payments. IBM is only required to pay RSI royalty based on the revenue it has "received." Even the revenue "attributable" to products under § 6.1(2) has been defined by the agreement as based on the "licensing fee received by IBM." *Id.* Therefore, the court grants summary judgment for IBM, holding that, under the Developer Agreement, IBM is only responsible for paying royalties on

revenue it received. This does not mean, however, that if IBM chose to forgo a money payment for consideration other than money, that it would not owe RSI a royalty payment based upon the value of the consideration received by IBM.

          (e)    IBM's "internal use"

RSI's breach of contract claim includes an allegation that IBM violated the Developer Agreement by using BPT internally without compensating RSI. TAC 17-18. IBM argues that the contract gives it the right to use BPT for any possible internal uses or for any type of development. Def.'s Br. 17-18. Specifically, the contract states: "IBM has no royalty obligation" when BPT is used for "IBM's internal use, development, maintenance, or support activities." Description of Licensed Work § 6.2, Commerson Decl. Ex. N, Dkt. No. 271-12. The section goes on to list the other instances in which IBM does not owe royalties including for marketing, sales uses, backup, maintenance, basic enhancements, and trial periods. *Id.*

RSI, in contrast, argues that "internal use" and "development" are ambiguous and that during the course of contract negotiations RSI asked IBM to explain those terms, to which IBM responded that they did not refer to IBM's utilization of RSI's software for its own business purposes or development. Goldstein Dec. ¶¶ 3-7, Ex. A, Dkt. Nos. 280, 280-1. RSI insists that the royalty-free uses are limited to testing and maintenance. Opp'n 16.

RSI has raised a material issue of fact, and therefore the court denies summary judgment on this issue.

## IV. ORDER

The court grants in part and denies in part IBM's motion as follows:

1. Grants IBM's motion for summary judgment on RSI's interference with prospective advantage claim;

2. Grants IBM's motion for summary judgment on RSI's unfair competition claim;

3. Denies IBM's request that the court enter an order that RSI's claim that IBM breached section 3.6 of the Developer Agreement is time-barred;

ORDER RE IBM'S SUMMARY JUDGMENT MOTIONS
CASE NO. C-08-03414 RMW
SG/SW
- 16 -

1     4. Grants IBM's motion for summary adjudication that IBM is not estopped from asserting the contractual limitation period in section 13.3 of the Dealer Agreement;

    5. Denies IBM's request that the court issue an order limiting damages for breach of contract to payments due but not made following the commencement of the limitation period on February 15, 2006;

    6. Denies IBM's motion for summary adjudication that IBM does not owe royalty payments for any internal use;

    7. Grants IBM's motion for summary judgment on trademark infringement except for any claim for injunctive relief; and

    8. Grants IBM's motion for summary adjudication that any trademark infringement by it was willful.

Dated: March 13, 2013

*Ronald M. Whyte*
Ronald M. Whyte
United States District Court Judge